_____

In the
United States Court of Appeals
For the
Eleventh Circuit

_____

OJ Commerce, LLC
Defendant / Counter Plaintiff - Appellant
vs.
National Christmas Products, Inc
Plaintiff / Counter Defendant - Appellee

_____

On Appeal from the United States District Court
for the Southern District of Florida
Hon. William P. Dimitrouleas
Case No. 0:22-cv-60897-WPD

**APPELLANT OJ COMMERCE LLC'S APPENDIX**

Shlomo Y. Hecht
SHLOMO Y. HECHT, PA
3076 N. Commerce Pkwy
Miramar, FL 33025
Attorney for Appellant

## INDEX

| Document Name | Page No. | Tab No. |
|---|---|---|
| Docket Sheet | 4 | DS |
| Complaint | 22 | ECF 3 |
| Complaint Exhibit A | 29 | ECF 1-4 |
| Order to Show Cause | 33 | ECF 6 |
| Response to Order to Show Cause | 35 | ECF 8 |
| Trial Order | 38 | ECF 35 |
| Counterclaim | 45 | ECF 44 |
| Extending Trial Deadlines | 64 | ECF 80 |
| Motion to Dismiss | 66 | ECF 91 |
| Order Denying MTD | 72 | ECF 92 |
| Motion to Allow Jurisdictional Discovery | 74 | ECF 93 |
| Denying Jurisdictional Discovery | 85 | ECF 94 |
| Renewed Motion to Dismiss | 87 | ECF 95 |
| Merger Certificate | 94 | ECF 95-1 |
| Renewed Motion to Allow Jurisdictional Discovery | 101 | ECF 96 |
| Cooke Deposition Transcript | 112 | ECF 96-1 |
| Order referring to Magistrate | 117 | ECF 98 |
| Order limiting discovery | 120 | ECF 106 |

| | | |
|---|---|---|
| Order Denying Motion to Quash Deposition | 127 | ECF 119 |
| Report & Recommendation Granting Dismissal | 129 | ECF 135 |
| Order Approving Dismissal | 139 | ECF 138 |
| Motion for Sanctions | 146 | ECF 139 |
| Response to Motion | 156 | ECF 141 |
| Horgan Declaration | 174 | ECF 141-1 |
| Reply in support for Sanctions | 180 | ECF 142 |
| Exhibit A - Response to Rogs | 192 | ECF 142-1 |
| Exhibit B - Response to RFP | 200 | ECF 142-2 |
| Exhibit C - Response to RFP III | 208 | ECF 142-3 |
| Report & Recommendation Denying Sanctions | 218 | ECF 143 |
| Objection to Report & Recommendation | 232 | ECF 144 |
| Purchasing Power Complaint | 250 | ECF 144-1 |
| Approving Recommendation Denying Sanctions | 280 | ECF 146 |
| Notice of Appeal | 282 | ECF 147 |
| State Court Complaint | 283 | DE 1 |
| State Court Counterclaim | 342 | DE 19 |
| State Court Reply in support of Stay | 414 | DE 21 |

APPEAL,CLOSED,JMS,MEDIATION,REF_DISCOV,STAYED

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CIVIL DOCKET FOR CASE #: 0:22-cv-60897-WPD

National Christmas Products, Inc. v. OJ Commerce, LLC
Assigned to: Judge William P. Dimitrouleas
Referred to: Magistrate Judge Jared M. Strauss
Case in other court: USCA, 25-10089-H
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 05/12/2022
Date Terminated: 06/05/2024
Jury Demand: Defendant
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

## Plaintiff

**National Christmas Products, Inc**
*a New Jersey Corporation*
*doing business as*
National Tree Company

represented by **Joanna R. Cohen**
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
212-370-1300
Email: jcohen@egsllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lance Wayne Shinder**
Black Srebnick, P.A.
Black Srebnick Korns
One Town Center Road, 201
Ste 210
33486
Boca Raton, FL 33486
561-361-6800
Email: lshinder@royblack.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aldonsa Janjigian**
Ellenoff Grossman & Schole, LLP
1345 Avenue of the Americas, 11th Fl.
New York, NY 10105
212-370-1300
Email: ajanjigian@egsllp.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony Galano , III**
Ellenoff Grossman & Schole, LLP
1345 Avenue of the Americas, 11th Fl.
New York, NY 10105
212-370-1300
Email: agalano@egsllp.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**App. 004**

**John B. Horgan**
Ellenoff Grossman & Schole, LLP
1345 Avenue of the Americas, 11th Fl.
New York, NY 10105
212-370-1300
Email: jhorgan@egsllp.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jordan David Utanski**
Gordon Rees Scully Mansukhani
100 SE Second Street
Suite 3900
Miami, FL 33131
561-206-3838
Email: jutanski@grsm.com
*ATTORNEY TO BE NOTICED*

**Kyle Andrew Johnson**
Black, Srebnick, Kornspan , Stumpf
One Town Center Road, Suite 201
Boca Raton, FL 33486
5613616800
Email: kjohnson@royblack.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **OJ Commerce, LLC**<br>*a Florida Limited Liability Company* | represented by | **Aaron W. Davis**<br>Valhalla Legal, PLLC<br>PO Box 735<br>Custer, SD 57730-0735<br>(763) 957-2397<br>Email: davis@valhallalegal.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Shlomo Y Hecht**<br>Shlomo Y Hecht PA<br>3076 N Commerce Parkway<br>Miramar, FL 33025<br>9548610025<br>Email: sam@hechtlawpa.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **OJ Commerce, LLC**<br>*a Florida Limited Liability Company* | represented by | **Aaron W. Davis**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Shlomo Y Hecht**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**National Christmas Products, Inc**          represented by   **Joanna R. Cohen**
*a New Jersey Corporation*                                      (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Lance Wayne Shinder**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Aldonsa Janjigian**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Anthony Galano , III**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Kyle Andrew Johnson**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**OJ Commerce, LLC**                          represented by   **Aaron W. Davis**
*a Florida Limited Liability Company*                          (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Shlomo Y Hecht**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**National Christmas Products, Inc**          represented by   **Joanna R. Cohen**
*a New Jersey Corporation*                                      (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Lance Wayne Shinder**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aldonsa Janjigian**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anthony Galano , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Andrew Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/12/2022 | 1 | COMPLAINT against OJ Commerce, LLC. Filing fees $ 402.00 receipt number AFLSDC-15632087, filed by National Christmas Products, Inc. d/b/a National Tree Company. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s), # 3 Exhibit Ex. 1 - E-Commerce Vendor Agreement, # 4 Exhibit Ex. 2 - March 14, 2022 Demand)(Johnson, Kyle) (Entered: 05/12/2022) |
| 05/12/2022 | 2 | Clerks Notice of Judge Assignment to Judge William P. Dimitrouleas and Magistrate Judge Lurana S. Snow. <br><br> Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Lurana S. Snow is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. <br><br> Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (mee) (Entered: 05/12/2022) |
| 05/12/2022 | 3 | Summons Issued as to OJ Commerce, LLC. (mee) (Entered: 05/12/2022) |
| 05/12/2022 | 4 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Anthony Galano. Filing Fee $ 200.00 Receipt # AFLSDC-15632789 by National Christmas Products, Inc. Responses due by 5/26/2022 (Attachments: # 1 Certification of Anthony Galano, # 2 Text of Proposed Order Proposed Order Granting Motion)(Johnson, Kyle) (Entered: 05/12/2022) |
| 05/12/2022 | 5 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Aldonsa Janjigian. Filing Fee $ 200.00 Receipt # AFLSDC-15632806 by National Christmas Products, Inc. Responses due by 5/26/2022 (Attachments: # 1 Certification of Aldonsa Janjigian, # 2 Text of Proposed Order Proposed Order Granting Motion)(Johnson, Kyle) (Entered: 05/12/2022) |
| 05/12/2022 | 6 | ORDER TO SHOW CAUSE REGARDING SUBJECT MATTER JURISDICTION. Show Cause Response due by 5/19/2022. Signed by Judge William P. Dimitrouleas on 5/12/2022. *See attached document for full details*. (mee) (Entered: 05/13/2022) |

**App. 007**

| | | |
|---|---|---|
| 05/12/2022 | 7 | ORDER GRANTING MOTIONS TO APPEAR PRO HAC VICE, CONSENT TO DESIGNATION AND REQUEST TO ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING,granting 4 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Anthony Galano,Esq. ; granting 5 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Aldonsa Janjigian. Signed by Judge William P. Dimitrouleas on 5/12/2022. *See attached document for full details*. (mee) (Entered: 05/13/2022) |
| 05/19/2022 | 8 | NOTICE by National Christmas Products, Inc re 6 Order to Show Cause *Addendum to Complaint* (Attachments: # 1 Exhibit Ex. 1 - Email to Opposing Counsel, # 2 Exhibit Ex. 2 - Delaware Division of Corporation Records, # 3 Exhibit Ex. 3 - Florida Division of Corporations Records) (Johnson, Kyle) (Entered: 05/19/2022) |
| 05/20/2022 | 9 | ORDER REQUIRING COUNSEL TO MEET, FILE JOINT SCHEDULING REPORT AND JOINT DISCOVERY REPORT. Signed by Judge William P. Dimitrouleas on 5/20/2022. *See attached document for full details*. (mee) (Entered: 05/20/2022) |
| 06/01/2022 | 10 | Case Reassignment of Paired Magistrate Judge to Magistrate Judge Jared M. Strauss. Magistrate Judge Lurana S. Snow no longer assigned to case. (jmd) (Entered: 06/01/2022) |
| 06/06/2022 | 11 | NOTICE of Attorney Appearance by Shlomo Y Hecht on behalf of OJ Commerce, LLC. Attorney Shlomo Y Hecht added to party OJ Commerce, LLC(pty:dft). (Hecht, Shlomo) (Entered: 06/06/2022) |
| 06/06/2022 | 12 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 1 Complaint, by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 06/06/2022) |
| 06/07/2022 | 13 | ORDER granting Defendant OJ Commerce, LLC's Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint 12 Motion for Extension of Time to File Response/Answer to a Complaint or Other Case Initiating Document OJ Commerce, LLC. Response/Answer due 7/8/2022. Signed by Judge William P. Dimitrouleas on 6/7/2022. *See attached document for full details*. (dj) (Entered: 06/07/2022) |
| 07/08/2022 | 14 | MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM by OJ Commerce, LLC. Responses due by 7/22/2022 (Hecht, Shlomo) (Entered: 07/08/2022) |
| 07/20/2022 | 15 | First MOTION for Extension of Time to File Response/Reply/Answer as to 14 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM by National Christmas Products, Inc. (Johnson, Kyle) (Entered: 07/20/2022) |
| 07/21/2022 | 16 | ORDER, granting in part 15 Motion for Extension of Time to File Response/Reply to Motion. Responses due by 8/8/2022. Signed by Judge William P. Dimitrouleas on 7/21/2022. *See attached document for full details*. (mee) (Entered: 07/21/2022) |
| 08/08/2022 | 17 | RESPONSE in Opposition re 14 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM filed by National Christmas Products, Inc. Replies due by 8/15/2022. (Johnson, Kyle) (Entered: 08/08/2022) |
| 08/15/2022 | 18 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 17 Response in Opposition to Motion *to Dismiss* by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 08/15/2022) |
| 08/15/2022 | 19 | ORDER GRANTING DEFENDANT OJ COMMERCE, LLC'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO REPLY TO ITS MOTION TO DISMISS:GRANTING 18 Motion for Extension of Time to File Reply to Motion to Dismiss 14 . Replies due by 8/22/2022. Signed by Judge William P. Dimitrouleas on 8/15/2022. *See attached document for full details*. (mab) (Entered: 08/15/2022) |

| 08/22/2022 | [20](#) | REPLY to Response to Motion re [14](#) MOTION TO DISMISS [1](#) Complaint, FOR FAILURE TO STATE A CLAIM filed by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 08/22/2022) |
|---|---|---|
| 08/23/2022 | [21](#) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS:granting in part and denying in part [14](#) Motion to Dismiss for Failure to State a Claim. Count III of the Complaint is DISMISSED WITHOUT PREJUDICE. Amended Complaint or Notice Plaintiff is Proceeding on Original Complaint (excluding Count III) due by 9/6/2022. Signed by Judge William P. Dimitrouleas on 8/23/2022. *See attached document for full details.* (mab) (Entered: 08/23/2022) |
| 09/06/2022 | [22](#) | NOTICE by National Christmas Products, Inc re [21](#) Order on Motion to Dismiss for Failure to State a Claim, *Notice of Proceeding on Counts I and II* (Johnson, Kyle) (Entered: 09/06/2022) |
| 09/07/2022 | [23](#) | ORDER ON PLAINTIFF'S NOTICE [22](#) : OJ Commerce, LLC answer to Plaintiff's remaining counts due 9/20/2022. Signed by Judge William P. Dimitrouleas on 9/7/2022. *See attached document for full details.* (mab) (Entered: 09/07/2022) |
| 09/20/2022 | [24](#) | ANSWER and Affirmative Defenses to Complaint with Jury Demand , COUNTERCLAIM against National Christmas Products, Inc by OJ Commerce, LLC. (Attachments: # [1](#) Exhibit A - Agreement, # [2](#) Exhibit B - email, # [3](#) Exhibit C - email) (Hecht, Shlomo) (Entered: 09/20/2022) |
| 10/06/2022 | [25](#) | Plaintiff's MOTION for Extension of Time To Respond to Counterclaim re [24](#) Answer to Complaint,, Counterclaim, by National Christmas Products, Inc. Responses due by 10/20/2022 (Johnson, Kyle) (Entered: 10/06/2022) |
| 10/07/2022 | [26](#) | ORDER GRANTING [25](#) PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIM: Responses due by 11/10/2022. Signed by Judge William P. Dimitrouleas on 10/6/2022. *See attached document for full details.* (mab) (Entered: 10/07/2022) |
| 10/07/2022 | [27](#) | Plaintiff's MOTION to Strike [24](#) Answer to Complaint,, Counterclaim, *Affirmative Defenses* by National Christmas Products, Inc. Responses due by 10/21/2022 (Johnson, Kyle) (Entered: 10/07/2022) |
| 10/07/2022 | [28](#) | ORDER DENYING MOTION WITHOUT PREJUDICE:DENYING [27](#) Plaintiff's MOTION to Strike [24](#) Answer to Complaint, Counterclaim, *Affirmative Defenses*. Signed by Judge William P. Dimitrouleas on 10/7/2022. *See attached document for full details.* (mab) (Entered: 10/07/2022) |
| 10/10/2022 | [29](#) | Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to [24](#) Answer to Complaint,, Counterclaim, by National Christmas Products, Inc. (Johnson, Kyle) (Entered: 10/10/2022) |
| 10/11/2022 | [30](#) | ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO REPLY TO DEFENDANT'S AFFIRMATIVE DEFENSES granting [29](#) Motion for Extension of Time to File Response/Reply to Motion. Plaintiff shall have through and including October 19, 2022 to confer on Defendant's affirmative defenses and, if necessary, file a Motion to Strike Defendant's Affirmative Defenses. Signed by Judge William P. Dimitrouleas on 10/11/2022. *See attached document for full details.* (swr) (Entered: 10/12/2022) |
| 10/17/2022 | [31](#) | Amended MOTION to Strike [24](#) Answer to Complaint,, Counterclaim, *Affirmative Defenses* by National Christmas Products, Inc. Responses due by 10/31/2022 (Johnson, Kyle) (Entered: 10/17/2022) |

**App. 009**

| 10/28/2022 | 32 | Joint MOTION for Extension of Time ALL OUTSTANDING DEADLINES WHILE PARTIES ENGAGE IN SETTLEMENT DISCUSSIONS by OJ Commerce, LLC. Responses due by 11/14/2022 (Hecht, Shlomo) (Entered: 10/28/2022) |
|---|---|---|
| 10/28/2022 | 33 | ORDER GRANTING IN PART JOINT MOTION FOR EXTENSION OF TIME ON ALL OUTSTANDING DEADLINES WHILE PARTIES ENGAGE IN SETTLEMENT DISCUSSIONS:GRANTING IN PART 32 Motion for Extension of Time. Defendant shall respond to Plaintiff's Amended Motion to Strike DE 31 by 11/10/2022. Signed by Judge William P. Dimitrouleas on 10/28/2022. *See attached document for full details.* (mab) (Entered: 10/28/2022) |
| 10/28/2022 | | Plaintiff shall respond to Defendant's Counterclaim DE 24 on or before 11/21/2022 per Order at DE 33 (mab) (Entered: 10/28/2022) |
| 11/02/2022 | 34 | Joint SCHEDULING REPORT - **Rule** by National Christmas Products, Inc (Attachments: # 1 Text of Proposed Order Joint Proposed Order)(Johnson, Kyle) (Entered: 11/02/2022) |
| 11/03/2022 | 35 | ORDER SETTING TRIAL DATE & DISCOVERY DEADLINES, REFERRING CASE TO MEDIATION & REFERRING DISCOVERY MOTIONS TO UNITED STATES MAGISTRATE JUDGE: (Jury Trial set for 3/11/2024 in Fort Lauderdale Division before Judge William P. Dimitrouleas., Calendar Call set for 3/8/2024 10:00 AM in Fort Lauderdale Division before Judge William P. Dimitrouleas.), ORDER REFERRING CASE to Magistrate Judge Jared M. Strauss for Discovery Matters. Signed by Judge William P. Dimitrouleas on 11/3/2022. *See attached document for full details.* (pcs)<br><br>**Pattern Jury Instruction Builder -** To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 11/03/2022) |
| 11/03/2022 | 36 | DISCOVERY PROCEDURES ORDER. Signed by Magistrate Judge Jared M. Strauss on 11/3/2022. *See attached document for full details.* (ab03) (Entered: 11/03/2022) |
| 11/10/2022 | 37 | RESPONSE in Opposition re 31 Amended MOTION to Strike 24 Answer to Complaint,, Counterclaim, *Affirmative Defenses* filed by OJ Commerce, LLC. Replies due by 11/17/2022. (Hecht, Shlomo) (Entered: 11/10/2022) |
| 11/18/2022 | 39 | ORDER GRANTING IN PART MOTION TO STRIKE:GRANTING in part 31 Plaintiff's Amended Motion to Strike. Defendant's Affirmative Defenses 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, and 14 are hereby stricken. Signed by Judge William P. Dimitrouleas on 11/18/2022. *See attached document for full details.* (mab) (Entered: 11/21/2022) |
| 11/21/2022 | 38 | Plaintiff's MOTION TO DISMISS 24 Answer to Complaint,, Counterclaim, FOR FAILURE TO STATE A CLAIM by National Christmas Products, Inc. Responses due by 12/5/2022 (Johnson, Kyle) (Entered: 11/21/2022) |
| 12/05/2022 | 40 | RESPONSE in Opposition re 38 Plaintiff's MOTION TO DISMISS 24 Answer to Complaint,, Counterclaim, FOR FAILURE TO STATE A CLAIM filed by OJ Commerce, LLC. Replies due by 12/12/2022. (Hecht, Shlomo) (Entered: 12/05/2022) |
| 12/05/2022 | 41 | *Amended* ANSWER and Affirmative Defenses to Complaint *(Affirmative Defenses Only)* by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 12/05/2022) |
| 12/12/2022 | 42 | REPLY to Response to Motion re 38 Plaintiff's MOTION TO DISMISS 24 Answer to Complaint,, Counterclaim, FOR FAILURE TO STATE A CLAIM filed by National Christmas Products, Inc. (Johnson, Kyle) (Entered: 12/12/2022) |
| 01/13/2023 | 43 | ORDER granting in part and denying in part 38 Motion to Dismiss Counterclaim. Signed by Judge William P. Dimitrouleas on 1/13/2023. *See attached document for full details.* |

|            |     | (kpe) (Entered: 01/13/2023) |
|------------|-----|------------------------------|
| 01/27/2023 | 44 | Amended COUNTERCLAIM against National Christmas Products, Inc, filed by OJ Commerce, LLC. (Attachments: # 1 Exhibit A - Agreement, # 2 Exhibit B - Email I, # 3 Exhibit C - Email II)(Hecht, Shlomo) (Entered: 01/27/2023) |
| 02/08/2023 | 45 | ORDER TO SHOW CAUSE. Show Cause Response due by 2/15/2023. Signed by Judge William P. Dimitrouleas on 2/8/2023. *See attached document for full details.* (mee) (Entered: 02/09/2023) |
| 02/10/2023 | 46 | *Counter-Defendant's* ANSWER to Counterclaim by National Christmas Products, Inc(a New Jersey Corporation). (Johnson, Kyle) (Entered: 02/10/2023) |
| 02/15/2023 | 47 | NOTICE by National Christmas Products, Inc re 45 Order to Show Cause *Response to Order to Show Cause* (Johnson, Kyle) (Entered: 02/15/2023) |
| 02/16/2023 | 48 | ORDER DIRECTING CLERK TO SELECT MEDIATOR. Signed by Judge William P. Dimitrouleas on 2/16/2023. *See attached document for full details.* (mee) (Entered: 02/16/2023) |
| 02/16/2023 | 49 | Clerk's Appointment of Mediator: William C. Hearon added (pt) (Entered: 02/16/2023) |
| 07/14/2023 | 50 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Aaron W. Davis. Filing Fee $ 200.00 Receipt # AFLSDC-16767036 by OJ Commerce, LLC. Responses due by 7/28/2023 (Attachments: # 1 Affidavit Davis Declaration)(Hecht, Shlomo) (Entered: 07/14/2023) |
| 07/17/2023 | 51 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE, CONSENT TO DESIGNATION, AND REQUEST TO ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING, granting 50 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Aaron W. Davis. Signed by Judge William P. Dimitrouleas on 7/17/2023. *See attached document for full details.* (mee) (Entered: 07/17/2023) |
| 07/21/2023 | 52 | PAPERLESS ORDER. The parties have submitted a Stipulated Confidentiality Agreement ("the Agreement") to the Court via email pursuant to the Court's Discovery Procedures Order. *See* DE 36 . The Court has reviewed the Agreement. However, the Court finds that the Agreement is deficient for the following reasons:

First, the Agreement fails to provide concrete criteria upon which to evaluate the designation of information as "confidential."

Second, the Agreement fails to list details regarding the timing in which the parties need to seek Court intervention when there is a disagreement over the designation of material as "confidential." The Court's procedure is as follows: challenges or objections to designations shall be made to the designating party via email within 14 days after the making of the designation at issue. The parties will be required to confer in good faith (via telephone or video conference) regarding any such challenges or objections within 7 days of the date of the email. If, after meaningful conferral, the parties are unable to resolve the dispute, the parties shall follow the Court's Discovery Procedures Order, *see* DE 36 , and make a request for a discovery hearing within 7 days of the parties' conferral. Thus, any designation dispute must be presented to the Court no later than 28 days after the making of the designation at issue. Additionally, absent exceptional circumstances, the parties must present any designation disputes to the Court prior to the discovery deadline.

Third, in Paragraph 16 of the Agreement, the parties suggest that the Court will retain jurisdiction indefinitely to enforce the confidentiality obligations in the Agreement. While the parties' confidentiality obligations will remain in effect following final disposition of |

## App. 011

| | | this matter, the Court will only retain jurisdiction with respect to any confidentiality agreement for 120 days following final disposition.<br><br>In light of these deficiencies, **the Court declines to enter the Agreement as currently worded.** Any renewed stipulated confidentiality agreement must correct the above mentioned deficiencies. Signed by Magistrate Judge Jared M. Strauss on 7/21/2023. (ab03) (Entered: 07/21/2023) |
|---|---|---|
| 09/27/2023 | 53 | Request for Discovery Hearing received from Plaintiff via email on 9/27/2023 (requesting a discovery hearing regarding "(1) an extension of the discovery deadline from October 20, 2023 to November 30, 2023, (2) our request that the Court compel documents related to Defendant's counterclaims; and (3) the number of depositions noticed by Defendant."). (emd) (Entered: 09/27/2023) |
| 09/27/2023 | 54 | PAPERLESS ORDER Setting Discovery Hearing via Zoom; granting in part and denying in part request for discovery hearing (*see* DE 53). Plaintiff has requested a discovery hearing to address a dispute regarding "(1) an extension of the discovery deadline from October 20, 2023 to November 30, 2023, (2) our request that the Court compel documents related to Defendant's counterclaims; and (3) the number of depositions noticed by Defendant." (*see* DE 53). Having considered Plaintiff's request, the Court ORDERS the parties to appear, through counsel, for a discovery hearing (via Zoom) at **2:00 PM on 10/4/2023** before Magistrate Judge Jared M. Strauss. The discovery hearing will be limited to addressing the second and third issue above. Any request for an extension of the discovery deadline needs to be directed to the District Judge by motion. *See* DE 35 at 6 (paragraph 7) ("This Order does not refer any motion which requests a continuance or extension of the trial or pretrial scheduling dates.").<br><br>Counsel should join the Zoom session by 1:50 PM using the Meeting ID (160 475 0104) and Passcode (8144). By **Noon on 10/2/2023,** the parties shall file a Joint Discovery Status Report, as described in section II.C of DE 36 Discovery Procedures Order. In addition to addressing the requirements described in section II.C of the Discovery Procedures Order, the parties' Joint Discovery Status Report shall address whether Plaintiff's request for a discovery hearing is timely. *See* DE 36 at 4 & n.2 (requiring a request for discovery hearing to be made within 14 days after the grounds for relief occur). As set forth in the Discovery Procedures Order, a courtesy copy of the Joint Discovery Status Report must be emailed to chambers in Word format.<br><br>Signed by Magistrate Judge Jared M. Strauss on 9/27/2023. (emd) (Entered: 09/27/2023) |
| 09/29/2023 | 55 | Plaintiff's MOTION for Extension of Time of Discovery Cutoff Deadline by National Christmas Products, Inc. Attorney Jordan David Utanski added to party National Christmas Products, Inc(pty:pla). (Attachments: # 1 Text of Proposed Order)(Utanski, Jordan) (Entered: 09/29/2023) |
| 10/02/2023 | 56 | STATUS REPORT *Joint Discovery Status Report* by National Christmas Products, Inc (Utanski, Jordan) (Entered: 10/02/2023) |
| 10/02/2023 | 57 | Order Requiring Expedited Response re 55 Plaintiff's MOTION for Extension of Time of Discovery Cutoff Deadline by National Christmas Products, Inc. Defendant shall file an expedited response to the Motion on or before October 6, 2023. Plaintiff may then file a reply on or before October 10, 2023. Signed by Judge William P. Dimitrouleas on 10/2/2023. *See attached document for full details.* (rbe) (Entered: 10/02/2023) |
| 10/02/2023 | 58 | PAPERLESS ORDER. THIS CAUSE comes before the Court following the parties' submission of a Joint Status Report (JSR), DE 56 , in anticipation of a discovery hearing scheduled for October 4, 2023 [DE 54]. The JSR lists 24 separate disputes between the parties. For 22 out of the 24 disputes, Defendant claims the parties have not conferred on |

**App. 012**

the dispute, which begs the question of what the parties have actually conferred about. The parties' respective positions on many of these disputes (particularly regarding whether certain produced spreadsheets do or do not contain communications that Defendant represented it would produce), further suggest that the parties have not adequately conferred. Indeed, it is unclear from the parties' email requesting a discovery hearing whether they have engaged in any substantive conferral about most of the issues mentioned in the JSR since July 2023 (as opposed to only conferring regarding an extension of the discovery deadline). Given these concerns regarding the adequacy of the parties' conferral, it is hereby **ORDERED** that the parties shall confer, **for at least 1 hour,** by telephone, video conference, or in person, as to each and every dispute listed in the JSR prior to the hearing scheduled for October 4, 2023, at 2pm. Signed by Magistrate Judge Jared M. Strauss on 10/2/2023. (cer) (Entered: 10/02/2023)

| 10/03/2023 | [59](#) | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Joanna R. Cohen. Filing Fee $ 200.00 Receipt # AFLSDC-16966799 by National Christmas Products, Inc. Responses due by 10/17/2023 (Attachments: # [1](#) Certification of Joanna R. Cohen, Esq., # [2](#) Text of Proposed Order) (Utanski, Jordan) (Entered: 10/03/2023) |
| 10/03/2023 | [60](#) | RESPONSE to Motion re [55](#) Plaintiff's MOTION for Extension of Time of Discovery Cutoff Deadline filed by OJ Commerce, LLC. Replies due by 10/10/2023. (Hecht, Shlomo) (Entered: 10/03/2023) |
| 10/04/2023 | [61](#) | Order Granting [59](#) Motion To Appear Pro Hac Vice, Consent To Designation, And Request To Electronically Receive Notices Of Electronic Filing. Joanna R. Cohen, Esq. may appear and participate in this action on behalf of Plaintiff. Signed by Judge William P. Dimitrouleas on 10/4/2023. *See attached document for full details.* (rbe) (Entered: 10/04/2023) |
| 10/04/2023 | 62 | *Ore Tenus* MOTION to Compel and MOTION for Protective Order by National Christmas Products, Inc. (made at 10/04/2023 discovery hearing). (cer) (Entered: 10/04/2023) |
| 10/04/2023 | 63 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Jared M. Strauss: Discovery Hearing held on 10/4/2023. Attorney Appearance(s): Jordan David Utanski, Joanna R. Cohen, Aldonsa Janjigian, Anthony Galano, III, Aaron W. Davis, (Digital Zoom Recorded) (cer) (Entered: 10/04/2023) |
| 10/04/2023 | [64](#) | ORDER granting in part and denying in part 62 *Ore Tenus* Motion to Compel; denying 62 *Ore Tenus* Motion for Protective Order. Signed by Magistrate Judge Jared M. Strauss on 10/4/2023. *See attached document for full details.* (cer) (Entered: 10/04/2023) |
| 10/10/2023 | [65](#) | Plaintiff's REPLY to Response to Motion re [55](#) Plaintiff's MOTION for Extension of Time of Discovery Cutoff Deadline filed by National Christmas Products, Inc. (Johnson, Kyle) (Entered: 10/10/2023) |
| 10/11/2023 | [66](#) | ORDER GRANTING IN PART [55](#) MOTION FOR EXTENSION OF TIME. Discovery Cutoff- Monday, November 13, 2023. Substantive Pretrial Motions- Monday, December 11, 2023. All other aspects of the Court's prior Scheduling Order shall continue to be effective. Further extensions shall not be expected absent emergency. Signed by Judge William P. Dimitrouleas on 10/11/2023. *See attached document for full details.* (rbe) (Entered: 10/11/2023) |
| 10/17/2023 | 67 | Request for discovery hearing received from OJ Commerce, LLC via email on 10/16/2023. (emd) (Entered: 10/17/2023) |
| 10/17/2023 | 68 | PAPERLESS ORDER Setting Discovery Hearing via Zoom; granting request for discovery hearing (DE 67). Defendant has requested a discovery hearing to address a |

| | | |
|---|---|---|
| | | dispute regarding alleged deficiencies with Plaintiff's production of documents. Having considered Defendant's request, the Court ORDERS the parties to appear, through counsel, for a discovery hearing (via Zoom) at **4:00 PM on 10/19/2023** before Magistrate Judge Jared M. Strauss. Counsel should join the Zoom session by 3:50 PM using the Meeting ID (161 369 9248) and Passcode (0194). Signed by Magistrate Judge Jared M. Strauss on 10/17/2023. (emd) (Entered: 10/17/2023) |
| 10/17/2023 | 69 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for John B. Horgan. Filing Fee $ 200.00 Receipt # AFLSDC-16999276 by National Christmas Products, Inc. Responses due by 10/31/2023 (Attachments: # 1 Certification of John B. Horgan, Esq., # 2 Text of Proposed Order) (Utanski, Jordan) (Entered: 10/17/2023) |
| 10/17/2023 | 70 | STATUS REPORT *Discovery* by OJ Commerce, LLC (Hecht, Shlomo) (Entered: 10/17/2023) |
| 10/18/2023 | 71 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE, CONSENT TO DESIGNATION, AND REQUEST TO ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING, granting 69 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney John B. Horgan, Esq.. Signed by Judge William P. Dimitrouleas on 10/18/2023. *See attached document for full details.* (mee) (Entered: 10/18/2023) |
| 10/19/2023 | 72 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Jared M. Strauss: Discovery Hearing held on 10/19/2023. Attorney Appearance(s): Joanna R. Cohen, John B. Horgan, Kyle Andrew Johnson, Aaron W. Davis, (Digital Zoom Recorded) (cer) (Entered: 10/19/2023) |
| 10/20/2023 | 73 | *Ore Tenus* MOTION to Compel by OJ Commerce, LLC (made at 10/19/2023 discovery hearing). (cer) (Entered: 10/20/2023) |
| 10/20/2023 | 74 | ORDER granting in part and denying in part 73 *Ore Tenus* Motion to Compel. Signed by Magistrate Judge Jared M. Strauss on 10/20/2023. *See attached document for full details.* (cer) (Entered: 10/20/2023) |
| 10/23/2023 | 75 | Second MOTION for Extension of Time of Discovery Cutoff Deadline by National Christmas Products, Inc. (Johnson, Kyle) (Entered: 10/23/2023) |
| 10/24/2023 | 76 | RESPONSE in Opposition re 75 Second MOTION for Extension of Time of Discovery Cutoff Deadline filed by OJ Commerce, LLC. Replies due by 10/31/2023. (Hecht, Shlomo) (Entered: 10/24/2023) |
| 10/24/2023 | 77 | ORDER REQUIRING EXPEDITED REPLY re 75 Second MOTION for Extension of Time of Discovery Cutoff Deadline by National Christmas Products, Inc., 76 RESPONSE in Opposition. Accordingly, it is hereby ORDERED AND ADJUDGED that Plaintiff shall file a Reply on or before October 27, 2023, addressing each of the arguments made in Defendants Response DE 76 . Signed by Judge William P. Dimitrouleas on 10/24/2023. *See attached document for full details.* (rbe) (Entered: 10/24/2023) |
| 10/26/2023 | 78 | Plaintiff's REPLY to Response to Motion re 75 Second MOTION for Extension of Time of Discovery Cutoff Deadline filed by National Christmas Products, Inc. (Johnson, Kyle) (Entered: 10/26/2023) |
| 10/26/2023 | 79 | MOTION for Leave to File *SUR-REPLY IN RESPONSE TO PLAINTIFFS REPLY TO SECOND MOTION FOR EXTENSION OF TIME TO EXTEND DISCOVERY CUTOFF* by OJ Commerce, LLC. (Attachments: # 1 Exhibit A - Sur-reply)(Hecht, Shlomo) (Entered: 10/26/2023) |

| 10/27/2023 | 80 | ORDER GRANTING SECOND MOTION FOR EXTENSION OF TIME, granting 75 Motion for Extension of Time of Discovery Cutoff Deadline ; denying as moot 79 Motion for Leave to File ( Motions due by 1/10/2024., Calendar Call set for 4/5/2024 10:00 AM in Fort Lauderdale Division before Judge William P. Dimitrouleas., Jury Trial set for 4/8/2024 in Fort Lauderdale Division before Judge William P. Dimitrouleas.). Discovery due by 12/13/2023. Signed by Judge William P. Dimitrouleas on 10/27/2023. *See attached document for full details*. (mee) (Entered: 10/30/2023) |
|---|---|---|
| 10/30/2023 | 81 | Request for discovery hearing received from OJ Commerce, LLC via email on 10/30/2023. (cer) (Entered: 10/30/2023) |
| 10/30/2023 | 82 | PAPERLESS ORDER Setting Discovery Hearing via Zoom; granting request for discovery hearing (*see* DE 81 ). Defendant has requested a discovery hearing to address disputes regarding document production (*see* DE 81 ). Having considered Defendant's request, the Court ORDERS the parties to appear, through counsel, for a discovery hearing (via Zoom) at **3:00 PM on 11/03/2023** before Magistrate Judge Jared M. Strauss. Counsel should join the Zoom session by 2:50 PM using the Meeting ID (160 168 1246) and Passcode (1103). By **5:00 P.M. on 11/01/2023,** the parties shall file a Joint Discovery Status Report, as described in section II.D of DE 36 Discovery Procedures Order. The parties shall attach representative samples of the manual write-ups that are the subject of this dispute. Each party may choose up to two exemplars to submit. As set forth therein, a courtesy copy of the Joint Status Report must also be emailed to chambers in Word format. Signed by Magistrate Judge Jared M. Strauss on 10/30/2023. (cer) (Entered: 10/30/2023) |
| 10/30/2023 | | Set/Reset Deadlines/Hearings Status Report due by 11/1/2023. Discovery Hearing set for 11/3/2023 03:00 PM before Magistrate Judge Jared M. Strauss (per DE 82). (cer) (Entered: 10/30/2023) |
| 11/01/2023 | 83 | STATUS REPORT *Joint Discvoery Report* by OJ Commerce, LLC (Attachments: # 1 Exhibit A - Examples)(Hecht, Shlomo) (Entered: 11/01/2023) |
| 11/01/2023 | 84 | STATUS REPORT *Joint Discovery Status Report* by National Christmas Products, Inc (Attachments: # 1 Exhibit Sample, # 2 Exhibit Contract)(Johnson, Kyle) (Entered: 11/01/2023) |
| 11/03/2023 | 85 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Jared M. Strauss: Discovery Hearing held on 11/3/2023. Attorney Appearance(s): Joanna R. Cohen, John B. Horgan, Kyle Andrew Johnson, Aaron W. Davis, (Digital Zoom Recorded) (cer) (Entered: 11/03/2023) |
| 11/03/2023 | 86 | *Ore Tenus* MOTION to Compel by OJ Commerce, LLC (made at 11/03/2023 discovery hearing). (cer) (Entered: 11/03/2023) |
| 11/03/2023 | 87 | *Ore Tenus* MOTION to Compel by National Christmas Products, Inc. (made at 11/03/2023 discovery hearing). (cer) (Entered: 11/03/2023) |
| 11/03/2023 | 88 | ORDER granting in part and denying in part 86 Defendant's *Ore Tenus* Motion to Compel; granting in part and denying in part 87 Plaintiff's *Ore Tenus* Motion to Compel. Signed by Magistrate Judge Jared M. Strauss on 11/3/2023. *See attached document for full details*. (cer) (Entered: 11/03/2023) |
| 11/06/2023 | 89 | EXPEDITED MOTION FOR RECONSIDERATION OF THE ORDER GRANTING SECOND MOTION FOR EXTENSION OF TIME re 80 Order on Motion for Extension of Time of Discovery Cutoff Deadline,,, Order on Motion for Leave to File,, by OJ Commerce, LLC. (Attachments: # 1 Exhibit A - RFPs, # 2 Exhibit B - Agreement)(Hecht, Shlomo) (Entered: 11/06/2023) |

| 11/06/2023 | 90 | ORDER DENYING 89 MOTION FOR RECONSIDERATION. Signed by Judge William P. Dimitrouleas on 11/6/2023. *See attached document for full details.* (rbe) (Entered: 11/07/2023) |
|---|---|---|
| 01/04/2024 | 91 | Plaintiff's MOTION to Dismiss for Lack of Jurisdiction 44 Counterclaim, 1 Complaint, by National Christmas Products, Inc. Responses due by 1/18/2024 (Johnson, Kyle) (Entered: 01/04/2024) |
| 01/04/2024 | 92 | ORDER DENYING MOTION WITHOUT PREJUDICE. Accordingly, it is ORDERED AND ADJUDGED that the Motion DE 91 is hereby DENIED WITHOUT PREJUDICE to file a motion that complies with the requirements of S.D. Fla. L.R. 7.1(a)(3), which requires the moving party to certify that it has conferred, or describes a reasonable effort to confer, with the parties affected in a good faith effort to resolve the dispute. Signed by Judge William P. Dimitrouleas on 1/4/2024. *See attached document for full details.* (rbe) (Entered: 01/04/2024) |
| 01/08/2024 | 93 | EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION by OJ Commerce, LLC. (Attachments: # 1 Exhibit A - Depo Transcript)(Hecht, Shlomo) (Entered: 01/08/2024) |
| 01/08/2024 | 94 | ORDER ON EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION. Accordingly, it is hereby ORDERED AND ADJUDGED that the Motion DE 93 is hereby DENIED without prejudice to renew if Plaintiff refiles its Motion to Dismiss for lack of subject matter jurisdiction. Signed by Judge William P. Dimitrouleas on 1/8/2024. *See attached document for full details.* (rbe) (Entered: 01/09/2024) |
| 01/09/2024 | 95 | Plaintiff's MOTION to Dismiss for Lack of Jurisdiction 44 Counterclaim, 1 Complaint, by National Christmas Products, Inc. Responses due by 1/23/2024 (Attachments: # 1 Exhibit Agreement and Plan of Merger, # 2 Exhibit LLC Agreement, # 3 Exhibit Structure Chart, # 4 Sun Capital Florida Application)(Johnson, Kyle) (Entered: 01/09/2024) |
| 01/09/2024 | 96 | Renewed EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION by OJ Commerce, LLC. (Attachments: # 1 Exhibit A - Depo Transcript)(Hecht, Shlomo) (Entered: 01/09/2024) |
| 01/10/2024 | 97 | ORDER STAYING ACTION PENDING RESOLUTION OF SUBJECT MATTER JURISDICTION; REFERRING MOTIONS TO MAGISTRATE JUDGE. REFERRING 95 Plaintiff's MOTION to Dismiss for Lack of Jurisdiction 44 Counterclaim, 1 Complaint, filed by National Christmas Products, Inc. Motions referred to Judge Jared M. Strauss. Signed by Judge William P. Dimitrouleas on 1/10/2024. *See attached document for full details.* (mee) (Entered: 01/10/2024) |
| 01/10/2024 | 98 | ORDER, granting in part 96 Defendants Motion for Expedited Discovery on Subject Matter Jurisdiction. Signed by Judge William P. Dimitrouleas on 1/10/2024. *See attached document for full details.* (mee) (Entered: 01/10/2024) |
| 01/10/2024 | 99 | PAPERLESS ORDER requiring Plaintiff to respond to Defendant's 96 Renewed Expedited Motion to Amend the Scheduling Order and for Expedited Discovery on Subject Matter Jurisdiction by **1/16/2024.** Given that the District Court has stayed all remaining deadlines in the case pending resolution of both Plaintiff's 95 and Defendant's 96 motions, Plaintiff should direct its response toward the scope and timeline of discovery that Defendant proposed. Signed by Magistrate Judge Jared M. Strauss on 1/10/2024. (cer) (Entered: 01/10/2024) |

| 01/16/2024 | 100 | RESPONSE in Opposition re 96 Renewed EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION filed by National Christmas Products, Inc. Replies due by 1/23/2024. (Attachments: # 1 Exhibit Agreement and Plan of Merger, # 2 Exhibit Operating Agreement, # 3 Exhibit 2nd LLC Agreement, # 4 Exhibit LLC Agreement, # 5 Exhibit Limited Partnership Agreement, # 6 Exhibit Sunbiz Filing, # 7 Exhibit Sunbiz Filing, # 8 Exhibit Subscription Agreement, # 9 Exhibit Drivers License)(Johnson, Kyle) (Entered: 01/16/2024) |
|---|---|---|
| 01/18/2024 | 101 | REPLY to Response to Motion re 96 Renewed EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION filed by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 01/18/2024) |
| 01/18/2024 | 102 | PAPERLESS ORDER Setting Status Conference via Zoom. Having reviewed Defendant's 96 Renewed Expedited Motion to Amend the Scheduling Order and for Expedited Discovery on Subject Matter Jurisdiction, along with the 100 Response and 101 Reply thereto, the Court ORDERS the parties to appear, through counsel, for a Status Conference (via Zoom) at **10:00 AM on 1/22/2024** before Magistrate Judge Jared M. Strauss. Counsel should join the Zoom session by 9:50 AM using the Meeting ID (160 025 7540) and Passcode (0122). Signed by Magistrate Judge Jared M. Strauss on 1/18/2024. (cer) (Entered: 01/18/2024) |
| 01/22/2024 | 103 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Jared M. Strauss: Status Conference held on 1/22/2024. Attorney Appearance(s): Jordan David Utanski, Joanna R. Cohen, Aldonsa Janjigian, John B. Horgan, Aaron W. Davis, (Digital Zoom Recorded) (cer) (Entered: 01/22/2024) |
| 01/22/2024 | 104 | *Ore Tenus* MOTION for Extension of Time to File a Response to Plaintiff's 95 Motion to Dismiss by OJ Commerce, LLC (made at 1/22/2024 hearing). (cer) (Entered: 01/22/2024) |
| 01/22/2024 | 105 | PAPERLESS ORDER **GRANTING** Defendant's 104 *Ore Tenus* Motion for an Extension of Time to File a Response to Plaintiff's 95 Motion to Dismiss. Defendant's Response deadline is hereby stayed until further order of the Court. Signed by Magistrate Judge Jared M. Strauss on 1/22/2024. (cer) (Entered: 01/22/2024) |
| 01/25/2024 | 106 | ORDER **granting-in-part** Defendant's 96 Motion for Expedited Discovery on Subject Matter Jurisdiction. Signed by Magistrate Judge Jared M. Strauss on 1/25/2024. *See attached document for full details*. (cer) (Entered: 01/25/2024) |
| 02/14/2024 | 107 | Request for discovery hearing received from OJ Commerce, LLC via email on 02/13/2024. (cer) (Entered: 02/14/2024) |
| 02/14/2024 | 108 | PAPERLESS ORDER Setting Discovery Hearing; granting request for discovery hearing (*see* DE 107 ). Defendant has requested a discovery hearing to address a dispute regarding "(a) Plaintiff's document production in response to Defendant's document requests, including Plaintiff's extensive redaction of that production, (b) Plaintiff's objections and answers to Defendant's interrogatories, and (c) depositions, all on the issue of subject matter jurisdiction." (*see* DE 107 ). Having considered Defendant's request, the Court ORDERS the parties to appear, through counsel, for a discovery hearing at **3:00 PM on 2/22/2024** before Magistrate Judge Jared M. Strauss in Courtroom 110 at the United States Courthouse, 299 E. Broward Boulevard, Fort Lauderdale, Florida 33301. By **2/16/2024,** the parties shall file a Joint Discovery Status Report, as described in section II.D of DE 36 Discovery Procedures Order. As set forth therein, a courtesy copy must also be emailed to chambers in Word format. Signed by Magistrate Judge Jared M. Strauss on 2/14/2024. (cer) (Entered: 02/14/2024) |

| 02/16/2024 | 109 | STATUS REPORT *Joint Discovery* by OJ Commerce, LLC (Attachments: # 1 Exhibit A - Confidentiality Agreement)(Hecht, Shlomo) (Entered: 02/16/2024) |
|---|---|---|
| 02/22/2024 | 110 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Jared M. Strauss: Discovery Hearing held on 2/22/2024. Attorney Appearance(s): Jordan David Utanski, John B. Horgan, Aaron W. Davis, (Digital DAR 15:10:03-16:53:51 (COURTROOM 110) (cer) Modified on 2/23/2024 (at). (Entered: 02/22/2024) |
| 02/23/2024 | 111 | Defendant's *Ore Tenus* Motion to Compel Supplemental Responses to is Interrogatories, Defendant's *Ore Tenus Motion* to Compel Production, and Defendant's *Ore Tenus Motion* to Compel Depositions. (made at 2/22/2024 hearing). (cer) (Entered: 02/23/2024) |
| 02/23/2024 | 112 | ORDER **granting in part and denying in part** 111 Defendant's *Ore Tenus* Motion to Compel Responses to Interrogatories; **denying without prejudice** 111 *Ore Tenus* Motion to Compel Depositions; **denying** 111 *Ore Tenus* Motion to Compel to Production. Signed by Magistrate Judge Jared M. Strauss on 2/23/2024. *See attached document for full details*. (cer) (Entered: 02/23/2024) |
| 03/01/2024 | 114 | TRANSCRIPT of Discovery Hearing held on 2/22/2024 before Magistrate Judge Jared M. Strauss, 1-82 pages, Court Reporter: Joanne Mancari, jemancari@gmail.com. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/22/2024. Redacted Transcript Deadline set for 4/1/2024. Release of Transcript Restriction set for 5/30/2024. (jgo) (Entered: 03/08/2024) |
| 03/08/2024 | 113 | OBJECTION of Magistrate Judge 112 Order on Motion to Compel Responses to Interrogatories,, Order on Motion to Compel Discovery,,,, Order on Motion to Compel Responses to Requests for Production, to District Court (Attachments: # 1 Transcripts Ex. A - 2.22.2024 Hearing)(Hecht, Shlomo) (Entered: 03/08/2024) |
| 03/11/2024 | 115 | Plaintiff's MOTION to Quash *Mark Hajduch Subpoena* by National Christmas Products, Inc. (Attachments: # 1 Exhibit Property Records, # 2 Exhibit Utility Bills, # 3 Exhibit FL Vehicle Registration, # 4 Exhibit Insurance Bill, # 5 Exhibit Employment Letter, # 6 Exhibit Voter Registration, # 7 Exhibit Second Action Complaint, # 8 Exhibit Proposed Joint Motion)(Johnson, Kyle) (Entered: 03/11/2024) |
| 03/11/2024 | 116 | PAPERLESS ORDER directing Defendant, OJ Commerce, LLC, to file an expedited Response to Plaintiff's 115 Motion to Quash the Subpoena of Mark Hajduch. Defendant shall file its Response on or before **Friday, 3/15/2024, or 24 hours prior to the deposition, whichever is earlier.** Signed by Magistrate Judge Jared M. Strauss on 3/11/2024. (cer) (Entered: 03/11/2024) |
| 03/11/2024 | 117 | CERTIFICATE OF SERVICE by OJ Commerce, LLC *Subpoena for Deposition to Mark Hadjuch* (Hecht, Shlomo) (Entered: 03/11/2024) |
| 03/11/2024 | 118 | RESPONSE in Opposition re 115 Plaintiff's MOTION to Quash *Mark Hajduch Subpoena* filed by OJ Commerce, LLC. Replies due by 3/18/2024. (Attachments: # 1 Exhibit A - Emails, # 2 Exhibit B - Depo Notice)(Hecht, Shlomo) (Entered: 03/11/2024) |
| 03/12/2024 | 119 | PAPERLESS ORDER denying 115 Motion to Quash. The Court does not find good cause to quash the subpoena under Federal Rule of Civil Procedure 45 nor to grant a protective order under Rule 26. The Court has previously found that the scheduled deposition is proportional to the needs of the case. The Court, however, reminds the parties that the scope of the deposition is strictly limited to determining the deponent's domicile as relevant to determining the Court's subject matter jurisdiction. Signed by Magistrate Judge Jared M. Strauss on 3/12/2024. (JMS) (Entered: 03/12/2024) |

**App. 018**

| 03/13/2024 | [120](#) | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Martin Shell. Filing Fee $ 200.00 Receipt # AFLSDC-17365748 by Mark Hajduch. Attorney Michael Paul Silver added to party Mark Hajduch(pty:ip). Responses due by 3/27/2024. (Silver, Michael) (Entered: 03/13/2024) |
|---|---|---|
| 03/14/2024 | [121](#) | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE, CONSENT TO DESIGNATION, AND REQUEST TO ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING, granting [120](#) Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Martin Shell, Esq. Signed by Judge William P. Dimitrouleas on 3/14/2024. *See attached document for full details*. (mee) (Entered: 03/14/2024) |
| 03/20/2024 | [122](#) | EXPEDITED MOTION FOR CLARIFICATION OF THE DISCOVERY ORDER DATED JANUARY 25, 2024 AND FOR EXTENSION OF THE JURISDICTIONAL DISCOVERY DEADLINE re [106](#) Order on Expedited Motion by OJ Commerce, LLC. (Attachments: # [1](#) Exhibit A - Transcript)(Hecht, Shlomo) (Entered: 03/20/2024) |
| 03/21/2024 | 123 | PAPERLESS ORDER directing Plaintiff to file an expedited response, of no more than five pages, by **Monday, March 25, 2024,** to Defendant's [122](#) Expedited Motion. Signed by Magistrate Judge Jared M. Strauss on 3/21/2024. (cer) (Entered: 03/21/2024) |
| 03/22/2024 | [124](#) | RESPONSE in Opposition re [113](#) OBJECTION of Magistrate Judge [112](#) Order on Motion to Compel Responses to Interrogatories,, Order on Motion to Compel Discovery,,,,, Order on Motion to Compel Responses to Requests for Production, to District Court filed by National Christmas Products, Inc. Replies due by 3/29/2024. (Johnson, Kyle) (Entered: 03/22/2024) |
| 03/25/2024 | [125](#) | RESPONSE in Opposition re [122](#) EXPEDITED MOTION FOR CLARIFICATION OF THE DISCOVERY ORDER DATED JANUARY 25, 2024 AND FOR EXTENSION OF THE JURISDICTIONAL DISCOVERY DEADLINE re [106](#) Order on Expedited Motion filed by National Christmas Products, Inc. Replies due by 4/1/2024. (Johnson, Kyle) (Entered: 03/25/2024) |
| 03/26/2024 | 126 | PAPERLESS ORDER directing Defendant to file a reply, of no more than three pages, by **3/28/2024** to Plaintiff's [125](#) Response. Signed by Magistrate Judge Jared M. Strauss on 3/26/2024. (cer) (Entered: 03/26/2024) |
| 03/28/2024 | [127](#) | REPLY to Response to Motion re [122](#) EXPEDITED MOTION FOR CLARIFICATION OF THE DISCOVERY ORDER DATED JANUARY 25, 2024 AND FOR EXTENSION OF THE JURISDICTIONAL DISCOVERY DEADLINE re [106](#) Order on Expedited Motion filed by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 03/28/2024) |
| 03/29/2024 | [128](#) | ORDER denying [122](#) Expedited Motion for Clarification and Extension of Discovery Deadline. Signed by Magistrate Judge Jared M. Strauss on 3/29/2024. *See attached document for full details*. (JMS) (Entered: 03/29/2024) |
| 04/01/2024 | [129](#) | ORDER DENYING APPEAL OF MAGISTRATE ORDER, denying [113](#) Appeal/Objection of Magistrate Judge Order to District Court. Signed by Judge William P. Dimitrouleas on 4/1/2024. *See attached document for full details*. (mee) (Entered: 04/01/2024) |
| 04/02/2024 | [130](#) | RESPONSE in Opposition re [95](#) Plaintiff's MOTION to Dismiss for Lack of Jurisdiction [44](#) Counterclaim, [1](#) Complaint, filed by OJ Commerce, LLC. Replies due by 4/9/2024. (Attachments: # [1](#) Affidavit Weiss, # [2](#) Exhibit A - Annaul Report)(Hecht, Shlomo) (Entered: 04/02/2024) |
| 04/09/2024 | [131](#) | Plaintiff's REPLY to Response to Motion re [95](#) Plaintiff's MOTION to Dismiss for Lack of Jurisdiction [44](#) Counterclaim, [1](#) Complaint, filed by National Christmas Products, Inc. |

# App. 019

| | | (Utanski, Jordan) (Entered: 04/09/2024) |
|---|---|---|
| 04/11/2024 | [132](#) | MOTION for Leave to File *Sur-Reply to Plaintiff's Motion to Dismiss* by OJ Commerce, LLC. (Attachments: # [1](#) Exhibit A - Proposed Sur-reply)(Hecht, Shlomo) (Entered: 04/11/2024) |
| 04/11/2024 | [133](#) | RESPONSE in Opposition re [132](#) MOTION for Leave to File *Sur-Reply to Plaintiff's Motion to Dismiss* filed by National Christmas Products, Inc. Replies due by 4/18/2024. (Johnson, Kyle) (Entered: 04/11/2024) |
| 04/11/2024 | [134](#) | ORDER **denying** Defendant's [132](#) Motion for Leave to File a Sur-Reply to Plaintiff's Motion to Dismiss. Signed by Magistrate Judge Jared M. Strauss on 4/11/2024. *See attached document for full details*. (cer) (Entered: 04/11/2024) |
| 05/07/2024 | [135](#) | REPORT AND RECOMMENDATION recommending **granting** Plaintiff's [95](#) Motion to Dismiss for Lack of Subject Matter Jurisdiction. Objections to R&R due by 5/21/2024 Signed by Magistrate Judge Jared M. Strauss on 5/7/2024. *See attached document for full details*. (cer) (Entered: 05/07/2024) |
| 05/21/2024 | [136](#) | OBJECTIONS to [135](#) Report and Recommendations *Granting Plaintiffs Motion to Dismiss for Lack of Subject Matter Jurisdiction* by OJ Commerce, LLC. (Hecht, Shlomo) (Entered: 05/21/2024) |
| 06/04/2024 | [137](#) | RESPONSE in Opposition re [135](#) REPORT AND RECOMMENDATIONS re [95](#) Plaintiff's MOTION to Dismiss for Lack of Jurisdiction [44](#) Counterclaim, [1](#) Complaint, filed by National Christmas Products, Inc *to Defendant's Objection* filed by National Christmas Products, Inc. Replies due by 6/11/2024. (Attachments: # [1](#) Exhibit 2020 Email to Defendant, # [2](#) Exhibit Public Merger Documents)(Johnson, Kyle) (Entered: 06/04/2024) |
| 06/05/2024 | [138](#) | ORDER APPROVING REPORT OF MAGISTRATE JUDGE; GRANTING MOTION TO DISMISS; DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION, granting [95](#) Motion to Dismiss for Lack of Jurisdiction; adopting Report and Recommendations re [135](#) Report and Recommendations on [95](#) Motion to Dismiss/Lack of Jurisdiction, filed by National Christmas Products, Inc, [135](#) Report and Recommendations,. Certificate of Appealability: No Ruling. Closing Case. Signed by Judge William P. Dimitrouleas on 6/5/2024. *See attached document for full details*. (mee) (Entered: 06/06/2024) |
| 07/08/2024 | [139](#) | MOTION for Sanctions *against Plaintiff and its Counsel* by OJ Commerce, LLC(a Florida Limited Liability Company). (Attachments: # [1](#) Exhibit A - Proposed Stipulation, # [2](#) Exhibit B - Redlined Stipulation)(Hecht, Shlomo) (Entered: 07/08/2024) |
| 07/09/2024 | [140](#) | ORDER REFERRING [139](#) MOTION for Sanctions *against Plaintiff and its Counsel* filed by OJ Commerce, LLC. Motions referred to Judge Jared M. Strauss. Signed by Judge William P. Dimitrouleas on 7/9/2024. *See attached document for full details*. (ls) (Entered: 07/09/2024) |
| 07/22/2024 | [141](#) | RESPONSE in Opposition re [139](#) MOTION for Sanctions *against Plaintiff and its Counsel* filed by National Christmas Products, Inc. Replies due by 7/29/2024. (Attachments: # [1](#) Exhibit 1 - Declaration of John B. Horgan)(Utanski, Jordan) (Entered: 07/22/2024) |
| 07/28/2024 | [142](#) | REPLY to Response to Motion re [139](#) MOTION for Sanctions *against Plaintiff and its Counsel* filed by OJ Commerce, LLC. (Attachments: # [1](#) Exhibit C, # [2](#) Exhibit D, # [3](#) Exhibit E)(Hecht, Shlomo) (Entered: 07/28/2024) |
| 10/08/2024 | [143](#) | REPORT AND RECOMMENDATION that Defendant's [139](#) Motion for Sanctions Against Plaintiff and its Counsel be denied. Objections to R&R due by 10/22/2024 Signed |

# App. 020

| | | |
|---|---|---|
| | | by Magistrate Judge Jared M. Strauss on 10/8/2024. *See attached document for full details*. (cer) (Entered: 10/08/2024) |
| 10/22/2024 | 144 | OBJECTIONS to 143 Report and Recommendations by OJ Commerce, LLC. (Attachments: # 1 Exhibit A - Purc. Power Answer ECF 44)(Hecht, Shlomo) (Entered: 10/22/2024) |
| 11/05/2024 | 145 | RESPONSE TO OBJECTION to 143 Report and Recommendations by National Christmas Products, Inc(a New Jersey Corporation). (Johnson, Kyle) (Entered: 11/05/2024) |
| 12/09/2024 | 146 | ORDER APPROVING REPORT AND RECOMMENDATIONS adopting Report and Recommendations re 143 Report and Recommendations on 139 Motion for Sanctions filed by OJ Commerce, LLC; Overruling 144 Objections to Report and Recommendations; denying 139 Motion for Sanctions. Signed by Judge William P. Dimitrouleas on 12/9/2024. *See attached document for full details*. (ls) (Entered: 12/09/2024) |
| 01/08/2025 | 147 | Notice of Appeal as to 146 Order Adopting Report and Recommendations,, Order on Motion for Sanctions,, Order on Report and Recommendations, by OJ Commerce, LLC. Filing fee $ 605.00 receipt number AFLSDC-18103024. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Hecht, Shlomo) (Entered: 01/08/2025) |
| 01/09/2025 | | Transmission of Notice of Appeal, Order under appeal, and Docket Sheet to US Court of Appeals re 147 Notice of Appeal. Notice has been electronically mailed. (jgo) (Entered: 01/09/2025) |
| 01/13/2025 | 148 | Acknowledgment of Receipt of NOA from USCA re 147 Notice of Appeal, filed by OJ Commerce, LLC. Date received by USCA: 01/09/2025. USCA Case Number: 25-10089-H. (jgo) (Entered: 01/14/2025) |
| 01/27/2025 | 149 | TRANSCRIPT ORDER FORM filed by OJ Commerce, LLC re 147 Notice of Appeal,, filed by OJ Commerce, LLC. No Transcript Requested. (Hecht, Shlomo) (Entered: 01/27/2025) |
| 06/02/2025 | 150 | Pursuant to 11th Cir. R. 11-2 and 11th Cir. R. 11-3, the Clerk of the District Court for the Southern District of Florida certifies that the record is complete for purposes of this appeal re: 147 Notice of Appeal, Appeal No. 25-10089-HH. The entire record on appeal is available electronically. (jgo) (Entered: 06/02/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/03/2025 00:14:42 | | | |
| PACER Login: | shlomo.hecht | Client Code: | |
| Description: | Docket Report | Search Criteria: | 0:22-cv-60897-WPD |
| Billable Pages: | 18 | Cost: | 1.80 |

**UNITED STATES COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

NATIONAL CHRISTMAS
PRODUCTS, INC. D/B/A
NATIONAL TREE COMPANY,
a New Jersey Corporation

Plaintiff,

v.

OJ COMMERCE, LLC, a Florida
Limited Liability Company

Defendant.

_____/

## **COMPLAINT**

Plaintiff National Christmas Products, Inc. D/B/A National Tree Company ("Plaintiff" or "NTC") by and through its undersigned attorneys, sues Defendant, OJ Commerce, LLC ("Defendant" or "OJ Commerce") and alleges as follows:

## **INTRODUCTION**

1.      This is an action for money damages arising out of Defendant's failure to abide by the terms of an E-Commerce Vendor Agreement ("Agreement") and pay Plaintiff for the provision of certain goods and services, despite request for payment.

2.      For the past 60 years, NTC has been a leading importer and wholesaler of artificial Christmas trees, wreaths and garlands as well as holiday decorations and fiber optics products.

**App. 022**

3.      In or around August 15, 2017, NTC and OJ Commerce entered into an E-Commerce Vendor Agreement, under which NTC agreed to supply certain NTC approved products, and OJ Commerce agreed to sell those products on OJ Commerce's website.

4.      Although NTC has provided the agreed upon products, OJ Commerce has failed to remit payment for such products from December 2020 through October 2021.

5.      NTC is currently owed no less than $781,474.14.

## THE PARTIES

6.      Plaintiff National Christmas Products, Inc. D/B/A National Tree Company is an S corporation organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016.

7.      Defendant OJ Commerce, LLC is a limited liability company organized under the laws of the State of Florida with its principal place of business at 3076 North Commerce Parkway, Miramar, FL 33025.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) in that Plaintiff and Defendant are citizens of different states. The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

9.      Venue is proper in this District under the terms of the E-Commerce Vendor Agreement between the parties which states that the "venue and jurisdiction for the resolution of any such disputes shall be in the State or Federal courts located in the State of Florida, Broward County." Venue is also proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims in this action occurred within this judicial district.

**App. 023**

## **FACTUAL ALLEGATIONS**

**The Agreement**

10.     On or around August 15, 2017, National Christmas Products, Inc. D/B/A National Tree Company and OJ Commerce, LLC entered into an E-Commerce Vendor Agreement. *See* Exhibit No.1.

11.     Pursuant to the Agreement, OJ Commerce, as reseller, would promote and display NTC's approved products for sale on OJ Commerce's website, and NTC, as vendor, would supply the products to consumers.

12.     Pursuant to Section 2.7 of the Agreement, NTC agreed to generate a consolidated invoice for all services, including any applicable shipping and administrative fees.

13.     Pursuant to Section 2.7 of the Agreement, OJ Commerce agreed to (i) "provide remittance detailing the invoices to be paid for the week or month," (ii) pay NTC for Services rendered in the amounts set forth after the receipt of a correct invoice from NTC, and (iii) pay all undisputed invoice amounts within 30 days of the invoice date.

14.     Pursuant to Section 2.7.2 of the Agreement, any disputed invoice amounts would be documented in writing and forwarded to NTC within 30 days of invoice receipt and, within 30 days of receipt of any disputed amounts, NTC would respond to OJ Commerce's claim.

15.      NTC has supplied the agreed upon goods and services and submitted invoices to OJ Commerce for those goods and services from December 2020 through October 2021 under the terms of the Agreement.

16.     Pursuant to the Agreement, OJ Commerce is required to pay NTC for the goods and services provided from December 2020 through October 2021.

**The Invoices**

**App. 024**

17.     From December 2020 through October 2021, NTC sent OJ Commerce approximately twelve thousand four hundred fifty-seven (12,457) invoices.

18.     OJ Commerce has failed to make any payments for the aforementioned invoices, reflecting a total open balance of $781,474.14.

19.     In an e-mail dated June 4, 2021, that OJ Commerce sent to NTC, OJ Commerce admitted that it owed NTC $646,851.14 at a minimum.

**Demand for Payment**

20.     On August 16, 2021, NTC sent OJ Commerce an e-mail containing an account statement totaling $781,332.69. OJ Commerce never objected to this account statement.

21.     On or around March 14, 2022, NTC sent OJ Commerce a letter demanding payment for the outstanding invoices in the amount of $781,474.14, to be received no later than March 21, 2022. *See* Exhibit No. 2.

22.     OJ Commerce failed to make payment on or before March 21, 2022.

23.     To the present date, OJ Commerce has failed to remit any payment for the outstanding invoices.

## COUNT I
## (BREACH OF CONTRACT)

24.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23 as if fully set forth herein.

25.     The Agreement is a valid and binding contract.

26.     NTC has duly performed all of its obligations under the Agreement without having received any objections from OJ Commerce.

27.     OJ Commerce has breached the Agreement by refusing to remit payment for the outstanding balance due for the products in accordance with the terms of the Agreement.

**App. 025**

28.     By reason of the foregoing, NTC has suffered and will continue to suffer damages in an amount to be determined at trial, but in no event less than $781,474.14.

29.     By reason of the foregoing, Plaintiff is entitled to have judgment against Defendant, in an amount to be determined at trial, but presently estimated to equal $781,474.14, together with applicable interest and costs.

WHEREFORE,  Plaintiff demands judgment against Defendant for damages, plus pre-judgment interest and costs, and such other relief as this Court deems just and proper.

## COUNT II
## (ACCOUNT STATED)

30.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23 as if fully set forth herein.

31.     NTC periodically billed OJ Commerce in the regular course of their business together.

32.     NTC provided an account statement to OJ Commerce.

33.     OJ Commerce did not object to the amounts stated in the account statement within a reasonable period of time.

34.     Therefore, OJ Commerce assented to and/or agreed that the stated amounts were owed to NTC.

35.     NTC demanded payment from OJ Commerce, and OJ Commerce failed or otherwise refused to pay.

36.     OJ Commerce owes NTC $781,474.14, with interest, on the account.

37.     By reason of the foregoing, Plaintiff is entitled to have judgment against Defendant, in an amount to be determined at trial, but presently estimated to equal $781,474.14, together with applicable interest and costs.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, plus pre-judgment interest and costs, and such other relief as this Court deems just and proper.

## COUNT III
### (GOODS SOLD AND DELIVERED)

38.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23 as if fully set forth herein.

39.     The Agreement constitutes a sales contract under the laws of the State of Florida.

40.     The amount claimed by NTC, $781,474.14, represents the reasonable value of the goods and services that it provided to OJ Commerce under the Agreement.

41.     By reason of the foregoing, Plaintiff is entitled to have judgment against Defendant, in an amount to be determined at trial, but presently estimated to equal $781,474.14, together with applicable interest and costs.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, plus pre-judgment interest and costs, and such other relief as this Court deems just and proper.


Dated: May 12, 2022


                                        Respectfully submitted,

                                        Black Srebnick
                                        One Town Center, Suite 201
                                        Boca Raton, Florida 33486
                                        561-361-6800 Telephone
                                        561-361-0062 Fax

**App. 027**

/s/ *Kyle A. Johnson*
Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
Tel: 212-370-1300

Anthony Galano, III, Esq. (*motion for admission pro hac vice pending*)
AGalano@egsllp.com
Aldonsa Janjigian, Esq. (*motion for admission pro hac vice pending*)
AJanjigian@egsllp.com
*Counsel for Plaintiff, National Christmas Products, Inc. D/B/A National Tree Company*

**App. 028**



1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 370-1300
Facsimile: (212) 370-7889
www.egsllp.com

ANTHONY GALANO, III
e-mail: agalano@egsllp.com
Direct Facsimile: (212) 370-0804

March 14, 2022

**Via E-Mail**
Mark Gardner
Head of Merchandising & Vendor Management
OJ Commerce LLC
3076 N. Commerce Parkway
Miramar, FL 33025
mgardner@ojcommerce.com

Re:    **National Christmas Products, LLC v. OJ Commerce LLC**

Dear Mr. Gardner:

We have been retained by National Christmas Products, LLC d/b/a National Tree Company ("National Tree") and write with respect to the failure of OJ Commerce LLC ("OJ Commerce") to pay National Tree $781,474.14 in connection with OJ Commerce's purchase of various Christmas tree lights, wreaths and related products (collectively "Christmas Products") from National Tree. There is no dispute that National Tree manufactured the aforementioned products at the direct instance and request of OJ Commerce pursuant to various purchase orders in 2020-2021. As a result, the total due to National Tree from OJ for the Christmas Products is $781,474.14 as of October 13, 2021. *See* Exhibit 1.

National Tree sent OJ Commerce approximately twelve thousand four hundred fifty-seven (12,457) invoices between December 2020 and October 2021 that reflect a total open balance of $781, 474.14 (the "Invoices"). National Tree never received any rejection from OJ to the Invoices. By reason of the foregoing, National Tree has a clear and undisputed account stated claim against OJ Commerce for the Invoices.

Please be advised that if payment is not made in full in the amount of $781,474.14 within one week of the date of this letter, National Tree has instructed my firm to take whatever legal action is necessary to recover the outstanding amount, together with statutory interest and other applicable fees and costs, as well as applicable attorneys' fees.

This communication is submitted to you for settlement purposes only and without prejudice to, and National Tree reserves all of, its rights and remedies, both legal and equitable.

Please be guided accordingly.

Please contact me directly if you have any questions concerning this matter.

Very truly yours,

*/s/ Anthony Galano, III*
Anthony Galano, III, Esq.

cc:     OJ Commerce LLC
        1700 NW 64th Street
        Suite 460
        Fort Lauderdale, FL 33309

        Mr. Hari Krishnamurthy, Chief Financial Officer
        National Tree Company
        2 Commerce Drive
        Cranford, NJ 07016

**App. 030**

# Exhibit 1

Case 0:22-cv-60897-WPD   Document 1-4   Entered on FLSD Docket 05/12/2022   Page 4 of 4

A C C O U N T S   R E C E I V A B L E   A G I N G   R E P O R T

```
Aged As Of 03/14/2022        Customer Aging Range: 000000013490 Through 000000013490
Printed In Customer Number, Apply-To Number Order, Summary, Open Items Only
Minimum Balance Due: All
In Aging Period Or Older: All
Balance Forward Totals to Current Period Only
Document Types   I = Invoice   P = Payment   C = Cr Memo   D = Dr Memo   B = Balance Forward   F = Finance Charge
Notes:  Types I, B And F Are Aged By Their Due Date.  Types P, C And D Are Aged By Due Date Of The Document To Which They Apply.
        On Types I, B, C And D Amount-1 Is Sale Amt.  On Type P Amount-1 Is Cash Receipt Amt.  On Type F Amount-1 Is Fin Charge Amt.
        On Types I, C,and D Amount-2 Is Other Charges.  On Type P Amount-2 Is Discount And Allowance. (No Amount-2 For Types F & B).
```

| Cust-No<br>Bal-Mthd<br>Phone-No | Name<br>Contact<br>Terms | Slsman | Cllectr | Terr | Loc | Balance<br>Crdt-Lmt | ***** Aged Customer Balance *****<br>30 Days | 60 Days | 90 days | Over 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|
| 13490 | OJ Commerce, LLC | | | | | | | | | |
| Opn-Itm | Danielle Drysdale | | | | | | | | | |
| 954-519-2555 | Net 30 | HS | | | | 781,474.14 | .00 | | .00 | |
| | | | | | | | | .00 | | 781,474.14 |
| 1  Cust Printed | Grand Totals: | | | | | 781,474.14 | .00 | | .00 | |
| | | | | | | | | .00 | | 781,474.14 |
| | % Of Balance: | | | | | | .00 | | .00 | |
| | | | | | | | | .00 | | 100.00 |
| | Outstand B,D,I | | | | | 781,474.14 | .00 | | .00 | |
| | | | | | | | | .00 | | 781,474.14 |
| | Unapplied C,P | | | | | .00 | .00 | | .00 | |
| | | | | | | | | .00 | | .00 |
| | Finance Charges | | | | | .00 | .00 | | .00 | |
| | | | | | | | | .00 | | .00 |

**App. 032**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  22-CV-60897-WPD

NATIONAL CHRISTMAS
PRODUCTS, INC. d/b/a NATIONAL
TREE COMPANY, a New Jersey corporation,

        Plaintiff,

V.

OJ COMMERCE, LLC, a Florida Limited
Liability Company,

        Defendant.

_____/

## ORDER TO SHOW CAUSE REGARDING SUBJECT MATTER JURISDICTION

THIS CAUSE is before the Court *sua sponte.*

Because federal courts are courts of limited subject matter jurisdiction, this Court must

ascertain whether it has jurisdiction over a case or controversy. *See Cadet v. Bulger*, 377 F.3d

1173, 1179 (11th Cir. 2004).

Plaintiff NATIONAL CHRISTMAS PRODUCTS, INC. d/b/a NATIONAL TREE

COMPANY ("Plaintiff") filed a Complaint against Defendant OJ COMMERCE, LLC

("Defendant"). *See* [DE 1]. Plaintiff alleges that the Court has diversity jurisdiction over this

action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between

Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest

and costs. *See* Compl. ¶ 8.

When a case is founded upon diversity jurisdiction, 28 U.S.C. § 1332, and one or more of

the parties is a limited liability company, the citizenship of every member of the limited liability

company must be alleged. *See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*,

663 F.3d 1304 (11th Cir. 2011). Plaintiff alleges that this Court has diversity jurisdiction over

**App. 033**

this action pursuant to 28 U.S.C. § 1332, but Plaintiff fails to adequately allege the membership information for Defendant.

To cure these deficiencies, it is **ORDERED AND ADJUDGED** that on or before **May 19, 2022**, Plaintiff shall file an Addendum to its Complaint listing the citizenship of every member of any Party that is a limited liability company or any other form of unincorporated business or association. If a member of an LLC is itself an LLC, then Plaintiff must likewise allege the membership of the member LLC. Failure to submit the Addendum by this time prescribed may result in the dismissal of this action.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 12th day of May, 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
All counsel of record

**App. 034**

## UNITED STATES COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 0:22-cv-60897-WPD

NATIONAL CHRISTMAS
PRODUCTS, INC. D/B/A
NATIONAL TREE COMPANY,
a New Jersey Corporation

Plaintiff,

v.

OJ COMMERCE, LLC, a Florida
Limited Liability Company

Defendant.

_____/

### <u>ADDENDUM</u>

Plaintiff, National Christmas Products Inc. d/b/a National Tree Company ("National Tree Company"), by and through its undersigned counsel, and pursuant to this Court's Order to Show Cause Regarding Subject Matter Jurisdiction [DE 6], files this Addendum to its Complaint and states as follows:

1.   On May 13, 2022, this Court *sua sponte* entered an Order to Show Cause requiring Plaintiff to file an Addendum to its Complaint alleging the citizenship of every member of any Party that is a limited liability company in order to adequately allege complete diversity of citizenship between Plaintiff and Defendant.

2.   On May 16, 2022, the undersigned sent Defendant's counsel an e-mail requesting information about each member of OJ Commerce LLC ("OJ Commerce") and their citizenship, annexed hereto as **Exhibit 1**.  As of this date, Defendant's counsel has not responded to that request.

## App. 035

3.  To determine the membership information for OJ Commerce, the undersigned reviewed the Delaware Division of Corporations and Florida Division of Corporations' records of OJ Commerce, annexed hereto as **Exhibits 2** and **3**.

4.  The Florida Division of Corporation's records revealed that Jacob Weiss is a manager of OJ Commerce.

5.  Upon information and belief, Defendant OJ Commerce is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 3076 North Commerce Parkway, Miramar, FL 33025.

6.  Upon information and belief, Jacob Weiss, manager of OJ Commerce, is the sole member of OJ Commerce and is a Florida citizen.

7.  As a result, upon information and belief, OJ Commerce is a citizen of Florida and Delaware.

8.  National Tree Company is an S corporation organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016.

9.  Upon information and belief, complete diversity exists between the parties because OJ Commerce and its sole member are citizens of different states than National Tree Company.

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that the Court retain jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties.

Dated: May 19, 2022

Respectfully submitted,

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, New York 10105
(212) 370-1300 Telephone

2

**App. 036**

(212) 370-7889 Fax

By:   /s/ *Aldonsa  Janjigian*
Aldonsa Janjigian, Esq. (*admitted pro hac vice*)
ajanjigian@egsllp.com
Anthony Galano, III, Esq. (*admitted pro hac vice*)
agalano@egsllp.com

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax


/s/ *Kyle A. Johnson*
Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

*Counsel for Plaintiff, National Christmas Products,
Inc. D/B/A National Tree Company*

**App. 037**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-60897-CIV-DIMITROULEAS

NATIONAL CHRISTMAS PRODUCTS, INC.
D/B/A NATIONAL TREE COMPANY,
a New Jersey Corporation,

Magistrate Judge Strauss

      Plaintiff,

vs.

OJ COMMERCE, LLC, a Florida Limited
Liability Company,

      Defendant.

_____/

### ORDER SETTING TRIAL DATE & DISCOVERY DEADLINES, REFERRING CASE TO MEDIATION & REFERRING DISCOVERY MOTIONS TO UNITED STATES MAGISTRATE JUDGE

THIS CAUSE is before the Court upon receipt of the parties' Joint Scheduling Report.

It is thereupon, **ORDERED AND ADJUDGED** as follows:

### Trial Date & Location

1.   This case is set for trial on the two-week calendar commencing Monday, March 11, 2024.   Counsel for all parties shall appear at a calendar call commencing at 10:00 A.M. on Friday, March 8, 2024.   Unless instructed otherwise by subsequent order, the trial and all other proceedings in this case shall be conducted in Courtroom 205B at the U.S. Courthouse, 299 E. Broward Boulevard, Fort Lauderdale, Florida.

### Motion Practice

2.   Every pretrial motion filed in this case shall be accompanied by a proposed order granting the motion.   The order shall contain an up-to-date service list of all attorneys in the case.   Proposed orders should be submitted by email to Dimitrouleas@flsd.uscourts.gov in Word format.   The email subject line and the name of the attachment should include the case

number and a short description of the attachment.

## Pretrial Schedule

3.   Pretrial discovery shall be conducted in accordance with Local Rules 16.1 and 26.1

and the Federal Rules of Civil Procedure.   No pretrial conference shall be held in this action,

unless the Court determines, *sua sponte*, that a pretrial conference is necessary.   In setting the

following deadlines, the Court has considered the parties' suggested discovery schedule.   Dates

and other agreements between the parties not otherwise addressed herein shall be considered part

of this Order.   To the extent this Order conflicts with the Local Rules, this Order supercedes the

Local Rules.

| | |
|---|---|
| Motions To Amend Pleadings/Add Parties | – Monday, April 3, 2023 |
| Discovery Cutoff | – Friday, October 20, 2023 |
| Substantive Pretrial Motions | – Monday, November 20, 2023 |
| Daubert Motions | – 60 days before calendar call |
| Mediation Cutoff | – 60 days before start of the trial's two-week calendar |
| Mandatory Pretrial Stipulation | – Friday, February 23, 2024 |
| Motions in Limine | – Friday, February 23, 2024 |
| Responses to Motions in Limine | – Friday, March 1, 2024 |
| Jury Instructions *or* Proposed Findings & Conclusions | – Friday, March 1, 2024 |
| Voir Dire Questions | – Calendar call |
| Exhibit List for Court | – First day of Trial (impeachment excepted) |
| Witness List for Court | – First day of Trial (impeachment excepted) |

**App. 039**

## **Mandatory Pretrial Stipulation**

4.   Counsel must meet at least one month prior to the beginning of the trial period to confer on the preparation of a Pretrial Stipulation in accordance with Local Rule 16.1E. A Pretrial Stipulation lacking substance will not be accepted.   Any party causing a unilateral pretrial stipulation to be filed will be required to show cause why sanctions should not be imposed.   Each attorney and each self-represented party is charged with the duty of complying with this Order.   A motion for continuance shall not stay the requirement for the filing of the Pretrial Stipulation and, unless an emergency situation arises, a motion for continuance will not be considered unless it is filed at least twenty (20) days prior to the calendar call.   Failure to comply with the time schedule may result in dismissal or other sanctions.

## **Consent Jurisdiction**

5.   In light of the benefits offered by a trial before a magistrate judge, e.g., trial on a date certain as opposed to placement on a trial calendar, the parties are urged to consider this option. Therefore, within twenty (20) days of the entry of this Order each attorney is ordered to meet with his/her client and discuss this option.   Plaintiff's counsel shall monitor this process.   If there is not unanimity in favor of magistrate jurisdiction, plaintiff's counsel need do nothing further.   If, however, there is unanimity in favor of magistrate jurisdiction, plaintiff's counsel shall execute the form (available at http://www.flsd.uscourts.gov/default.asp?file=general/forms.asp) entitled "Notice of Right to Consent to Disposition of a Civil Case by a United States Magistrate Judge," and forward the original, executed form to defendants' counsel.   After completion by all defendants or their counsel, the original form should be forwarded to the Clerk of the Court, Fort Lauderdale

**App. 040**

Division.

**<u>Mediation</u>**

6.   Pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16.2, this case is referred to mediation as follows:

a. All parties are required to participate in mediation. The mediation shall be completed no later than sixty (60) days before the scheduled trial date.

b. Plaintiff's counsel, or another attorney agreed upon by all counsel of record and any unrepresented parties, shall be responsible for scheduling the mediation conference. The parties are encouraged to avail themselves of the services of any mediator on the List of Certified Mediators, maintained in the office of the Clerk of this Court, but may select any other mediator. The parties shall agree upon a mediator and advise the Clerk's Office of their choice in writing within **fourteen (14) days** from the date hereof. If there is no agreement, lead counsel shall promptly notify the Clerk in writing and the Clerk shall designate a mediator from the List of Certified Mediators, which designation shall be made on a blind rotation basis.

c. A place, date, and time for mediation convenient to the mediator, counsel of record, and unrepresented parties shall be established. The parties shall jointly submit proposed Order Scheduling Mediation for entry by the Court.

d. Pursuant to Local Rule 16.2.E, the appearance of counsel and each party or representatives of each party with full authority to enter into a full and complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits or the most recent demand, whichever is lower, shall attend.

e. All proceedings of the mediation shall be confidential and privileged.

**App. 041**

f. At least fourteen (14) days prior to the mediation date, each party shall present to the mediator a confidential brief written summary of the case identifying issues to be resolved.

g. The Court may impose sanctions against parties and/or counsel who do not comply with the attendance or settlement authority requirements herein who otherwise violate the terms of this Order. The mediator shall report non-attendance and may recommend imposition of sanctions by the Court for non-attendance.

h. The mediator shall be compensated in accordance with the standing order of the Court entered pursuant to Rule 16.2.B.6, or on such basis as may be agreed to in writing by the parties and the mediator selected by the parties. The cost of mediation shall be shared equally by the parties unless otherwise ordered by the Court. All payments shall be remitted to the mediator within forty-five (45) days of the date of the bill. Notice to the mediator of cancellation or settlement prior to the scheduled mediation conference must be given at least three (3) full business days in advance. Failure to do so will result in imposition of a fee for two hours.

i. If a full or partial settlement is reached in this case, counsel shall promptly notify the Court of the settlement in accordance with Local Rule 16.2.F., by the filing of a notice of settlement signed by counsel of record within ten (10) days of the mediation conference. Thereafter the parties shall forthwith submit an appropriate pleading concluding the case.

j. Within seven (7) days following the mediation conference, the mediator shall file a Mediation Report indicating whether all required parties were present. The report shall also indicate whether the case settled (in full or in part), was adjourned, or whether the mediator declared an impasse.

k. If mediation is not conducted, the case may be stricken from the trial calendar,

5

**App. 042**

and other sanctions may be imposed.

## Discovery Referred to Magistrate Judge

7.   In accordance with 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned cause is referred to United States Magistrate Judge Strauss for appropriate disposition of all pretrial discovery motions, and all motions that relate directly to these motions, such as motions for extension of time, motions for reconsideration, motions for sanctions, and motions for mental or physical examinations. This Order does not refer any motion which requests a continuance or extension of the trial or pretrial scheduling dates.

## Exhibits

8.   Exhibits must be pre-marked and exchanged prior to execution of the Pretrial Stipulation.   Each exhibit should be marked with a sticker identifying the case number, exhibit number, and party offering the exhibit.

## Jury Instructions *or* Proposed Findings of Fact and Conclusions of Law

9.   In cases tried before a jury, each party shall submit joint, stipulated proposed jury instructions and a joint, stipulated proposed verdict form in hard copy form and by email to Dimitrouleas@flsd.uscourts.gov in Word format.   All requested instructions shall be typed on a separate page, and except for Eleventh Circuit Pattern instructions, must be supported by citations of authority.   Any objections to the proposed instructions shall be stated clearly and concisely and also shall be supported by citations of authority.

Alternatively, in cases tried before the Court, each party shall file proposed Findings of Fact & Conclusions of Law in hard copy form and by email to Dimitrouleas@flsd.uscourts.gov

**App. 043**

in Word format.   Proposed Conclusions of Law must be supported by citations of authority.

### **Settlement**

10.     If a case is settled, counsel are directed to inform the Court promptly at (954) 769-

5650 and to submit an appropriate stipulation Order for Dismissal, pursuant to Fed. R. Civ. P.

41(a)(1).   Such an Order must be filed within ten (10) days of notification of the Court.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this 3rd day of November 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Magistrate Judge Strauss
All Counsel of Record

7

**App. 044**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

                 Plaintiff,

-vs-

OJ COMMERCE, LLC,

                 Defendant.

_____/

**DEFENDANT OJ COMMERCE, LLC'S AMENDED
COUNTERCLAIMS AGAINST NATIONAL CHRISTMAS PRODUCTS, INC.**

OJ Commerce, LLC ("OJC"), by and through undersigned counsel, hereby brings, pursuant to ECF No. 43, these amended counterclaims against Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("National Tree"), and states and alleges the following:

**PARTIES**

1.      OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer engaged in interstate commerce and is selling consumer goods to customers.

2.      Upon information and belief, National Tree is an S corporation organized under the laws of the State of New Jersey with its principal place of business in the State of New Jersey.

**JURISDICTION**

1

**App. 045**

3.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

4.      This Court also has supplemental jurisdiction over these counterclaims, pursuant to 28 U.S.C § 1367 as they arise from the same case or controversy as the alleged claims in Plaintiff's Complaint.

**FACTS COMMON TO ALL COUNTS**

5.      On August 15, 2017, National Tree and OJC executed the sole agreement between the parties, an E-Commerce Vendor Agreement ("Agreement"), which governed their e-commerce business relationship.  A true and correct copy of the Agreement is attached to this Counterclaim as **Exhibit A** and is incorporated herein.

6.      National Tree primarily sells Christmas tree products that are very seasonal, and are extremely time sensitive to the Christmas holiday.

7.      The nature of the relationship between National Tree and OJC was for Christmas tree product orders to be drop shipped.  That means that OJC sells National Tree Christmas tree products to its customers, and National Tree was to fulfill those orders by directly shipping the products to OJC's customers.

8.      The Agreement defined "Drop Shipment" "as the process of Seller sending individual purchase orders to the [National Tree], and the [National Tree] shipping the purchase order merchandise from a [National Tree's] facility direct to an End Consumer, without passing through the warehouse of [OJC]"

9.      In their relationship, National Tree had manufactured, stocked, and shipped the Christmas tree products for sale to OJC's customers.

**App. 046**

10.     In turn, OJC relied on National Tree to accurately and honestly account for how many Christmas tree products National Tree had in stock, when the products were shipped, and the tracking information related to National Tree's shipments.

11.     Tracking numbers are assigned by shipping carriers, such as FedEx, when a shipper, like National Tree, creates a shipping label or shipping note.  They allow the intended recipient of the package to track the status and progress of the shipment, and delivery of their order.

12.     The vast majority of Christmas tree product consumer sales for any given year take place in a 4-6 week period before Christmas, from around early-mid November through early-mid-December.

13.     This small window of time for Christmas tree product sales is the norm every year, and is based on consumer's seasonal shopping patterns, wherein the great majority of consumers purchase Christmas tree products soon before Christmas.

14.     It is critical to satisfying the customers who order Christmas tree products to ship and deliver them in a timely manner, as Christmas trees are almost always the central decoration for households that celebrate Christmas.

15.     Therefore, if a company does not deliver a customer's orders for Christmas tree products in the window of time they are needed by the customer, there is no making up for it after the fact.

16.     In other words, delivering a Christmas tree after Christmas, or not in the time frame promised, creates an extremely adverse effect on the customer because the customer's Christmas celebration has been negatively affected.

**App. 047**

17.     This in turn creates an extremely adverse effect on the company selling the Christmas trees, as the customers take their frustration and disappointment out on the company selling the Christmas trees.

18.     Furthermore, because of the time-sensitive nature of the purchase by the customer, the failure to deliver a Christmas tree product as promised will more often than not have an adverse effect on other sales the company would have made because the customer will now not trust the seller of the Christmas tree product for any of their other purchases, and will often post negative feedback on the Internet for other customers to review and consider when making their purchasing decisions, and will tell friends and family about their bad experience.

19.     OJC worked with National Tree prior to the 2020 Christmas holiday season to prepare for the expected sales, so that all transactions would go smoothly and timely for OJC's customers.

20.     OJC's time and effort was devoted to promoting National Tree's Christmas tree products, creating and optimizing images, advertisements, marketing material, and content for OJC's website and on third-party marketplaces, integrating its computer systems, and otherwise preparing for the holiday sales season (collectively, "setting up" the National Tree products).

21.     During those preparations, National Tree made promises to OJC that National Tree could meet the demand of OJC's customers, would ship the products promptly, and have the Christmas tree products delivered in a timely fashion.

22.     Reasonably relying on National Tree's promises, and in order to make sure that the sales and deliveries would go as successfully and smoothly as possible, for many months prior to the 2020 Christmas shopping season, OJC spent a significant amount of time and money setting up the National Tree Christmas tree products.

**App. 048**

23.     OJC also set up National Tree products to be sold on a variety of third party marketplaces, such as Amazon and Walmart.

24.     As a result of its preparation and investments, OJC was successful in selling a large number of National Tree Christmas tree products for the 2020 Christmas season on its website, and other marketplaces.

25.     Unbeknownst to OJC, however, National Tree, for its part, was extremely negligent, reckless, and fraudulent when it came to processing the orders made by OJC's customers.

26.     Beginning in November 2020, National Tree notified OJC that it had shipped a large number of orders, and provided OJC with shipment tracking numbers for those orders.

27.     In turn, OJC provided those tracking numbers to its customers advising them that their orders were shipped.

28.     Although OJC did not know at the time that it supplied the tracking information to its customers, the shipment information and tracking numbers provided by National Tree was misleading and dishonest.

29.     National Tree had simply generated tracking numbers, but never actually shipped the orders and when customers tried tracking their orders on the shipping carrier websites, the shipping carrier showed no movement on those tracking numbers, as those packages were not actually shipped by National Tree.  These tracking numbers that were generated but did not result in a shipment are herein referred to as "non-moving tracking numbers."

30.     Indeed, National Tree did not even have the Christmas tree products in stock while it was telling OJC and its customers that National Tree's Christmas tree products were in fact in stock and ready to ship.

**App. 049**

31.     Fairly early in the Christmas ordering season, on November 17, 2020, OJC notified National Tree that 724 orders were late, with 311 having non-moving tracking numbers and another 431 well past their delivery due dates.  A true and correct copy of the November 17, 2020 from OJC to National Tree is attached to this Counterclaim as **Exhibit B** and is incorporated herein.

32.     Approximately a week later, on November 25, 2020, OJC had determined that National Tree now had issued at least 468 non-moving tracking numbers.

33.     On December 11, 2020 – extremely close to the Christmas holiday – OJC informed National Tree that **2,863** orders, upwards of four weeks old, had non-moving tracking numbers.  A true and correct copy of the December 11, 2020 from OJC to National Tree is attached to this Counterclaim as **Exhibit C** and is incorporated herein.

34.     In response, National Tree claimed that orders were picked up by the carrier, but National Tree was unable to provide pickup location details for OJC's confirmation.

35.     Due to National Tree's failure to promptly ship OJC's customers' orders, many Christmas tree products were not delivered until either right before – after a customer had already made a substitute purchase due to the lateness of the shipment – or even after Christmas.

36.     Also due to National Tree's failure to promptly ship OJC's customers' orders, many OJC customers canceled their orders but National Tree later shipped the orders anyway, which resulted in OJC being charged for the product by National Tree and shipping fees when OJC had already refunded its customer's money.

37.     National Tree's failures caused OJC's customers to file numerous chargeback claims with their credit card companies (wherein the customer seeks a refund or cancellation of a credit card charge due to a problem with an order), refund requests, and other economic losses.

6

**App. 050**

38.     National Tree's providing misleading tracking numbers, defective products, and late shipments, and shipping of already canceled orders, continued throughout and even after the Christmas holiday season.

39.     Due to National Tree's ever-increasing orders with non-moving tracking numbers, defective trees, and late shipments, and those that were canceled altogether, OJC was overwhelmed with calls and messages from angry customers, cancellations, and a large number of negative reviews posted all over the world wide web where millions of potential OJC customers can review and use them to make decisions about whether to order from OJC in the first place.

40.     Listed below are just five of the numerous negative reviews that OJC's customers posted online as a result of National Tree's failure to promptly ship OJC's customers' Christmas tree orders and/or shipping defective trees:

> A. DO NOT ORDER FROM THEM! My order 'shipped' on the 9th and I never received. Apparently it was never even in stock and I only found out cause I called after it was suppose to arrive and they said it was out of stock and didn't even care. Talk about The Grinch.

> B. They cancelled my order the day before it should have arrived, this ruined my Christmas. Too late to make other arrangements for a tree. I will never buy from this company.

> C. Do not order from this company. We ordered a Christmas tree ON THE 6th. The seller said it shipped on the 7th and then when we contacted them about the order (10 days later) they blamed FedEx for not picking up the order. The package was still sitting in their warehouse in California. I will never order from this seller, and will from now on be looking at all 3rd party reviews before buying.

> D. Order placed 12/1. Should've suspected something was amiss because there was never a valid tracking number. Originally, it was supposed to arrive between 12/8-11. Then I was told between 12/12-17. Today, 12/18, I receive an email stating my order was credited back to my CC. Thats all fine & dandy but my new gate looks pretty stupid w/garland & no wreath. I will never buy from this vendor.

**App. 051**

E.  I waited for the arrival of the Christmas tree. I ordered the tree in advance so I would have it the first of December. I received it today and imagine my disappointment when some the electrical connectors are missing. Now, I have to wait for your response to approve return and then order another tree and wait again. My husband just died and this Christmas is important to me. Please help!

41.   Throughout the Christmas shopping season, OJC repeatedly advised National Tree that these cancellations, late shipments, defective shipments, and mis-shipments, will cause significant economic damages to OJC.

42.   National Tree's wrongful conduct described above did in fact cause significant economic damages to OJC, including but not limited to money spent or lost on refunds, appeasements, additional customer service personnel hours, and loss of money spent on marketing, as OJC's customers were extremely upset, felt mistreated, and took their frustrations out on OJC.

43.   National Tree's wrongful conduct described above also caused the loss of sales of other products that OJC did not receive or otherwise lost due to its customers' negative experiences with the National Tree Christmas tree products being taken out on OJC.

44.   National Tree's wrongful actions, which caused extreme backlash by OJC's customers against OJC – who was not the source of the problems – also caused significant economic harm to OJC's reputation and goodwill.

## Count I - Breach of Contract

45.   OJC incorporates by reference paragraphs 1 through 44.

46.   OJC entered into a valid and enforceable Agreement with National Tree for the proper and timely fulfillment of dropship orders to OJC's customers.

**App. 052**

47.     Pursuant to the Agreement, OJC, as reseller, would promote and display National Tree's approved products for sale on OJC's website and third-party marketplaces, and National Tree, as vendor, would supply the products to OJC's customers.

48.     Pursuant to Section 2.4.3 of the Agreement, "[a] Defective Return is the responsibility of [National Tree]."

49.     On many occasions, National Tree shipped orders that were defective.

50.     National Tree breached the Agreement, because it did not take responsibility for defective products, and did not apply the proper refunds to OJC for those orders.

51.     The parties' course of dealing was that they operated under Section 2.4.3 of the Agreement, not Section 2.4.4, because National Tree never provided to OJC a flat rate defective allowance of 3%.

52.     Pursuant to Section 2.4.5 of the Agreement, a "Mis-shipped Product" was the responsibility of National Tree.

53.     On many occasions National Tree mis-shipped order products.

54.     National Tree breached the Agreement, because it did not take responsibility for mis-shipped orders, and did not apply the proper refunds to OJC for those orders.

55.     Pursuant to Section 2.6 of the Agreement, "[National Tree] accepts returns for cancelled orders that were shipped in error and not stopped by [National Tree], and [National Tree] pays for the freight charges, intercept fees and any return freight charges for shipping the cancelled order pursuant to the terms in section 2.4."

56.     On many occasions National Tree shipped orders in error, after they were canceled, and National Tree did not stop those shipments.

**App. 053**

57.     National Tree breached the Agreement, because it (a) did not accept those returns, (b) did not pay for the freight charges, (c) did not pay for the intercept fees, and (d) did not pay for the return freight charges of those orders.

58.     Pursuant to Section 2.7.4 of the Agreement, OJC transmitted purchase orders ("POs") to National Tree.

59.     Those POs contained OJC's customer name, and their address, product choice and quantity, and ship date, among other information.

60.     National Tree was obligated to ship each of OJC's customer's orders within a reasonable time.

61.     For each order that was transmitted to National Tree, National Tree was advised of the reasonable time the customer expected the order, and a specific ship date was listed on each PO.

62.     On some occasions, National tree did not ship OJC's orders within a reasonable time.

63.     On some occasions, National tree did not ship OJC's orders within the time expected that was provided on the PO.

64.     Pursuant to Section 2.7.4 of the Agreement, OJC was only required to pay the price it indicated on its PO.

65.     National Tree did not request an approval from OJC to charge above the PO price prior to shipping the orders.

66.     National Tree did not receive an approval from OJC that it may charge above the PO prices.

10

**App. 054**

67. Nevertheless, on some occasions, National Tree invoiced and charged OJC above the price that was indicated on the PO.

68. National Tree breached the Agreement, including but not limited to at least Sections 2.4, 2.4.3, 2.4.5, 2.6, and 2.7.4 of the Agreement, by National Tree's improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and mis-shipments;

69. National Tree failed to take responsibility for its actions, by failing to apply proper refunds for improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and mis-shipments, as per the terms of the Agreement.

70. As a result of National Tree's breaches, OJC suffered monetary damages, in the form of refunds made to its customers that National Tree – not OJC – was required to make.

71. As a result of National Tree's breaches, OJC suffered hundreds of thousands of dollars in damages, in the form of missing credits from National Tree, refunds made to OJC's customers, negative reviews by OJC's customers, and negatively affecting OJC's ability to sell its products on third party marketplaces.

**Count II - Breach of Implied Covenant of Good Faith and Fair Dealing**

72. OJC incorporates by reference paragraphs 1 through 71.

73. OJC entered into a valid and enforceable Agreement with National Tree for the proper and timely fulfillment of dropship orders to OJC's customers.

74. Implied in the parties' Agreement was National Tree's promise to ship OJC's customers' orders in a timely fashion, not to supply misleading non-moving tracking numbers to OJC and its customers, and not to ship already-canceled orders.

**App. 055**

75.     National Tree through its conscious reckless and deliberate actions failed to ship in a timely manner orders placed by OJC and the POs referenced therein.

76.     National Tree did not apply proper credits and refunds for those improperly processed orders.

77.     National Tree's conduct deprived OJC from the benefit of the Agreement, as OJC suffered monetary damages in the form of cancellations, negative feedback, chargebacks, refund demands, and other negative effects as outlined above due to National Tree's failure to properly and timely fulfill OJC's customer orders.

78.     As a result of National Tree's breaches, OJC suffered hundreds of thousands of dollars in damages.

**Count III - Breach of Implied Warranty**

79.     OJC incorporates by reference paragraphs 1 through 44.

80.     National Tree is a merchant with respect to goods of the kind involved in the instant matter, namely consumer goods, including but not limited to Christmas tree products.

81.     National Tree sold goods to OJC and its consumers to be used for their ordinary purpose.

82.     National Tree's goods and shipments thereof were therefore subject to an implied warranty.

83.     On many occasions, National Tree delivered defective merchandise that failed to pass without objection in the trade of consumer goods, by the shipping carriers, breaching the implied warranty outlined in § 672.314, Fla. Stat.

**App. 056**

84.    On many occasions, National Tree also breached the implied warranty by failing to properly contain, package, and label the products as requested resulting in defective shipments.

85.    OJC promptly notified National Tree about all those defective merchandise and defective shipments.

86.    National Tree did not honor its warranty, and did not replace, refund, or otherwise credit OJC for those defective merchandise and defective shipments.

87.    As a result of National Tree's breach of implied warranty, OJC suffered hundreds of thousands of dollars in damages.

**Count IV - Tortious Interference with Business Relationship**

88.    OJC incorporates by reference paragraphs 1 through 44.

89.    Between 2018 and late 2021, OJC established business relationships with approximately 70,000 online retail customers.

90.    The nature of the relationship with those customers was that they purchased National Tree products from OJC.

91.    OJC also had long-standing business relationships with third-party marketplaces, including Amazon and Walmart.

92.    The nature of the relationship with those marketplaces was that OJC can place its products for sale on these marketplaces, including National Tree products.

93.    National Tree knew of OJC's business relationships with its more than 70,000 customers, because every single order that OJC received for a National Tree product, OJC sent a purchase order to National Tree with all the details of that customer, and exact product that customer purchased.

**App. 057**

94.     National Tree also knew about OJC's relationship with its marketplaces, as OJC informed National Tree that its products are sold on these marketplaces.

95.     National Tree recklessly, intentionally, and unjustly interfered with OJC's business relationship with its customers and with its third-party marketplaces, by National Tree issuing misleading tracking numbers and false promises about shipments, and causing improper cancellations, late shipments, defective shipments, and mis-shipments.

96.     As a result of National Tree's actions, many of OJC's existing customers terminated their business relationship with OJC, in the form of canceling their orders, and seeking a full refund for their transactions.

97.     As a result of National Tree's actions, many of OJC's existing customers wrote negative reviews about OJC, and refused to continue purchasing anymore products from OJC.

98.     The third party marketplaces have a system to monitor and track the performance of third party sellers, such as OJC.

99.     As part of the third party marketplace performance monitoring system, they score each seller on how many orders are shipped late, canceled, damaged, defective, and mis-shipped.

100.    Additionally, the third party marketplaces flag seller accounts as potentially fraudulent accounts, when that account provides its customers with fake tracking numbers.

101.    The third party marketplaces also monitor negative reviews for a seller that are left by customers after completing a transaction.

102.    As a result of National Tree's actions, the third party marketplaces negatively flagged OJC, as having a high rate of late shipments, cancellations, damages, defectives, negative reviews, and mis-shipments.

14

**App. 058**

103.    As a result of National Tree's actions, the third party marketplaces negatively flagged OJC, as a potentially fraudulent account for providing fake tracking numbers that OJC received from National Tree.

104.    As a result of National Tree's actions, OJC's account was limited and restricted by the third marketplaces, and OJC's sales on those third party marketplaces was diminished.

105.    OJC repeatedly advised National Tree that its reckless actions would affect OJC's relationships with its customers and with its third-party marketplaces.  Nonetheless, National Tree persisted with its wrongful conduct.

106.    As a direct result of National Tree's wrongful conduct, which led to breaches of and harm to OJC's relationships, OJC suffered hundreds of thousands of dollars in damages.

107.    As detailed above, National Tree willfully and wantonly interfered with OJC's business relationships with its customers and third-party marketplaces when National Tree issued misleading tracking numbers and made false promises about shipments. National Tree knew that there was a high likelihood that OJC would be injured and damaged by the misleading tracking numbers and false statements that interfered with OJC's business relationships. National Tree's conduct was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be intentionally injured. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple OJC's damages against National Tree for its willful tortious interference.

**Count V - Fraud**

108.    OJC incorporates by reference paragraphs 1 through 44.

**App. 059**

109.    National Tree knowingly and intentionally, or with reckless disregard, made false statements to OJC about its ability to timely ship products during the Christmas holiday season, with the intent to induce OJC to sell National Tree products.

110.    National Tree made its knowingly false statements with the intent to induce OJC to sell National Tree products during the 2020 Christmas season.

111.    For example, on August 5, 2019, Steve Downs, a representative from National Tree, sent an email message to OJC promising that for the upcoming season there would be no out-of-stock problems for National Tree's Christmas tree products.

112.    National Tree's representation was material to OJC's decision to market and sell National Tree's Christmas tree products during the 2020 Christmas holiday season.

113.    OJC reasonably relied on these statements to market, promote and sell to its customers National Tree products.

114.    National Tree also knowingly and intentionally made false statements to OJC about the status of its orders, by providing tracking numbers and representing to OJC that orders were shipped, when in fact those tracking numbers showed no movement, and those orders were not shipped.

115.    National Tree made its knowingly false statements with the intent to induce OJC to continue selling National Tree products during the 2020 Christmas season.

116.    For example, on November 27, 2020, Mark Gardner, a representative from OJC, sent a message to Steve Downs of National Tree asking about the status of 432 orders that OJC received tracking numbers, but were showing no movement for more than seven days.

117.    In response, Steve Downs of National Tree stated that all of these 432 tracking numbers were picked up by the shipping carrier, and they were picked up by the shipping carrier.

**App. 060**

118.     National Tree's representation was material to OJC continuing to sell National Tree's Christmas tree products.

119.     However, unknown to OJC at the time, National Tree's statement and assurances were knowingly false.

120.     At the time the tracking numbers were provided by National Tree, OJC reasonably relied on National Tree's statements of fact to advise its customers and other third party marketplaces, that these 432 orders were shipped, and that they would be delivered prior to Christmas.

121.     At a later date, however, OJC discovered that no containers were picked up from National Tree with the 432 packages intended for OJC's customers.

122.     As a result of National Tree's fraudulent conduct, OJC suffered hundreds of thousands of dollars in damages, in the form of customer cancellations, refunds, loss of existing sales, and negative treatment by its third-party-marketplaces (*See* paragraphs 98-104 *supra*.).

123.     As detailed above, National Tree made knowingly false representations to OJC about its ability to meet the demands and promptly ship OJC's customers' orders, and about National Tree's misleading, non-moving tracking numbers. National Tree knew that there was a high likelihood that OJC would be injured by National Tree's false statements.  National Tree's fraud against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be defrauded and intentionally injured. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple OJC's damages against National Tree for its fraud against OJC.

**Count VI - Florida Deceptive and Unfair Trade Practices Act ("FDUPTA")**

124.     OJC incorporates by reference paragraphs 1 through 44.

**App. 061**

125.     This action arises out of a violation of §501.204(1), Florida Statutes, prohibiting unfair and deceptive trade practices.

126.     National Tree committed an unfair and deceptive trade practice while conducting commerce, by knowingly and intentionally making false statements to OJC about ts ability to ship products timely during the Christmas holiday season, and by providing tracking numbers and representing to OJC that orders were shipped, when in fact those tracking numbers showed no movement, and those orders were not shipped.

127.     Such a dishonest act is unconscionable, deceptive, unfair, and violates established public policy of fair dealings.

128.     As a result of National Tree's fraudulent conduct, OJC suffered hundreds of thousands of dollars in damages, in the form of customer cancellations, refunds, loss of existing sales, and negative treatment by its third-party-marketplaces (*See* paragraphs 98-104 *supra*.).

129.     OJC suffered hundreds of thousands of dollars in damages as result of National Tree's violations of FDUPTA, in the form of order cancellations, customer refunds, and lost sales.

130.     OJC also suffered damages in the form of lost value of the products at the time of delivery, because National Tree delivered pre-Christmas orders after Christmas, and the price and value of Christmas trees significantly drops after Christmas.

131.     As a result of National Tree's wrongful conduct, OJC seeks its actual damages, cost of this litigation including attorney's fees, as provided in § 501.211(1), Fla. Stat., prejudgment and postjudgment interest, and any other relief this Court finds just and proper.

**OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

**App. 062**

WHEREFORE, OJC respectfully demands the following relief:

a.       Judgment against National Tree on all of its claims;

b.       Judgment in favor of OJC on all its affirmative defenses to National Tree's

claims;

c.       Judgment against National Tree on all of OJC's counterclaims;

d.       Judgment against National Tree for damages in the amount to be determined at

trial;

e.       Judgment against National Tree for punitive damages in an amount to be

determined at trial, but at least triple OJC's damages against National Tree for its fraud and

tortious interference against OJC;

f.       Award of OJC's attorneys' fees and costs, pursuant to § 501.211(1), Fla. Stat.;

g.       OJC's costs incurred in obtaining judgment against National Tree; and

h.       Such other relief as the Court considers just and proper.

Dated: January 27, 2023                    Respectfully Submitted,
                                           Shlomo Y. Hecht, P.A.
                                           4538 NW 85th Ave.
                                           Coral Springs, FL 33065
                                           Phone: 954-861-0025

                                           By: /s/ Shlomo Y Hecht
                                           Florida State Bar No.: 127144
                                           Email: sam@hechtlawpa.com
                                           *Attorney for OJ Commerce, LLC*

## CERTIFICATE OF TRANSMITTAL / SERVICE

I HEREBY certify that on January 27, 2023, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF, and served this document upon Plaintiff's counsel of

record.

                                           /s/Shlomo Y. Hecht
                                           Shlomo Y. Hecht

**App. 063**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

        Plaintiff,

v.

OJ COMMERCE, LLC,

        Defendant.

_____/

## ORDER GRANTING SECOND MOTION FOR EXTENSION OF TIME

THIS CAUSE is before the Court upon Plaintiff's Second Motion for an Extension of Time, filed on October 23, 2023 [DE 75]. The Court has carefully considered the Motion, Defendant's Response [DE 76], Plaintiff's Reply [DE 78], and is otherwise fully advised in the premises. The Court finds good cause to grant the requested extensions. In addition, the Court will reset the trial date and calendar call in this matter so that the Court has adequate time to consider and rule on dispositive motions.

Accordingly, it is hereby **ORDERED and ADJUGED** that the Motion [DE 75] is **GRANTED** as follows:

## Trial Date & Location

1. This case is **RESET** for trial on the two-week calendar commencing **Monday, April 8, 2024**. Counsel for all parties shall appear at a calendar call commencing at 10:00 A.M. on **Friday, April 5, 2024**. Unless instructed otherwise by subsequent order, the trial and all other proceedings in this case shall be conducted in Courtroom 205B at the U.S. Courthouse, 299 E.

# App. 064

Broward Boulevard, Fort Lauderdale, Florida.

**Pretrial Schedule**

2. The remaining pretrial deadlines are hereby **RESET** as follows:

| | |
|---|---|
| <u>Discovery Cutoff</u> | - December 13, 2023 |
| <u>Substantive Pretrial Motions</u> | - January 10, 2024 |
| <u>Daubert Motions</u> | – 60 days before calendar call |
| <u>Mediation Cutoff</u> | – 60 days before start of the trial's two-week calendar |
| <u>Mandatory Pretrial Stipulation</u> | – March 22, 2024 |
| <u>Motions in Limine</u> | – March 22, 2024 |
| <u>Responses to Motions in Limine</u> | – March 29, 2024 |
| <u>Jury Instructions *or* Proposed Findings & Conclusions</u> | – March 29, 2024 |
| <u>Voir Dire Questions</u> | – Calendar call |
| <u>Exhibit List for Court</u> | – First day of Trial (impeachment excepted) |
| <u>Witness List for Court</u> | – First day of Trial (impeachment excepted) |

3. This is the second time the Court has granted an extension of pre-trial deadlines.

**Further extensions shall not be expected absent emergency.**

4. Defendant's Motion for Leave to File Sur-Reply [DE 79] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in Ft. Lauderdale, Broward County, Florida this

27th day of October, 2023.

Copies furnished to:
Counsel of record
Magistrate Judge Strauss

WILLIAM P. DIMITROULEAS
United States District Judge

**App. 065**

## UNITED STATES COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:22-cv-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. D/B/A NATIONAL TREE
COMPANY, a New Jersey Corporation

      Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company

      Defendant.

_____/

### PLAINTIFF'S MOTION TO DISMISS WITHOUT PREJUDICE

    Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("Plaintiff"), by and through undersigned counsel, moves to dismiss the claims and counterclaims in this Action without prejudice pursuant to FRCP 12(h)(3), and states:

    1. On May 12, 2022, Plaintiff filed its Complaint against Defendant, seeking damages in the amount of $781,474.14 for (i) breach of contract, (ii) account stated and (iii) goods sold and delivered.

    2. The Complaint alleged that diversity jurisdiction existed as between Plaintiff, a New Jersey S-Corp., and Defendant, a Delaware LLC whose sole member is a resident of Florida.

    3. On July 8, 2022, Defendant moved to dismiss all three claims. On August 23, 2022, this Honorable Court denied Defendant's motion to dismiss the breach of contract and account stated claims, and granted dismissal of Plaintiff's goods sold and delivered claim.

**App. 066**

4.  On September 20, 2022, Defendant filed its Answer, Affirmative Defenses, and Counterclaims. Defendant's counterclaims against Plaintiff included claims for (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) breach of implied warranty, (iv) tortious interference with business relationship, (v) fraud and (vi) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

5.  Defendant alleged that diversity jurisdiction existed as between Plaintiff and Defendant, for purposes of Defendant's counterclaims, because Plaintiff was a New Jersey S-Corp. and Defendant was a Delaware LLC whose sole member resided in Florida.

6.  On November 21, 2022, Plaintiff moved to dismiss all six counterclaims. On January 13, 2023, this Honorable Court granted Plaintiff's motion to dismiss in part, and dismissed without prejudice (and with leave to amend) Defendant's breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with business relationship and FDUTPA claims, and denied dismissal of the breach of implied warranty and fraud claims.

7.  On January 27, 2023, Defendant filed Amended Counterclaims, including the same six counterclaims. These amended counterclaims again alleged the existence of diversity jurisdiction as between Plaintiff and Defendant on the grounds that Plaintiff was a New Jersey S-Corp. and Defendant is a Delaware LLC whose sole member is a resident of Florida.

8.  On February 10, 2023, Plaintiff filed its answer to Defendant's Amended Counterclaims.

9.  Thereafter, the parties engaged in discovery.  Plaintiff did not submit a statement pursuant to FRCP 7.1 at the time it filed the Complaint, nor did it file a Rule 7.1 statement at the time it answered Defendant's counterclaims; Defendant also never submitted a Rule 7.1 statement.

10. On November 13, 2023, Plaintiff's CFO informed me that Plaintiff is not an S-Corp., as alleged in the Complaint and Defendant's counterclaims, but rather an LLC.

**App. 067**

11. Thereafter, counsel conducted an investigation with respect to Plaintiff's corporate identity; that investigation revealed that National Christmas Products, Inc. was merged out of existence and into National Christmas Products LLC, a Delaware LLC, in or about October 2019.

12. While Plaintiff and Defendant are both Delaware LLCs, "for purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its member(s), not its state of formation or its principal place of business." *Atl. Healthcare, LLC v. Argonaut Ins. Co.*, No. 2:19-CV-14420, 2020 WL 4501833, at *2 (S.D. Fla. Jan. 17, 2020) (*citing Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004)); *see also Stanley v. MFREV Lofts at Sodo, LLC*, No. 618CV1819ORL41KRS, 2018 WL 11484336, at *1 (M.D. Fla. Nov. 8, 2018) ("But citizenship of a limited liability company is determined by the citizenship of each member, as opposed to the state of formation or its principal place of business").

13. Defendant OJ Commerce, LLC, has one member, who is a citizen of Florida. Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Florida.

14. Upon learning that National Christmas Products LLC was the true corporate identity of Plaintiff, counsel further investigated its ownership structure in order to determine its citizenship for purposes of diversity jurisdiction.

15. National Christmas Products, LLC is wholly owned by National Tree Intermediary, LLC, which is wholly owned by National Tree Holding, LLC. These entities are Delaware LLCs.

16. National Tree Holding, LLC has thirteen (13) members: (1) Puleo Acquisition Corp., a New Jersey corporation; (2) Joseph Puleo, a citizen of New Jersey; (3) Salvatore Puleo, a citizen of New Jersey; (4) Richard Puleo, a citizen of New Jersey; (5) National Tree Ultimate Holding, LLC, a Delaware LLC; (6) MC Credit Fund IA (Loan Funding) L.P., a Delaware L.P.; (7) MC

**App. 068**

Credit Fund I LP, a Delaware L.P.; (8) MC Credit Fund III (Loan Funding) LP, a Delaware L.P.; (9) MC Credit Fund N (Loan Funding) LP, a Delaware L.P.; (10) MC Credit Fund III (Delaware) LP, a Delaware L.P.; (11) MC Credit Fund III-U (Delaware) LP, a Delaware L.P.; (12) Digital Fuel Seasonal Décor, LLC, a Delaware LLC; and (13) National Tree Management Holding, LLC, a Delaware LLC.

17. National Tree Ultimate Holding, LLC is wholly owned by Sun National Tree, L.P., a Cayman Islands Limited Partnership.

18. The General Partner of Sun National Tree, L.P. is Sun Holdings VII, LLC, a Cayman Islands LLC, and the sole Limited Partner is Sun Capital Partners VII, L.P., a Cayman Islands Limited Partnership. Sun Capital Partners VII, L.P. is the sole member of Sun Holdings VII, LLC.

19. According to the Florida Secretary of State, the General Partner of Sun Capital Partners VII, L.P. is Sun Capital Advisors VII, L.P., a Cayman Islands Limited Partnership. Per the Florida Secretary of State, the General Partner of Sun Capital Advisors VII L.P. is Sun Capital Partners VII, LLC, which is a Cayman Islands LLC.

20. Based on our investigation, which was limited to documents in National Christmas Products LLC's possession and publicly-available information (including filings with state and federal regulators), we were able to determine that Sun Capital Partners VII, L.P., had limited partners who are citizens of California, Washington D.C., Ohio, Israel, and Maryland. We did not find any partners who were citizens of Florida until December 23, 2023, when counsel for Plaintiff learned that at least one limited partner of Sun Capital Partners VII, L.P. is a citizen of Florida. The specific identity of this limited partner, and his status as a limited partner of Sun Capital Partners VII, L.P. (as opposed to a manager or officer), was confirmed on December 25, 2023.

**App. 069**

21. Upon learning this, counsel requested more specific information as to this limited partner, specifically including whether this limited partner had been a limited partner continuously from May 2022 until the present.  On December 28, 2023, counsel for Plaintiff confirmed that this individual had been a limited partner of Sun Capital Partners VII, L.P., continuously since May 2022.

22. Given the complexity of Plaintiff's organizational structure, and the fact that Plaintiff does not control the documentation regarding the identities of the limited partners of Sun Capital Partners or MC Credit Fund, it took over a month to fully investigate and determine the citizenship of Plaintiff.

23. Since Plaintiff is an LLC and at least one member is a citizen of Florida, Plaintiff is a citizen of Florida.

24. Defendant OJ Commerce, LLC is also a citizen of Florida, based on the citizenship of its sole member, Jacob Weiss.

25. As a result of the foregoing, Plaintiff believes this Court lacks subject matter jurisdiction and this case—including both the Complaint and Defendant's counterclaims—must be dismissed without prejudice under FRCP 12(h)(3).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 4th day of January, 2024, I served the foregoing via electronic filing through this Court's CM/ECF system upon Shlomo Y. Hecht, Esq. and Aaron W. Davis, Esq., attorneys for Defendant, OJ Commerce, LLC, at sam@hechtlawpa.com; davis@valhallalegal.com.

> Ellenoff Grossman & Schole LLP
> 1345 Avenue of the Americas, 11th Floor
> New York, NY 10105
> Tel: 212-370-1300

**App. 070**

/s/ *John B. Horgan Esq.*

John Horgan, Esq. (admitted pro hac vice)
jhorgan@egsllp.com
Joanna R. Cohen, Esq.
JCohen@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

/s/ *Kyle A. Johnson, Esq.*

Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

*Counsel for Plaintiff, National Christmas Products,*
*Inc. D/B/A National Tree Company*

6

**App. 071**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

               Plaintiff,

v.

OJ COMMERCE, LLC,

               Defendant.

_____/

## <u>ORDER DENYING MOTION WITHOUT PREJUDICE</u>

THIS CAUSE is before the Court upon Plaintiff's Motion to Dismiss Without Prejudice (the "Motion"), filed January 4, 2024. [DE 91] ("Motion"). The Court has considered the Motion and is otherwise fully advised in the premises.

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion [DE 91] is hereby **DENIED WITHOUT PREJUDICE** to file a motion that complies with the requirements of S.D. Fla. L.R. 7.1(a)(3), which requires the moving party to certify that it has conferred, or describes a reasonable effort to confer, with the parties affected in a good faith effort to resolve the dispute.[1]

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 4th day of January 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

---

[1] Though a motion to dismiss for failure to state a claim is an enumerated exception to Local Rule 7.1(a)(3), a motion to dismiss for lack of subject matter jurisdiction is not.

App. 072

Copies furnished to:

Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

                Plaintiff,

-vs-

OJ COMMERCE, LLC,

                Defendant.

_____/

**DEFENDANT'S EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER
AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION**

      Defendant OJ Commerce, LLC ("OJC" or "Defendant") hereby files this expedited motion to amend the scheduling order and for expedited discovery on subject matter jurisdiction, and in support thereof states:

**INTRODUCTION**

      The day after Plaintiff National Christmas Products, Inc. ("Plaintiff") filed this action,[1] this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction directed to Plaintiff about citizenship information related to "**any party**" that was an LLC. Plaintiff unequivocally responded that it was not an LLC but was an S-Corp. Then just six days before the dispositive motion deadline, after nearly 20 months of litigation, ten depositions, three discovery hearings, and well in excess of half a million dollars in attorneys' fees and costs spent, Plaintiff filed out of the blue a motion to dismiss this case for lack of subject matter jurisdiction. (ECF 91.)  Plaintiff's motion to dismiss was predicated on the purported "discovery" that Plaintiff was not an S-Corp

---

[1] Plaintiff filed its Complaint against OJC in this Court on May 12, 2022.  (ECF 1.)

**App. 074**

but an LLC – a fact that was not only known but deliberately concealed by Plaintiff since this case began.  As a result, this Court and OJC certainly cannot take Plaintiff's word for it that subject matter jurisdiction does not exist, given the repeated and intentional nature of Plaintiff's misrepresentations to this Court and OJC, which have spanned Plaintiff's Complaint and response to this Court's Order to Show Cause (ECF 8), Plaintiff's counsel sitting silently through sworn corporate designee deposition testimony that was false about Plaintiff's actual corporate status, and nearly two dozen other court filings.

To "support" its motion, Plaintiff solely offered this Court and OJC a bewildering labyrinthine of entities, sub-entities, and individual members, many unnamed, including in the Cayman Islands, related to National Christmas Products, LLC.  (ECF 91, pp. 3-5, ¶¶ 11, 15-21.) In the end, after its dizzying trip through its corporate web, Plaintiff stated that some unknown and unnamed "limited partner of Sun Capital Partners VII, L.P. [a Cayman Islands LLC]" is and has been a citizen of Florida, which allegedly destroys diversity subject matter jurisdiction and mandates the dismissal of this nearly-20-months-old litigation.  (ECF 91, pp. 4-5, ¶¶ 19-21, 23-25.)  Astonishingly, ***not a shred of evidence*** was submitted with Plaintiff's motion to dismiss, not even the name of the partner that allegedly destroys jurisdiction.  (*See* ECF 91.)

The Court denied Plaintiff's motion to dismiss without prejudice for failing to meet and confer with OJC.  (ECF 92.)  This morning, the parties met and conferred on this Motion and Plaintiff's soon-to-be-refiled motion to dismiss, but Plaintiff treated it solely as a check the box exercise. Plaintiff refused to consent to any jurisdictional discovery on Plaintiff's corporate web or provide any evidence about it, by claiming that "the Court has no jurisdiction to order discovery."  Plaintiff's self-serving, circular argument is ludicrous and illustrates the bad faith nature of its motion to dismiss and the conferral requirement.

**App. 075**

Plaintiff's supposed late-stage "discovery" of its LLC status, conveniently unearthed after extensive litigation, is not only extremely prejudicial to OJC, but it is also thoroughly disproven by Plaintiff's history of misrepresentations it has made to this Court and OJC about its corporate status.  Along the way, Plaintiff fought to extend discovery deadlines in a vain hope to find a way out of this case that had turned against them. The timeline below of Plaintiff's countless (mis)representations to this Court and OJC about Plaintiff's status as an S-Corp. plainly exposes Plaintiff's scheme to deceive the Court and OJC since the outset of this case, and to preserve an ready escape hatch out of this case. Plaintiff's conduct warrants the harshest of rebukes from this Court and the granting of this Motion.

**TIMELINE**

1.      On August 15, 2017, OJC and Plaintiff "National Christmas Products, **Inc.** DBA National Tree Company" entered into an E-Commerce Vendor Agreement, which is the subject of breach of contract claims by both Plaintiff and OJC.  (ECF 1-3, p. 1; *see* ECF 1 and ECF 44.)

2.      On March 14, 2022, Plaintiff's counsel sent a demand letter to OJC on behalf of "National Christmas Products, **LLC**," threatening legal action.  (ECF 1-4, pp. 1-2.)  Plaintiff's CFO was copied on the demand letter.  (*Id.* at 2.)  The attachment to that letter, an "Accounts Receivable Aging Report," was also dated March 14, 2022, and identified "National Christmas Products, **Inc**." as the interested party. Plaintiff attached a copy of this letter and its attached Report as Exhibit 2 to its Complaint.  (*Id.* at 4; ECF 1, p. 4, ¶ 21.)

3.      On May 12, 2022, a full two months after it clearly knew of and identified National Christmas Products, LLC, Plaintiff and its counsel filed their Complaint against OJC certifying that "Plaintiff National Christmas Products, **Inc.** D/B/A National Tree Company is an **S**

**App. 076**

**corporation** organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016."[2]  (ECF 1, p. 2, ¶ 6 (emphasis added).)

4.      The very next day, on May 13, 2022, this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction, which stated in relevant part:

> [I]t is **ORDERED AND ADJUDGED** that on or before **May 19, 2022**, *Plaintiff* *shall file an Addendum to its Complaint listing the citizenship of every member* *of <u>any Party</u> that is a limited liability company* or any other form of unincorporated business or association. If a member of an LLC is itself an LLC, then Plaintiff must likewise allege the membership of the member LLC.  (ECF 6, p. 2 (third emphasis added).)

5.      In response to the Court's Order to Show Cause, Plaintiff filed an Addendum and specifically re-certified to the Court what evidently was a knowingly false factual contention that "National Tree Company is an **S corporation** organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016."  (ECF 8, p. 2, ¶ 8.)  Nowhere in Plaintiff's response to the Order to Show Cause did Plaintiff mention a word about National Christmas Products, **LLC** or that the LLC was allegedly the real party in interest. (*See* ECF 8.)  Nor did Plaintiff identify any mysterious Florida resident that may have any interest in Plaintiff's company.

6.      Plaintiff's Complaint, its response to the Order to Show Cause, and all its pleadings, motions, and other papers filed before this Court were subject to Fed. R. Civ. P. 11(b)(3), which explicitly states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—**an attorney** or unrepresented party **certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the factual contentions have evidentiary support** or, if specifically so identified, will likely

---

[2] This is the same address identified in Plaintiff's demand letter that listed the LLC.  (ECF 1-4, p. 2.)

have evidentiary support after a reasonable opportunity for further investigation or discovery.  (emphasis added.)

7.      Based on the foregoing, Plaintiff and its counsel certainly knew of the existence of National Christmas Products, LLC before they filed Plaintiff's Complaint and response to the Order to Show Cause and that Plaintiff's corporate status was allegedly that of an LLC, not an S-Corp. (*See* ECF 1-4, pp. 1-2.)  Plaintiff and its counsel were also under an obligation as mandated by Rule 11 and this Court's Order to Show Cause to inquire about the factual contentions it made to the Court and OJC about Plaintiff's corporate status.

8.      Nonetheless, Plaintiff subsequently filed over the next 19+ months **nearly two dozen** pleadings, motions, and other papers with this Court, maintaining that Plaintiff was a corporation, an "**Inc.**"  (*See generally* Court Docket.)

9.      OJC took the depositions of six of Plaintiff's corporate employees and upper management and all of them testified under oath that they worked for Plaintiff National Christmas Products, Inc.  None of Plaintiff's witnesses testified that they worked for an LLC, or even mentioned an LLC, during their testimony.  Nor did Plaintiff's counsel clarify that an LLC was supposedly the proper party, even after November 13, 2023 when Plaintiff's counsel admittedly knew that the proper party was allegedly the LLC (ECF 91, p. 2, ¶ 10).

10.     Plaintiff also sought and obtained two extensions to the scheduling order, all the while concealing its alleged status as an LLC from this Court and OJC.  (ECF 55 & 75.)

11.     Plaintiff now contends that "[o]n November 13, 2023, Plaintiff's CFO informed [counsel] that Plaintiff is not an S-Corp." but rather an LLC. (ECF 91, p. 2, ¶ 10.)

12.     According to Plaintiff in its motion to dismiss, "National Christmas Products, Inc. was **merged out of existence** and into National Christmas Products, LLC, a Delaware LLC, in or

**App. 078**

about October 2019," ***two-and-a-half years before*** Plaintiff even filed this lawsuit.  (ECF 91, p. 3, ¶ 11 (emphasis added).)

13.     Incredibly, ***at no time*** between November 13, 2023 and the filing of its motion to dismiss on January 4, 2024 did Plaintiff notify OJC or this Court of this fact or that there was any potential issue with subject matter jurisdiction.

14.     To the contrary, Plaintiff and its counsel intentionally withheld this information, even during subsequent depositions on November 20 and December 4, 2023 where Plaintiff's two Rule 30(b)(6) witnesses testified under oath that they worked for Plaintiff – *i.e.*, National Christmas Products, Inc.  For instance, Plaintiff's corporate designee, Dennis Cooke, testified on November 20, 2023 as follows:

> Q:     I take it when I am referring to National Tree today, and we know that this is the company that you work for, the Plaintiff [National Christmas Products, Inc. d/b/a National Tree Company] in this lawsuit?
> A:     Yes.
> Q:     I do not have to say out the whole corporate name, we know what we are talking about?
> A:     Yes, that is fine.

(*See, e.g.*, Ex. A, 6:1 - 7:1.)[3]  Even though Plaintiff's counsel admittedly knew this to be undoubtedly false as of no later than November 13, 2023, Plaintiff's counsel stayed silent, did not clarify the record, did not supplement its discovery responses, and concealed Plaintiff's false testimony.

16.     To that end, Plaintiff and its counsel kept its allegedly true corporate status secret until it dropped its motion to dismiss for lack of subject matter jurisdiction out of the blue on

---

[3] Ex. A to this Motion is a true and correct copy of pages from the Rule 30(b)(6) deposition of Plaintiff, given by Plaintiff's Controller, Dennis Cooke on November 20, 2023, a week after Plaintiff's counsel allegedly learned of the LLC issue.

**App. 079**

January 4, 2024, asking the Court to dismiss this case on the eve of the dispositive motion deadline based on absolutely no evidence.  (ECF 91.)

**CONCLUSION**

Only after Plaintiff's claims have fallen apart and instead of dismissing its claims with prejudice under Fed. R. Civ. P. 41, Plaintiff now seeks an escape route based on information that it has known for ***over three years***.  Based on its own admitted facts, Plaintiff has engaged in a fraud on the Court.  Plaintiff and its counsel's failure to remedy any alleged jurisdictional issues before filing its Complaint or in response to this Court's Order to Show Cause has potentially wasted this Court's limited and valuable judicial resources for over the past year-and-a-half, which is clearly sanctionable.  *See Black v. Black*, 22-CV-03098-DDD-NRN, 2023 WL 1989793, at *14 (D. Colo. Feb. 14, 2023), *report and recommendation adopted*, 122CV03098DDDNRN, 2023 WL 3976422 (D. Colo. Apr. 5, 2023), *appeal dismissed*, 23-1155, 2023 WL 7439109 (10th Cir. July 19, 2023) (issuing sanctions against the attorney, and referring attorney to disciplinary authorities, when "th[e] Court issued its show cause order identifying potential procedural and jurisdictional problems" and it turned out that the case was brought "in bad faith, vexatious, and without reasonable basis"); *U.S. Bank Nat'l Ass'n for Chase Mortgage Fin. Corp. Multiclass Mortgage Pass-Through Certificates Chaseflex Tr. Series 2006-1 v. First Morgan*, 299 F. Supp. 3d 1202, 1210 n.4 (D.N.M. 2017) (finding that sanctions against an "attorney" were warranted, for failing to properly respond to a show cause order on subject matter jurisdiction).

Moreover, Plaintiff and its counsel's dilatory conduct has also been extremely prejudicial to OJC who has spent hundreds of thousands of dollars in attorneys' fees and costs, and valuable time over the past 19+ months litigating not only against Plaintiff's spurious claims but also prosecuting its own substantial counterclaims against Plaintiff.  To get to the bottom of Plaintiff's

**App. 080**

corporate spider web and the issue of subject matter jurisdiction, and importantly to determine what exactly Plaintiff and its counsel knew, when they knew it, and the details of any investigations they did (or didn't do) in response to the Court's Order to Show Cause and before filing Plaintiff's motion to dismiss, OJC needs the opportunity to conduct expedited discovery on these matters.

So as to avoid the immediate expense and potential waste of filing dispositive motions and pretrial submissions with Plaintiff's self-created subject matter jurisdiction question looming, OJC also respectfully requests that the Court pause all pending deadlines for at least 60 days, including the dispositive motion deadline set for January 10, 2024 (a request unopposed by Plaintiff), to allow OJC to conduct discovery on the issues raised by Plaintiff's motion to dismiss and to brief the issue after that discovery is completed. The Court has wide discretion with respect to subject matter jurisdictional discovery, but OJC "must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991); *Majd-Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) (a party "should be given the opportunity to discover facts that would support its allegations of jurisdiction"); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) ("Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction. As we said in *Blanco*, 'the rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction.'")

As shown above, Plaintiff has engaged in a nearly-two-year-long deception of this Court and OJC on Plaintiff's corporate status and the alleged real party in interest. Certainly nothing that Plaintiff says at this point can be taken at face value. Quite the contrary, the Court should permit OJC to get to the bottom of Plaintiff's unsupported allegations that it seeks to use to escape

8

**App. 081**

justice in this case.  Accordingly, for good cause shown, OJC respectfully requests that the Court enter an Order:

(a)    Pausing all upcoming deadlines by at least 60 days, including the impending dispositive motion deadline that is currently set for January 10, 2024;

(b)    Allowing expedited discovery by OJC of Plaintiff and its LLC's members, partners, attorneys, and related affiliates and entities[4] pursuant to the following schedule:

- OJC may serve Requests for Production, Interrogatories, and Requests for Admission on issues related to subject matter jurisdiction;

- Within 10 days thereafter, Plaintiff shall respond to all OJC's discovery requests and produce all responsive documents; and

- Thereafter, Plaintiff shall cooperate with OJC in scheduling and producing for depositions the entities and witnesses outlined in footnote 4 below.[5]

---

[4] The Order should permit OJC to:

(i) obtain documents related to all of National Christmas Products, LLC, all its related companies, members, and partners, including those listed in Plaintiff's motion to dismiss, as well as the agreements related to those relationships, their ownership interests, duration and time frames of the interests, their citizenship during the relevant time periods, and any distributions, contributions, or other benefits that they received or provided as part of their ownership in those entities (ECF 91);

(ii) ask interrogatories about the relationships between these members and related information;

(iii) take the depositions of the entities and the individual members in the maze of entities and persons related to National Christmas Products, LLC that allegedly destroy diversity subject matter jurisdiction; and

(iv) take the depositions of Plaintiff's CFO referenced in its demand letter (ECF 1-4, p. 2) and motion to dismiss (ECF 91, p. 2, ¶ 10), its counsel, and all others involved in any investigations (or lack thereof) related to Plaintiff's responses to the Order to Show Cause and referenced in Plaintiff's motion to dismiss.

[5] With any objections and discovery disputes proceeding pursuant to Judge Strauss's expedited Discovery Procedures Order.  (ECF 36.)

**App. 082**

(c)     That within 7 days after the last deposition, Plaintiff must meet and confer and may file a motion to dismiss for lack of subject matter jurisdiction, and OJC may file its response within 7 days thereafter, with no replies permitted.  OJC respectfully requests that the Court endeavor to rule on the motion to dismiss within 7 days of the filing of OJC's response.

(d)     Sanctioning Plaintiff for its numerous misrepresentations to the Court and OJC that are already known of, although the levying of those sanctions may be held in abeyance while OJC continues its discovery related to Plaintiff's fraud on the Court.  *See Martin v. Automobili Lamborghini Exclusive, Inc.*, No. 98-6621-CIV-DIMITROULEAS, 2000 WL 36745512, at *11 (S.D. Fla. Mar. 7, 2000) (sanctioning party for making multiple misrepresentations to the Court).

(e)     Granting OJC such other relief as the Court finds just and proper.

## REQUEST FOR EXPEDITED RULINGS

Given that the dispositive motion deadline is in two days, on January 10, 2024 (ECF 80, p. 2, ¶ 2), OJC requests, pursuant to S.D. Fla. LR 7.1(d)(2), for this Motion to be decided on an expedited basis, and that the Court rule on extending the dispositive motion deadline by January 10.  An expedited ruling is requested on the remainder of the Motion by January 15, 2024.

## PRE-FILING CONFERENCE CERTIFICATION

Prior to filing this Motion, on January 8, 2024, counsel for OJC met and conferred with Plaintiff's counsel about whether Plaintiff would be willing to resolve by agreement the issues raised in this Motion.  Plaintiff agreed to extending the dispositive motion deadline, but Plaintiff opposed the remainder of the relief sought in this Motion.

**App. 083**

Dated: January 8, 2024                Respectfully Submitted,


                                      By: /s/ Shlomo Y. Hecht
                                      Shlomo Y. Hecht
                                      Florida State Bar No.: 127144
                                      Shlomo Y. Hecht, P.A.
                                      3076 N Commerce Pkwy
                                      Miramar, FL  33025
                                      Phone: (954) 861-0025
                                      Email: sam@hechtlawpa.com

                                      Aaron W. Davis (admitted *Pro Hac Vice*)
                                      VALHALLA LEGAL, PLLC
                                      P.O. Box 735
                                      Custer, SD  57730-0735
                                      Phone: (763) 957-2397
                                      Email: davis@valhallalegal.com

                                      *Attorneys for OJ Commerce, LLC*




## CERTIFICATE OF TRANSMITTAL / SERVICE

I HEREBY certify that on January 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served this document upon Plaintiff's counsel of record.


                                      /s/Shlomo Y. Hecht
                                      Shlomo Y. Hecht

**App. 084**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

          Plaintiff,

v.

OJ COMMERCE, LLC,

          Defendant.

_____/

## ORDER ON EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION

THIS CAUSE is before the Court's upon Defendant OJ Commerce, LLC ("Defendant")'s Expedited Motion to Amend the Scheduling Order and for Expedited Discovery on Subject Matter Jurisdiction [DE 93] ("Motion"), filed herein on January 8, 2023. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

In the Motion, Defendant seeks to: (1) extend all remaining deadlines, including the dispositive motion deadline, by sixty (60) days; (2) obtain expedited jurisdictional discovery relating to Plaintiff and its members, partners, attorneys, and related affiliates and entities; and (3) sanction Plaintiff for its alleged misrepresentations to the Court and Defendant. *See* [DE 93]. Defendant's Motion is premised on Plaintiff's Motion to Dismiss for lack of subject matter jurisdiction, which the Court denied without prejudice on January 4, 2024 for failure to confer. *See* [DE's 91, 92].

**App. 085**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion [DE 93] is hereby **DENIED without prejudice** to renew if Plaintiff refiles its Motion to Dismiss for lack of subject matter jurisdiction.[1]

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of January 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record

---

[1] If Defendant intends to file a motion similar to the instant one, Defendant is advised to file separate motions when requesting relief from different judges. For example, a motion to amend the scheduling order (District Judge) and a motion for discovery sanctions (Magistrate Judge) should be briefed and filed as two separate motions.

**App. 086**

**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:22-cv-60897-WPD**

NATIONAL CHRISTMAS PRODUCTS,
INC. D/B/A NATIONAL TREE
COMPANY, a New Jersey Corporation

       Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company

       Defendant.

_____/

## PLAINTIFF'S MOTION TO DISMISS WITHOUT PREJUDICE

Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("Plaintiff"), by and through undersigned counsel, moves to dismiss the claims and counterclaims in this Action without prejudice pursuant to FRCP 12(h)(3), and states:

1.  On May 12, 2022, Plaintiff filed its Complaint against Defendant, seeking damages in the amount of $781,474.14 for (i) breach of contract, (ii) account stated and (iii) goods sold and delivered.

2.  The Complaint alleged that diversity jurisdiction existed as between Plaintiff, a New Jersey S-Corp., and Defendant, a Delaware LLC whose sole member is a resident of Florida.

3.  On May 13, 2022, the Court issued an order to show cause (the "OSC") requiring that Plaintiff file an addendum to its Complaint listing the citizenship of every member of any party that is a limited liability company or any other form of unincorporated business or association. *See* D.E. 6. As Counsel for Plaintiff believed at the time that Plaintiff was (a) a New Jersey S-Corp.,

**App. 087**

and (b) the proper Plaintiff party, Plaintiff's response to the OSC was directed to the membership and citizenship of OJ Commerce.

4.   On July 8, 2022, Defendant moved to dismiss all three claims. On August 23, 2022, this Honorable Court denied Defendant's motion to dismiss the breach of contract and account stated claims, and granted dismissal of Plaintiff's goods sold and delivered claim.

5.   On September 20, 2022, Defendant filed its Answer, Affirmative Defenses, and Counterclaims. Defendant's counterclaims against Plaintiff included claims for (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) breach of implied warranty, (iv) tortious interference with business relationship, (v) fraud and (vi) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

6.   Defendant alleged that diversity jurisdiction existed as between Plaintiff and Defendant, for purposes of Defendant's counterclaims, because Plaintiff was a New Jersey S-Corp. and Defendant was a Delaware LLC whose sole member resided in Florida.

7.   On November 21, 2022, Plaintiff moved to dismiss all six counterclaims. On January 13, 2023, this Honorable Court granted Plaintiff's motion to dismiss in part, and dismissed without prejudice (and with leave to amend) Defendant's breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with business relationship and FDUTPA claims, and denied dismissal of the breach of implied warranty and fraud claims.

8.   On January 27, 2023, Defendant filed Amended Counterclaims, including the same six counterclaims. These amended counterclaims again alleged the existence of diversity jurisdiction as between Plaintiff and Defendant on the grounds that Plaintiff was a New Jersey S-Corp. and Defendant is a Delaware LLC whose sole member is a resident of Florida.

9.   On February 10, 2023, Plaintiff filed its answer to Defendant's Amended Counterclaims.

2

**App. 088**

10. Thereafter, the parties engaged in discovery.  Plaintiff did not submit a statement pursuant to FRCP 7.1 at the time it filed the Complaint, nor did it file a Rule 7.1 statement at the time it answered Defendant's counterclaims; Defendant also never submitted a Rule 7.1 statement.

11. On November 13, 2023, Plaintiff's CFO informed counsel that Plaintiff is not an S-Corp., as alleged in the Complaint and Defendant's counterclaims, but rather an LLC.

12. Thereafter, counsel conducted an investigation with respect to Plaintiff's corporate identity; that investigation revealed that National Christmas Products, Inc. was merged out of existence and into National Christmas Products LLC, a Delaware LLC, in or about November 8, 2019. A copy of the filing certification made with the New Jersey Department of State on November 14, 2019, which includes the Agreement and Plan of Merger (the "APM") as between National Christmas Products LLC and National Christmas Products, Inc., is annexed as **Exhibit 1** hereto.

13. Specifically, Section 1 of the APM notes that as of the "effective time" of the merger (as defined in the APM), National Christmas Products, Inc., would cease to exist.

14. The APM also notes that National Tree Intermediary, LLC is the sole member of National Christmas Products, LLC.

15. While Plaintiff and Defendant are both Delaware LLCs, "for purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its member(s), not its state of formation or its principal place of business." *Atl. Healthcare, LLC v. Argonaut Ins. Co.*, No. 2:19-CV-14420, 2020 WL 4501833, at *2 (S.D. Fla. Jan. 17, 2020) (*citing Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004)); *see also Stanley v. MFREV Lofts at Sodo, LLC*, No. 618CV1819ORL41KRS, 2018 WL 11484336, at *1 (M.D. Fla. Nov. 8, 2018) ("But citizenship of a limited liability company

is determined by the citizenship of each member, as opposed to the state of formation or its principal place of business").

16. Defendant OJ Commerce, LLC, has one member, who is a citizen of Florida. Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Florida.

17. Upon learning that National Christmas Products LLC was the true corporate identity of Plaintiff, counsel further investigated its ownership structure in order to determine its citizenship for purposes of diversity jurisdiction.

18. National Christmas Products, LLC is wholly owned by National Tree Intermediary, LLC, which is wholly owned by National Tree Holding, LLC. These entities are Delaware LLCs.

19. National Tree Holding, LLC has thirteen (13) members: (1) Puleo Acquisition Corp., a New Jersey corporation; (2) Joseph Puleo, a citizen of New Jersey; (3) Salvatore Puleo, a citizen of New Jersey; (4) Richard Puleo, a citizen of New Jersey; (5) National Tree Ultimate Holding, LLC, a Delaware LLC; (6) MC Credit Fund IA (Loan Funding) L.P., a Delaware L.P.; (7) MC Credit Fund I LP, a Delaware L.P.; (8) MC Credit Fund III (Loan Funding) LP, a Delaware L.P.; (9) MC Credit Fund N (Loan Funding) LP, a Delaware L.P.; (10) MC Credit Fund III (Delaware) LP, a Delaware L.P.; (11) MC Credit Fund III-U (Delaware) LP, a Delaware L.P.; (12) Digital Fuel Seasonal Décor, LLC, a Delaware LLC; and (13) National Tree Management Holding, LLC, a Delaware LLC. A true and correct copy of the Second Amended and Restated Limited Liability Company Agreement for National Tree Holding, LLC, is annexed hereto as **Exhibit 2**.

20. Annexed hereto as **Exhibit 3** is a pro forma structure chart showing the corporate ownership of the various National Tree entities.

21. National Tree Ultimate Holding, LLC is wholly owned by Sun National Tree, L.P., a Cayman Islands Limited Partnership.

22. The General Partner of Sun National Tree, L.P. is Sun Holdings VII, LLC, a Cayman Islands LLC, and the sole Limited Partner is Sun Capital Partners VII, L.P., a Cayman Islands Limited Partnership. Sun Capital Partners VII, L.P. is the sole member of Sun Holdings VII, LLC.

23. According to the Florida Secretary of State, the General Partner of Sun Capital Partners VII, L.P. is Sun Capital Advisors VII, L.P., a Cayman Islands Limited Partnership. Per the Florida Secretary of State, the General Partner of Sun Capital Advisors VII L.P. is Sun Capital Partners VII, LLC, which is a Cayman Islands LLC.

24. A copy of the Application by Foreign Limited Partnership or Limited Liability Limited Partnership to Transact Business in Florida (the "Florida Application") for Sun Capital Advisors VII, L.P., is annexed hereto as **Exhibit 4**; it shows that the general partner of Sun Capital Advisors VII, L.P. is Sun Capital Partners VII, LLC.

25. Based on counsel's investigation, which was limited to documents in National Christmas Products LLC's possession and publicly-available information (including filings with state and federal regulators), counsel was able to determine that Sun Capital Partners VII, L.P., had limited partners who are citizens of California, Washington D.C., Ohio, Israel, and Maryland. Counsel did not find any partners who were citizens of Florida until December 23, 2023, when counsel for Plaintiff learned that at least one limited partner of Sun Capital Partners VII, L.P. is a citizen of Florida. The specific identity of this limited partner, and his status as a limited partner of Sun Capital Partners VII, L.P. (as opposed to a manager or officer), was confirmed on December 25, 2023.

26. Upon learning this, counsel requested more specific information as to this limited partner, specifically including whether this limited partner had been a limited partner continuously from May 2022 until the present. On December 28, 2023, counsel for Plaintiff confirmed that this

individual had been a limited partner of Sun Capital Partners VII, L.P., continuously since May 2022.

27. This limited partner's name is Mark Hajduch. Given that it contains both commercially sensitive material as well as personal financial information for Mr. Hajduch, Plaintiff has not filed a copy of Mr. Hajduch's executed limited partnership agreement as an exhibit to this motion.

28. In light of the complexity of Plaintiff's organizational structure, and the fact that Plaintiff does not control the documentation regarding the identities of the limited partners of Sun Capital Partners or MC Credit Fund, it took over a month to fully investigate and determine the citizenship of Plaintiff.

29. As Plaintiff is an LLC and at least one member (Mark Hajduch) is a citizen of Florida, Plaintiff is a citizen of Florida.

30. Defendant OJ Commerce, LLC is also a citizen of Florida, based on the citizenship of its sole member, Jacob Weiss.

31. As a result of the foregoing, Plaintiff believes this Court lacks subject matter jurisdiction and this case—including both the Complaint and Defendant's counterclaims—must be dismissed without prejudice under FRCP 12(h)(3).

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Plaintiff conferred with Defendant's counsel regarding the relief requested in this Motion in a good faith effort to resolve the issues by phone on Monday, January 8, 2024 at 10:15 am, but the parties have been unable to resolve the issues.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of January, 2024, I served the foregoing via

**App. 092**

electronic filing through this Court's CM/ECF system upon Shlomo Y. Hecht, Esq. and Aaron W. Davis, Esq., attorneys for Defendant, OJ Commerce, LLC, at sam@hechtlawpa.com; davis@valhallalegal.com.

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
Tel: 212-370-1300

    /s/ *John B. Horgan Esq.*
John Horgan, Esq. (admitted pro hac vice)
jhorgan@egsllp.com
Joanna R. Cohen, Esq.
JCohen@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax


    /s/ *Kyle A. Johnson, Esq.*

Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

*Counsel for Plaintiff, National Christmas Products, Inc. D/B/A National Tree Company*

**App. 093**

# EXHIBIT 1

609–984–6851                                          11:40:51 a.m.      11–15–2019        3 /8

### STATE OF NEW JERSEY
### DEPARTMENT OF TREASURY
### FILING CERTIFICATION (CERTIFIED COPY)
#### 0600464091

### NATIONAL CHRISTMAS PRODUCTS, LLC

*I, the Treasurer of the State of New Jersey, do hereby certify, that the above named business did file and record in this department the below listed document(s) and that the foregoing is a true copy of the*
*Certificate of Merger file November 14th, 2019*
*as the same is taken from and compared with the original(s) filed in this office on the date set forth on each instrument and now remaining on file and of record in my office.*



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 15th day of November, 2019*

*Elizabeth Maher Muoio*
*State Treasurer*

Certificate Number:   141872856

Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

*Page 1 of 1*

**App. 095**

609-984-6850                                      11:43:06 a.m.    11-15-2019       4/8

MRG

FILED

NOV 14 2019

STATE TREASURER

UMC-1  Rev. 3/2013                New Jersey Division of Revenue & Enterprise Services
                                    **Certificate of Merger/Consolidation**
                                *(Limited Liability Co.'s, Limited Partnerships & Partnerships)*

To file electronically:
1. Enter the information requested below and sign by typing your name in the signature field. The form can only be filled in using Adobe Acrobat Reader 9.1 or greater. (See the pages following this form for field by field instructions, and notes on delivery and processing of work requests.)
2. Click the "Add Attachments" button to add attachments if required (Check the field by field instructions to see if you must include an attachment(s)).
3. After the form has been filled in properly, please save a copy to your computer so that you can upload the form to the State of New Jersey Division of Revenue & Enterprise Services Central Forms Repository Web application by following the instructions in the next step.
4. Click the "Open the Central Forms Repository Home Page to start the Form Submission Process" button at the bottom of the form. (This action will launch the State of New Jersey Division of Revenue & Enterprise Services Central Forms Repository Web application. If you have not created an account in the application, you will need to do so before using the online Web application. Once your account is created, please login to the application and follow the instructions for submitting your form and payment online.)

This form may be used to record the merger or consolidation of a limited liability company, limited partnership or partnership with or into another business entity or entities, pursuant to NJSA 42. Applicants must insure strict compliance with the requirements of State law and insure that all filing requirements are met. This form is intended to simplify filing with the New Jersey State Treasurer. Applicants are advised to seek out private legal advice before submitting filings to the State Treasurer's office.

1.  Type of Filing (check one):           ☒ Merger      ☐ Consolidation

2.  Name of Surviving Business Entity: National Christmas Products, LLC

3.  Address of the Surviving Business Entity: 2 Commerce Drive, Cranford, NJ 07016

4.  Name(s)/Jurisdiction(s) of All Participating Business Entities:

| Name | Jurisdiction | Identification # Assigned by by Treasurer (if applicable) |
|---|---|---|
| National Christmas Products, Inc. | New Jersey | 0100467768 |
| National Christmas Products, LLC | New Jersey | 0600464091 |

5.  Service of Process Address (For use if the surviving business entity is not authorized or registered by the State Treasurer):

The surviving business entity agrees that it may be served with process in this State in any action, suit or proceeding for the enforcement of any obligation of a merging or consolidating LLC, LP or partnership. The Treasurer is hereby appointed as agent to accept service of process in any such action, suit, or proceeding which shall be forwarded to the Surviving Business Entity at the Service of Process address stated above.

6.  Effective Date (see instructions):

The undersigned represent(s) that the agreement of merger/consolidation is on file at the place of business of the surviving business entity and that an agreement of merger/consolidation has been approved and executed by each business entity involved. Additionally, a copy of the merger/consolidation agreement has been or shall be furnished by the surviving entity to any member or any person having an interest.

The undersigned also represent(s) that they are authorized to sign on behalf of the surviving business entity.

| Signature | Name | Title | Date |
|---|---|---|---|
| *[signature]* | Joseph A. Puleo | President | 11/8/19 |
| *[signature]* | Joseph A. Puleo | President | 11/8/19 |

**Important Notes** --New Jersey law prohibits domestic LLCs, LPs and partnerships from merging/consolidating with another business entity, if authority for such merger/consolidation in not granted under the laws of the jurisdiction under which the other business entity was organized. Also, a merger/consolidation certificate may be filed pursuant to Title 42, 42:2A or 42:2B only if the surviving or resulting business entity is a limited partnership, limited liability company or partnership. Also, at least one participating business entity must be a limited partnership or limited liability company. If a for-profit domestic or foreign corporation participates or is the survivor, file the merger/consolidation pursuant to Title 14A. Title 15A corporations are not authorized to participate in mergers/consolidations involving LPs, LLCs, partnerships and for-profit corporations.

N1060 - 07/07/2015 Wolters Kluwer Online

# AGREEMENT AND PLAN OF MERGER

AGREEMENT AND PLAN OF MERGER ("**Agreement**"), dated as of November 8, 2019, by and between National Christmas Products, LLC, a Delaware limited liability company ("**Acquiror**"), and National Christmas Products, Inc., a New Jersey corporation (the "**Company**").

**WHEREAS**, National Tree Intermediary, LLC, the sole member of the Acquiror, and the Board of Directors and the shareholders of the Company have approved and adopted this Agreement and the transactions contemplated by this Agreement after making a determination that this Agreement and such transactions are advisable and fair to, and in the best interests of, such limited liability company and its members; and

**WHEREAS**, pursuant to the transactions contemplated by this Agreement and on the terms and subject to the conditions set forth herein, the Company, in accordance with the Delaware Limited Liability Company Act (" **Delaware Act**") and the New Jersey Business Corporation Act ("**BCA**"), will merge with and into the Acquiror, with the Acquiror as the surviving entity (the "**Merger**").

**NOW, THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Merger</u>. Upon the terms and subject to the conditions set forth in this Agreement, and in accordance with Section 18-209 of the Delaware Act and 14A:10-1 et. seq. of the BCA, the Company shall be merged with and into the Acquiror at the Effective Time (as hereinafter defined). Following the Effective Time, the separate corporate existence of the Company shall cease, and the Acquiror shall continue as the surviving entity (the "**Surviving Company**"). The effects and consequences of the Merger shall be as set forth in this Agreement, the Delaware Act and the BCA.

2. <u>Effective Time</u>.

(a)     Subject to the provisions of this Agreement, on the date hereof, the parties shall duly prepare, execute and file a certificate of merger complying with Section 18-209 of the Delaware Act with the Secretary of State of the State of Delaware with respect to the Merger and shall duly prepare, execute and file a certificate of merger complying with 14A:10-4.1 of the BCA with the Secretary of State of the State of New Jersey with respect to the Merger (collectively, the "**Certificates of Merger**"). The Merger shall become effective as of 4:00 p.m. on November__, 2019 (the "**Effective Time**").

(b)     The Merger shall have the effects set forth in the Delaware Act, including without limitation, Section 18-209 of the Delaware Act and 14A:10-6 of the BCA. Without limiting the generality of the foregoing, from the Effective Time, (i) all the properties, rights, privileges, immunities, and powers of the Company shall vest in the Acquiror, as the Surviving Company, and (ii) all debts, liabilities, obligations and duties of the Company shall become the debts, liabilities, obligations and duties of the Acquiror, as the Surviving Company.

3.     <u>Organizational Documents</u>. The certificate of formation of the Acquiror in effect at the Effective Time, shall be the certificate of formation of the Surviving.

4.     <u>Conversion of Securities</u>. At the Effective Time, by virtue of the Merger and without any action on the part of the Acquiror or the Company or the holders of shares of capital stock of the Company:

(a)     each share of common stock of the Company, no par value ("**Company Common Stock**"), issued and outstanding immediately prior to the Effective Time shall be automatically converted into one unit of membership interest in the Surviving Company ("**Surviving Company Units**") without any action on the party of the Company;

(b)     each outstanding unit of membership interest in the Acquiror issued and outstanding immediately prior to the Effective Time will be automatically cancelled and retired at the Effective Time, by virtue of the Merger and without any action on the part of the Acquiror or on the part of the holder thereof.   The cancellation of such units of membership interest of the Acquiror shall be without the payment of any consideration.

5.     <u>Entire Agreement</u>. This Agreement together with the Certificates of Merger constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, representations and warranties, and agreements, both written and oral, with respect to such subject matter.

6.     <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

7.     <u>No Third-Party Beneficiaries</u>. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Agreement.

8.     <u>Headings</u>. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

9.     <u>Amendment and Modification; Waiver</u>. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

10.     <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is

2

invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

11.     Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of the State of Delaware.

12.     Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

3

**App. 099**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

NATIONAL CHRISTMAS PRODUCTS, LLC

By:
Name: Joseph A. Puleo
Title: President

NATIONAL CHRISTMAS PRODUCTS, INC.

By:
Name: Joseph A. Puleo
Title: President

Docs #3998962-v1

4

**App. 100**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

                Plaintiff,

-vs-

OJ COMMERCE, LLC,

                Defendant.

_____/

**DEFENDANT'S EXPEDITED MOTION TO AMEND THE SCHEDULING ORDER
AND FOR EXPEDITED DISCOVERY ON SUBJECT MATTER JURISDICTION**

Defendant OJ Commerce, LLC ("OJC" or "Defendant") hereby files this expedited motion to amend the scheduling order and for expedited discovery on subject matter jurisdiction, and in support thereof states:

**INTRODUCTION**

The day after Plaintiff National Christmas Products, Inc. ("Plaintiff") filed this action,[1] this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction directed to Plaintiff about citizenship information related to "**any party**" that was an LLC. Plaintiff unequivocally responded that it was not an LLC but was an S-Corp. Then just six days before the dispositive motion deadline, after nearly 20 months of litigation, ten depositions, three discovery hearings, and well in excess of half a million dollars in attorneys' fees and costs spent, Plaintiff filed out of the blue a motion to dismiss this case for lack of subject matter jurisdiction. (ECF 95.) Plaintiff's motion to dismiss was predicated on the purported "discovery" that Plaintiff was not an S-Corp but an LLC – a fact that was not only known but deliberately concealed by

---

[1] Plaintiff filed its Complaint against OJC in this Court on May 12, 2022. (ECF 1.)

**App. 101**

Plaintiff since this case began.  As a result, this Court and OJC certainly cannot take Plaintiff's word for it that subject matter jurisdiction does not exist, given the repeated and intentional nature of Plaintiff's misrepresentations to this Court and OJC, which have spanned Plaintiff's Complaint and response to this Court's Order to Show Cause (ECF 8), Plaintiff's counsel sitting purposely silent through sworn corporate designee deposition testimony that was false about Plaintiff's actual corporate status, and nearly two dozen other court filings.

To "support" its motion, Plaintiff offered this Court and OJC only a bewildering maze of entities, sub-entities, and individual members, many unnamed, including in the Cayman Islands, related to National Christmas Products, LLC.  (ECF 95, pp. 3-6, ¶¶ 14, 18-27.)  In the end, after its dizzying trip through its corporate web, Plaintiff stated that a "limited partner of Sun Capital Partners VII, L.P. [a Cayman Islands LLC]" allegedly called Mark Hajduch is and has been a citizen of Florida, which allegedly destroys diversity subject matter jurisdiction and mandates the dismissal of this nearly-20-months-old litigation.  (*Id.* and pp. 5-6, ¶¶ 25-27.)  Astonishingly, there is no evidence to support anywhere near this entire chain of entities and members, let alone the membership agreement or citizenship of the mysterious limited partner that allegedly destroys diversity.  (*See* ECF 95.)

The Court denied Plaintiff's motion to dismiss without prejudice for failing to meet and confer with OJC.  (ECF 92.)  The parties thereafter met and conferred on this Motion and Plaintiff's refiled motion to dismiss, but Plaintiff treated it solely as a check the box exercise. Plaintiff refused to consent to any jurisdictional discovery on Plaintiff's corporate web or provide any evidence about it, by claiming that "the Court has no jurisdiction to order discovery." Plaintiff's self-serving, circular argument is ludicrous and illustrates the bad faith nature of its motion to dismiss and the conferral requirement.

**App. 102**

Plaintiff's supposed late-stage "discovery" of its LLC status, conveniently unearthed after extensive litigation, is not only extremely prejudicial to OJC, but it is also thoroughly disproven by Plaintiff's history of misrepresentations it has made to this Court and OJC about its corporate status.  Along the way, Plaintiff fought to extend discovery deadlines in a vain hope to find a way out of this case that had turned against them. The timeline below of Plaintiff's countless (mis)representations to this Court and OJC about Plaintiff's status as an S-Corp. plainly exposes Plaintiff's scheme to deceive the Court and OJC since the outset of this case, and to preserve a ready escape hatch out of this case.  Plaintiff's conduct alone warrants the granting of this Motion.

## TIMELINE

1.      On August 15, 2017, OJC and Plaintiff "National Christmas Products, **Inc.** DBA National Tree Company" entered into an E-Commerce Vendor Agreement, which is the subject of breach of contract claims by both Plaintiff and OJC.  (ECF 1-3, p. 1; *see* ECF 1 and ECF 44.)

2.      On March 14, 2022, Plaintiff's counsel sent a demand letter to OJC on behalf of "National Christmas Products, **LLC**," threatening legal action.  (ECF 1-4, pp. 1-2.)  Plaintiff's CFO was copied on the demand letter.  (*Id.* at 2.)  The attachment to that letter, an "Accounts Receivable Aging Report," was also dated March 14, 2022, and identified "National Christmas Products, **Inc.**" as the interested party. Plaintiff attached a copy of this letter and its attached Report as Exhibit 2 to its Complaint.  (*Id.* at 4; ECF 1, p. 4, ¶ 21.)

3.      On May 12, 2022, a full two months after it clearly knew of and identified National Christmas Products, LLC, Plaintiff and its counsel filed their Complaint against OJC certifying that "Plaintiff National Christmas Products, **Inc.** D/B/A National Tree Company is an **S corporation** organized under the laws of the State of New Jersey with its principal place of

# App. 103

business at 2 Commerce Dr., Cranford, New Jersey 07016."[2]  (ECF 1, p. 2, ¶ 6 (emphasis added).)

4.      The very next day, on May 13, 2022, this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction, which stated in relevant part:

> [I]t is **ORDERED AND ADJUDGED** that on or before **May 19, 2022**, ***Plaintiff shall file an Addendum to its Complaint listing the citizenship of every member of <u>any Party</u> that is a limited liability company*** or any other form of unincorporated business or association. If a member of an LLC is itself an LLC, then Plaintiff must likewise allege the membership of the member LLC. (ECF 6, p. 2 (third emphasis added).)

5.      In response to the Court's Order to Show Cause, Plaintiff filed an Addendum and specifically re-certified to the Court what evidently was a knowingly false factual contention that "National Tree Company is an **S corporation** organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016." (ECF 8, p. 2, ¶ 8.)  Nowhere in Plaintiff's response to the Order to Show Cause did Plaintiff mention a word about National Christmas Products, **LLC** or that the LLC was allegedly the real party in interest.  (*See* ECF 8.)  Nor did Plaintiff identify any mysterious Florida resident that may have any interest in Plaintiff's company.

6.      Plaintiff now conveniently claims that "[c]ounsel for Plaintiff believed at the time that Plaintiff was (a) a New Jersey S-Corp., and (b) the proper Plaintiff party, Plaintiff's response to the [Order to Show Cause] was directed to the membership and citizenship of OJ Commerce." (ECF 95, p. 1-2, ¶ 3.)  At best, Plaintiff's counsel admits that they did no investigation whatsoever of Plaintiff and did not even inquire who the proper Plaintiff party was in response to the Order to Show Cause, even after the very same counsel had sent a demand letter on behalf of National Christmas Products, **LLC** only a few months before.  (ECF 1-4, pp. 1-2.)  At worst,

---

[2] This is the same address identified in Plaintiff's demand letter that listed the LLC. (ECF 1-4, p. 2.)

# App. 104

Plaintiff's counsel kept hidden their knowledge about the LLC being the proper party to secure an escape route for later in the case if the need arose, as it now has for Plaintiff. Either way, Plaintiff itself unquestionably knew the answer at that time but chose to conceal the truth.

7.      Plaintiff's Complaint, its response to the Order to Show Cause, and all its pleadings, motions, and other papers filed before this Court were subject to Fed. R. Civ. P. 11(b)(3), which explicitly states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—**an attorney** or unrepresented party **certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. (emphasis added.)

8.      Based on the foregoing, Plaintiff and its counsel certainly knew of the existence of National Christmas Products, LLC before they filed Plaintiff's Complaint and response to the Order to Show Cause and that Plaintiff's corporate status was allegedly that of an LLC, not an S-Corp. (*See* ECF 1-4, pp. 1-2.)  Plaintiff and its counsel were also under an obligation as mandated by Rule 11 and this Court's Order to Show Cause to inquire about the factual contentions it made to the Court and OJC about Plaintiff's corporate status. Admittedly, Plaintiff failed to do so.  (*Compare* ECF 1-4, pp. 1-2 (**LLC** identified by Plaintiff's counsel as party in interest) *with* ECF 95, p. 1-2, ¶ 3 (Plaintiff's counsel identified **Inc**. as party in interest).)

9.      Nonetheless, Plaintiff subsequently filed over the next 19+ months ***nearly two dozen*** pleadings, motions, and other papers with this Court, maintaining that Plaintiff was a corporation, an "**Inc.**" (*See generally* Court Docket.)

10.      OJC took the depositions of six of Plaintiff's corporate employees and upper management and all of them testified under oath that they worked for Plaintiff National

# App. 105

Christmas Products, Inc.  None of Plaintiff's witnesses testified that they worked for an LLC, or even mentioned an LLC, during their testimony.  Nor did Plaintiff's counsel clarify that an LLC was supposedly the proper party, even after November 13, 2023 when Plaintiff's counsel admittedly knew that the proper party was allegedly the LLC (ECF 95, p. 3, ¶ 11).

11.     Plaintiff also sought and obtained two extensions to the scheduling order, all the while concealing its alleged status as an LLC from this Court and OJC.  (ECF 55 & 75.)

12.     Plaintiff now contends that "[o]n November 13, 2023, Plaintiff's CFO informed [counsel] that Plaintiff is not an S-Corp." but rather an LLC. (ECF 95, p. 3, ¶ 11.)

13.     According to Plaintiff in its motion to dismiss, "National Christmas Products, Inc. was **merged out of existence** and into National Christmas Products, LLC, a Delaware LLC, in or about October 2019," **two-and-a-half years before** Plaintiff even filed this lawsuit.  (ECF 95, p. 3, ¶ 12 (emphasis added); ECF 95-1.)

14.     Incredibly, **at no time** between November 13, 2023 and the filing of its motion to dismiss on January 4, 2024 did Plaintiff notify OJC or this Court of this fact or that there was any potential issue with subject matter jurisdiction.

15.     To the contrary, Plaintiff and its counsel intentionally withheld this information, even during subsequent depositions on November 20 and December 4, 2023 where Plaintiff's two Rule 30(b)(6) witnesses testified under oath that they worked for Plaintiff – *i.e.*, National Christmas Products, Inc.  For instance, Plaintiff's corporate designee, Dennis Cooke, testified on November 20, 2023 as follows:

> Q:     I take it when I am referring to National Tree today, and we know that this is the company that you work for, the Plaintiff [National Christmas Products, Inc. d/b/a National Tree Company] in this lawsuit?
> A:     Yes.
> Q:     I do not have to say out the whole corporate name, we know what we are talking about?

# App. 106

A:       Yes, that is fine.

(*See, e.g.,* Ex. A, 6:1 - 7:1.)[3]   Even though Plaintiff's counsel admittedly knew this to be undoubtedly false as of no later than November 13, 2023, Plaintiff's counsel stayed silent, did not clarify the record, did not supplement its discovery responses, and concealed Plaintiff's false testimony.

16.       To that end, Plaintiff and its counsel kept its allegedly true corporate status secret until it dropped its motion to dismiss for lack of subject matter jurisdiction out of the blue on January 4, 2024, asking the Court to dismiss this case on the eve of the dispositive motion deadline based primarily on bare, "trust us" allegations.  (ECF 95.)

## CONCLUSION

Only after Plaintiff's claims have fallen apart and instead of dismissing its claims with prejudice under Fed. R. Civ. P. 41, Plaintiff now seeks an escape route based on information that it has known for **over three years**.  Based on its own admitted facts, Plaintiff has engaged in a fraud on the Court.  Plaintiff and its counsel's failure to remedy any alleged jurisdictional issues before filing its Complaint or in response to this Court's Order to Show Cause has potentially wasted this Court's limited and valuable judicial resources for over the past year-and-a-half, which is grounds for discipline.  *See Black v. Black*, 22-CV-03098-DDD-NRN, 2023 WL 1989793, at *14 (D. Colo. Feb. 14, 2023), *report and recommendation adopted*, 122CV03098DDDNRN, 2023 WL 3976422 (D. Colo. Apr. 5, 2023), *appeal dismissed*, 23-1155, 2023 WL 7439109 (10th Cir. July 19, 2023) (issuing sanctions against the attorney, and referring attorney to disciplinary authorities,  when "th[e] Court issued its show cause order identifying potential procedural and jurisdictional problems" and it turned out that the case was brought "in

---

[3] Ex. A to this Motion is a true and correct copy of pages from the Rule 30(b)(6) deposition of Plaintiff, given by Plaintiff's Controller, Dennis Cooke on November 20, 2023, a week after Plaintiff's counsel allegedly learned of the LLC issue.

**App. 107**

bad faith, vexatious, and without reasonable basis"); *U.S. Bank Nat'l Ass'n for Chase Mortgage Fin. Corp. Multiclass Mortgage Pass-Through Certificates Chaseflex Tr. Series 2006-1 v. First Morgan*, 299 F. Supp. 3d 1202, 1210 n.4 (D.N.M. 2017) (finding that sanctions against an "attorney" were warranted, for failing to properly respond to a show cause order on subject matter jurisdiction).

Moreover, Plaintiff and its counsel's dilatory conduct has also been extremely prejudicial to OJC who has spent hundreds of thousands of dollars in attorneys' fees and costs, and valuable time over the past 19+ months litigating not only against Plaintiff's spurious claims but also prosecuting its own substantial counterclaims against Plaintiff. To get to the bottom of Plaintiff's mysterious corporate web and the issue of subject matter jurisdiction, and importantly to determine what exactly Plaintiff and its counsel knew, when they knew it, and the details of any investigations they did (or didn't do) in response to the Court's Order to Show Cause and before filing Plaintiff's motion to dismiss, OJC needs the opportunity to conduct expedited discovery on these matters.

So as to avoid the immediate expense and potential waste of filing dispositive motions and pretrial submissions with Plaintiff's self-created subject matter jurisdiction question looming, OJC also respectfully requests that the Court pause all pending deadlines for at least 60 days, including the dispositive motion deadline set for January 10, 2024 (a request unopposed by Plaintiff), to allow OJC to conduct discovery on the issues raised by Plaintiff's motion to dismiss and to brief the issue after that discovery is completed. The Court has wide discretion with respect to subject matter jurisdictional discovery, but OJC "must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991); *Majd-Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d

# App. 108

901, 903 (11th Cir. 1984) (a party "should be given the opportunity to discover facts that would support its allegations of jurisdiction"); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) ("Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction. As we said in *Blanco*, 'the rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction.'").

As shown above, Plaintiff has engaged in a nearly-two-year-long deception of this Court and OJC on Plaintiff's corporate status and the alleged real party in interest. Certainly nothing that Plaintiff says at this point can be taken at face value. Quite the contrary, the Court should permit OJC to get to the bottom of Plaintiff's unsupported allegations that it seeks to use to escape justice in this case. Accordingly, for good cause shown, OJC respectfully requests that the Court enter an Order:

(a)     Pausing all upcoming deadlines by at least 60 days, including the impending dispositive motion deadline that is currently set for January 10, 2024;

(b)     Allowing expedited discovery by OJC of Plaintiff and its LLC's members, partners, attorneys, and related affiliates and entities[4] pursuant to the following schedule:

---

[4] The Order should permit OJC to:

(i) obtain documents related to all of National Christmas Products, LLC, all its related companies, members, and partners, including those listed in Plaintiff's motion to dismiss, as well as the agreements related to those relationships, their ownership interests, duration and time frames of the interests, their citizenship during the relevant time periods, and any distributions, contributions, or other benefits that they received or provided as part of their ownership in those entities (ECF 95);

(ii) ask interrogatories about the relationships between these members and related information;

(iii) take the depositions of the entities and the individual members in the maze of entities and persons related to National Christmas Products, LLC that allegedly destroy diversity subject matter jurisdiction; and

(iv) take the depositions of Plaintiff's CFO referenced in its demand letter (ECF 1-4, p. 2) and motion to dismiss (ECF 95, p. 3, ¶ 11), its counsel, and all others involved in any investigations (or lack thereof) related to Plaintiff's responses to the Order to Show Cause and referenced in Plaintiff's motion to dismiss.

9

# App. 109

- OJC may serve Requests for Production, Interrogatories, and Requests for Admission on issues related to subject matter jurisdiction;

- Within 10 days thereafter, Plaintiff shall respond to all OJC's discovery requests and produce all responsive documents; and

- Thereafter, Plaintiff shall cooperate with OJC in scheduling and producing for depositions the entities and witnesses outlined in footnote 4 above.[5]

(c)     That within 7 days after the last deposition, Plaintiff must meet and confer and may file a motion to dismiss for lack of subject matter jurisdiction, and OJC may file its response within 7 days thereafter, with no replies permitted.  OJC respectfully requests that the Court endeavor to rule on the motion to dismiss within 7 days of the filing of OJC's response.

(d)     Granting OJC such other relief as the Court finds just and proper.[6]

## REQUEST FOR EXPEDITED RULINGS

Given that the dispositive motion deadline is January 10, 2024 (ECF 80, p. 2, ¶ 2), OJC requests, pursuant to S.D. Fla. LR 7.1(d)(2), for this Motion to be decided on an expedited basis, and that the Court rule on extending the dispositive motion deadline by January 10.  An expedited ruling is requested on the remainder of the Motion by January 15, 2024.

## PRE-FILING CONFERENCE CERTIFICATION

Prior to filing this Motion, on January 8, 2024, counsel for OJC met and conferred with Plaintiff's counsel about whether Plaintiff would be willing to resolve by agreement the issues raised in this Motion.  Plaintiff agreed to extending the dispositive motion deadline, but Plaintiff opposed the remainder of the relief sought in this Motion.

---

[5] With any objections and discovery disputes proceeding pursuant to Judge Strauss's expedited Discovery Procedures Order.  (ECF 36.)
[6] OJC reserves its right to seek sanctions at a later date.

## App. 110

Dated: January 9, 2024                       Respectfully Submitted,

By: /s/ Shlomo Y. Hecht
Shlomo Y. Hecht
Florida State Bar No.: 127144
Shlomo Y. Hecht, P.A.
3076 N Commerce Pkwy
Miramar, FL  33025
Phone: (954) 861-0025
Email: sam@hechtlawpa.com

Aaron W. Davis (admitted *Pro Hac Vice*)
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD  57730-0735
Phone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorneys for OJ Commerce, LLC*

## CERTIFICATE OF TRANSMITTAL / SERVICE

I HEREBY certify that on January 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served this document upon Plaintiff's counsel of record.

/s/Shlomo Y. Hecht
Shlomo Y. Hecht

**App. 111**

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD


NATIONAL CHRISTMAS PRODUCTS, INC.

d/b/a NATIONAL TREE COMPANY,

      Plaintiff,

v.

OJ COMMERCE, LLC,

      Defendant.

_____

ZOOM DEPOSITION

Monday, November 20, 2023

10:00 a.m. - 4:30 p.m.

DEPOSITION OF DENNIS COOKE


Taken before EDDIE ARTZE, Court Reporter, a
Notary Public for the State of Florida at Large,
pursuant to Notice of Taking Deposition filed in the
above-styled cause.

Ex. A

**App. 112**

November 20, 2023

2

```
 1                    APPEARANCES OF COUNSEL

 2

 3    On Behalf of the Defendant:

 4            SHLOMO Y. HECHT, P.A.

 5            3076 N Commerce Parkway,

 6            Miramar, FL 33025-3970

 7            (954) 861-0025

 8            davis@valhallalegal.com

 9            BY: AARON DAVIS, ESQUIRE

10

11    On Behalf of Plaintiff:

12            ELLENOFF GROSSMAN & SCHOLE LLP

13            1345 Avenue of the Americas, 11th Floor,

14            New York, NY 10105

15            (212) 370-1300

16            jhorgan@egsllp.com

17            BY: JOHN HORGAN, ESQUIRE

18

19

20

21

22

23

24

25
```

5

```
1              DEPOSITION OF DENNIS COOKE
2                 NOVEMBER 20, 2023
3         THE COURT REPORTER:  We are now on the record
4    at the time of 10:01 a.m.  The date is November
5    20th, 2023.  We are here in the matter of National
6    Tree Company v. OJ Commerce.  All parties and the
7    witness understand and agree that any certified
8    transcript produced from the recording of this
9    proceeding is intended for all uses permitted
10   under applicable procedural and evidentiary rules
11   and laws and shall constitute written stipulation
12   of such.  Now, gentlemen, if you could please
13   indicate your agreement by stating your name on
14   the record, starting with the Counsel who set the
15   deposition.
16        MR. DAVIS:  Yes, I agree to that. My name is
17   Aaron Davis.  I am here on behalf of OJ Commerce,
18   LLC.
19        THE WITNESS:  Okay. Yes, I agree to that. My
20   name is Dennis -- what? No?
21        MR. DAVIS:   Okay.  Thank you.
22        MR. HORGAN:  John Horgan, for the Plaintiff.
23        THE COURT REPORTER:  All right.  Thank you,
24   gentlemen.
25   Thereupon:
```

November 20, 2023

6

1                          DENNIS COOKE,

2      was called as a witness, and after having been first duly

3      sworn, testified as follows:

4                          DIRECT EXAMINATION

5      BY MR. DAVIS:

6           Q    Good morning, Mr. Cooke.

7           A    Good morning.

8           Q    Please state your full name for the record.

9           A    Dennis Cooke.

10          Q    What is your address?

11          A    My address, 445 Davis Avenue, Kearny, New

12     Jersey.

13          Q    And where are you giving the deposition from

14     today?

15          A    I am giving the deposition from corporate

16     headquarters at 2 Commerce Drive, Cranford, New Jersey.

17          Q    And that is corporate headquarters for

18     National Tree?

19          A    For National Tree, yes.

20          Q    I take it when I am referring to National

21     Tree today, and we know that that is the company that

22     you work for, the Plaintiff in this lawsuit?

23          A    Yes.

24          Q    I do not have to say out the whole corporate

25     name, we know what we are talking about?

November 20, 2023

7

1       A    Yes, that is fine.

2       Q    Okay.  Great.  Are you aware you are being

3  deposed in the case of National Tree versus OJ

4  Commerce?

5       A    Yes.

6       Q    Have you ever been deposed before?

7       A    No.

8       Q    Have you ever testified in a trial?

9       A    No.

10       Q    Have you ever been a party to a lawsuit?

11       A    No.

12       Q    Okay.  Given this is your first deposition, I

13  will go over a few guidelines for the deposition.  In

14  your deposition, I am going to be asking you questions

15  and you are going to be answering them under oath.  Do

16  you understand this?

17       A    Yes.

18       Q    Do you understand that this is the same oath

19  that you would take if you were in a court of law?

20       A    Yes.

21       Q    There are a few differences between a

22  deposition and typical conversation that I would like

23  to make you aware of.  First, the Court Reporter is

24  attempting to transcribe everything we say today.  Of

25  course, in a normal conversation, sometimes people will

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

            Plaintiff,

v.

OJ COMMERCE, LLC,

            Defendant.

_____/

**ORDER STAYING ACTION PENDING RESOLUTION OF SUBJECT MATTER**
**JURISDICTION; REFERRING MOTIONS TO MAGISTRATE JUDGE**

THIS CAUSE is before the Court upon Plaintiff National Christmas Products, Inc. d/b/a

National Tree Company ("Plaintiff")'s Motion to Dismiss Without Prejudice [DE 95] and

Defendant OJ Commerce, LLC ("Defendant")'s Expedited Motion to Amend the Scheduling

Order and for Expedited Discovery on Subject Matter Jurisdiction [DE 96], both filed on January

9, 2024.  The Court has carefully considered the Motions and is otherwise fully advised in the

premises.

On January 9, 2023, over a year and a half after this action commenced, Plaintiff filed a

Motion to Dismiss, seeking dismissal of this action without prejudice for lack of subject matter

jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). *See* [DE 95]. Therein, Plaintiff

asserts that it recently discovered information regarding its organizational structure that reveals

that Plaintiff is a citizen of Florida. *See id.* If Plaintiff is, in fact, a citizen of Florida, diversity

jurisdiction would not exist in this case because Defendant is also a citizen of Florida. *See* 28

U.S.C.  § 1332(a)(1).

**App. 117**

Also on January 9, 2023, Defendant filed a Motion, arguing that the Court cannot "take Plaintiff's word … that subject matter jurisdiction does not exist" because of Plaintiff's "repeated and intentional" misrepresentations regarding its corporate status. *See* [DE 96]. As a result, Defendant requests that the Court extend all remaining deadlines, including the dispositive motion deadline, by sixty (60) days to allow Defendant to obtain expedited discovery regarding the issues raised in Plaintiff's Motion to Dismiss. *See id.* Plaintiff agrees to extending the dispositive motion deadline but is opposed to the remainder of Defendant's Motion. *See id.*

Upon careful review of the Motions, the Court finds it appropriate to stay this action, rather than extend all remaining deadlines, pending resolution of Plaintiff's Motion to Dismiss for lack of subject matter jurisdiction. The Court will refer that Motion, along with Defendant's related request for expedited discovery regarding Plaintiff's Motion to Dismiss, to the Magistrate Judge.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Expedited Motion to Amend Scheduling Order [DE 96] is **GRANTED IN PART**.

2. This action is **STAYED** pending resolution of the issue of subject matter jurisdiction, including resolution of Plaintiff's Motion to Dismiss [DE 95] and Defendant's Motion for Expedited Discovery on Subject Matter Jurisdiction [DE 96].[1]

3. Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the Court **REFERS** Plaintiff's Motion to Dismiss [DE 95] and Defendant's Motion for Expedited Discovery on Subject Matter Jurisdiction [DE 96] to United States Magistrate Judge Jared M. Strauss for an evidentiary hearing, if necessary, and appropriate disposition or report and recommendation.

---

[1] If the Court finds that it has subject matter jurisdiction over this action, the Court will lift the stay and reset the remaining scheduling order deadlines.

**App. 118**

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida,

this 10th day of January 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
All Counsel of Record
Magistrate Judge Jared M. Strauss

**App. 119**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60897-DIMITROULEAS/STRAUSS

NATIONAL CHRISTMAS PRODUCTS, INC.
d/b/a National Tree Company,
a New Jersey Corporation,

      Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company,

      Defendant.

_____/

## DISCOVERY ORDER

**THIS MATTER** came before the Court upon Defendant's Motion for Expedited Discovery on Subject Matter Jurisdiction ("Motion"). [DE 96]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 97]. I have reviewed the Motion, the Response [DE 100] and Reply [101] thereto, and all other pertinent portions of the record. For the reasons discussed herein, the Motion is **GRANTED-IN-PART**.

## BACKGROUND

On May 12, 2022, Plaintiff filed its complaint against Defendant in this Court alleging the Court had subject matter jurisdiction based on diversity between the parties. [DE 1]. In turn, Defendant filed a counterclaim against Plaintiff [DE 24] and later an amended counterclaim [DE 44]. After nearly two years of litigation, and with the discovery deadline passed, Plaintiff filed a Motion to Dismiss Without Prejudice the claims and counterclaims in this action pursuant to Federal Rule of Civil Procedure 12(h)(3). [DE 95]. Plaintiff asserted that the Court lacked subject

**App. 120**

matter jurisdiction.  *Id*.  According to Plaintiff, its CFO recently informed counsel that Plaintiff was an LLC, not an S-Corp. as Plaintiff had alleged in its complaint.  *Id*.  Plaintiff's counsel then conducted an investigation into Plaintiff's members to ensure there was still complete diversity between Plaintiff and Defendant.  *Id*.  Upon the completion of the investigation, counsel discovered that one of Plaintiff's members, through several layers of underlying LLCs and limited partnerships, was a citizen of Florida, thereby destroying diversity jurisdiction.  *Id*.

In response to this revelation, Defendant filed the instant Motion seeking permission to conduct additional discovery because it could not "take Plaintiff's word . . . that subject matter jurisdiction does not exist."  [DE 96].  Plaintiff's Response more thoroughly detailed the chain of LLCs and limited partnerships leading back to the individual, Mark Hajduch, that Plaintiff asserts makes it a citizen of Florida.  [DE 100].  Plaintiff attached to its Response several redacted and unredacted merger, subscription, and operating agreements – some reflected in public filings and some not – as well as Hajduch's redacted driver's license.[1]  [DE 100, 100–1, 100–1, 100–2, 100–3, 100–4, 100–5, 100–6, 100–7, 100–8, 100–9, 100–10].  Plaintiff argues that these documents sufficiently establish that one of Plaintiff's members is a citizen of Florida, which in turn makes Plaintiff a citizen of Florida.  *Id*.  Plaintiff therefore argues that there is no need for Defendant to take any further discovery regarding subject matter jurisdiction.

---

[1] Plaintiff alleges that it merged with National Christmas Products, LLC, whose sole member is National Tree Intermediary, LLC, whose sole member is National Tree Holding, LLC.  [DE 100]. One of National Tree Holding, LLC's thirteen members is National Tree Ultimate Holding, LLC, whose sole member is Sun National Tree, L.P.  *Id*.  Sun National Tree, L.P.'s general partner is Sun Holdings VII, LLC and its limited partner is Sun Capital Partners VII, L.P.  *Id*.  Sun Capital Partners VII, L.P. is the sole member of Sun Holdings VII, LLC.  *Id*.  The general partner of Sun Capital Partners VII, L.P. is Sun Capital Advisors VII, L.P.  *Id*.  Hajduch is a limited partner of Sun Capital Advisors VII, L.P.  *Id*.  Plaintiff alleges that Hajduch is a citizen of Florida, and therefore concludes that all the LLCs and limited partnerships in the aforementioned chain (including Plaintiff) are consequently citizens of Florida for diversity purposes as well.  *Id*.

**App. 121**

## ANALYSIS

As a threshold matter, Defendant is entitled to some additional jurisdictional discovery. "[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery,' meaning that a district court abuses its discretion if it completely denies a party jurisdictional discovery unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery." *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 n.7, 731 (11th Cir. 1982)).  The Supreme Court has unequivocally stated "that diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of 'all the members.'" *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (quoting *Chapman v. Barney*, 129 U.S. 677, 682 (1889)); *see also Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010) ("[U]nincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332.").

To determine citizenship for purposes of diversity jurisdiction, a court must look to the person's "residency in a state and intent to remain in that state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).  Several factors a court may consider when determining a person's intent to remain in a state include "the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.*  "No single factor is conclusive; instead, the Court looks to the 'totality of the evidence.'" *Donovan v. Quimby*, No. 23-CV-21252, 2023 WL 8729220, at *3 (S.D. Fla.

# App. 122

Dec. 19, 2023) (quoting *Jones v. L. Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001)).

Despite Plaintiff's assertion that it "has submitted incontrovertible proof" of Plaintiff's citizenship, Plaintiff's representations and the documentation attached to its Response do not eliminate all genuine disputes of fact over the existence of diversity jurisdiction. Thus, I find that Defendant has a qualified right to conduct at least some limited, targeted jurisdictional discovery.[2]

First, Plaintiff has not provided "incontrovertible proof" of Hajduch's domicile (and, therefore, citizenship for diversity purposes). While a Florida driver's license may be evidence that an individual has resided in Florida, it does not conclusively establish that the individual intends to remain in Florida. Moreover, it does not establish whether Hajduch resided in (and intended to remain in) Florida at the time Plaintiff filed its Complaint. Given that Plaintiff only just identified Hajduch to Defendant (and, even then, only provided a name without any other identifying information), there remains a genuine dispute over Hajduch's citizenship.

Furthermore, while the series of documents Plaintiff has provided in its Response may potentially establish that Hajduch's citizenship bears on Plaintiff's citizenship (an issue I do not reach here), Defendant is entitled to conduct limited discovery targeted at verifying the existence and memberships of the entities to which Plaintiff points. Again, Plaintiff has provided various heavily redacted agreements, many of which are not publicly filed and several of which concern foreign entities, in support of the chain of ownership it describes (and only provided them after Defendant had filed the instant Motion). Given the curious timing and circumstances of Plaintiff's

---

[2] To the extent that Plaintiff's Response suggests that Defendant unduly delayed propounding or seeking leave to conduct jurisdictional discovery, I find that argument is without merit in light of Plaintiff's prior representations of its corporate form and citizenship. [DE 1, 8]. Plaintiff gave Defendant no reason to question Plaintiff's own representation about its citizenship until it filed its Motion to Dismiss; Defendant filed its initial motion seeking jurisdictional discovery four days later.

**App. 123**

disclosure of its corporate form and explanation of its citizenship, not to mention the complex web of entities involved, Defendant is understandably skeptical of accepting those agreements and Plaintiff's representations about the various entities at face value.

That said, Defendant is not entitled to the scope of discovery it suggests in its Motion. *See* [DE 96] at 9, n.4.  For example, Defendant suggests that the Court should permit Defendant to "obtain documents related to all of [Plaintiff], all its related companies, members, and partners, including those listed in Plaintiff's motion to dismiss, as well as the agreements related to those relationships, their ownership interests, duration and time frames of the interests, their citizenship during the relevant time periods, and any distributions, contributions, or other benefits that they received or provided as part of their ownership in those entities." *Id*. at n.4.  However, Defendant need only seek discovery that will aid in answering two overarching questions: Was Hajduch (at the time Plaintiff filed this action) a citizen of Florida for diversity jurisdiction purposes, and did Hajduch's citizenship (at the time Plaintiff filed this action) have any bearing on Plaintiff's citizenship?

In answering this second question, Defendant need only determine whether (at the time the Complaint was filed) each entity Plaintiff has identified in the chain of ownership described in its Motion to Dismiss and Response to the Defendant's instant Motion was composed of the members or partners Plaintiff identified.  There is no need for Defendant to seek discovery regarding all the members or partners of all of the entities – only those in the chain that Plaintiff has identified as undermining diversity.  Furthermore, because "diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of '*all* the members,'" *Carden*, 494 U.S. at 195–96 (emphasis added), Defendant must focus on what information is necessary to determine that a given entity was, in fact, a member or partner of the entity that Plaintiff alleges it was (at the time

5

**App. 124**

the Complaint was filed).[3]  Defendant is also not entitled (at this time) to take depositions of Plaintiff's "counsel, and all others involved in any investigations (or lack thereof) related to Plaintiff's response to" the Court's Order to Show Cause [DE 6].

Therefore, it is **ORDERED** and **ADJUDGED** that:

1. The Motion is **GRANTED-IN-PART** as follows:

   a.  Defendant shall have sixty days from the date of this order to conduct jurisdictional discovery.

   b. Defendant's discovery requests shall be limited and targeted towards determining whether Hajduch (at the time Plaintiff filed this action) was a citizen of Florida (for diversity jurisdiction purposes), and did Hajduch's citizenship (at the time Plaintiff filed this action) have any bearing on Plaintiff's citizenship.

   c. Defendant may seek jurisdictional discovery through requests for production, interrogatories, depositions by written questions, or depositions by oral examination.[4]  No requests for admission should be served.

   d. Plaintiff shall respond to any demands for written discovery within fourteen days.

---

[3] During a status conference on January 22, 2024, Defendant suggested that it had case law indicating that not all members or partners in an LLC or limited partnership necessarily mattered for purposes of determining citizenship.  Rather, Defendant suggested that some members or partners may not count towards an entity's citizenship depending on the nature or extent of their role or interest in the entity.  I directed the Defendant to file a notice providing this case law. However, Defendant has filed no such notice.  Given the clear indication in *Carden* and its progeny that the citizenship of an artificial entity like an LLC or a limited partnership depends on *all* of its members, I find that inquiry into the nature and extent of those members' or partners' interests is unnecessary except to the extent that it genuinely bears on the veracity of whether they are a member or partner.

[4] At the status conference, Plaintiff suggested that Defendant need only depose Hajduch by written questions.  While Defendant may depose Hajduch this way, it may choose to depose Hajduch orally if such an examination is proportional to the needs of the case.  That said, the Court expects that any oral deposition – of Hajduch or anyone else – would require no more than 3 hours (and potentially much less).

# App. 125

e. Because of Plaintiff's alleged structure, some people and documents might not technically be within Plaintiff's "control" or "custody."  Nevertheless, Plaintiff shall make every reasonable effort to produce, or facilitate the production of, the requested individual(s) and documents expeditiously.

f. Should discovery require the production of sensitive, unredacted documents, the parties (and/or the producing entity) shall confer about designating such documents as "Attorneys Eyes Only" to minimize disputes.

g. Should the parties encounter any objections or discovery disputes, the parties are directed to follow my Discovery Procedures Order.  [DE 36].

h. Defendant shall respond to Plaintiff's Motion to Dismiss [DE 95] within 10 days of the expiration of the sixty-day discovery period.

**DONE** and **ORDERED** in Fort Lauderdale, Florida, this 25th day of January 2024.

**Jared M. Strauss**
**United States Magistrate Judge**

**App. 126**



Sam Hecht <sam@hechtlawpa.com>

## Activity in Case 0:22-cv-60897-WPD National Christmas Products, Inc. v. OJ Commerce, LLC Order on Motion to Quash
1 message

cmecfautosender@flsd.uscourts.gov <cmecfautosender@flsd.uscourts.gov>

Tue, Mar 12, 2024 at 9:19 AM

To: flsd_cmecf_notice@flsd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Southern District of Florida

### Notice of Electronic Filing

The following transaction was entered on 3/12/2024 at 9:19 AM EDT and filed on 3/12/2024
**Case Name:**     National Christmas Products, Inc. v. OJ Commerce, LLC
**Case Number:**     0:22-cv-60897-WPD
**Filer:**
**Document Number:** 119(No document attached)

**Docket Text:**
**PAPERLESS ORDER denying [115] Motion to Quash. The Court does not find good cause to quash the subpoena under Federal Rule of Civil Procedure 45 nor to grant a protective order under Rule 26. The Court has previously found that the scheduled deposition is proportional to the needs of the case. The Court, however, reminds the parties that the scope of the deposition is strictly limited to determining the deponent's domicile as relevant to determining the Court's subject matter jurisdiction. Signed by Magistrate Judge Jared M. Strauss on 3/12/2024. (JMS)**

**0:22-cv-60897-WPD Notice has been electronically mailed to:**

Aaron W. Davis    davis@valhallalegal.com

Aldonsa Janjigian    ajanjigian@egsllp.com

Anthony Galano , III    agalano@egsllp.com

Joanna R. Cohen    jcohen@egsllp.com

John B. Horgan    jhorgan@egsllp.com

Jordan David Utanski    jutanski@royblack.com

Kyle Andrew Johnson    kjohnson@royblack.com

Lance Wayne Shinder    lshinder@royblack.com, chackman@royblack.com, civilpleadings@royblack.com, kjohnson@royblack.com

**App. 127**

Shlomo Y Hecht &nbsp &nbsp  sam@hechtlawpa.com

**0:22-cv-60897-WPD Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60897-DIMITROULEAS/STRAUSS

**NATIONAL CHRISTMAS PRODUCTS, INC.**
d/b/a National Tree Company,
a New Jersey Corporation,

      Plaintiff,

v.

**OJ COMMERCE, LLC,** a Florida Limited
Liability Company,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Dismiss Without Prejudice ("Motion"). [DE 95]. The Hon. William P. Dimitrouleas has referred the Motion to me for issuance of a Report and Recommendation. [DE 97]. I have reviewed the Motion, the response [DE 130] and reply [DE 131] thereto, and all pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

## BACKGROUND

On May 12, 2022, Plaintiff National Christmas Products, Inc. ("Plaintiff") filed its Complaint against Defendant, alleging the Court had subject matter jurisdiction based on diversity between the parties. [DE 1]. The Complaint alleged that Plaintiff is an S corporation organized under the laws of the State of New Jersey, and Plaintiff's Addendum (filed in response to the Court's Order to Show Cause Regarding Subject Matter Jurisdiction [DE 6]) alleged that Defendant is a Delaware LLC whose sole member is a citizen of Florida (making Defendant a citizen of Florida). [DE 1, 8]. In turn, Defendant filed a counterclaim against Plaintiff [DE 24]

1

**App. 129**

and later an amended counterclaim [DE 44].  After nearly two years of litigation, and with the discovery deadline passed, Plaintiff filed its Motion and attached several exhibits.  *See* [DE 95].

Plaintiff asserts that the Court lacks subject matter jurisdiction over its own claims as well as Defendant's counterclaims.  *Id.*  According to Plaintiff, in November 2023, its CFO informed counsel that Plaintiff is an LLC, not an S corporation as Plaintiff had alleged in its Complaint.  *Id.* Plaintiff states that this is due to the fact that Plaintiff merged out of existence and into National Christmas Products LLC ("NCP LLC") in November 2019.  *Id.*  Plaintiff's counsel then conducted an investigation into NCP LLC's members to ensure there was still complete diversity between the parties.  *Id.*  Upon the completion of the investigation, counsel discovered that one of NCP LLC's members, through several layers of underlying LLCs and limited partnerships, is (and was at the time the Complaint was filed) a citizen of Florida, thereby making Plaintiff a citizen of Florida and destroying diversity jurisdiction.  *Id.*  Plaintiff attached to its Motion the merger agreement between Plaintiff and NCP LLC, National Tree Holding, LLC's limited liability company agreement, a pro forma structure chart showing the corporate ownership of the various National Tree Holding, LLC entities, and an application to transact business in Florida for a limited liability partnership that is a part of NCP LLC.  *See id.*

Defendant, skeptical of Plaintiff's assertions, moved to reopen discovery so that it could further investigate Plaintiff's claims raised in its Motion.  *See* [DE 96].  In its response to Defendant's motion to reopen discovery, Plaintiff more thoroughly detailed the chain of LLCs and limited partnerships leading back to the individual, Mark Hajduch, that Plaintiff asserts makes it a citizen of Florida. [1]  [DE 100].  Plaintiff attached to its response several redacted and unredacted

---

[1] Plaintiff alleges that it merged with NCP LLC, whose sole member is National Tree Intermediary, LLC, whose sole member is National Tree Holding, LLC.  [DE 100].  One of National Tree Holding, LLC's thirteen members is National Tree Ultimate Holding, LLC, whose sole member is Sun National Tree, L.P.  *Id.*  Sun National Tree, L.P.'s general partner is Sun Holdings VII, LLC

merger, subscription, and operating agreements – some reflected in public filings and some not – as well as Hajduch's redacted driver's license. [DE 100, 100–1, 100–1, 100–2, 100–3, 100–4, 100–5, 100–6, 100–7, 100–8, 100–9, 100–10]. Plaintiff argued that those documents sufficiently established that one of NCP LLC's members is a citizen of Florida, which in turn makes Plaintiff a citizen of Florida. [DE 100].

Despite Plaintiff's assertions and attachments to its response, I found that Defendant was entitled to limited jurisdictional discovery to corroborate whether the Court indeed lacked subject matter jurisdiction. *See* [DE 106]. Upon the completion of jurisdictional discovery, Defendant filed its response to the Motion, and Plaintiff filed its reply. [DE 130, 131]. I subsequently denied Plaintiff's motion to file a sur-reply. [DE 134]. The Motion is now ripe for review.

## LEGAL STANDARD

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). To have diversity jurisdiction, there must be "complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). A corporation is a citizen "of its State of incorporation" and "the State where it has its principal place of business." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016). However, unincorporated entities, such as limited liability companies, take the citizenship of each of their members. *Id.*; *Rolling Greens MPH, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

---

and its limited partner is Sun Capital Partners VII, L.P. *Id.* Sun Capital Partners VII, L.P. is the sole member of Sun Holdings VII, LLC. *Id.* The general partner of Sun Capital Partners VII, L.P. is Sun Capital Advisors VII, L.P. *Id.* Hajduch is a limited partner of Sun Capital Advisors VII, L.P. *Id.* Plaintiff alleges that Hajduch is a citizen of Florida, and therefore concludes that all the LLCs and limited partnerships in the aforementioned chain (including Plaintiff) are consequently citizens of Florida for diversity purposes as well. *Id.*

# App. 131

When a party attacks subject matter jurisdiction, it may bring a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks "require the court merely to look and see if the [party] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (quoting *Lawrence*, 919 F.2d at 1529). Factual attacks, however, "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529).

Under a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). There is no presumption of truthfulness to the plaintiff's or counter-plaintiff's allegations, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson*, 645 F.2d at 413).

## ANALYSIS

Plaintiff's Motion should be granted because the Court lacks subject matter jurisdiction. In its Motion, Plaintiff asserts that this Court lacks subject matter jurisdiction because Plaintiff and Defendant are both citizens of Florida and therefore are not diverse. After conducting limited jurisdictional discovery, Defendant's response does not appear to contest that NCP LLC – the company Plaintiff merged into – is a citizen of Florida for the purpose of diversity jurisdiction. Instead, Defendant opposes the Motion on the grounds that, under New Jersey law, Plaintiff is a dissolved S corporation that maintains the capacity to sue and be sued in its corporate name.[2]

---

[2] In its response, Defendant also suggests that this Court should sanction Plaintiff for not disclosing its alleged corporate status in a timely manner. [DE 130] at 7. The Court will not consider such a

**App. 132**

As a threshold matter, since Defendant's response to the Motion does not provide any evidence nor challenge Plaintiff's assertion that Plaintiff merged into NCP LLC in 2019 or that NCP LLC is a citizen of Florida for the purpose of diversity jurisdiction, the Court may deem these facts admitted. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.") (quoting *Kramer v. Gwinnett County, Georgia*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (alteration in original)); *see also Ewing v. Carnival Corp.*, No. 19-20264-CIV, 2023 WL 2524530, at *3 (S.D. Fla. Mar. 15, 2023) ("A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness."); *Guzman v. City of Hialeah*, No. 15-23985-CIV, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) ("A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point.").

Regardless of Defendant's apparent concessions, I have reviewed Plaintiff's attachments to its Motion and subsequent briefings and find that Plaintiff has adequately demonstrated that Plaintiff merged into NCP LLC and that NCP LLC is a citizen of Florida for the purpose of diversity jurisdiction. Plaintiff provided the merger agreement between Plaintiff and NCP LLC as well as several LLC and partnership agreements detailing the members of each and how they trace all the way back to Hajduch – the Florida citizen. *See* [DE 95, 100]; *supra* note 1.

Despite conceding that the merger between Plaintiff and NCP LLC did occur, and that NCP LLC is a citizen of Florida, Defendant argues that it may still sue Plaintiff as a dissolved

---

request raised in a response to a motion. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1351 (S.D. Fla. 2015) ("It is not appropriate to seek an order for affirmative relief in a response to a motion.") (quoting *Silver v. Karp*, No. 14-80447-CIV, 2014 WL 4248227, at *5 n.3 (S.D. Fla. Aug. 27, 2014)); *see also CompRehab Wellness Grp., Inc. v. Sebelius*, No. 11-23377-CIV, 2013 WL 1827675, at *7 n.20 (S.D. Fla. Apr. 30, 2013) (noting that "a response to a motion is not a motion") (citing Fed. R. Civ. P. 7).

**App. 133**

corporation, and that the dissolved corporation retains its original citizenship, thereby maintaining complete diversity between the parties and conferring subject matter jurisdiction upon the Court. I find Defendant's argument unpersuasive.

Whether a corporation has the capacity to sue or be sued is determined by the law under which it was organized.  Fed. R. Civ. P. 17(b)(2).  Plaintiff was organized under the laws of New Jersey.  *See* [DE 8] at 2.  Therefore, New Jersey law dictates whether Plaintiff has the capacity to sue or be sued.

In support of its argument that Defendant may sue Plaintiff, even after it merged into NCP LLC, Defendant cites to New Jersey Statute Section 14A:12-9.  That statute, titled "Effect of Dissolution," states that when a corporation dissolves, it "shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs."  N.J. Stat. Ann. § 14A:12-9(1) (2022).  Specifically, the dissolved corporation "may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred."  N.J. Stat. Ann. § 14A:12-9(2)(e).  Defendant then cites several federal cases finding that a dissolved corporation may continue to sue or be sued and retains its citizenship for diversity purposes after dissolution.  [DE 130] at 4–6.

However, as Plaintiff argues in its reply, Plaintiff did not *dissolve*.  Rather, it *merged* into NCP LLC.  And New Jersey law (and corporate law generally) treats merger differently than dissolution, with different kinds of consequences.  Dissolution "involves the termination of the corporate existence, at least as far as the right to continue doing ordinary business is concerned, and . . . the winding up of affairs, payment of debts, and distribution of assets among the shareholders."  4 James D. Cox and Thomas Lee Hazen, *Treatise on the Law of Corporations* § 26:1 (3d ed. 2023); *see also Lancellotti v. Maryland Cas. Co.*, 617 A.2d 296, 298 (N.J. Super. Ct.

**App. 134**

App. Div. 1992) ("A dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established.").  By contrast:

> A merging of two corporations "contemplates that one will be absorbed by the other and go out of existence, but the absorbing corporation, will remain" as the surviving corporation pursuant to the plan of merger.  *Applestein v. United Bd. & Carton Corp.*, 60 N.J. Super. 333, 342, 159 A.2d 146 (Ch. Div.), *aff'd*, 33 N.J. 72, 161 A.2d 474 (1960).  By operation of law, all property, both real and personal, belonging to each of the merging corporations becomes vested in the surviving corporation, without any further act or deed.  N.J.S.A. 14A:10–6(d).  Thus, title passes automatically upon the filing of the certificate of merger in the Office of the Secretary of State.  N.J.S.A.  14A:10–4.1(2).  No price is paid.  Consideration does not pass between the surviving parent corporation and its wholly-owned subsidiary, which is absorbed.  Its existence ceases, N.J.S.A. 14A:10–6(b), and its liabilities become the obligation of the surviving parent.  N.J.S.A. 14A:10–6(e).

*Vega v. Standard Mach. Co. of Auburn, Rhode Island*, 675 A.2d 1194, 1198 (N.J. Super. Ct. App. Div. 1996).

New Jersey Statute Section 14A:10-6, which Defendant fails to mention in its response, specifically speaks to "the effect of *merger*."  N.J. Stat. Ann. § 14A:10-6 (2022) (emphasis added). When a merger becomes effective, "the separate existence of all parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease."  N.J. Stat. Ann. § 14A:10-6(b).  Specifically, "[t]he surviving or new corporation shall be liable for all the obligations and liabilities of each of the corporations so merged . . .; and any claim existing or action or proceeding pending by or against any of such corporations may be enforced as if such merger or consolidation had not taken place."  N.J. Stat. Ann. § 14A:10-6(e).  Thus, while a corporation dissolved pursuant to New Jersey Statute Section 14A:12-9 "may sue and be sued" as if it continued to exist, a corporation merged into another entity under New Jersey Statute Section 14A:10-6 ceases to exist.

Defendant cites to one case, *Hayes v. Leek*, No. A-3257-10T2, 2012 WL 1447928 (N.J. Super. Ct. App. Div. Apr. 27, 2012), for the proposition that New Jersey Statute Section 14A:12-9 applies not only to dissolved corporations but to corporations merged out of existence as well.

**App. 135**

[DE 130] at 4.  In *Hayes*, two entities merged with the non-surviving entity merged out of existence.  2012 WL 1447928 at *1.  The surviving entity then proceeded to conduct business for almost twenty years.  *Id.* at *1–2.  Then, the surviving entity sought to dissolve itself and form a new entity.  *Id.* at *2.  Due to several procedural infirmities, however, this dissolution never occurred, and the new entity never came into effect.  *Id.* at *5.  The New Jersey Superior Court noted that New Jersey Statute Section 14A:12-9 "provides that a dissolved corporation's corporate existence continues for purposes of winding up its affairs."  *Id.* at *4.  Nevertheless, the court's analysis does not mention the statute again and instead focuses on other portions of New Jersey law that detail the ways a corporation may be dissolved.  *Id.* at *5.  In the end, *Hayes* has nothing to do with merger between entities and the consequences of it but rather the later (attempted) dissolution of the merged entity itself.  So, contrary to Defendant's assertions, *see* [DE 130] at 4, *Hayes* does not stand for the proposition that New Jersey courts have applied New Jersey Statute Section 14A:12-9 "to corporations that were merged out of existence."

The federal cases Defendant cites similarly address dissolved corporations rather than those that had been merged into a different surviving entity.  For example, *Ripalda v. American Operations Corp.*, 977 F.2d 1464 (D.C. Cir. 1992), looks only at Delaware law regarding dissolved corporations, not merged ones.  Although it refers to the named defendant "AOC" being merged into a new corporation prior to the subject accident in that case, it indicates that another entity (referred to in the opinion as "AOC 2") was then incorporated before the subject incident but dissolved prior to the plaintiff filing suit.  *Id.* at 1465.  A close read of the opinion shows that the court's citizenship analysis addressed the dissolved entity "AOC 2," not the merged-out-of-existence entity "AOC 1".  *See id.* at 1469 ("Moreover, AOC No. 2 was dissolved in July 1989. Therefore, when it was sued in 1990 AOC was still a citizen of Delaware by virtue of § 278 . . . .").

Similarly, this Court's decision in *Grguric v. Little Mermaid South, Inc.*, No. 07-81219-CIV, 2008 WL 1766889 (S.D. Fla. Apr. 14, 2008), and the Eleventh Circuit's decision in *Holston Investments, Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068 (11th Cir. 2012), solely involved dissolved corporations without any mention of merger.  The one case Defendant cites that is arguably to the contrary is *Bollea v. Wells Fargo Ins. Services Southeast, Inc.*, No. 810-CV-1085-T-33EAJ, 2010 WL 2889762 (M.D. Fla. July 22, 2010), a non-binding case that was not decided under New Jersey law.  However, for the reasons described in the reply and in *Vision Bank v. Dynamic Air, Inc.*, No. CIV.A. 10-00543-CG-B, 2011 WL 1475939, at *3 n.4 (S.D. Ala. Mar. 30, 2011), *report and recommendation adopted*, 2011 WL 1475918 (S.D. Ala. Apr. 15, 2011), *Bollea* is distinguishable (or unpersuasive).

Here, Defendant does not challenge that the actual merger between Plaintiff and NCP LLC occurred.  Therefore, under New Jersey law, Plaintiff did not become a "dissolved corporation." Rather, it ceased to exist once the merger between the two entities became official, with all of its obligations and liabilities passing to the surviving entity, NCP LLC.  N.J. Stat. Ann. § 14A:10-6(b).  Therefore, Defendant cannot sue Plaintiff as a dissolved S corporation because Plaintiff is not a dissolved S corporation.  And, Plaintiff's New Jersey citizenship does not continue to exist because Plaintiff ceased to exist.

Because NCP LLC is a citizen of Florida for diversity purposes, and Defendant is a citizen of Florida for diversity purposes – facts Defendant does not contest – this Court lacks subject matter jurisdiction.

## <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion, [DE 95], be **GRANTED**.

# App. 137

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 7th day of May 2024

*[signature]*

**Jared M. Strauss**
**United States Magistrate Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

        Plaintiff,

v.

OJ COMMERCE, LLC,

        Defendant.

_____/

**ORDER APPROVING REPORT OF MAGISTRATE JUDGE; GRANTING MOTION
TO DISMISS; DISMISSING CASE FOR LACK OF SUBJECT MATTER
JURISDICTION**

THIS CAUSE is before the Court upon Plaintiff National Christmas Products, Inc. d/b/a

National Tree Company ("Plaintiff")'s Motion to Dismiss Without Prejudice (the "Motion") [DE

95], filed on January 9, 2024, and the Report and Recommendation of Magistrate Judge Strauss

(the "Report") [DE 135], entered on May 7, 2024. The Court has conducted a *de novo* review of

the Report [DE 135], Defendant OJ Commerce LLC ("Defendant")'s Objection to the Honorable

Magistrate Judge Strauss' Report and Recommendation [DE 136], and Plaintiff's Opposition to

Defendant's Objection to Magistrate Judge Strauss' Report and Recommendation [DE 137]. The

Court is otherwise fully advised in the premises.

On May 12, 2022, Plaintiff filed a Complaint against Defendant, alleging the Court has

diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete

diversity of citizenship between Plaintiff and Defendant. *See* [DE 1]. The Complaint alleged that

Plaintiff is an S corporation organized under the laws of the State of New Jersey, and Plaintiff's

1

**App. 139**

Addendum alleged that Defendant is a Delaware LLC whose sole member is a citizen of Florida. *See* [DE's 1, 8]. Defendant filed a counterclaim against Plaintiff [DE 24] and later an amended counterclaim [DE 44].

On January 9, 2024, after nearly two years of litigation, Plaintiff filed the instant Motion, seeking dismissal its own claims and Defendant's counterclaims without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). *See* [DE 95]. Therein, Plaintiff asserts that it recently discovered information regarding its organizational structure that reveals that Plaintiff is a citizen of Florida. *See id.* Specifically, Plaintiff states that it discovered that Plaintiff merged out of existence and into National Christmas Products LLC ("NCP LLC") in November 2019 and that one of NCP LLC's members is (and was at the time the Complaint was filed) a citizen of Florida, thereby making Plaintiff a citizen of Florida and destroying diversity jurisdiction. *See id.* Defendant, skeptical of Plaintiff's assertions, moved to obtain expedited discovery regarding the issues raised in Plaintiff's Motion, which Magistrate Judge Strauss granted in part. *See* [DE's 96, 106].

Following the competition of jurisdictional discovery and the parties' briefing, Magistrate Judge Strauss issued his Report, recommending that Plaintiff's Motion be granted because the Court lacks subject matter jurisdiction. *See* [DE 135]. Defendant has now filed objections to the Report. *See* [DE 136].

A party seeking to challenge the findings in a report and recommendation of a United States Magistrate Judge must file "written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc*., 208 F. App'x 781, 783 (11th Cir. 2006)

**App. 140**

(quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Macort*, 208 F. App'x at 784 (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). If a party makes a timely and specific objection to a finding in the report and recommendation, the district court must conduct a *de novo* review of the portions of the report to which objection is made. *Macort*, 208 F. App'x at 783-84; *see also* 28 U.S.C. § 636(b)(1). The district court may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. *Macort*, 208 F. App'x at 784; 28 U.S.C. § 636(b)(1).

Accordingly, the Court has undertaken a *de novo* review of the record and Defendant's objections. Having carefully considered Defendant's objections, the Court overrules the objections. The Court agrees with the reasoning and conclusion of the Magistrate Judge that Plaintiff has adequately demonstrated that Plaintiff merged into NCP LLC and that NCP LLC is a citizen of Florida for purposes of diversity jurisdiction. The Court also agrees with the reasoning and conclusion of the Magistrate Judge that Defendant failed to contest that Plaintiff merged into NCP LLC or that NCP LLC is a citizen of Florida for diversity purposes.

The Court rejects Defendant's objection that the Magistrate Judge should have only considered the citizenship of National Christmas Products, Inc., the Plaintiff listed in the case caption. As the Magistrate Judge correctly explained in his Report, Plaintiff "ceased to exist once the merger between the two entities became official, with all of its obligations and liabilities passing to the surviving entity, NCP LLC. . .. Plaintiff's New Jersey citizenship does not continue to exist because Plaintiff ceased to exist." [DE 135] at p. 9. Though a technically incorrect (and non-existent) party may have been named as Plaintiff in the case caption, this

3

**App. 141**

defect did not somehow create jurisdiction where it did not exist. *See* 71 C.J.S. Pleading § 437 (2011) ("Subject to the discretion of the court, and in the absence of a statute or rule of court providing otherwise, amendment by interlineation is considered permissible, particularly in the case of an amendment of a trivial or formal nature."); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497, at 80 (2d ed. 1990) ("Amendments curing a defective statement of subject matter jurisdiction ... will relate back ...." (footnotes omitted)).

The Court likewise rejects Defendant's objection that the Magistrate Judge ignored evidence that the merger was ineffective as Plaintiff continued to do business as National Christmas Products, Inc. after the merger. First, Defendant's argument is waived as Defendant did not raise this argument in its response to the Motion before the Magistrate Judge. *See Sunflower Condo. Ass'n, Inc. v. Everest Nat'l Ins. Co.*, No. 19-CIV-80743-RAR, 2020 WL 5757085, at *5 (S.D. Fla. Sept. 28, 2020) (declining to consider argument raised for the first time in objections to report and recommendation and observing that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.") (citing *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)); *see also* [DE 135] at p. 5 ("Defendant's response to the Motion does not provide any evidence nor challenge Plaintiff's assertion that Plaintiff merged into NCP LLC in 2019[.]"). Second, even if Defendant's argument is not waived, the evidence Defendant points to fails to sufficiently undermine the evidence relied upon by the Magistrate Judge in his Report. The Court therefore overrules Defendant's objections.

**App. 142**

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.      The Magistrate Judge's Report and Recommendation [DE 135] is **APPROVED**;

2.      Defendant's Objection to the Honorable Magistrate Judge Strauss' Report and Recommendation [DE 136] is **OVERRULED**;

3.      Plaintiff's Motion to Dismiss Without Prejudice (the "Motion") [DE 95] is hereby **GRANTED**;

4.      This case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and

5.      The Clerk shall **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 5th day of June 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Magistrate Judge Strauss
Counsel of record

5

**App. 143**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

               Plaintiff,

-vs-

OJ COMMERCE, LLC,

               Defendant.

_____/

**DEFENDANT'S MOTION FOR SANCTIONS
AGAINST PLAINTIFF AND ITS COUNSEL**

    Defendant OJ Commerce, LLC ("OJC" or "Defendant") hereby files this motion for sanctions, and in support thereof states:

**INTRODUCTION**

    The day after Plaintiff National Christmas Products, Inc. ("Plaintiff" or "NCP INC") filed this action,[1] this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction directed to Plaintiff about citizenship information related to "**any party**" that was an LLC. Plaintiff unequivocally responded that it was <u>not</u> an LLC but was an S-Corp. After nearly 20 months of intense litigation, including ten depositions, many motions, three discovery hearings, and hundreds of thousands of dollars in attorneys' fees and costs, just six days before the critical dispositive motion deadline, Plaintiff filed out of the blue a motion to dismiss this case for lack of subject matter jurisdiction. (ECF 91.) Plaintiff's motion to dismiss was predicated on the purported "discovery" that Plaintiff was not an S-Corp but an LLC – a fact that was not only known but deliberately concealed by Plaintiff since this case began. Throughout the

---

[1] Plaintiff filed its Complaint against OJC in this Court on May 12, 2022. (ECF 1.)

1

**App. 144**

nearly-two-years of litigation, Plaintiff repeatedly and intentionally misled this Court and OJC about Plaintiff's corporate status, which spanned Plaintiff's Complaint and response to this Court's Order to Show Cause (ECF 8), Plaintiff's counsel sitting silently through sworn Rule 30(b)(6) corporate designee deposition testimony that was false about Plaintiff's actual corporate status, and nearly two dozen other court filings made in NCP INC's name.

Plaintiff's supposed late-stage "discovery" of its LLC status, conveniently unearthed after extensive litigation, is not only extremely prejudicial to OJC, but it is also thoroughly disproven by Plaintiff's history of misrepresentations it has made to this Court and OJC about its corporate status. The timeline below of Plaintiff's countless (mis)representations to this Court and OJC about Plaintiff's status as an S-Corp. plainly exposes Plaintiff's scheme to deceive the Court and OJC since the outset of this case, and to preserve a ready escape hatch out of this case.

In an effort to mitigate the harm inflicted on OJC, OJC has tried to obtain a stipulation from Plaintiff that the parties will simply pick up the case from where it was when Plaintiff filed its motion to dismiss, which was three weeks after all discovery was closed and days before the dispositive motion deadline. (Ex. A.) This way, all the money spent in this case could be salvaged and the same ground would not be re-covered during a new case. But Plaintiff has refused to agree to do that, instead demanding that discovery be reopened and more depositions and other discovery take place, and to potentially re-open all the discovery that was already completed. (Ex. B.) Plaintiff's demands show the true intention behind its dismissal strategy, which is to push a reset button on this case, and put itself in a much better position than it was in when it moved to dismiss this case on January 2, 2024, while significantly prejudicing OJC to the tune of hundreds of thousands of dollars in wasted fees and costs.

Not only has Plaintiff wasted two-years of this Court's and OJC's time and resources through Plaintiff's repeated misrepresentations about its corporate status, but Plaintiff has also used those misrepresentations to gain a tactical advantage in this dispute.  For that, Plaintiff and its counsel should at least be ordered to compensate OJC for its attorneys' fees and expenses, which is the measure of the costs incurred  as a result of Plaintiff's sanctionable conduct.  OJC therefore respectfully requests that its motion for sanctions be granted.

**TIMELINE**

1.      On August 15, 2017, OJC and Plaintiff "National Christmas Products, **Inc.** DBA National Tree Company" entered into an E-Commerce Vendor Agreement, which is the subject of breach of contract claims by both Plaintiff and OJC.  (ECF 1-3, p. 1; *see* ECF 1 and ECF 44.)

2.      Plaintiff asserted in this action, in its motion to dismiss, that NCP INC "was merged out of existence and into [NCP LLC], a Delaware LLC, in or about November 8, 2019. (ECF 95, p. 3, ¶ 12.)

3.      Two-and-a-half years later, on March 14, 2022, Plaintiff's counsel sent a demand letter to OJC on behalf of "National Christmas Products, **LLC**" ("NCP LLC"), threatening legal action.  (ECF 1-4, pp. 1-2.)  Plaintiff's CFO was copied on the demand letter.  (*Id.* at 2.)  The attachment to that letter, an "Accounts Receivable Aging Report," was also dated March 14, 2022, and identified "National Christmas Products, **Inc**." as the interested party.  Plaintiff attached a copy of this letter and its attached Report as Exhibit 2 to its Complaint.  (*Id.* at 4; ECF 1, p. 4, ¶ 21.)

4.      On May 12, 2022, over two years after the alleged merger of NCP INC into NCP LLC, and a full two months after Plaintiff clearly knew of and identified NCP **LLC**, Plaintiff and its counsel filed their Complaint against OJC certifying that "Plaintiff National Christmas

**App. 146**

Products, **Inc.** D/B/A National Tree Company is an **S corporation** organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016."[2]  (ECF 1, p. 2, ¶ 6 (emphasis added).)

5.    The very next day, on May 13, 2022, this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction, which stated in relevant part:

> [I]t is **ORDERED AND ADJUDGED** that on or before **May 19, 2022**, *Plaintiff shall file an Addendum to its Complaint listing the citizenship of every member of __any Party__ that is a limited liability company* or any other form of unincorporated business or association. If a member of an LLC is itself an LLC, then Plaintiff must likewise allege the membership of the member LLC. (ECF 6, p. 2 (third emphasis added).)

6.    In response to the Court's Order to Show Cause, Plaintiff filed an Addendum and specifically re-certified to the Court what evidently was a knowingly false factual contention that "National Tree Company is an **S corporation** organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016." (ECF 8, p. 2, ¶ 8.)  Nowhere in Plaintiff's response to the Order to Show Cause did Plaintiff mention a word about NCP LLC, that it even existed, or that the LLC allegedly had any interest or claim in this case.  (*See* ECF 8.)

7.     Plaintiff's Complaint, its response to the Order to Show Cause, and all its pleadings, motions, and other papers filed before this Court were subject to Fed. R. Civ. P. 11(b)(3), which explicitly states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—**an attorney** or unrepresented party **certifies** that to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  (emphasis added.)

---

[2] This is the same address identified in Plaintiff's demand letter that listed the LLC.  (ECF 1-4, p. 2.)

**App. 147**

8.      Based on the foregoing, Plaintiff and its counsel certainly knew of the existence of NCP LLC before they filed Plaintiff's Complaint and response to the Order to Show Cause and that Plaintiff's corporate status was allegedly that of an LLC, not an S-Corp. (*See* ECF 1-4, pp. 1-2.)  Plaintiff and its counsel were also under an obligation as mandated by Rule 11 and this Court's Order to Show Cause to inquire about the factual contentions it made to the Court and OJC about Plaintiff's corporate status.

9.      Nonetheless, Plaintiff subsequently filed over the next 19+ months ***nearly two dozen*** pleadings, motions, and other papers with this Court, maintaining that Plaintiff was a corporation, an "**Inc.**" (*See generally* Court Docket.)

10.     OJC took the depositions of six of Plaintiff's corporate employees and upper management and all of them testified under oath that they worked for Plaintiff NCP INC.  None of Plaintiff's witnesses testified that they worked for an LLC, or even mentioned an LLC, during their testimony.  Nor did Plaintiff's counsel clarify that an LLC was supposedly the proper party, even after November 13, 2023 when Plaintiff's counsel admittedly knew that the proper party was allegedly the LLC (ECF 91, p. 2, ¶ 10).

11.     Plaintiff also sought and obtained two discovery extensions to the scheduling order, all the while concealing its alleged status as an LLC from this Court and OJC.  (ECF 55 & 75.)

12.     Plaintiff has admitted that "[o]n November 13, 2023, Plaintiff's CFO informed [counsel] that Plaintiff is not an S-Corp." but rather an LLC. (ECF 91, p. 2, ¶ 10.)

13.     This was not new information to Plaintiff or its counsel, because, according to Plaintiff in its motion to dismiss, "National Christmas Products, Inc. was ***merged out of existence*** and into National Christmas Products, LLC, a Delaware LLC, in or about October

5

**App. 148**

2019," ***two-and-a-half years before*** Plaintiff even filed this lawsuit. (ECF 91, p. 3, ¶ 11 (emphasis added).)

14.     Incredibly, ***at no time*** between November 13, 2023 and the filing of its motion to dismiss on January 4, 2024 did Plaintiff notify OJC or this Court of this fact or that there was any potential issue with subject matter jurisdiction.

15.     To the contrary, Plaintiff and its counsel intentionally withheld this information, even during subsequent depositions on November 20 and December 4, 2023 where Plaintiff's two Rule 30(b)(6) witnesses testified under oath that they worked for Plaintiff – *i.e.*, National Christmas Products, Inc. For instance, Plaintiff's corporate designee, Dennis Cooke, testified on November 20, 2023 as follows:

> Q:     I take it when I am referring to National Tree today, and we know that this is the company that you work for, the Plaintiff [National Christmas Products, Inc. d/b/a National Tree Company] in this lawsuit?
> A:     Yes.
> Q:     I do not have to say out the whole corporate name, we know what we are talking about?
> A:     Yes, that is fine.

(*See, e.g.,* ECF 96-1, 6:1 - 7:1.)[3] Even though Plaintiff's counsel admittedly knew this to be undoubtedly false as of no later than November 13, 2023, Plaintiff's counsel stayed silent, did not clarify the record, did not supplement its discovery responses, and concealed Plaintiff's false testimony.

16.     To that end, Plaintiff and its counsel kept its allegedly true corporate status secret until it dropped its motion to dismiss for lack of subject matter jurisdiction out of the blue on January 4, 2024, asking the Court to dismiss this case on the eve of the dispositive motion deadline. (ECF 91 and ECF 95.)

---

[3] ECF 96-1 is a true and correct copy of pages from the Rule 30(b)(6) deposition of Plaintiff, given by Plaintiff's Controller, Dennis Cooke on November 20, 2023, a *week after* Plaintiff's counsel allegedly learned of the LLC issue.

**App. 149**

17.     Magistrate Judge Strauss issued a Report and Recommendation that Plaintiff's motion to dismiss be granted based on his finding that NCP INC "ceased to exist" once it merged into NCP LLC. (ECF 135.)   This Court approved the Report, granted Plaintiff's motion to dismiss, and dismissed this case for lack of subject matter jurisdiction on June 6, 2024.  (ECF 138.)   OJC now files its motion for sanctions based on Plaintiff and its counsel's repeated misrepresentations throughout this case about its corporate status.

18.     This Court may address a sanctions motion based on its inherent powers or 28 U.S.C. § 1927 even if it lacks subject matter jurisdiction over the underlying case.  *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020).

<u>**ARGUMENT**</u>

**I.      Plaintiff should be sanctioned under the inherent power of the Court.**

There can be absolutely no dispute that Plaintiff knew of its true corporate status as an LLC ***years before*** it filed this case.  Indeed, Plaintiff admits that it filed an Agreement and Plan of Merger of NCP INC into NCP LLC on November 14, 2019, two-and-a-half-years before this case was filed on May 12, 2022.  (ECF 95, p. 3, ¶ 12; ECF 95-1.)  Even after the Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction the day after the Complaint was filed, Plaintiff still concealed from this Court Plaintiff's years-long status as an LLC and its citizenship.   (ECF 6 and 8.)  In filing after filing and in deposition after deposition, Plaintiff continued to misrepresent its LLC status, instead repeating dozens of times in discovery responses, court filings, and depositions that it was NCP INC.  Even after Plaintiff' CFO told its counsel on November 13, 2023, that it was not an S-Corp., but was instead an LLC, Plaintiff continued to conceal that information from OJC and this Court, which led to even more time and

7

**App. 150**

resources being wasted.  Incredibly, Plaintiff's Rule 30(b)(6) witnesses continued to testify after November 13, 2023 that Plaintiff was still NCP INC and not an LLC.  (*See, e.g.,* ECF 96-1.)

The inherent power of the Court extends to a full range of litigation abuses and must continue to exist to fill in the interstices.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  Indeed, the inherent power of a court "'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power."  *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citation omitted).  "The key to unlocking a court's inherent power is a finding of bad faith."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted).  Bad faith in the context of inherent powers can be met either (1) with direct evidence of the party's subjective bad faith or (2) with evidence of conduct "so egregious that it could only be committed in bad faith."  *Hyde*, 962 F.3d at 1310 (quoting *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017)).

Here, the direct evidence of Plaintiff's subjective bad faith is clear.  Plaintiff admittedly knew that it was an LLC years before this case was filed and yet still filed it as NCP INC.  Even after the Court specifically ordered -- the day after this case was filed -- Plaintiff to confirm its corporate status, Plaintiff again misled the Court and OJC, and omitted any mention of NCP LLC at all – a pattern that continued over and over throughout the course of the next 20 months.  Even after Plaintiff's CFO raised the issue with its counsel on November 13, 2023, Plaintiff still continued to conceal the information from OJC and this Court.  None of these facts can be remotely disputed by Plaintiff, as all of them are plainly evident in Plaintiff's admissions, discovery responses, filings on the court docket, and deposition testimony, and the fact that Plaintiff has never pointed to a single shred of evidence that it ever told the Court that it was an LLC prior to filing its motion to dismiss on January 4, 2024.  Quite the opposite, Plaintiff

**App. 151**

repeatedly and specifically affirmed that it was NCP INC, even after being specifically ordered to inquire on the matter, until it was to Plaintiff's tactical advantage to say otherwise.  Now Plaintiff wants to reopen discovery in a new case, and conduct discovery that was already over in this case.  Taken together, Plaintiff's motive of concealing its corporate status and citizenship until the eve of dispositive motions is clear:  to provide Plaintiff a trap-door escape route to re-litigate this dispute in a new case.  This is the very kind of knowing conduct that the Court's inherent powers are designed to redress.  Accordingly, the Court should sanction Plaintiff under the Court's inherent powers by requiring Plaintiff to pay OJC's attorneys' fees and costs related to the litigation of this case to alleviate the prejudice that Plaintiff has caused OJC in the past two years of wasted time and resources.

## II.    Plaintiff's counsel should be sanctioned under 28 U.S.C. § 1927.

Plaintiff's counsel's conduct was likewise egregious, as they participated in the repeated misrepresentations to this Court and OJC, and they should also be sanctioned.  Indeed, "by not bringing to the court's attention early in the proceedings its lack of jurisdiction and by willfully and in bad faith concealing same from [OJC] and the court, while actively litigating the controversy, [Plaintiff's counsel] violated 28 U.S.C. 1927, which provides:"

> <u>Counsel's liability for excessive costs</u>
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Intel Containers International Management, Inc. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 103 (D.N.J. 1985) (quoting 28 U.S.C. § 1927).  Like in *Intel Containers*, "[t]here can be no doubt that counsel here 'unreasonably' and 'vexatiously' multiplied the proceedings in this case by delaying as they did the disclosure of [any alleged] lack of subject matter jurisdiction."

# App. 152

*Id.* In ordering the payment of attorneys' fees, the *Intel Containers* court found on similar facts that "[k]nowing the court [allegedly] lacked jurisdiction over the matter, the [plaintiff] and its counsel not only litigated the matter as if it did, but went out of their way to induce the belief in the [defendant] and the court that it did." *Id.* at 104.

Here, as shown above, Plaintiff's counsel made repeated misrepresentations to this Court and OJC about its corporate status – even after ordered to investigate and report back to the Court on any LLC interested in the case (ECF 6) — and remained silent, did not supplement, and did not inform the Court or OJC for 20 months about the corporate status of Plaintiff, even after they admittedly knew on November 13, 2023 that Plaintiff was an LLC, not an S-Corp. Such a knowing taking of a false position shows bad faith. *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1241 (11th Cir. 2007). (defining "bad faith" in the context of 28 U.S.C. § 1927). "[A]ttorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). Plaintiff's counsel was complicit in Plaintiff's misrepresentations throughout the case, including in the Complaint, in response to the Order to Show Cause Regarding Subject Matter Jurisdiction, in Plaintiff's discovery responses, deposition testimony, and court filings. "Neither sanctions nor a judgment against the client absolve the lawyer." *Id.* Plaintiff's counsel should therefore be ordered to likewise pay OJC's attorneys' fees and costs caused by their objectionable conduct. *Id.* at 1314 (sanctions amount dictated by "the costs occasioned by the objectionable conduct").

## **CONCLUSION**

Only after Plaintiff's claims fell apart and instead of dismissing its claims with prejudice under Fed. R. Civ. P. 41, Plaintiff used its escape route in its motion to dismiss based on information that it had known for ***over three years***. Based on its own admitted facts, Plaintiff

**App. 153**

engaged in repeated misrepresentations and concealments from this Court on Plaintiff's corporate status since Day One of this case. Now Plaintiff demands that discovery in this case be reopened in a new case, casting aside the fact that discovery had been closed for three weeks and dispositive motions were days away when Plaintiff pulled out its long-known trump card. Accordingly, OJC respectfully requests that the Court (i) sanction Plaintiff under the Court's inherent powers and Plaintiff's counsel under 28 U.S.C. § 1927 by holding them jointly and severally liable and ordering them to pay OJC's attorneys' fees and costs related to this case, and (ii) grant OJC such other relief as the Court finds just and proper.

## PRE-FILING CONFERENCE CERTIFICATION

Prior to filing this Motion, on May 15, 2024, and June 20, 2024, counsel for OJC met and conferred with Plaintiff's counsel about whether Plaintiff would be willing to resolve by agreement the issues raised in this Motion. The parties also exchanged proposed stipulations about the use of evidence from this case in a subsequent case and from where the future case would begin from. (Exs. A and B.)[4] The parties could not agree on those issues, as Plaintiff demanded the re-opening of discovery and to put itself in a better position than it was in when it filed its motion to dismiss on January 2, 2024, three weeks after all discovery was closed and days before the dispositive motion deadline.


Dated: July 8, 2024                                    Respectfully Submitted,


                                                       By: /s/ Shlomo Y. Hecht
                                                       Shlomo Y. Hecht
                                                       Florida State Bar No.: 127144

---

[4] Ex. A is a true and correct copy of OJC's proposed Stipulation on Evidence from this case for a future case, and Ex. B is a true and correct copy of Plaintiff's redlined Stipulation on Evidence that demands the re-opening of the closed discovery period.

**App. 154**

Shlomo Y. Hecht, P.A.
3076 N Commerce Pkwy
Miramar, FL  33025
Phone: (954) 861-0025
Email: sam@hechtlawpa.com

Aaron W. Davis (admitted *Pro Hac Vice*)
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD  57730-0735
Phone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorneys for OJ Commerce, LLC*

## CERTIFICATE OF TRANSMITTAL / SERVICE

I HEREBY certify that on July 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served this document upon Plaintiff's counsel of record.

/s/Shlomo Y. Hecht
Shlomo Y. Hecht

**App. 155**

**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:22-cv-60897-WPD**

NATIONAL CHRISTMAS PRODUCTS,
INC. D/B/A NATIONAL TREE
COMPANY, a New Jersey Corporation

       Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company

       Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SANCTIONS**

Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("Plaintiff"), by and through undersigned counsel, opposes Defendant OJ Commerce, LLC's ("OJC" or "Defendant") Motion for Sanctions [D.E. 139], filed on July 8, 2024.

**FACTUAL BACKGROUND**

1. On May 12, 2022, Plaintiff filed its Complaint against Defendant, seeking damages in the amount of $781,474.14 for (i) breach of contract, (ii) account stated and (iii) goods sold and delivered.

2. The Complaint alleged that diversity jurisdiction existed as between Plaintiff, a New Jersey S-Corp., and Defendant, a Delaware LLC whose sole member is a resident of Florida.

3. On May 13, 2022, the Court issued an order to show cause (the "OSC") requiring that Plaintiff file an addendum to its Complaint listing the citizenship of every member of any party that is a limited liability company or any other form of unincorporated business or association. *See*

1

**App. 156**

D.E. 6. As Counsel for Plaintiff believed at the time that Plaintiff (a) was a New Jersey S-Corp., and (b) the proper Plaintiff party, Plaintiff's response to the OSC was directed to the membership and citizenship of OJ Commerce.

4.   On July 8, 2022, Defendant moved to dismiss all three claims. Defendant did not move to dismiss or otherwise challenge this Court's subject matter jurisdiction. On August 23, 2022, this Honorable Court denied Defendant's motion to dismiss the breach of contract and account stated claims, and granted dismissal of Plaintiff's goods sold and delivered claim.

5.   On September 20, 2022, Defendant filed its Answer, Affirmative Defenses, and Counterclaims. Defendant's counterclaims against Plaintiff included claims for (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) breach of implied warranty, (iv) tortious interference with business relationship, (v) fraud and (vi) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

6.   Defendant alleged that diversity jurisdiction existed as between Plaintiff and Defendant, for purposes of Defendant's counterclaims, because Plaintiff was a New Jersey S-Corp. and Defendant was a Delaware LLC whose sole member resided in Florida.

7.   On November 21, 2022, Plaintiff moved to dismiss all six counterclaims. On January 13, 2023, this Honorable Court granted Plaintiff's motion to dismiss in part, and dismissed certain claims with leave to amend.

8.   On January 27, 2023, Defendant filed Amended Counterclaims, including the same six counterclaims. The amended counterclaims again alleged the existence of diversity jurisdiction as between Plaintiff and Defendant on the grounds that Plaintiff was a New Jersey S-Corp. and Defendant is a Delaware LLC whose sole member is a resident of Florida.

9.   On February 10, 2023, Plaintiff filed its answer to Defendant's Amended Counterclaims.

**App. 157**

10. Neither Plaintiff nor Defendant submitted Rule 7.1 statements. At the time those statements would have been due, however, the Rule did not require a statement identifying the citizenship of each party.

11. Thereafter, the parties engaged in discovery, which included twelve (12) depositions, tens of thousands of pages of discovery, interrogatories, notices to admit, and three (3) discovery hearings.

12. On November 13, 2023, Plaintiff's CFO informed counsel that Plaintiff is not an S-Corp., as alleged in the Complaint and Defendant's counterclaims, but rather an LLC.

13. Thereafter, counsel conducted an investigation with respect to Plaintiff's corporate identity; that investigation revealed that National Christmas Products, Inc. was merged out of existence and into National Christmas Products LLC, a Delaware LLC, in or about November 8, 2019.   The details of counsel's investigation are set forth in the Declaration of John B. Horgan, the "Horgan Declaration"), dated July 22, 2024, annexed hereto as **Exhibit 1.**

14. While counsel's investigation was pending, the parties were simultaneously working to complete all discovery by the December 13, 2023 deadline.

15. At the same time that Plaintiff's counsel was investigating, they were simultaneously preparing to take and defend multiple depositions including: the November 20, 2023 deposition of one of Plaintiff's 30(b)(6) witnesses; the November 21, 2023 deposition of Defendant's CEO (which was cancelled at the last minute); the November 22, 2023 deposition of Defendant's Head of Merchandising and Vendor Management; the November 28, 2023 deposition of Defendant's former Buyer; the December 5, 2023 deposition of Plaintiff's former COO (who Defendant claimed no longer worked for the company on November 20, 2023); the rescheduled December 5, 2023 deposition of Defendant's CEO; the December 7, 2023 deposition of Defendant's expert,

3

**App. 158**

Richard Bolko ("Mr. Bolko"); responding to Defendant's third set of discovery requests which were due on December 8, 2023; and responding to Defendant's fourth set of discovery requests which were due on December 13, 2023.

16. On top of those depositions and discovery responses, the parties had substantial additional discovery disputes, which took significant time and resources.

17. At 5:33pm on December 6, 2023, the night before Defendant's expert was scheduled to be deposed and seven days before the close of discovery, counsel for Defendant emailed Plaintiff informing them that "It was discovered today that there was some data missing from the file entitled "Damage Calc 2020-2021.xlsx," produced on October 4, 2023.  To summarize, there were orders missing from the document, sales tax was included but not deducted, and delivery data for each order was inadvertently omitted.  We are in the process of amending this file, and expect to provide you with an updated file as soon as possible."

18. At 6:45pm that same night, Mr. Hecht emailed the updated Damages Calculation file, which contained an additional 43,000 rows of data related to Plaintiff alone and cut damages estimated damages in half. Mr. Hecht further informed Plaintiff that Mr. Bolko would be revising his report based on the new data.

19. As a result of the foregoing, Plaintiff was unable to proceed with the December 7, 2023 deposition scheduled for Mr. Bolko.

20. On December 7, 2023, three hours after Mr. Bolko's deposition was scheduled to start, Plaintiff served Mr. Bolko's amended expert report (the "Amended Bolko Report") and supplemental discovery responses.

21. Defendant claimed that, because Mr. Bolko's methodology did not change in the Amended Bolko Report and Defendant's claimed damages was actually reduced, there was no need for

Plaintiff's expert to revise his rebuttal report. Defendant further refused to postpone Mr. Khemlani's deposition, scheduled for December 8, 2023.

22. Plaintiff declined to produce Mr. Khemlani on December 8th, as Mr. Khemlani would have had less than two days to review Mr. Bolko's amended report and three days to review the *substantial* new data concerning the relevant orders, sales, and delivery information, which were the basis for Defendant's claimed damages and thus highly significant to Mr. Khemlani's analysis.

23. As of the close of discovery on December 13, 2023, the parties had not resolved their disputes concerning the Amended Bolko Report . Neither party's expert had been deposed and Defendant was steadfastly refusing to re-schedule those depositions. As of the close of discovery, before Plaintiff determined that dismissal might be necessary, Plaintiff intended to make a motion concerning these expert discovery issues.

24. It was not until December 21, 2023 that Plaintiff learned that there was potentially a Florida citizen within Plaintiff's membership chain, which would destroy diversity.

25. As soon as counsel for Plaintiff learned of this potential break in the chain, counsel sought additional information but, due to the Christmas holiday, did not receive confirmation until December 28, 2023.  Thereafter, counsel for Plaintiff prepared a motion to dismiss, which it filed on January 4, 2024 (the "Motion to Dismiss").

26. On January 9, 2024, Defendant moved to amend the scheduling order and for expedited jurisdictional discovery (the "Motion for Jurisdictional Discovery"). A day later, the Court stayed the action pending resolution of subject matter jurisdiction and referred the Motion to Dismiss to Magistrate Judge Strauss.

27. On January 25, 2024, Magistrate Judge Strauss granted in part Defendant's Motion for Jurisdictional Discovery, allowing sixty (60) days for jurisdictional discovery and limiting

**App. 160**

Defendant's discovery requests to two targeted issues: (i) whether Mark Hajduch (at the time Plaintiff filed the action) was a citizen of Florida (for diversity jurisdiction purposes), and (ii) whether Hajduch's citizenship (at the time Plaintiff filed the action) has any bearing on Plaintiff's citizenship (the "January 25 Order"). Magistrate Judge Strauss also extended Defendant's time to oppose the Motion to Dismiss to ten (10) days after the expiration of the sixty-day discovery period.

28.  Defendant served 84 interrogatories and 33 requests for production (including subparts) on January 29, 2024 (the "Requests").  Plaintiff provided Defendant with responses and objections to the Requests and produced 312 pages of responsive documents on February 9, 2024.

29. Despite the Court's order limiting jurisdictional discovery, Defendant requested a discovery hearing to compel, in part, unredacted versions of confidential business documents and a deposition of Mr. Hajduch (who Defendant had not yet subpoenaed).

30. On February 23, 2024, Magistrate Judge Strauss issued an order denying Defendant's motion to compel the unredacted versions of confidential business documents, and limited any deposition of Mr. Hajduch to three (3) hours (the "February 23 Order").

31. In the midst of jurisdictional discovery, on February 27, 2024, Defendant filed *OJ Commerce, LLC v. National Christmas Products, LLC. d/b/a National Tree Company, National Christmas Products, Inc. d/b/a National Tree Company, National Tree Intermediary, LLC, National Tree Holding, LLC, Joseph A. Puleo, Salvatore Puleo, Jr., and Richard Puleo*, Case No. 0:24-cv-60331 (the "Second Action"), which Defendant stated arose out of the same set of facts and circumstances, and the same commercial relationship, underlying the gravamen of the claims and counterclaims of the instant action.

32. On March 5, 2024, the parties met and conferred to discuss how to best proceed with the

instant action and the Second Action.  Defendant's counsel proposed that the instant case and the Second Action be consolidated as related cases on the grounds that it did not want to concede that the instant case lacked subject matter jurisdiction. Plaintiff's counsel opposed due to the lack of subject matter jurisdiction in the instant case, and proposed a joint motion to dismiss without prejudice. The parties could not reach an agreement.

33. On March 8, 2024, Defendant sent Plaintiff's counsel a proposed "Joint Motion to Consolidate Cases" and stated that it would continue with jurisdictional discovery.

34. Later that day, Plaintiff sent Defendant a redlined version of Defendant's proposed motion, to reflect that the Court had no subject matter jurisdiction and the instant case had to be dismissed, but otherwise confirming that all discovery conducted in the instant action could be used in the Second Action (or a new state court action if the Second Action is dismissed), so as to eliminate the need for any duplicative discovery.  *See* D.E. 115-8.

35. Defendant rejected Plaintiff's proposed changes to the joint motion.

36. On March 8, 2024, Defendant filed an objection to the February 23 Order, insisting that the Court order Plaintiff to produce the unredacted versions of the confidential business documents (the "March 8 Objection").

37. On March 20, 2024, shortly after Defendant filed the Second Action and deposed Mr. Hajduch, Defendant filed an expedited motion for clarification of the January 25 Order, seeking a two-week extension of the jurisdictional discovery deadline to "test the veracity of Plaintiff's alleged membership chain in a deposition by oral examination" (the "Motion for Clarification"). The Motion for Clarification was denied on March 29, 2024.

38. On April 1, 2024, Defendant's March 8 Objection was denied on the grounds that Defendant failed to meet its burden of demonstrating that Magistrate Judge Strauss' February 23 Order was clearly erroneous or contrary to law.

39. On April 2, 2024, Defendant filed its opposition to Plaintiff's motion to dismiss for lack of subject matter jurisdiction (the "Opposition"), alleging that Plaintiff could continue to sue and be sued in that name in perpetuity, and misapplying law that applies to dissolved rather than merged entities. **Notably, Defendant did not use or even mention *any* of the jurisdictional discovery it demanded**.

40. Plaintiff filed its reply on April 9, 2024. Defendant moved for leave to file a sur-reply two days later, which the Court denied the same day.

41. On May 7, 2024, Magistrate Judge Strauss issued a report and recommendation granting Plaintiff's motion to dismiss for lack of subject matter jurisdiction (the "R&R").

42. On May 21, 2024, Defendant filed its objections to the R&R (the "Objections"), which and a raised arguments for the first time that were not raised in opposition to the Motion to Dismiss.

43. On June 6, 2024, the Court overruled the Objections, approved the R&R, granted Plaintiff's motion to dismiss and closed the case.

44. In the midst of conferral related to the Second Action, on June 19, 2024, Defendant sent Plaintiff a proposed stipulation on evidence threatening that it would potentially bring a motion for sanctions and its attorneys' fees and costs related to the discovery from the instant case. This stipulation was a mere rehash of the proposals Plaintiff had already rejected in March; nevertheless, Plaintiff in good faith responded with a proposed redline of the stipulation which would preserve the parties' ability to use in the Second Action any discovery obtained in the instant

action, thereby eliminating the possibility of duplicative discovery. Defendant rejected this proposed redline out of hand and brought this motion for sanctions

45. On July 8, 2024, Defendant filed the instant motion seeking sanctions.

<u>**ARGUMENT**</u>

**I.      There is No Evidence of Any Subjective Bad Faith on the Part of Plaintiff or Plaintiff's Counsel**

The purpose of the Court's inherent powers to sanction parties is "both to vindicate judicial authority without resorting to contempt of court sanctions and to make the non-violating party whole . . . The inherent power must be exercised with restraint and discretion . . . Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). "In assessing whether a party should be sanctioned, a court examines the wrongdoing in the context of the case, including the culpability of other parties." *Purchasing Power*, 851 F.3d at 1225 (internal citations omitted).

Here, there is no evidence to suggest that Plaintiff or Plaintiff's counsel acted in bad faith. In fact, the evidence clearly shows that Plaintiff's counsel made a mistake in failing adequately to investigate whether National Christmas Products, Inc. or National Christmas Products, LLC was the proper Plaintiff. Contrary to Defendant's bald speculation, there is no evidence to suggest that Plaintiff or Plaintiff's counsel had any intent to deceive this Court at any time, nor is there any evidence to suggest that Plaintiff delayed either (a) performing its investigation, or (b) informing the Court of the results thereof, in order to gain some kind of "tactical advantage." Plaintiff gained no such advantage and has clearly and credibly explained that it waited until its investigation determined that National Christmas Products, LLC had Florida citizenship for diversity purposes

**App. 164**

before doing the only thing it could do under the circumstances: move to dismiss the instant diversity action without prejudice on the grounds that that the Court lacked subject matter jurisdiction. Plaintiff understood the seriousness of the investigation and the potential conclusions resulting therefrom, performed it carefully, and once it had the answer it sought moved without any undue delay to dismiss this action without prejudice; this is exactly the kind of careful and deliberate analysis, followed swiftly by remedial action, that the Courts should expect from counsel under the circumstances.

Defendant nonsensically alleges that Plaintiff waited until the "eve of dispositive motions" to file the Motion to Dismiss in order to use it as a "trap-door escape route to re-litigate this dispute in a new case." Motion at 9.[1] It is unclear how re-litigating this case in a different forum would serve as a "trap-door escape route" or otherwise benefit Plaintiff, which has already spent significant time and resources litigating the instant Action. Regardless of the forum of this dispute, the facts and evidence remain the same.

Defendant also conveniently ignores its own conduct in failing to inquire as to Plaintiff's corporate status. Defendant admits that it received the March 14, 2022 demand letter sent in the name of National Christmas Products (motion, at ¶ 3), yet, over the course of more than a year of discovery (including four requests for interrogatories, eight (8) depositions, four (4) document requests, and two (2) requests for admissions), Defendant failed to ask *a single question* as to whether Plaintiff was an LLC or an S Corp., despite (1) having received a demand letter from National Christmas Products, LLC and (2) knowing that it had been making payments to National

---

[1] Defendant seems to suggest that Plaintiff would be in a "much better position" if discovery was re-opened, suggesting that Defendant is aware of and in possession of evidence that was not produced in discovery, but would be in the event discovery was re-opened. *See* Oppo. at 2. Regardless, the evidence that Defendant itself submits shows that Plaintiff has no intention of re-doing discovery that was already completed when this case is litigated in an appropriate forum. *See* Motion, Ex. B.

**App. 165**

Christmas Products, LLC since 2020. Defendant suggests that Plaintiff's corporate representative mislead Defendant and the Court in its deposition, yet the transcript testimony shows that Defendant did not actually ask the witness whether they worked for National Christmas Products, Inc. or LLC, nor did Defendant even ask the witness to review the caption for its accuracy. *See* Motion, ¶ 15 (quoting the deposition transcript of Dennis Cooke, one of Plaintiff's corporate designees).

The *Purchasing Power* case is instructive. In *Purchasing Power,* prior to seeking removal to Federal court, the defendant sought confirmation of Purchasing Power's citizenship for diversity purposes from counsel for Purchasing Power. In response, attorneys for Purchasing Power investigated the citizenship of Purchasing Power, which it knew was an LLC, but failed to discover an entity within the chain that destroyed diversity. *See Purchasing Power*, 851 F.3d 1218 at 1222. Upon appeal of summary judgment, the Eleventh Circuit remanded the case back to the District Court to determine whether the Court had subject matter jurisdiction. Upon remand, the District Court found that no subject matter jurisdiction existed and awarded sanctions against Purchasing Power. *Id*. The 11th Circuit reversed the District Court's award of sanctions finding that "[n]o party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants." *Purchasing Power,* 851 F.3d at 1228. Similarly, here, there is no evidence of any bad faith on the part of Plaintiff or Plaintiff's counsel. Plaintiff's counsel mistakenly believed that National Christmas Products, Inc. was the proper plaintiff and Plaintiff failed to catch that mistake until November 2023. As soon as counsel for Plaintiff learned of the mistake, it immediately began an investigation. At no time prior to November 2023 did Defendant ask a single question in discovery

# App. 166

or otherwise as to whether National Christmas Products, Inc. or National Christmas Products, LLC was the relevant entity. Where, as here, neither Plaintiff nor Plaintiff's counsel acted with bad intentions, sanctions are not warranted. *See Purchasing Power,* 851 F.3d at 1228 (denying sanctions motion for failure to adequately investigate citizenship for diversity purposes); *see also Atkins Nuclear Secured, LLC v. Aptim Fed. Servs., LLC,* No. 18-cv-1112, 2019 WL 1793137, at *7 (E.D. Va. Apr. 24, 2019) (finding no basis for sanctions where there was "no evidence to suggest that counsel had actual knowledge of their client's citizenship prior to" the date they discovered the citizenship issue).

## I.      No Objective Bad Faith

28 U.S.C.A. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . .  who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A party moving for sanctions under Section 1927 "must show *objective* bad faith . . .  The statute imposes a 'high standard' that requires the moving party to show that the other side engaged in behavior that 'grossly deviates from reasonable conduct.'" *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (internal citations omitted) (denying motion for sanctions). For the same reasons that Defendant cannot show subjective bad faith, Defendant also cannot show that Plaintiff or Plaintiff's counsel acted with objective bad faith.

"[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions—the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) (emphasis in original). Here, Plaintiff's counsel's conduct does not

# App. 167

meet this standard. In fact, it was the complete opposite. Any "delayed disclosure" by Plaintiff's counsel (as alleged by Defendant) is a mischaracterization: counsel independently conducted a **complete** investigation into the citizenship in order to ***avoid*** needlessly obstructing this litigation when it was near discovery's end. Plaintiff's counsel mistakenly believed the entity named in the parties' agreement was the proper Plaintiff. Given the complexities of subject matter jurisdiction in the context of LLCs, that mistake was not egregious or even particularly uncommon. Plaintiff did not put forth any frivolous claims in this Action and intends to raise those claims in the appropriate forum. Plaintiff has repeatedly informed Defendant that it has no intention of duplicating discovery that was already completed in this Action and has *twice* offered to enter into a stipulation to that effect. *See* D.E. 115-8 at ¶¶ 23-24 and 139-2 at ¶ 13. As the parties intend to litigate these identical claims in the appropriate forum, and Plaintiff has repeatedly offered to stipulate that it will not duplicate discovery already completed, none of the discovery or motion practice in this Action will have been wasted. The punitive sanctions Defendant seeks are thus entirely inapposite.

## II.     Attorneys' Fees Have Not Been Needlessly Incurred

Defendant alleges that Plaintiff "demand[ed] that discovery be reopened and more depositions and other discovery take place, and to potentially re-open all the discovery that was already completed." Motion, at 2. In support of this, Defendant cites to Plaintiff's redlined stipulation, which states the opposite: Plaintiff agreed that "[t]o the extent the parties re-assert claims and defenses identical to those in the First Case, the parties agree that the discovery already conducted in the First case may be used in another case involving the same claims and defenses, as it would have been used in the First Case." *See* Ex. B at 13.[2] Plaintiff did not "demand" that

---

[2] In fact, the redlined stipulation was the second time that Plaintiff expressly agreed not to re-open discovery that had already been completed.

# App. 168

discovery be reopened: it merely sought to "reserve the right to continue expert discovery" in light of Defendant's eleventh-hour submission of an amended Expert Report and damages calculation spreadsheet (which added 43,000 lines of additional data related to Plaintiff's sales orders, delivery data, sales tax) which *drastically* reduced Defendant's claimed damages[3] and precluded Plaintiff from taking the scheduled deposition of Defendant's expert or submitting a new rebuttal report based on the newly produced evidence and report. Ex. B, ¶¶ 8-9, 14.[4]

Further, Plaintiff simply reserved the right to conduct additional discovery "[t]o the extent that new allegations are made," not re-open discovery already completed *Id.* at ¶ 15. Any such reservation of rights is entirely fair and reasonable and does not evidence any "demand" for discovery to be re-opened broadly or for any discovery actually completed to be re-done.

In or about early March 2024, after Defendant filed the Second Action, Defendant provided Plaintiff with a proposed joint motion to consolidate. Plaintiff made edits to that joint motion, which Defendant rejected. *See* D.E 115-8. Plaintiff's draft of the motion included the following terms:

> 23. The parties agree that any discovery already completed in the First Case as to the claims and defenses in that case will not be re-done in the Second Case.
>
> 24. The parties agree that the discovery completed in the First Case will be used in the Second Case.
>
> 25. The parties agree that the discovery in the Second Case will be focused on

---

[3] This new damages calculation and report, which were produced the day Defendant's expert was scheduled to be deposed, contained significant data that was previously unproduced by Defendant and cut Defendant's claimed damages in half. Despite this last-minute production, Defendant refused to reschedule Plaintiff's rebuttal expert's deposition or even permit him to revise his report despite his report being on Defendant's admittedly incomplete data.

[4] Had the case not been dismissed, Plaintiff would still have had the ability to move for the deposition of Defendant's expert and submit a supplemental rebuttal report based on the late-produced data and revised report. If Plaintiff had agreed to Defendant's proposed stipulation, Plaintiff would have been in a worse position than it would have been in had the case not been dismissed. Whereas the language proposed by Plaintiff would have, at worst, maintained the status quo and, at best, avoided unnecessary motion practice.

# App. 169

the claims and defenses in the Second Case, aside from expert discovery from
the First Case which was not completed.

*See* D.E. 115-8. Plaintiff has been clear since March 2024, and has offered to so stipulate, that in

litigating these claims in the Second Action or a new state court action if the Second Action is

dismissed, it will not duplicate any discovery that has already been completed in this action.  Yet

Defendant ignores this proposed joint motion, the redlined stipulation from Plaintiff, and the fact

that Plaintiff also expended substantial time and effort in completing that discovery. Plaintiff

merely sought to reserve its rights to discovery it would have been entitled to related to Defendant's

last-minute changes to its expert report based on the last-minute production of significant amounts

of data underlying its damages calculation that had not been made available to Plaintiff's rebuttal

expert prior to the submission of Plaintiff's expert's rebuttal report. Defendant further ignores the

fact that, at the time the parties were discussing the stipulations, Defendant had not re-filed any of

the claims at issue in the First Action. As such, Plaintiff had to reserve the right to seek discovery

on claims and allegations that were not raised in the First Action or risk waiving that right in the

event that Defendant decided to re-file and add new claims and allegations.  Plaintiff has always

averred that, to the extent Defendant pleads its counterclaims from this action as the same

additional claims in an amended pleading in the Second Action, there would be no need to

duplicate discovery already completed on those claims/counterclaims.

Defendant does not explain what fees it needlessly incurred as a result of the lack of

diversity as would warrant an award of attorneys' fees. Instead, Defendant vaguely argues that it

is entitled to *all* of its attorneys' fees for the entire case, despite the fact that the parties have clearly

both acknowledged that, to the extent the claims are re-filed in another court (or in this Court in

the Related Action), the discovery that was completed as related to the claims actually filed in the

First Action will be used.

# App. 170

### III. Any Unnecessary Fees Were the Result of Defendant's Requests for Jurisdictional Discovery Which It Never Intended to Use to Determine Whether the Court had Subject Matter Jurisdiction

After Plaintiff filed the Motion to Dismiss, Defendant continued to prolong unnecessarily the case by seeking substantial discovery (including through multiple hearings and substantial motion practice), then opposed the motion to dismiss based on a frivolous legal argument that had absolutely nothing to do with any of the discovery it sought in jurisdictional discovery. Then after Defendant's motion was denied, Defendant filed a baseless objection to Magistrate Strauss's Report based on arguments that it failed to make in opposition to the motion to dismiss or otherwise even raise in discovery. While all of this was going on, Defendant also filed a new action against Plaintiff and LLC members of Plaintiff (which it only learned about through jurisdictional discovery), which Defendant admits was directly related to the First Action. To the extent any unnecessary discovery, with its concomitant expense, occurred in this case it is directly attributable to Defendant's conduct with respect to its purported "jurisdictional" discovery in the wake of the Motion to Dismiss. There is no basis on which to award sanctions against Plaintiff, or undersigned counsel, based on Defendant's own misfeasance.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for sanctions should be denied in its entirety.

16

# App. 171

Date:   July 22, 2024

Respectfully submitted,

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

*/s/ Jordan D. Utanski*
Kyle A. Johnson, Esq.
Florida Bar No. 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No. 851711
LShinder@RoyBlack.com
Jordan D. Utanski, Esq.
Florida Bar No. 119432
JUtanski@RoyBlack.com

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105

  */s/ John B. Horgan Esq.*
John Horgan, Esq. (admitted pro hac vice)
jhorgan@egsllp.com
Joanna R. Cohen, Esq.
JCohen@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

*Counsel for Plaintiff, National Christmas Products,
Inc. D/B/A National Tree Company*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on this 22nd day of July 2024, I served the foregoing via electronic filing through this Court's CM/ECF system upon Shlomo Y. Hecht, Esq. and Aaron W. Davis, Esq., attorneys for Defendant, OJ Commerce, LLC, at sam@hechtlawpa.com; davis@valhallalegal.com.

**App. 173**

**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:22-cv-60897-WPD**

NATIONAL CHRISTMAS PRODUCTS,
INC. D/B/A NATIONAL TREE
COMPANY, a New Jersey Corporation

       Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited Liability
Company

       Defendant.

_____/

**DECLARATION OF JOHN B. HORGAN, ESQ. IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO MOTION FOR SANCTIONS**

    John B. Horgan, declares, under penalty of perjury under the laws of the United States and

pursuant to 28 U.S.C. § 1746 that the following is true and correct:

    1.  I am a partner with the law firm Ellenoff Grossman & Schole, LLP ("EGS"), counsel for

Plaintiff ("NCP") in this action. As such, I am fully familiar with the facts and circumstances of

this matter.

    2.  On or about March 14, 2022, EGS sent a demand letter to Defendant in an attempt to

avoid litigation. The demand letter was sent in the name of "National Christmas Products, LLC."

At the time that the demand letter was sent, EGS had not yet received substantial documents

from NCP, including but not limited to the agreement between Plaintiff and Defendant.

    3.  After the parties failed to reach an agreement, EGS was given certain documents to use to

prepare the complaint. Included in those documents were the parties' agreement and the accounts

1

**App. 174**

receivable statement, both which bore the name "National Christmas Products, Inc."

4.   Based on those documents, the complaint—which asserted claims for breach of contract and account stated—was drafted (and ultimately filed) in the name of National Christmas Products, Inc.

5.   On or about April 13, 2022, EGS provided NCP with a draft of the complaint, which listed National Christmas Products, Inc. as Plaintiff.

6.   On or about April 24, 2022, NCP informed EGS that it approved the draft for filing.

7.   On May 12, 2022, EGS filed the complaint.

8.   The same day, the Court issued an Order to Show Cause which directed Plaintiff to provide the Court with the citizenship of the parties for diversity purposes based on Defendant's status as an LLC.

9.   Under the mistaken impression that only Defendant was an LLC, EGS investigated Defendant's LLC membership but did not investigate Plaintiff's corporate status and submitted its addendum to the Complaint on May, 2022.

10. The parties went on to engage in substantive motion practice.

11. On October 28, 2022, the parties submitted a joint motion for extension of time on all outstanding deadlines for the parties to engage in settlement discussions. The Court granted the motion, but stated in part that "no further extensions shall be expected." D.E. 33.

12. For the next several months, the parties engaged in discovery, including but not limited to an exchange of documents, several discovery hearings and depositions.

13. The discovery deadline was set for October 20, 2023. D.E. 35.

14. On September 29, 2023, Plaintiff moved to extend the discovery cutoff deadline. D.E. 55. Due to Defendant's deficiencies in its document production, as well as a disagreement between

the parties as to the proportionality of the number of depositions noticed by Defendant, Plaintiff sought additional time to resolve those disputes and complete discovery. Defendant opposed. D.E. 60.

15. On October 11, 2023, the Court granted a discovery deadline extension to November 13, 2023. The Court stated that absent an emergency, further extensions should not be expected. D.E. 66.

16. On October 23, 2023, Plaintiff sought a second extension of the discovery cutoff deadline on the grounds that (i) the lead partner assigned to the matter, Anthony Galano, III, was on emergency medical leave, (ii) new lead counsel had to be brought up to speed on the matter and (iii) there were several discovery disputes and depositions outstanding. D.E. 75. Defendant opposed again. D.E. 76.

17. On October 27, 2023, the Court granted a second discovery deadline extension to December 13, 2023 and reset the remainder of the pretrial schedule. This time, the Court emphasized that further extensions shall not be expected absent emergency. D.E. 80.

18. On November 13, 2023, Plaintiff's CFO informed EGS that Plaintiff is not an S-Corp., as alleged in the Complaint and Defendant's counterclaims, but rather an LLC.

19. Immediately thereafter, EGS conducted an investigation with respect to Plaintiff's corporate identity; that investigation revealed that National Christmas Products, Inc. was merged out of existence and into National Christmas Products LLC, a Delaware LLC, in or about October 2019.

20. Understanding that, for purposes of diversity jurisdiction—under which the Court presided over this action—an LLC is a citizen of each state of which *each of its members* is a citizen, EGS sought to determine the identity of NCP's members up through the chain of

3

**App. 176**

corporate ownership; this included investigating the identities of certain offshore LLCs and limited and general partnerships, which information was not within EGS' or NCP's possession and which was not publicly available.

21. Defendant's argument that this inured to Plaintiff's benefit with respect to case strategy in general, and discovery in particular, is false: in the event that the investigation determined that complete diversity **did** exist among the parties, which would provide this Court subject-matter jurisdiction to hear the case, all the effort expended in the investigation would have resulted in a distraction from a tight discovery timeline that the Court had already stated explicitly would not be extended absent an emergency, and ultimately prejudiced Plaintiff.

22. Defendant did not ask a single deponent about Plaintiff's corporate identity: in fact, counsel for Defendant explicitly declined to state "the whole corporate name" and instead confirmed that Plaintiff's corporate witness would "know what we are talking about?" Motion at ¶ 15. Defendant did not ask if that corporate entity was an LLC or an S-Corp., nor did Defendant direct the witness to look at the caption to confirm that the entity listed as Plaintiff was accurate. As a result, there was nothing for Plaintiff's counsel to correct on the record during those depositions.

23. On or about December 1, 2023, EGS asked Plaintiff's CFO if he was able to obtain the membership and partnership information of the entities in the membership chain that EGS was unable to determine.

24. On December 5, 2023, EGS followed up with Plaintiff's CFO to determine whether he had been able to determine any new information from any of Plaintiff's member entities.

25. On December 6, 2023, EGS again spoke to Plaintiff's CFO concerning the information needed to confirm Plaintiff's citizenship.

26. While EGS investigated Plaintiff's corporate identity (and the citizenship of that entity), the parties were still in the midst of discovery. The parties were taking and defending depositions; Defendant issued notices of deposition for two non-party witnesses (neither of which EGS represented), which Plaintiff opposed.

27. Expert discovery was also ongoing.  Defendant produced an expert report regarding damages, as well as a supporting damages calculations spreadsheet, which contained the data underlying the expert's calculations, on October 4, 2023.

28. Plaintiff retained an expert and provided Defendant with a rebuttal report on December 2, 2023.

29. One week before the discovery cutoff deadline and the night before its expert's deposition, Defendant produced an amended expert report along with an updated damages calculations spreadsheet that included approximately 43,000 rows of new data that had not been produced in discovery.

30. As a result, the parties could not proceed with the expert depositions as scheduled.

31. On December 21, 2023, Plaintiff's CFO informed EGS that at least one limited partner of Sun Capital Partners VII, L.P. (itself an offshore entity in NCP's chain of membership for diversity citizenship purposes) is a citizen of Florida.  This was the first time that EGS found any evidence to suggest that any person in Plaintiff's chain of ownership was a citizen of Florida, which would destroy diversity.

32. Upon learning this, counsel requested more specific information as to this limited partner, specifically including whether this limited partner had been a limited partner continuously from May 2022 until the present.

33. On December 28, 2023, counsel for Plaintiff was able to confirm that this individual had

**App. 178**

been a limited partner of Sun Capital Partners VII, L.P., continuously since May 2022.

34. On January 4, 2024, Plaintiff filed the motion to dismiss.

35. Immediately thereafter, jurisdictional discovery commenced.

36. On June 6, 2024, the Court granted Plaintiff's motion to dismiss and closed the case.

Dated:      July 22, 2024
            New York, New York

_____
            John B. Horgan

*Counsel for Defendants National Christmas
Products, LLC d/b/a National Tree Company,
National Tree Intermediary, LLC, National Tree
Holding, LLC, Joseph A. Puleo, Salvatore Puleo,
Jr. and Richard Puleo.*

**App. 179**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

                  Plaintiff,

-vs-

OJ COMMERCE, LLC,

                  Defendant.

_____/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS
AGAINST PLAINTIFF AND ITS COUNSEL**

1

**App. 180**

In its response, Plaintiff spills much ink selectively reciting and misrepresenting the proceedings in this case, all the while entirely ignoring the most pertinent facts, which remain entirely undisputed:

- It is undisputed that Plaintiff knew NCP INC was "merged out of existence" over two years before Plaintiff filed this case.  (ECF 95, p. 3, ¶ 12; ECF 95-1.)

- It is undisputed that Plaintiff's counsel knew before filing the Complaint that Plaintiff was an LLC, as counsel sent a demand letter to OJC on behalf of NCP LLC two months before filing suit.  (ECF 1-4, pp. 1-2.)

- It is undisputed that Plaintiff reviewed and condoned the use of NCP INC as the real party in interest before the Complaint was filed.  (ECF 141-1, p. 2, ¶¶ 5-6.)

- It is undisputed that Plaintiff willfully ignored the Court's Order to Show Cause that required Plaintiff to "list[] the citizenship of every member of **any Party** that is a limited liability company or any other form of unincorporated business or association."  (ECF 6, p. 2 (emphasis added).)

- It is undisputed that Plaintiff's counsel did not even minimally investigate or confirm the type of entity Plaintiff actually was prior to filing the Complaint or in response to the Court's Order to Show Cause, which specifically directed Plaintiff and its counsel to do so.  (ECF 141, p. 2, ¶ 3.)

- It is undisputed that Plaintiff concealed its LLC status and its citizenship from this Court for nearly **_two years_**.

- It is undisputed that Plaintiff litigated this case for nearly two years in clear violation of Fed. R. Civ. P. 17(a), which requires that "[a]n action **must** be prosecuted in the name of the real party in interest."  (emphasis added).

- It is undisputed that Plaintiff's counsel was told on November 13, 2023 that Plaintiff was not an S-Corp, but rather an LLC (ECF 91, ¶ 10); yet Plaintiff and its counsel concealed that fact from the Court or OJC for **_52 days_**, until well after discovery was closed.

- It is undisputed that after November 13, 2023 -- when Plaintiff's counsel was told that Plaintiff did not exist -- Plaintiff did not move to extend the discovery deadline or file a motion to compel on any issue.  (*See, generally,* Court Docket.)

- It is undisputed that Plaintiff will not agree that a new case involving the exact same claims and defenses from this case must <u>not</u> proceed forward from the point where this case was on January 4, 2024, when Plaintiff filed its motion to dismiss for lack of subject matter jurisdiction.  (ECF 139-2; ECF 141.)

2

**App. 181**

● It is undisputed that Plaintiff seeks to gain a tactical advantage from the dismissal as Plaintiff demands that any discovery in a new case on the exact same claims and defenses be reopened on matters that were closed at the time it filed its motion to dismiss. (*Id.*)

Despite OJC repeatedly raising these disturbing facts in prior motions, and in its present motion for sanctions, Plaintiff and its counsel have consistently refused to offer any good faith explanation for any of them.[1]  That is because they can't.  These glaring facts as to what Plaintiff and its counsel subjectively and objectively knew and when they knew it are inconvenient truths from which they must not be allowed escape unscathed.  Plaintiff and its counsel have wasted two years of this Court's time and resources, as well as OJC's time, fees, and expenses.  There is no excuse for Plaintiff and its counsel's knowing concealment and deception of the Court and OJC about the real party in interest, and they should be sanctioned for their bad faith conduct.

**I.      Plaintiff and its counsel knew and concealed from the Court Plaintiff's corporate status for nearly two years, as well as failed to even minimally investigate the issue, both of which clearly evidence bad faith.**

As outlined above, Plaintiff and its counsel knew the S corporation did not exist anymore and that the real party in interest was NCP LLC well before the filing of this case.  (ECF 95, p. 3, ¶ 12; ECF 95-1; ECF 1-4, pp. 1-2.)  While Plaintiff attempts to brush this off as "a mistake," such a contention is not only unsupported but it also flies in the face of the undisputed facts.  The *Itel Containers* case -- not surprisingly completely avoided by Plaintiff in its response -- addresses a very similar situation.  In that case, the defendant knew facts from the outset of the case that would lead to the dismissal of the case for lack of subject matter jurisdiction.  *Itel Containers International Management, Inc. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 97-98 (D.N.J. 1985).  Like in this case, the defendant concealed from the Court and the

---

[1] Plaintiff's failure to respond to the previously listed facts makes them unopposed and conceded. *Carter v. BPCL Management, LLC*, Case No. 19-60887-CIV-DIMITROULEAS, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) (collecting cases).

**App. 182**

opposing party for **nearly two years** the true nature of its corporate status and citizenship before filing a motion to dismiss for lack of subject matter jurisdiction. *Id.* at 98-99. Similarly, the *Itel* court noted that the offending party and its counsel "could have terminated the matter quickly" at the outset of the case, but "[i]nstead they forged a pattern of concealment" that lasted for years. *Id.* at 101. Like the defendant did in *Itel*, Plaintiff and its counsel have tried to deflect blame on to OJC for not uncovering their scheme, but as the *Itel* court held in rejecting such an argument, OJC "had a right to believe [it] was dealing with honorable adversaries" while, unbeknownst to OJC, Plaintiff and its counsel litigated this case in a "way to induce the belief" that Plaintiff was in fact the real party in interest, when they knew that Plaintiff wasn't. *Id.* at 104-05. Indeed, Plaintiff and its counsel made dozens of filings on the docket and served all its discovery responses in the name of NCP INC, an entity they knew hadn't existed in well over two years. Plaintiff and its counsel should be found to have litigated this case in bad faith and sanctioned, like the offending party and its counsel was in *Itel*.

Plaintiff's counsel also contends "the evidence clearly shows that Plaintiff's counsel made a mistake in failing adequately to investigate whether National Christmas Products, Inc. or National Christmas Products, LLC was the proper Plaintiff." (ECF 141, p. 9.) Tellingly, no argument is even made that ***Plaintiff itself*** didn't know who the proper plaintiff was (because Plaintiff undisputedly ***knew***). Plus, not only does the evidence clearly show that counsel knew before filing the Complaint about the LLC and it being the aggrieved party when counsel sent its demand letter, Plaintiff's counsel's admission that it "fail[ed] adequately to investigate" the proper party actually proves its bad faith. This is particularly true as Plaintiff affirmatively represents its (knowingly false) corporate status to the Court in response to the Order to Show Cause and entirely omits any suggestion that no investigation was done. To the contrary,

4

**App. 183**

Plaintiff's response certified that an investigation was completed.  (ECF 8, p. 2, ¶ 8); *see also* Fed. R. Civ. P. 11(b)(3) (requiring certification of factual contentions filed with the court).

In *Soliant Health*, a case directly on point from the Eleventh Circuit, the defendant misrepresented a fact in answering a court's question during a hearing, on which the court relied. *Soliant Health, LLC v. Aequor Healthcare Services, LLC*, No. 1:23-cv-02354-LMM, 2024 WL 2158710, at *1 (N.D. Ga. Apr. 19, 2024).  After the misrepresentation came to light during discovery, the plaintiff moved for sanctions.  *Id.*  Like Plaintiff did here, the defendant tried to minimize the misrepresentation by unilaterally limiting the scope of the Court's general question, months after the fact.  *Id.* at *2.  The court rejected the defendant's pretexts, "find[ing] that this misrepresentation constitutes bad faith misconduct."  *Id.*  Indeed, the court explicitly found that "[d]espite possessing [the true] information, Defendant represented to the Court that it had adequately investigated the matter" when providing its false answer.  *Id.*  "Ultimately, however, this statement was untrue, and a minimally adequate investigation should have revealed [the truth]."  *Id.*  The Court also noted that the defendant failed to notify the court about its misrepresentation for months, holding that "Defendant's failure to correct an obvious misrepresentation supports a finding of bad faith," and found "that sanctions are appropriate" under the court's inherent powers. *Id.*

Likewise, here, Plaintiff and its counsel subjectively knew before this case was even filed that NCP LLC was the real party in interest and NCP INC no longer existed.  Nonetheless, in response to the Court's Order to Show Cause issued the day after the Complaint was filed, Plaintiff affirmatively represented to the Court that it "National Tree Company is an S corporation organized under the laws of the State of New Jersey"[2] And like the sanctioned

---

[2] ECF 8, p. 2, ¶ 8.

defendant did in *Soliant Health*, Plaintiff and its counsel now unilaterally limit the scope of their response to the Order to Show Cause "to the membership and citizenship of OJ[C]" only,[3] despite Plaintiff being ordered to conduct an investigation and "list[] the citizenship of every member of **any Party** that is a limited liability company."[4] Plaintiff and its counsel's response to the Order to Show Cause made no mention that only an investigation of OJC was done, as they now claim. (ECF 8.) To the contrary, Plaintiff and its counsel were unequivocal – certifying that a reasonable investigation of NCP INC was conducted – and that Plaintiff was an S corporation and the real party in interest. But "a minimally adequate investigation [in response to the Order to Show Cause] should have revealed" that their factual contentions were clearly false. *Soliant Health*, 2024 WL 2158710, at *1. Plaintiff and its counsel's failure to do an investigation of NCP INC while certifying that they did proves bad faith. *Id.*; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith.").

Similar to what Plaintiff contends in its response,[5] other attorneys have argued that they were "under no obligation to conduct an independent investigation of the facts underlying … [a] claim before filing suit, and that [they] could rely on representations made to [them] by [a] long-time client." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996).[6] The Eleventh Circuit disagreed with that assertion, "hold[ing] that, under Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit" and affirmed the sanctions against the attorney. *Id.*[7] Plaintiff's counsel now admits that it

---

[3] ECF 141, p. 2, ¶ 3.
[4] ECF 6, p. 2 (emphasis added).
[5] ECF 141-1, pp. 1-2, ¶¶ 2-3 (blaming the false factual allegations in the Complaint on Plaintiff's counsel relying on two client documents provided for preparation of the Complaint).
[6] This opinion discussed Rule 11 but is instructive on the duty to investigate facts.
[7] *See also Marcus v. Alexandria Real Estate Equities, Inc.*, No. 2:21-cv-08088, 2022 WL

6

**App. 185**

failed to adequately investigate the corporate status of Plaintiff or the identity of the real party in interest and just "believed at the time" those assumptions were true.  (ECF 141, p. 2, ¶ 3.) Clearly, that is insufficient to avoid sanctions.  *Soliant Health*, 2024 WL 2158710, at *1-2.

What's more, after Plaintiff's counsel was explicitly told by Plaintiff that it was not an S corporation, it is undisputed that Plaintiff and its counsel "failed to notify the court about its misrepresentation [to the Order to Show Cause] for months."  *Id.* at *1.  Nonetheless, Plaintiff and its counsel attempt to blame OJC for their concealment of the true facts, by frivolously contending that "[a]t no time prior to November 2023 did [OJC] ask a single question in discovery or otherwise as to whether National Christmas Products, Inc. or National Christmas Products, LLC was the relevant entity."  (ECF 141, pp. 11-12.)  This is yet again demonstrably and willfully false.  OJC served discovery requests on Plaintiff concerning its corporate status and related entities, with Plaintiff (unbeknownst to OJC) limiting its responses explicitly to Plaintiff (NCP INC) while omitting NCP LLC from any of its answers:[8]

> 1. ***Identify the full name***, title, summary of their role, and contact information for ***all persons or entities that were involved in the sale of Plaintiff's products to OJC's customers***, or communications between Plaintiff and OJC's customers relating to OJC, Plaintiff, or Plaintiff's products.
>
> RESPONSE: Plaintiff specifically objects to this Interrogatory as being overly broad and unduly burdensome; in particular, Plaintiff objects to the obviously overbroad demand for the names, titles, summary of their role and contact information for "all persons or entities" involved in the sale of Plaintiff's products to OJC 's customers, which demand is not limited in scope. Subject to and without waiving any of the specific and general objections, Plaintiff states that the following people were involved in the sale of Plaintiff's products:

---

2815904, at *4 (C.D. Cal. May 3, 2022) ("As counsel violated Rule 11 by misrepresenting Plaintiff's citizenship and failing to conduct an adequate inquiry into whether jurisdiction was proper, sanctions are appropriate.").

[8] Plaintiff and its counsel were obligated to conduct a reasonable factual inquiry prior to certifying their discovery responses and disclosures and "must" be sanctioned for failure to do so.  Fed. R. Civ. P. 26(g)(1) and (3).

**App. 186**

**Name Title Contact Information**
Hari Krishnamurthy Chief Financial Officer hkrishnamurthy@nationaltree.com
Steve Downs Senior Vice President, Product Engineering sdowns@nationaltree.com
Rich Puleo Vice President rich@nationaltree.com
Lance Puleo, Director of Warehouse Operations lance@nationaltree.com
Fatima Branco Logistics Rma Coordinator fatima@nationaltree.com
Dennis Cooke Controller dcooke@nationaltree.com
Donna Cyril Accounts Payable donna@nationaltree.com
Gabrielle Puleo Director of Billing and Collections gabrielle@nationaltree.com
Kieran Esposito Customer Service Manager kieran@nationaltree.com[9]

21. One copy of all organizational charts or other documents showing the organization of Plaintiff's business, including documents sufficient to show Plaintiff's state of organization, location of its principal place of business, and names and addresses of its officers and directors.
RESPONSE: Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).[10]

8. Documents sufficient to identify all owners and ownership structure of Plaintiff.
RESPONSE: Plaintiff objects to this Request on the grounds that the "owners and ownership structure of Plaintiff" bears no reasonable relation to the issues in dispute in this action. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).[11]

Plaintiff also attempts to blame OJC for Plaintiff's Rule 30(b)(6) designee's – and its counsel's -- blatant omissions about the real party in interest and NPC LLC during the deposition.  But the record is clear that Plaintiff's designee confirmed that he "work[s] for" "the Plaintiff in this lawsuit," and neither the witness nor counsel -- who both admittedly knew at that time that NCP LLC was the real party in interest -- corrected the record.  (ECF 96-1.)  Instead, they both concealed that information and remained silent, just like they did with their discovery responses. Indeed, pursuant to Fed. R. Civ. P. 26(e)(1)(A), Plaintiff was required to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the

[9] Ex. C, p. 3 (emphasis added), a true and correct copy of which is attached to this Reply.
[10] Ex. D, p. 6, a true and correct copy of which is attached to this Reply.
[11] Ex. E, p. 5 a true and correct copy of which is attached to this Reply.

8

**App. 187**

disclosure or response is incomplete or incorrect," or face sanctions, including but not limited to "the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1). Admittedly, Plaintiff and its counsel did not do that and only "disclosed" the real party in interest when it filed its motion to dismiss on January 4, 2024, *52 days* after they admittedly knew the true facts.

Plaintiff's counsel attempts to make much of its "independent" and "complete" investigation of *the citizenship* of NCP LLC that allegedly took place in November - December 2023, even though it was admittedly done in **secret**. (ECF 141-1.) But that is a side show that entirely ignores the real issue. Plaintiff was required to "prosecute[] [its action in the name of the real party in interest"[12] correct inaccurate discovery responses,[13] and notify the Court of prior misrepresentations,[14] not hide these issues from the Court and OJC for months/years. Plaintiff and its counsel's concealment of the true facts about the real party in interest intentionally kept the Court and OJC in the dark until such time as Plaintiff could spring its motion to dismiss on OJC days before the dispositive motion deadline. Plaintiff and its counsel did not and cannot cite any case that condones such serendipitous conduct. To the contrary, all case law condemns it as bad faith conduct.

Plaintiff attempts to hide behind the *Purchasing Power* case to escape sanctions, but that case's facts are different from those here. Unlike here, the plaintiff in *Purchasing Power* in fact did an investigation of its LLC citizenship at the outset of the case and always had the correct real party in interest identified as the plaintiff. 851 F.3d 1218, 1225-28 (11th 2017) Moreover, there was no order to show cause on subject matter jurisdiction and thus no affirmative

---

[12] Fed. R. Civ. P. 17(a)(1).
[13] Fed. R. Civ. P. 26(e)(1)(A).
[14] *Soliant Health*, 2024 WL 2158710, at *1.

**App. 188**

misrepresentations to the Court like there were in this case, and there was no evidence that the *Purchasing Power* plaintiff acted in bad faith or that the plaintiff concealed who the real party in interest was or its citizenship, like Plaintiff did here. *Id.* In this case, evidence of subjective and objective bad faith is ample and based on Plaintiff and its counsel's own admissions.  Far from being "bald speculation" as Plaintiff argues, Plaintiff and its counsel always knew that it was not the real party in interest, they admittedly lied about Plaintiff's corporate status in response to the Order to Show Cause, and actively concealed the true facts from the Court and OJC, including but not limited to after November 13, 2023, that Plaintiff was not the real party in interest and purportedly did not even exist.  Plaintiff and its counsel's bad faith conduct should be sanctioned.

## II.   Plaintiff and its counsel's attempts to gain a tactical advantage from their own repeated misrepresentations further prove their bad faith and warrant sanctions.

Not surprisingly, Plaintiff baldly denies that it gained a tactical advantage from its misrepresentations and concealment of the truth from this Court and OJC.  This is yet another demonstrable lie.  OJC was willing to forego any sanctions against Plaintiff if it would just agree to continue the case from the exact point where the case was on January 4, 2024 when Plaintiff filed its motion to dismiss.  (ECF 139-1, p. 2, ¶ 10.)  At that time, discovery was closed and Plaintiff had not moved to extend the deadline or to compel on any issue.[15]  But instead of agreeing to continue this case from the January 4, 2024 snapshot in time, Plaintiff argues throughout its response that it must be allowed to reopen fact and expert discovery in a new case, contending that "Plaintiff would still have had the ability to move for" the additional discovery. (ECF 141, p. 14, n.4.)  But, pursuant to the Discovery Order, any such requests were waived, as Plaintiff did not make its "request within 14 days after the grounds for relief occur[ed]"[16] and

---

[15] (*Compare* ECF 80, p. 2(2) (Discovery Cutoff of 12/13/2023 *with generally* Court Docket (no discovery motions pending).)

[16] ECF 36, p. 4 (B).  Plaintiff alleges that its purported issue with expert discovery occurred no

**App. 189**

discovery had been closed for three weeks (ECF 80, p. 2(2)).  To permit Plaintiff to revive already-closed discovery in a future case would clearly put Plaintiff in a better position than it was in when it filed its motion to dismiss on January 4, 2024.  Plaintiff and its counsel's bad faith intentions are plainly illustrated by their attempt to capitalize on their misrepresentations.

The primary aspect of the Court's discretion to sanction bad faith conduct under its inherent powers "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Chambers v. NASCO, Inc*., 501 U.S. 32, 44-45 (1991).  Likewise, for § 1927 sanctions, the amount should be based on the costs occasioned by the objectionable conduct.  *See Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003). Here, it is undisputed that Plaintiff and its counsel knew from before this case was even filed that Plaintiff was not the real party in interest and hadn't even existed for nearly three years.  They doubled down on their bad faith misrepresentations when Plaintiff and its counsel affirmatively misrepresented that it was an S corporation in direct response to the Court's Order to Show Cause.  Plaintiff and its counsel should be jointly and severally ordered to pay OJC's attorneys' fees and costs for the entire case.

Even if the Court bends over backwards to give Plaintiff's *counsel* every benefit of the doubt, Plaintiff's counsel should be ordered to pay OJC's attorneys' fees and costs from November 13, 2023 to January 4, 2024.  During that time, it is undisputed that Plaintiff's counsel admittedly and subjectively knew that Plaintiff was not the real party in interest but yet withheld and concealed that fact from the Court and OJC.  During that 1,248-hour period, OJC incurred at least 170 hours of attorneys' fees, as well as costs, in this case.  Therefore, at the very least, Plaintiff's counsel should be ordered to pay OJC's attorneys' fees and costs during that 52-day period.

---

later than December 7, 2023 (ECF 141, p. 4), which was ***28 days*** before Plaintiff filed its motion to dismiss on January 4, 2024.

Dated: July 28, 2024                     Respectfully Submitted,


                                         By: /s/ Shlomo Y. Hecht
                                         Shlomo Y. Hecht
                                         Florida State Bar No.: 127144
                                         Shlomo Y. Hecht, P.A.
                                         3076 N Commerce Pkwy
                                         Miramar, FL  33025
                                         Phone: (954) 861-0025
                                         Email: sam@hechtlawpa.com

                                         Aaron W. Davis (admitted *Pro Hac Vice*)
                                         VALHALLA LEGAL, PLLC
                                         P.O. Box 735
                                         Custer, SD  57730-0735
                                         Phone: (763) 957-2397
                                         Email: davis@valhallalegal.com

                                         *Attorneys for OJ Commerce, LLC*


## **CERTIFICATE OF TRANSMITTAL / SERVICE**

I HEREBY certify that on July 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served this document upon Plaintiff's counsel of record.


                                         /s/Shlomo Y. Hecht
                                         Shlomo Y. Hecht

**App. 191**

## UNITED STATES COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 0:22-cv-60897-WPD

NATIONAL CHRISTMAS
PRODUCTS, INC. D/B/A
NATIONAL TREE COMPANY,
a New Jersey Corporation

Plaintiff,

v.

OJ COMMERCE, LLC, a Florida
Limited Liability Company

Defendant.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

     National Tree Company ("Plaintiff"), by and through undersigned counsel and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby submits this Response to OJ Commerce, LLC's ("Defendant" or "OJC") First Set of Interrogatories (the "Interrogatories"), dated December 6, 2022, as follows:

### GENERAL OBJECTIONS

    1.    Plaintiff objects to each Interrogatory to the extent it seeks privileged attorney-client communications, protected work product, trade secrets or confidential and/or proprietary information.

    2.    Plaintiff objects to each Interrogatory to the extent it seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

    3.    Plaintiff objects to each Interrogatory to the extent it purports to impose

**App. 192**

Ex. C

obligations beyond those required by the Federal Rules of Civil Procedure, and any Court

orders entered in this matter.

4.      Plaintiff objects to each Interrogatory to the extent it is overbroad, vague,

ambiguous, unduly burdensome, duplicative, not sufficiently limited in scope (including

time), undefined and subject to different interpretations in different contexts.  Specifically,

requests for "all documents" or "all communications" are not reasonably limited, nor tailored

to reduce the burden of electronic discovery as required by the Federal Rules of Civil

Procedure.

5.      Plaintiff objects to each Interrogatory to the extent it seeks information or

documents already produced to Plaintiff or already in possession of Plaintiff

6.      Plaintiff objects to each Interrogatory to the extent that it seeks information

beyond Defendant's possession, custody, control or knowledge.

7.      By responding to each Interrogatory, Plaintiff does not waive any privilege,

and expressly reserve the right to recall at any time any document produced inadvertently to

which any privilege is attached.

8.      Plaintiff incorporates these General Objections by reference as though fully set

forth below in its specific answers to each Interrogatory.

9.      Plaintiff reserves the right to supplement its answers to the Interrogatories as

additional information or documents become known.

## SPECIFIC RESPONSES AND OBJECTIONS

1.  Identify the full name, title, summary of their role, and contact information for all persons
or entities that were involved in the sale of Plaintiff's products to OJC's customers, or
communications between Plaintiff and OJC's customers relating to OJC, Plaintiff, or Plaintiff's
products.

**RESPONSE:** Plaintiff specifically objects to this Interrogatory as being overly broad and unduly
burdensome; in particular, Plaintiff objects to the obviously overbroad demand for the names,

2

titles, summary of their role and contact information for "all persons or entities" involved in the sale of Plaintiff's products to OJC 's customers, which demand is not limited in scope. Subject to and without waiving any of the specific and general objections, Plaintiff states that the following people were involved in the sale of Plaintiff's products:

| Name | Title | Contact Information |
|------|-------|---------------------|
| Hari Krishnamurthy | Chief Financial Officer | hkrishnamurthy@nationaltree.com |
| Steve Downs | Senior Vice President, Product Engineering | sdowns@nationaltree.com |
| Rich Puleo | Vice President | rich@nationaltree.com |
| Lance Puleo | Director of Warehouse Operations | lance@nationaltree.com |
| Fatima Branco | Logistics Rma Coordinator | fatima@nationaltree.com |
| Dennis Cooke | Controller | dcooke@nationaltree.com |
| Donna Cyril | Accounts Payable | donna@nationaltree.com |
| Gabrielle Puleo | Director of Billing and Collections | gabrielle@nationaltree.com |
| Kieran Esposito | Customer Service Manager | kieran@nationaltree.com |

2.  Identify and describe in detail the factual and evidentiary basis, including a detailed calculation, of Plaintiff's alleged damages it is seeking from OJC.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome; specifically, this Interrogatory requires generating 12,457 invoices, totaling $781,474.14, that were sent to OJ from December 2020 through October 2021. Subject to and without waiving the foregoing and General objections, the damages Plaintiff is seeking from OJC are due to OJC's failure to remit payment for the aforementioned invoices, despite Plaintiff's demand for payment, as is set forth in the Complaint.

3.  Identify and describe in detail the factual and evidentiary basis for contention by Plaintiff that OJC "assented to and/or agreed that the stated amounts [in the alleged account statement] were owed to [Plaintiff]," as alleged in paragraph 34 of the Complaint.

3

**App. 194**

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it seeks a legal conclusion. Subject to and without waiving the foregoing and General Objections, Plaintiff states that pursuant to Section 2.7.2 of the Agreement, "Any disputed invoice amounts will be documented in writing and forwarded to Vendor within 30 days of invoice receipt." OJC did not dispute the invoice amounts within 30 days as per the Agreement. Moreover, in an e-mail dated June 4, 2021 from Mark Gardner to Steve Downs, OJ admitted that it at least had an open balance of $646,341.14 as of that date.

4.  Describe in detail how and when a ship date for Plaintiff's products is generated or determined, how and when that information is communicated to a customer or potential customer of Plaintiff's product, and how Plaintiff ensures that it can meet that ship date.

**RESPONSE:** Subject to and without waiving the General Objections, Plaintiff states that upon receiving an order from a customer (such as OJC), NTC will assign the same date as the ship date up until 2:00 pm, and the products are typically shipped that day or the following day. Plaintiff sends an advance ship notice to its customers with the tracking information as well as the date of shipment. Plaintiff's fill rate for shipment is approximately 90%.

5.  Describe in detail how Plaintiff's inventory system for its products works, including (i) how the system determines what is in stock, out of stock, or backordered, (ii) what information about the availability of a product is communicated to a customer or potential customer of Plaintiff's products and when that information is communicated, and (iii) how Plaintiff ensures that the availability information provided to a customer or potential customer is accurate.

**RESPONSE:** Subject to and without waiving the General Objections, Plaintiff states that its computer system tracks the inventory that is on-hand. When Plaintiff receives shipments from overseas, they are processed, and the inventory is added to the on-hand quantities. When orders are shipped and invoiced, the shipped and invoiced quantities are deducted from the on-hand quantities. Inventory feeds are provided to Plaintiff's customers, including OJC, hourly.

6.  Identify and describe in detail the factual and evidentiary basis for any contention by Plaintiff that OJC failed to abide by any procedures contained the parties' Agreement, attached as Exhibit 1 to the Complaint.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it seeks a legal conclusion. Subject to and without waiving the foregoing and General Objections, Plaintiff states that OJC failed to abide by the parties' Agreement by failing to remit payment for products Plaintiff provided to OJ's consumers from December 2020 through October 2021. Pursuant to Section 2.7 of the Agreement, OJ C agreed to (i) "provide remittance detailing the invoices to be paid for the week or month," (ii) pay NTC for Services rendered in the amounts set forth after the receipt of a correct invoice from NTC, and (iii) pay all undisputed invoice amounts within 30 days of the invoice date. From December 2020 through October 2021, Plaintiff sent OJC approximately 12,457 invoices totaling $781,474.14. OJ failed to make payments for any of the aforementioned invoices.

7.  Describe in detail Plaintiff's process for shipping its products that were ordered during 2020-2021, including (i) how and when tracking numbers are generated or created for Plaintiff's shipments of its products, (ii) when those tracking numbers are communicated to customers of Plaintiff's products, and (iii) how Plaintiff ensured that its shipments were delivered to its

4

# App. 195

DocuSign Envelope ID: 51D5EF1B-3G0B-44FB-820A-9EBB2CCC189A

customers in a timely manner, consistent with any ship date that Plaintiff communicated to a customer at or around the time Plaintiff's product was ordered by that customer.

**RESPONSE:** To the extent Plaintiff is able to understand this Interrogatory, it appears to overlap considerably with Interrogatory No. 4, and Plaintiff fully incorporates its response to Interrogatory No. 4 as if set forth fully herein.

8. Identify and describe in detail all communications that Plaintiff has had with third parties, including customers of its products, about OJC or the sale of or issues with Plaintiff's products sold to OJC's customers.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is vague and overly burdensome. Specifically, Plaintiff receives thousands of customer communications and is not readily able to determine which communications were with OJC customers. Subject to and without waiving the foregoing and General Objections, Plaintiff will review and produce any such responsive communications within Plaintiff's possession, custody or control upon an agreement as to mutually agreeable search terms within a reasonable time frame.

9. Identify and describe in detail Plaintiff's policy or standard as to how long it should take from the time a customer orders Plaintiff's product to when the customer has that product delivered to them, including any related communications.

**RESPONSE:** Subject to and without waiving the General Objections, Plaintiff states that it only has control over when its products are shipped, not when they are delivered. The turn-around time from when an order comes in to a complete shipment is approximately 24 to 48 hours.

10. Identify and describe in detail any oral communications, including those via phone, Zoom, or other non-written method, between Plaintiff and OJC, including the full names and titles of all those involved, and the substance of any such communications.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is impossibly overbroad; specifically, the language "any oral communications," which demand is not limited in scope.

Respectfully submitted,

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
Tel: 212-370-1300

   /s/ *Anthony Galano, III, Esq.*
Anthony Galano, III, Esq. (admitted pro hac vice)
AGalano@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

Black Srebnick
One Town Center, Suite 201

5

# App. 196

Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

*Counsel for Plaintiff, National Christmas Products,
Inc. D/B/A National Tree Company*

**App. 197**

## <u>VERIFICATION</u>

I, Hari Krishnamurthy, declare under penalty of perjury:

I have read and know the content of these responses. These responses, subject to inadvertent and undiscovered errors, are based upon, and necessarily limited by information presently recollected, and thus far discovered in the course of preparing these responses. The responses are true and correct to the best of my knowledge, information and belief.

Executed on February 24, 2023.

*Hari Krishnamurthy*
_____

**App. 198**

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 24, 2023, I served the foregoing via e-mail upon Shlomo Y. Hecht, Esq., sam@hechtlawpa.com , counsel for Defendant, OJ Commerce, LLC.


*/s/ Aldonsa V. Janjigian*

**App. 199**

**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:22-cv-60897-WPD**

NATIONAL CHRISTMAS
PRODUCTS, INC. D/B/A
NATIONAL TREE COMPANY,
a New Jersey Corporation

Plaintiff,

v.

OJ COMMERCE, LLC, a Florida
Limited Liability Company

Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

National Tree Company ("Plaintiff"), by and through undersigned counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby submits this Response to OJ Commerce, LLC's ("Defendant" or "OJ") First Set of Requests for Production of Documents (the "Requests"), dated December 6, 2022, as follows:

**GENERAL OBJECTIONS**

In addition to the objections separately set forth in response to each of the Requests, Plaintiff's responses are provided subject to the following General Objections, to which reference is hereby made with respect to each response, whether or not specifically referred to therein.

1.  Plaintiff objects to the Requests to the extent they seek privileged attorney-client communications, protected work product, trade secrets or confidential and/or proprietary information.

2.  Plaintiff objects to those portions of the Requests that improperly seek the disclosure of

**App. 200**

**Ex. D**

information that is neither material, nor necessary, nor relevant to the claim(s) or defense(s) or is not proportional to the needs of the case.

3.   Plaintiff objects to those portions of the Requests that improperly seek the disclosure of the substance of materials prepared in anticipation of litigation without a showing that the Federal Rules of Civil Procedure ("FRCP") so require.

4.   Plaintiff objects to the Requests to the extent they seek information that will be inadmissible at trial and are not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this lawsuit.

5.   Plaintiff objects to each Request to the extent it requests that any Plaintiff obtain documents from persons over whom Plaintiff has no control.

6.   Plaintiff objects to each Request to the extent it seeks documents which represent matters of public record.

7.   Plaintiff objects to each Request to the extent it is duplicative, cumulative, unduly burdensome, calls for the production of numerous responsive documents which have no bearing on Defendant's counterclaims herein, or is designed solely to harass Plaintiff.

8.   Plaintiff objects to each Request to the extent it is vague, ambiguous, overly broad, or otherwise lacks sufficient precision to permit a response.

9.   Plaintiff objects to each Request and Instruction to the extent it seeks to impose obligations on beyond those prescribed by the FRCP.

10. Plaintiff objects to each Request to the extent that it is not probative of Defendant's counterclaims herein and/or is unduly prejudicial.

11. Plaintiff objects to each Request to the extent that the documents requested therein are more readily accessible to Defendant and/or are within Defendant's possession, custody and control.

2

**App. 201**

12. Plaintiff will produce documents responsive to the Requests upon receipt of a fully executed confidentiality agreement.

13. Plaintiff does not hereby waive any objection, including as to materiality or admissibility, of any documents that may be produced in response to the Requests, nor does any response set forth below mean that Plaintiff concedes responsive documents exist and/or are within Plaintiff's possession, custody, and/or control. Rather, to the extent Plaintiff states that it will produce any responsive documents, such statement means only that Plaintiff will produce any responsive, relevant, non-privileged documents that could be found within Plaintiff's possession, custody, or control after a reasonable search.

## SPECIFIC RESPONSES AND OBJECTIONS

1.  All documents concerning any communications between Plaintiff and OJC.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its  response to this Request pursuant to FRCP 26(e).

2.  All documents concerning Plaintiff's internal communications relating to OJC, the sale of Plaintiff's products to OJC's customers, or communications with or about OJC's customers who ordered Plaintiff's products.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its  response to this Request pursuant to FRCP 26(e).

3.  All documents concerning any communications with third parties, including freight carriers, manufacturers, OJC's customers, Plaintiff's customers, or others (except for legal counsel), relating to OJC or the sale of or issued with Plaintiff's products sold to OJC's customers.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

4.  All documents concerning any invoices, purchase orders, or other documents sent to or received from OJC.

3

**App. 202**

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

    5.   All documents concerning any alleged damages that Plaintiff is seeking from OJC.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

    6.   All documents that Plaintiff purports to be "an account statement" as alleged in paragraph 32 of the Complaint.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

    7.   All documents concerning any contention by Plaintiff that OJC "assented to and/or agreed that the stated amounts [in the alleged account statement] were owed to [Plaintiff]," as alleged in paragraph 34 of the Complaint.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

    8.   All documents concerning any projections, forecasts, or budgets by or on behalf of Plaintiff relating to the sale of its products in 2020-2021.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from 2020 through 2021 within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

    9.   All documents, including all communications with third parties such as FedEx, UPS, USPS, or other freight carriers, concerning any tracking numbers relating to sales of Plaintiff's products to OJC's customers.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

    10. All documents concerning Plaintiff's inventory, in-stock, out-of-stock, or backorder records of products sold or offered to sale to OJC's customers.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020

4

# App. 203

through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

11. All documents relating to Plaintiff's shipping of its products to OJC's customers, including all related communications with FedEx, UPS, USPS, or other freight carriers.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

12. All documents relating to payments made by or on behalf of OJC to Plaintiff.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

13. All documents concerning any studies, reports, or other documents about the buying habits of consumers of Christmas tree products.

**RESPONSE:** Subject to and without waiving the General Objections, Plaintiff states that it does not have responsive documents within its possession, custody or control.

14. All documents concerning any marketing or advertising of Plaintiff's products sold by OJC to its customers, including related money spent by Plaintiff.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

15. All documents concerning warranty- or defect-related communications relating to Plaintiff's products sold by OJC to its customers.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

16. All documents concerning the shipment of Plaintiff's products to Plaintiff that were sold to OJC's customers in 2020-2021.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unintelligible; specifically the language, "concerning the shipment of Plaintiff's products to Plaintiff." Plaintiff is willing to meet and confer with Defendant to clarify this Request.

17. All documents concerning industry standards or practices relating to the shipment of e-

5

**App. 204**

commerce orders made via Amazon, Walmart, or other e-commerce sellers, including OJC.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

18. All documents concerning any contention by Plaintiff that it is entitled to an award of attorneys' fees or costs from OJC.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the Complaint does not assert a request for attorneys' fees.

19. All documents concerning any contention by Plaintiff that OJC has breached any agreement with Plaintiff.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

20. All documents concerning Plaintiff's communications with Amazon or Walmart concerning the inventory of Plaintiff's products that were sold to OJC's customers.

**RESPONSE:** Subject to and without waiving the General Objections, Plaintiff does not have responsive documents within its possession, custody or control.

21. One copy of all organizational charts or other documents showing the organization of Plaintiff's business, including documents sufficient to show Plaintiff's state of organization, location of its principal place of business, and names and addresses of its officers and directors.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

22. All documents relating to Plaintiff's Answers to OJC's Interrogatories.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

23. All documents relating to Plaintiff's Responses to OJC's Requests for Admission.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response

**App. 205**

to this Request pursuant to FRCP 26(e).

24. All documents relating to Plaintiff's Rule 26(a)(1) Disclosures.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

25. All documents concerning any chargebacks, refund or discount requests, returns, return requests, cancellations, or other complaints made by OJC or its customers of Plaintiff's products.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and overly burdensome. Specifically, Plaintiff receives thousands of customer communications and is not readily able to determine which communications were with OJC customers. Subject to and without waiving the foregoing and General Objections, Plaintiff will review and produce any such responsive communications within Plaintiff's possession, custody or control upon an agreement as to mutually agreeable search terms within a reasonable time frame.

26. All documents concerning any reviews or feedback from customers concerning Plaintiff or its products sold to OJC's customers.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and overly burdensome. Specifically, Plaintiff receives thousands of customer communications and is not readily able to determine which communications were with OJC customers. Subject to and without waiving the foregoing and General Objections, Plaintiff will review and produce any such responsive communications within Plaintiff's possession, custody or control upon an agreement as to mutually agreeable search terms within a reasonable time frame.

27. All documents concerning when Plaintiff contends it was obligated to ship orders placed by OJC's customers of Plaintiff's products.

**RESPONSE:**  Subject to and without waiving the General Objections, Plaintiff does not have responsive documents within its possession, custody or control.

28. All documents concerning the ship date that appeared or was listed at the point of purchase (such as on the Amazon or Walmart marketplaces) for Plaintiff's products at the time they were ordered by OJC's customers.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

29. All documents concerning the containing, packaging, or labeling of Plaintiff's products sold to OJC's customers, including related policies or procedures.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020

**App. 206**

through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

30. All documents concerning any affirmative defenses or other defenses that Plaintiff asserts against OJC's Counterclaims.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

31. All documents relating to the subject matter of the Complaint and OJC's Counterclaims, including communications between Plaintiff and any other person (other than legal counsel) relating to the subject matter of the Complaint and Counterclaims.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

32. All documents relating to any contention by Plaintiff that OJC failed to abide by any procedures contained the parties' Agreement, attached as Exhibit 1 to the Complaint.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

33. All documents concerning any report or summary, including the reports or summaries themselves, provided by any expert witness upon which Plaintiff intends to rely upon or call to testify in this case.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

34. A spreadsheet of all sales transactions between OJC and Plaintiff since January 1, 2020.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

35. All documents Plaintiff sent to or received from any expert witness or potential expert witness for this case.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020

**App. 207**

through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

36. All documents concerning any witness statements obtained by Plaintiff concerning the claims or defenses in this case.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

37. All documents Plaintiff plans to use for any purpose at the trial in this case.

**RESPONSE:** Plaintiff will produce responsive, non-privileged documents from January 1, 2020 through the commencement of this Action within its possession, custody or control after a reasonable search. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

Respectfully submitted,
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
Tel: 212-370-1300

  /s/ *Anthony Galano, III, Esq.*
Anthony Galano, III, Esq. (admitted pro hac vice)
AGalano@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

*Counsel for Plaintiff, National Christmas Products,*
*Inc. D/B/A National Tree Company*

**App. 208**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on February 24, 2023, I served the foregoing via e-mail upon Shlomo Y. Hecht, Esq., sam@hechtlawpa.com, counsel for Defendant, OJ Commerce, LLC.

*/s/ Aldonsa V. Janjigian*

10

**App. 209**

**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:22-cv-60897-WPD**

NATIONAL CHRISTMAS
PRODUCTS, INC. D/B/A
NATIONAL TREE COMPANY,
a New Jersey Corporation

Plaintiff,

v.

OJ COMMERCE, LLC, a Florida
Limited Liability Company

Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

National Tree Company ("Plaintiff"), by and through undersigned counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby submits this Response to OJ Commerce, LLC's ("Defendant" or "OJ") Third Set of Requests for Production of Documents (the "Requests"), dated November 8, 2023, as follows:

### GENERAL OBJECTIONS

In addition to the objections separately set forth in response to each of the Requests, Plaintiff's responses are provided subject to the following General Objections, to which reference is hereby made with respect to each response, whether or not specifically referred to therein.

1. Plaintiff objects to the Requests to the extent they seek privileged attorney-client communications, protected work product, trade secrets or confidential and/or proprietary

1

**App. 210**

Ex. E

information.

2.  Plaintiff objects to those portions of the Requests that improperly seek the disclosure of information that is neither material, nor necessary, nor relevant to the claim(s) or defense(s) or is not proportional to the needs of the case.

3.  Plaintiff objects to those portions of the Requests that improperly seek the disclosure of the substance of materials prepared in anticipation of litigation without a showing that the Federal Rules of Civil Procedure ("FRCP") so require.

4.  Plaintiff objects to the Requests to the extent they seek information that will be inadmissible at trial and are not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this lawsuit.

5.  Plaintiff objects to each Request to the extent it requests that any Plaintiff obtain documents from persons over whom Plaintiff has no control.

6.  Plaintiff objects to each Request to the extent it seeks documents which represent matters of public record.

7.  Plaintiff objects to each Request to the extent it is duplicative, cumulative, unduly burdensome, calls for the production of numerous responsive documents which have no bearing on Defendant's counterclaims herein, or is designed solely to harass Plaintiff.

8.  Plaintiff objects to each Request to the extent it is vague, ambiguous, overly broad, or otherwise lacks sufficient precision to permit a response.

9.  Plaintiff objects to each Request and Instruction to the extent it seeks to impose obligations on Plaintiff beyond those prescribed by the FRCP.

10. Plaintiff objects to each Request to the extent that it is not probative of Defendant's counterclaims herein and/or is unduly prejudicial.

11. Plaintiff objects to each Request to the extent that the documents requested therein are

**App. 211**

more readily accessible to Defendant and/or are within Defendant's possession, custody and control.

12. Plaintiff does not hereby waive any objection, including as to materiality or admissibility, of any documents that may be produced in response to the Requests, nor does any response set forth below mean that Plaintiff concedes responsive documents exist and/or are within Plaintiff's possession, custody, and/or control. Rather, to the extent Plaintiff states that it will produce any responsive documents, such statement means only that Plaintiff will produce any responsive, relevant, non-privileged documents that could be found within Plaintiff's possession, custody, or control after a reasonable search.

<u>SPECIFIC RESPONSES AND<br>OBJECTIONS</u>

1.      All documents and communications, including books, manuals, policies, and procedures, concerning the software used by Plaintiff to communicate with Defendant concerning invoices, purchase orders, refunds, returns, or any other communications concerning orders.

**RESPONSE:** Plaintiff objects to this Request as wildly overbroad, specifically in that "books, manuals, policies, and procedures, concerning the software used by Plaintiff to communicate with Defendant concerning invoices, purchase orders, refunds, returns, or any other communications concerning orders" with no further limitation, bears no reasonable relation to the issues in dispute in this action. Neither Plaintiff nor Defendant has asserted that the functionality of software used by Plaintiff and Defendant to communicate with each other concerning orders has any bearing on the claims or defenses in this action, and so there is no possible relevance to this Request.

Subject to and without waiving the foregoing, discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

2.      Any and all of Plaintiff's financial statements, audited or unaudited, for the fiscal years 2019, 2020, 2021, and 2022.

**RESPONSE:** Plaintiff objects to this Request on the grounds that Plaintiff's financial statements bear no reasonable relation to the issues in dispute in this action. This request is lifted, word for word, from Request No. 7 of Plaintiff's Third Request for Documents directed to Defendant, and is obviously tit-for-tat harassment; while Defendant has asserted claims seeking damages for lost profits, Plaintiff has made no such request and thus *Plaintiff's* financial statements (unlike Defendant's) are wholly irrelevant to the claims and defenses in this action.

3.      Any and all tax returns filed by Plaintiff for the fiscal years 2019, 2020, 2021, and 2022.
.

3

**App. 212**

**RESPONSE:** Plaintiff objects to this Request on the grounds that Plaintiff's tax returns bear no reasonable relation to the claims or defenses in this action. This request is lifted, word for word, from Request No. 8 of Plaintiff's Third Request for Documents directed to Defendant, and is obviously tit-for-tat harassment; while Defendant has asserted claims seeking damages for lost profits, Plaintiff has made no such request and thus *Plaintiff's* tax records (unlike Defendant's) are wholly irrelevant to the claims and defenses in this action.

4.      All documents concerning internal or external communications, including with carriers or freight forwarders, concerning Plaintiff's Containers from January 1, 2020 to December 31, 2021, including those concerning contents, deliveries, logistics, delays, and scheduling.

**RESPONSE:** Plaintiff objects to this Request as overbroad, specifically in that "all documents concerning internal or external communications, including with carriers or freight forwarders, concerning Plaintiff's Containers," with no further limitation, bears no reasonable relation to issues in dispute in this action. Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents in its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

5.      All documents concerning internal or external communications, including with FedEx, UPS, or customers other than Defendant, concerning any delays or other issues with deliveries between October 1, 2020 and February 29, 2021.

**RESPONSE:** Plaintiff objects to this Request as duplicative of Document Request No. 1 contained in Defendant's Rule 30(b)(6) Deposition Notce. Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents in its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

6.      All communications with and documents sent to or received from Amazon from January 1, 2019 – December 31, 2021, concerning pricing (including MAP pricing), discounts, promotions, inventory, retailers other than Amazon, agreements with Amazon, or otherwise concerning Plaintiff's sales of its products.

**RESPONSE:** Plaintiff objects to this Request on the grounds that "all communications with and documents sent to or received from Amazon concerning pricing (including MAP pricing), discounts, promotions, inventory, retailers other than Amazon, agreements with Amazon, or otherwise concerning Plaintiff's sale of its products" have no relevance to the claims or defenses in this action. Neither Plaintiff nor Defendant has asserted any claim or defense related to or arising from MAP pricing, discounts, or promotions.  Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

7.      All documents concerning Plaintiff's orders from October 1, 2020 – February 28, 2021, including the invoice number, date order received, purchase order number, customer name and information, identification of the products in the order, price, ship date, tracking numbers, delivery date, payment date, payment amount, dispute amount, reason for dispute, order notes, complaints, and returns or other refunds concerning each such order. Defendant would accept a report containing all this information in lieu of all individual documents.

4

**App. 213**

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overbroad, seeks confidential business information from a competitor in Defendant's industry, and, on its face, is unduly burdensome, specifically the request for "all documents concerning Plaintiff's orders" for the Christmas Season 2020; though "orders" is not a defined term, the subcategories of data make clear that Defendant is demanding Plaintiff's entire data file for a four month period of time, encompassing tens of thousands of orders. To the extent this Request can be limited to orders shipped by Plaintiff *for Defendant's customers*, subject to and without waiving the foregoing specific and General Objections, Plaintiff has produced responsive documents in its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

8.      Documents sufficient to identify all owners and ownership structure of Plaintiff.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the "owners and ownership structure of Plaintiff" bears no reasonable relation to the issues in dispute in this action. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

9.      All internal communications, including emails, meeting notes, meeting minutes, strategic plans, etc., concerning Defendant.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is wildly overbroad, specifically in that "all internal communications, including emails, meeting notes, meeting minutes, strategic plans, etc., concerning Defendant," with no further limitation, bears no reasonable relation to the issues in dispute in this action. Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents in its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

10.      All documents concerning Plaintiff's communications with Amazon about any resellers of Plaintiff's products, including Defendant.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is wildly overbroad, specifically in that "all documents concerning Plaintiff's communications with Amazon about any resellers of Plaintiff's products, including Defendant," with no further limitation, bears no reasonable relation to the issues in dispute in this action. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

11.      All documents, including those concerning external and internal communications, about the impact or effect of customer feedback, complaints, ratings, and reviews on Plaintiff's products or its business.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overbroad, specifically "all documents" concerning "external and internal communications, about the impact or effect of customer feedback, complaints, ratings, and reviews on Plaintiff's products or its business," with no further limitation, bears no reasonable relation to the issues in dispute in this action. Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents within its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

**App. 214**

12.      All documents concerning policies, procedures, protocols, studies, or standards concerning customer feedback, complaints, ratings, and reviews on Plaintiff's products, business, or reputation.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is wildly overbroad, specifically "all documents concerning policies, procedures, protocols, studies or standards concerning customer feedback, complaints, ratings, and reviews on Plaintiff's products, business, or reputation," with no further limitation, bears no reasonable relation to the issues in dispute in this action. While Defendant has asserted a counterclaim for lost profits purportedly arising from customer feedback and negative online reviews, for which *Defendant's* policies and procedures concerning the subject matter of this Request would be relevant, *Plaintiff* has never asserted a claim concerning this subject matter, and requesting these documents of Plaintiff bears no relation to the claims at issue here.

Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents within its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

13.      All documents concerning communications with other companies, including marketplaces, retailers, and other business partners, about customer feedback, complaints, ratings, and reviews on Plaintiff's products or its business.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is wildly overbroad, specifically "all documents concerning communications with other companies, including marketplaces, retailers, and other business partners, about customer feedback, complaints, ratings, and reviews on Plaintiff's products or its business," with no further limitation, bears no reasonable relation to the issues in dispute in this action. While Defendant has asserted a counterclaim for lost profits purportedly arising from customer feedback and negative online reviews, for which *Defendant's* policies and procedures concerning the subject matter of this Request would be relevant, *Plaintiff* has never asserted a claim concerning this subject matter, and requesting these documents of Plaintiff bears no relation to the claims at issue here.  Plaintiff further objects on the grounds that the documents requested herein are already in Defendant's possession, custody or control.

Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents within its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

14.      All documents concerning studies, articles, publications, or standards concerning customer feedback, complaints, ratings, and reviews and their impact or effect on a company's business or its reputation.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overbroad, specifically "all documents" related to "studies, articles, publications, or standards concerning customer feedback, complaints, ratings, and reviews and their impact or effect on a company's business or its reputation," with no further limitation, bears no reasonable relation to the issues in dispute in this action. Subject to and without waiving the foregoing or General Objections, Plaintiff has produced responsive documents within its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

**App. 215**

15.     All documents, not otherwise produced, that Plaintiff intends to rely on in any way in this case.

**RESPONSE:** Subject to and without waiving the General Objections, Plaintiff has produced responsive documents within its possession, custody or control. Discovery is ongoing, and Plaintiff reserves the right to supplement its response to this Request pursuant to FRCP 26(e).

Dated: December 8, 2023

Respectfully submitted,

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
Tel: 212-370-1300

   /s/ *John B. Horgan, Esq.*
John B. Horgan, Esq. (admitted pro hac vice)
JHorgan@egsllp.com
Joanna R. Cohen, Esq. (admitted pro hac vice)
Jcohen@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com

*Counsel for Plaintiff, National Christmas Products, Inc. D/B/A National Tree Company*

7

**App. 216**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 8, 2023, I served the foregoing via e-mail upon Shlomo Y. Hecht, Esq., sam@hechtlawpa.com , counsel for Defendant, OJ Commerce, LLC.

*/s/ Joanna R. Cohen*

8

**App. 217**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60897-DIMITROULEAS/STRAUSS

NATIONAL CHRISTMAS PRODUCTS, INC.
d/b/a National Tree Company,
a New Jersey Corporation,

  Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company,

  Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** came before the Court upon Defendant's Motion for Sanctions Against Plaintiff and its Counsel ("Motion"). [DE 139]. The Honorable William P. Dimitrouleas has referred the Motion to me for a Report and Recommendation. [DE 140]. I have reviewed the Motion, the Response [DE 141] and Reply [DE 142] thereto, and all pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **DENIED**.

## BACKGROUND

The Court has already detailed, in multiple orders and reports and recommendations, this case's long procedural history. *See* [DE 106, 128, 135]. An abbreviated summary of the facts pertinent to this motion are as follows.

Prior to National Christmas Products, Inc. ("Plaintiff") filing suit, Plaintiff's counsel (Ellenoff Grossman & Schole, LLP, or "EGS") sent a demand letter to OJ Commerce LLC ("Defendant"), in the name of National Christmas Products LLC ("NCP LLC"). [DE 141–1] ¶ 2.

1

## App. 218

When Plaintiff's counsel sent the demand letter, it did not have in its possession several substantive documents such as the E-Commerce Vendor Agreement between Plaintiff and Defendant. *Id.* When the parties failed to reach an amicable resolution, Plaintiff's counsel received several documents to help it draft Plaintiff's Complaint. *Id.* ¶ 3. Some of those documents were the parties' original agreement and the accounts receivable statement which bore Plaintiff's name. *Id.* With the information it had, Plaintiff's counsel drafted a complaint in Plaintiff's name and presented it to its client, who approved it. *Id.* ¶¶ 4–6.

On May 12, 2022, Plaintiff filed its Complaint against Defendant, alleging the Court had subject matter jurisdiction based on diversity between the parties. [DE 1]. The Complaint alleged that Plaintiff was an S corporation organized under the laws of the State of New Jersey, and Plaintiff's Addendum (filed in response to the Court's Order to Show Cause Regarding Subject Matter Jurisdiction [DE 6]) alleged that Defendant is a Delaware LLC whose sole member is a citizen of Florida (making Defendant a citizen of Florida). [DE 1, 8]. In turn, Defendant filed a counterclaim against Plaintiff [DE 24] and later an amended counterclaim [DE 44]. After nearly two years of litigation, Plaintiff filed a motion to dismiss alleging that the Court lacked subject matter jurisdiction because Plaintiff was actually an LLC and (like Defendant) a citizen of Florida. [DE 95].

According to Plaintiff's motion to dismiss, in November 2023, Plaintiff's CFO informed its counsel that Plaintiff is an LLC, not an S corporation, explaining that Plaintiff no longer exists because it was merged out of existence into NCP LLC in November 2019. *Id.* at 2. Upon learning this information, Plaintiff's counsel began its investigation into Plaintiff's corporate identity. [DE 135] at 2; [DE 141–1] ¶19. Due to NCP LLC's complicated web of ownership, along with fast-approaching discovery deadlines, the investigation took one month to complete and concluded on

**App. 219**

December 28, 2023.  [DE 141–1] ¶¶ 23–33.  Plaintiff's counsel discovered that one of NCP LLC's members, through several layers of underlying LLCs and limited partnerships, is (and was at the time the Complaint was filed) a citizen of Florida, thereby making Plaintiff a citizen of Florida and destroying diversity jurisdiction.  [DE 135] at 2.  Seven days later, Plaintiff filed its motion to dismiss.  [DE 91].[1]

In light of this new information, and upon Defendant's request, I found that Defendant was entitled to limited jurisdictional discovery to corroborate whether Plaintiff was in fact a Florida citizen and whether the Court indeed lacked subject matter jurisdiction.  [DE 106].  At the conclusion of jurisdictional discovery, I reviewed the submitted evidence and agreed with Plaintiff that complete diversity did not exist and recommended granting Plaintiff's motion to dismiss.  [DE 135] at 9–10.  The Court then overruled Defendant's objections to the Report and Recommendation and adopted it in full, granting Plaintiff's motion to dismiss.  [DE 138]. Defendant now asks this Court, through its inherent powers and through 28 U.S.C. § 1927, to impose sanctions against Plaintiff and its counsel.  [DE 139].

## **LEGAL STANDARD**

A district court may address a motion seeking sanctions under the court's inherent powers or 28 U.S.C. § 1927 even if the court lacks jurisdiction over the underlying case.  *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020).

Courts possess inherent powers that they may use to police those appearing before them. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to

---

[1] The Court denied Plaintiff's motion to dismiss without prejudice due its failure to comply with the requirements of Local Rule 7.1(a)(3).  [DE 92].  Plaintiff then refiled its motion to dismiss on January 9, 2024.  [DE 95].

3

**App. 220**

manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). As part of their inherent powers, courts may assess attorneys' fees and costs against a party, counsel, or both when they act "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). "[T]he party moving for sanctions must show *subjective* bad faith." *Hyde*, 962 F.3d at 1310. This standard can only be met with direct evidence of subjective bad faith or conduct "so egregious that it could only be committed in bad faith." *Purchasing Power*, 851 F.3d at 1224–25.

However, courts must exercise their inherent powers with restraint and discretion. *Chambers*, 501 U.S. at 44. Exercising discretion means fashioning "an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. "The key to unlocking a court's inherent power is a finding of bad faith." *Purchasing Power*, 851 F.3d at 1223.

Similar to a court's inherent powers, 28 U.S.C. § 1927 permits a court to require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" in any case where the attorney unreasonably and vexatiously multiplies the proceedings. 28 U.S.C. § 1927. However, while invoking the court's inherent powers requires a showing of *subjective* bad faith, under § 1927, "the party moving for sanctions must show *objective* bad faith." *Hyde*, 962 F.3d at 1310. This means that the moving party must show that the attorney "knowingly or recklessly pursue[d] a frivolous claim or engage[d] in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

# App. 221

## ANALYSIS

Defendant has failed to demonstrate either subjective or objective bad faith by Plaintiff or its counsel.  Therefore, its Motion fails.  Defendant points to four circumstances that it believes show bad faith: (1) that Plaintiff knew it had merged into NPC LLC (and out of existence) two years before this litigation and had even sent Defendant a demand letter in the name of NPC LLC; (2) that, in response to the Court's order to confirm the membership and citizenship of any party that is an LLC, Plaintiff did not re-examine its own corporate structure and citizenship and continued to describe itself as an S corporation; (3) that Defendant's employees and officers testified they worked for Plaintiff, not an LLC; and (4) after Plaintiff's CFO alerted Plaintiff's counsel on November 13, 2023, that Plaintiff was really an LLC, Plaintiff's counsel did not alert Defendant or the Court until filing Plaintiff's motion to dismiss in early January 2024.  While Defendant infers that such circumstances inescapably indicate bad faith, a closer examination of the circumstances (particularly in light of Plaintiff's counsel's unrebutted declaration) more reasonably indicate that Plaintiff and its counsel were negligent.  And "negligent conduct, by itself, does not warrant sanctions under a court's inherent powers or § 1927." *Hyde*, 962 F.3d at 1311.

The most puzzling – and, for Defendant, most compelling – question is how Plaintiff could mis-identify itself in its own pleadings several years after merging into NCP LLC.  Plaintiff itself obviously knew about this merger.  And before filing suit, Plaintiff's counsel sent Defendant a demand letter in the name of NCP LLC not Plaintiff.  [DE 141–1] ¶ 2.  Therefore, Plaintiff's counsel must have at least been aware that NCP LLC existed.  Plaintiff's counsel's declaration states that at the time it sent the demand letter, it did not have in its possession substantial documents from Plaintiff or NCP LLC.  *Id.*  But Plaintiff's counsel does not explain why it did not notice the discrepancy between Plaintiff's name on the original contract and accounts receivable

# App. 222

statement and its client's name on the demand letter it had sent less than a month earlier. In characterizing its actions as "a mistake," [DE 141] at 9, Plaintiff seemingly suggests that Plaintiff's counsel simply drafted the complaint using the name on the contract, either not noticing the discrepancy between Plaintiff's name and NCP LLC or not considering its import. And Plaintiff's counsel then relied upon its client's review and approval of the draft complaint, with the client apparently either not realizing or not appreciating the significance of the discrepancy either.

Clearly, Plaintiff and its counsel made a significant and substantial error. One expects a business to be keenly aware of its corporate form and its counsel to be keenly aware of the material difference between those forms. While the difference between "Inc." and "LLC" may, to most people, be three letters tacked on the end of two otherwise identical names, a business's leaders and their attorneys would ordinarily note and appreciate the importance of the difference. That especially goes for attorneys who are not simply inserting a name into a pleading but rather specifically alleging facts about that party's corporate form and citizenship. As the party alleging subject matter jurisdiction (through diversity), the onus was on Plaintiff and its counsel to do its due diligence regarding both Defendant's citizenship and its own. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). Plaintiff and its counsel failed in this endeavor, a failure in which they acknowledge. *See* [DE 141] at 9.

However, as puzzling and troubling as this error was, Defendant has not demonstrated that it was done in bad faith. Defendant has presented no specific evidence of dishonest intent. Rather Defendant conjectures that Plaintiff knowingly hid the fact that it was an LLC as a failsafe, or "trapdoor," to escape this litigation if it did not pan out as Plaintiff hoped. [DE 139] at 8–9. But Defendant's conjecture makes little sense, particularly when Plaintiff's pleading error has wasted Plaintiff's time and resources seemingly as much as Defendant's and when a change of jurisdiction

6

**App. 223**

offers Plaintiff no identifiable advantage.[2]  Rather Defendant leaps to the conclusion that Plaintiff's conduct must be the result of a nefarious plot (instead of a significant but innocent error) when the circumstances do not compel that inference.  In other words, Defendant has neither presented direct evidence of subjective bad faith nor conduct that could only be committed in bad faith.

In considering the likelihood that Plaintiff made a mistake instead of "hiding the ball" and purposefully laying a trap, it is worth noting that Defendant did not notice the discrepancy between Plaintiff and NCP LLC either.  Defendant had received the demand letter from NCP LLC. Moreover, since January 2020, Defendant has made payments to NCP LLC not Plaintiff, and, during that same time, Plaintiff emailed Defendant notifying it that Plaintiff has "gone through a restructuring so [its] company name has changed." [DE 137–1]; [DE 141] at 10–11.[3]  Yet neither Defendant nor its counsel noticed the discrepancy or thought to inquire about it during discovery. To be clear, these facts do not mean Defendant is to blame for Plaintiff's jurisdictional pleading errors.  Plaintiff is.  Plaintiff was obviously in a supremely better position to know its own corporate structure and had the obligation of accurately alleging its own structure and citizenship. However, the fact that Defendant and its counsel could review the original contract and invoices with Plaintiff's name as well as other documents with NCP LLC on them and not notice or think

---

[2] Defendant cites the parties' dispute over a stipulation regarding how discovery from this case would be utilized in a subsequent case involving the same claims and from what procedural point such a case would commence as evidence that Plaintiff's "true intention" was to "push the reset button on this case" and gain a tactical advantage.  [DE 139] at 2; [DE 139–1]; [DE 139–2]. However, as Defendant's own Exhibit B [DE 139–2] illustrates, for the reasons explained in Plaintiff's Response [DE 141] at 15, Defendant's argument lacks merit.  Based on what the parties have presented, Plaintiff's position regarding how to approach a new case following dismissal of this one hardly amounts to "pressing the reset button" or "potentially re-open[ing] all the discovery that was already completed."  If anything, rather than evincing that Plaintiff had a "true intention" to "gain a tactical advantage," Defendant's argument illustrates Defendant stretching to see evidence of bad faith where none exists.

[3] Defendant does not contest this assertion, and Plaintiff states that Defendant has produced documents during the litigation which corroborate its assertions.  [DE 137] at 8.

**App. 224**

to ask about the difference lends some credence to the idea that Plaintiff and Plaintiff's counsel could similarly overlook the issue innocently without nefarious intent.

Without assuming that Plaintiff intentionally hid its corporate status and citizenship from the start, Defendant's assertions that Plaintiff did not correct itself in response to the Court's order regarding the citizenship of LLCs and repeatedly represented itself as a corporation in subsequent filings adds little. While one could imagine the Court's order to show cause prompting Plaintiff's counsel to remember its prior identification of Plaintiff as an LLC, it is reasonable to infer that, having already made the mistake of identifying Plaintiff as a corporation, Plaintiff's counsel focused only on Defendant's citizenship in response to the order.

Defendant also asserts that six of Plaintiff's corporate employees and upper management "all testified under oath that they worked for Plaintiff NCP INC," [DE 139] at 5, suggesting that these employees continued the intentional deception throughout the case. If true, this would be stronger evidence of intentional conduct and bad faith. But Defendant only cites specific testimony from one such deposition – and that single statement from Plaintiff's corporate representative during his deposition is far from the smoking gun Plaintiff would like to have this Court believe.

During that deposition, Defendant's counsel asked that when he is "referring to National Tree today, . . . I do not have to say out the whole corporate name, we know what we are talking about?" [DE 96–1] at 6. The corporate representative responded in the affirmative. *Id.* This answer hardly shows the corporate representative (mis)representing that Plaintiff is a corporation, denying that Plaintiff is an LLC, or addressing Plaintiff's corporate form at all. Rather, the witness responded to a convoluted question from Defendant's counsel that itself did not even specify the corporate form. Thus, this answer sheds no light on whether Plaintiff was intentionally or even recklessly hiding its corporate form. And the fact that this vague, utterly un-probative statement

**App. 225**

is the only example Defendant cited suggests that the other employees' depositions did not contain any more helpful examples.

Finally, Defendant points to the fact that Plaintiff's counsel learned from Plaintiff's CFO that Plaintiff was an LLC on November 13, 2023, but did not alert Defendant or the Court until filing Plaintiff's motion to dismiss in early January.  However, this delay does not indicate bad faith.  As Plaintiff's counsel's unrebutted declaration states, Plaintiff's counsel immediately began investigating NCP LLC's structure and citizenship.  That investigation took place while the parties were scrambling to complete discovery, amidst several discovery disputes, a change in lead counsel, and the holiday season.  Given the convoluted web of NPC LLC's ownership structure (which was well-illustrated during the parties' jurisdictional discovery), it is quite reasonable that it took Plaintiff's counsel six weeks to have a full picture of NPC LLC's citizenship.  And it was similarly reasonable for Plaintiff's counsel to wait until he had a complete understanding of the facts before raising the issue with Defendant's counsel or the Court, especially given that the ramifications would be much different if NPC LLC had a member that was a Florida citizen compared to if it did not.

Two recent Eleventh Circuit Court opinions provide guidance on whether these circumstances amount to bad faith.  First, in *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017), the Eleventh Circuit reversed a district court's decision to impose sanctions on a party.  In *Purchasing Power*, the plaintiff sued the defendant in state court.  *Id.* at 1221.  The defendant sought to remove the case to federal court based on diversity.  *Id.*  But because the plaintiff was an LLC, the defendant's counsel asked plaintiff to confirm that none of the plaintiff's members were citizens of Minnesota or Delaware (states where the defendant was a citizen).  *Id.*  The plaintiff's counsel responded in an email that, based on conferring with his client,

**App. 226**

the plaintiff was not a citizen of either state. *Id.* Later, during discovery, the defendant requested that the plaintiff produce documents relating to the plaintiff's members to ensure diversity. *Id.* The plaintiff objected that it could not obtain some of the requested information, and the information was irrelevant because plaintiff's counsel's earlier email regarding plaintiff's citizenship was sufficient for determining subject matter jurisdiction. *Id.* at 1221–22. Neither party nor the court inquired further into the matter. *Id.* at 1222.

On appeal following the district court's grant of summary judgment to the defendant, the Eleventh Circuit noted that the pleadings did not sufficiently allege the plaintiff's citizenship. *Id.* Two years after removal, and after the parties conducted a more thorough investigation into the plaintiff's citizenship, the parties discovered there was no diversity jurisdiction. *Id.* The district court then sanctioned the plaintiff's attorneys under its inherent powers and Rule 26(g)(3) of the Federal Rules of Procedure for misrepresenting to opposing counsel and the court its client's citizenship on five separate occasions. *Id.*

Back on appeal, the Eleventh Circuit reiterated the principle that a court may only sanction a party or its counsel under its inherent powers if the moving party can show subjective bad faith or, in the absence of direct evidence of subjective bad faith, through evidence that an "attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224–25. The latter standard is "not the same as simple recklessness." *Id.* at 1225. The Eleventh Circuit then examined the facts and found that both parties made avoidable mistakes. The defendant, as the removing party, had the burden to confirm that diversity existed (which it did not), both parties made submissions to the district court that subject matter jurisdiction existed (or at the very least neither party raised the issue that it might not), and the plaintiff's counsel's investigation into its client's citizenship was lacking (but nevertheless occurred). *Id.* 1226–27. In the end, the Eleventh Circuit

found that "[n]o party in this case acted with bad intentions, but the result was a colossal waste of time and effort." *Id.* at 1228. And, instead of imposing sanctions, the Eleventh Circuit concluded that "the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants." *Id.*

The second case, which neither party cites, is *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340 (11th Cir. 2024). There, the plaintiff (who was a citizen of Delaware and Texas) filed suit against the defendant in federal court alleging diversity jurisdiction. *Id.* at 1344. Both parties maintained that the court had diversity jurisdiction, but the defendant's ownership structure (it was an LLC with multiple partnerships and LLCs as members) made it difficult to verify. *Id.* While that lawsuit was proceeding, a judge in a separate federal lawsuit ordered the defendant to disclose all its members and their states of citizenship. *Id.* at 1344–45. The defendant conducted a thorough investigation and discovered it was a citizen of Delaware just like the plaintiffs in both the first and second lawsuit. *Id.* at 1345. The very next day, the defendant filed a motion to dismiss for lack of subject matter jurisdiction in the second lawsuit. *Id.*

However, the defendant made no motion to dismiss in the first lawsuit nor took any other action to appraise the plaintiff or the court that there was no diversity, despite the defendant's knowledge that it shared the same citizenship as the plaintiff. *Id.* The defendant remained silent over the next 15 months, with the defendant actively participating and filing dispositive motions. *Id.* The defendant remained silent through the court's consideration of cross-motions for summary judgment (on which the court rule against the defendant), the defendant's motion for reconsideration on that ruling, and a joint motion for a stay to give the parties a chance to mediate. *Id.* Only after mediation failed and the court set a status conference did the defendant move to

dismiss the case based on lack of subject matter jurisdiction. *Id.* The plaintiff then moved for sanctions under the court's inherent powers, which the court granted. *Id.* at 1345–46.

The Eleventh Circuit upheld the decision to impose sanctions and found that the defendant's actions were so egregious that it could only have been committed in bad faith. *Id.* 1346. The Eleventh Circuit highlighted the fact that the defendant discovered it was a citizen of Delaware fifteen months before bringing it to the plaintiff's or the court's attention, that the defendant's attorney surely understood the relevant law about diversity, and that the defendant only brought its motion to dismiss after several unfavorable rulings. *Id.*

The facts here are more akin to the facts of *Purchasing Power* rather than *Oxford Mall*. First, Plaintiff did not sit on knowledge that it was a Florida citizen for fifteen months and wait for the Court to issue several unfavorable decisions to only then reveal its true corporate structure. Instead, based on Plaintiff's counsel's unrebutted declaration, Plaintiff and its counsel became aware of the mistake in November 2023 and spent one month investigating whether the mistake actually undermined subject matter jurisdiction. [DE 141–1] ¶¶ 18–20. Plaintiff promptly alerted the Court and Defendant once it discovered Plaintiff's Florida citizenship and moved to dismiss the case before either party moved for summary judgment.

Similar to the law firm in *Purchasing Power*, it seems that Plaintiff's counsel's initial investigation (after drafting the demand letter) into who the proper party was to commence suit was lacking. Plaintiff's counsel trusted its client to review the Complaint and confirm that Plaintiff still existed and was the proper party. This trust resulted in Plaintiff's counsel not conducting any further inquiries into the matter after drafting the Complaint until Plaintiff's CFO informed its counsel of the mistake. Defendant, in turn, relied solely on Plaintiff's word that it was an S corporation instead of an LLC. The Court, satisfied with Plaintiff's response (and lack of objection

**App. 229**

from Defendant or evidence to the contrary) to its Order to Show Cause, [DE 6], proceeded as normal with the litigation.

To be sure, both *Purchasing Power* and *Oxford Mall* only considered sanctions awarded based on the court's inherent powers and its *subjective* bad faith standard, rather than § 1927's *objective* bad faith standard that includes "knowing or reckless" conduct. Defendant has failed to demonstrate that Plaintiff's counsel vexatiously multiplied the proceedings through "knowing" conduct. But whether Plaintiff's counsel acted recklessly is a closer question. In this context, "recklessness" means "conduct that grossly deviates from reasonable conduct." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2007). Again, the question comes down to Plaintiff's counsel's failure to investigate and confirm Plaintiff's corporate structure and citizenship, particularly in light of the fact that *someone* at the firm knew of NCP LLC at the time it sent the demand letter. In hindsight, it is quite clear that someone should have caught this discrepancy and inquired further. However, particularly given the dearth of evidence before me, I cannot say this failure – while serious and significant – amounted to recklessness. In so finding, I am mindful that, even under a "reckless" standard, "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions," which the Eleventh Circuit has described as a "high standard." *Id.* at 1242.

To the contrary, based on the record in this case and the submitted evidence (including Plaintiff's counsel unrebutted declaration), it is clear that this entire episode was a most unfortunate case of negligence. And "negligent conduct, by itself, does not warrant sanctions under a court's inherent powers or § 1927." *Hyde*, 962 F.3d at 1311. Instead, as the Eleventh Circuit concluded in *Purchasing Power*, I recommend that the damage done to Plaintiff and its counsel's credibility,

13

**App. 230**

finances, and time is an appropriate sanction to curb their conduct and to serve as a warning to them and future litigants.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion, [DE 139], be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 8th day of October 2024

*Jared Strauss*
**Jared M. Strauss**
**United States Magistrate Judge**

# **App. 231**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

                Plaintiff,

-vs-

OJ COMMERCE, LLC,

                Defendant.

_____/

**DEFENDANT'S OBJECTION TO THE HONORABLE MAGISTRATE JUDGE
STRAUSS' REPORT AND RECOMMENDATION (ECF 143)**

**INTRODUCTION**

Defendant OJ Commerce, LLC ("OJC" or "Defendant") hereby files its objection to the Honorable Magistrate Judge Strauss' Report and Recommendation that Defendant's Motion for Sanctions Against Plaintiff and its Counsel be denied. (ECF 143 ("Report").) This is despite the following undisputed facts related to Plaintiff National Christmas Products, Inc's ("NCP INC") knowing misrepresentations to this Court:

- It is undisputed that Plaintiff knew NCP INC was "merged out of existence" over two years *before* Plaintiff filed this case. (ECF 95, p. 3, ¶ 12; ECF 95-1.)

- It is undisputed that Plaintiff's counsel knew before filing the Complaint that Plaintiff was an LLC, as counsel sent a demand letter to Defendant on behalf of National Christmas Products, LLC ("NCP LLC") two months *before* filing suit. (ECF 1-4, pp. 1-2.)

- It is undisputed that Plaintiff reviewed and condoned the use of NCP INC as the real party in interest before the Complaint was filed. (ECF 141-1, p. 2, ¶¶ 5-6.)

- It is undisputed that Plaintiff's response to the Court's Order to Show Cause required Plaintiff to "list[] the citizenship of every member of **any Party** that is a limited liability company or any other form of unincorporated business or association." (ECF 6, p. 2

1

**App. 232**

(emphasis added).)

- Even taking Plaintiff's counsel at his word, he boldly admits that Plaintiff's did not even minimally investigate or confirm the type of entity Plaintiff actually was prior to filing the Complaint or even more troubling in response to the Court's Order to Show Cause, which specifically directed Plaintiff and its counsel to do so.  (ECF 141, p. 2, ¶ 3.)

- It is undisputed that Plaintiff concealed its LLC status and its citizenship from this Court for nearly **_two years_**.

- It is undisputed that Plaintiff litigated this case for nearly two years in clear violation of Fed. R. Civ. P. 17(a), which requires that "[a]n action **_must_** be prosecuted in the name of the real party in interest."  (emphasis added).

- It is undisputed that Plaintiff's counsel was told on November 13, 2023 that Plaintiff was not an S-Corp, but rather an LLC (ECF 91, ¶ 10); yet Plaintiff and its counsel concealed that fact from the Court and Defendant for **_52 days_**, while Defendant was spending a great amount of time and money on discovery.

- It is undisputed that Defendant served discovery requests on Plaintiff concerning its corporate status and related entities, with Plaintiff (unbeknownst to Defendant) limiting its responses explicitly to Plaintiff (NCP INC) while omitting NCP LLC from any of its answers.  (ECF 142-1, p. 3; ECF 142-2, p. 6; ECF 142-3, p. 5.)

- It is undisputed that Magistrate Judge Strauss denied Defendant's expedited motion to "take depositions of Plaintiff's CFO …, its counsel, and all others involved in any investigations (or lack thereof) related to Plaintiff's responses to the Order to Show Cause and referenced in Plaintiff's motion to dismiss." (ECF 96, p. 9, n.4; ECF 106, p. 6.)

- It is undisputed that Plaintiff has gained a tactical advantage from the dismissal as the damage done to Defendant's time, finances, and counterclaims are entirely unaccounted for by the Report.  (ECF 143, pp. 13-14.)

Despite these established facts, the Report did not find bad faith.  (ECF 143, p. 5.)

Defendant objects primarily on four issues  *First*, in failing to find bad faith, the Report swept aside Plaintiff's false response to the Court's Order to Show Cause Regarding Subject Matter Jurisdiction and relied primarily on an "unrebutted," self-serving declaration from Plaintiff's counsel about the "investigations" (and lack thereof) into Plaintiff's corporate status and citizenship.   But this was improper, as Defendant was entirely precluded from taking

**App. 233**

discovery on this critical issue, despite moving for that very discovery.  It is unjust and contrary to law to penalize the Defendant for testimony deemed "unrebutted" when the Defendant was specifically denied the chance to refute it.  *Second*, the Report's comparison to *Purchasing Power* is misplaced, as the facts here align far more closely with *Oxford Mall*, where repeated misrepresentations led the Eleventh Circuit to affirm sanctions. The Report also inexplicably overlooked two highly relevant decisions, *Itel* and *Soliant Health*, where sanctions were imposed based on nearly identical facts.  *Third*, the Report erred in concluding that it was reasonable for Plaintiff to take ***52 days*** to inform the Court and Defendant that Plaintiff was not the real party in interest, when the Order to Show Cause itself – to which Plaintiff supplied a false response – required a 6-day reply.  And *fourth*, the Report's conclusion that dismissing Plaintiff's case is sufficient to deter future misconduct is fundamentally flawed. It ignores the critical fact that Plaintiff greatly benefited from its sanctionable behavior by securing dismissal of Defendant's strong counterclaims. This outcome not only fails to deter misconduct—it actively rewards it. Worse still, the significant harm inflicted on Defendant's time and finances, solely due to Plaintiff's wrongful conduct, is wholly disregarded.  For these reasons, Defendant respectfully requests that its objections to the Report be sustained and that Defendant's Motion be granted.

### PROCEDURAL AND FACTUAL BACKGROUND

Defendant has previously provided a detailed procedural background through June 6, 2024 on the issues related to subject matter jurisdiction in ECF 136 and will not repeat the entirety again here.  Defendant provides a summary of main points and events related to these objections:

On August 15, 2017, Defendant and Plaintiff NCP INC entered into an E-Commerce Vendor Agreement, which was the subject of breach of contract claims by both Plaintiff and

# App. 234

Defendant.  (ECF 1-3, p. 1; *see* ECF 1 and ECF 44.)  In its motion to dismiss filed in January 2024, Plaintiff asserted that NCP INC "was merged out of existence and into [NCP LLC], a Delaware LLC, in or about November 8, 2019."  (ECF 95, p. 3, ¶ 12.) Two-and-a-half years after the purported merger, on March 14, 2022, Plaintiff's counsel sent a demand letter to Defendant on behalf of NCP LLC, threatening legal action.  (ECF 1-4, pp. 1-2.)  Plaintiff's CFO was copied on the demand letter.  (*Id.* at 2.)  The attachment to that letter, an "Accounts Receivable Aging Report" dated March 14, 2022, identified NCP INC as the interested party. (*Id.* at 4; ECF 1, p. 4, ¶ 21.)[1]

On May 12, 2022, over two years after the alleged merger of NCP INC into NCP LLC, and a full two months after Plaintiff clearly knew of and identified NCP **LLC**, Plaintiff and its counsel filed their Complaint against Defendant certifying that "Plaintiff National Christmas Products, **Inc.** D/B/A National Tree Company is an **S corporation** organized under the laws of the State of New Jersey with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016."  (ECF 1, p. 2, ¶ 6 (emphasis added).)  The very next day, on May 13, 2022, this Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction:

> [I]t is **ORDERED AND ADJUDGED** that on or before **May 19, 2022,** *Plaintiff shall file an Addendum to its Complaint listing the citizenship of every member of* <u>*any Party*</u> *that is a limited liability company* or any other form of unincorporated business or association. If a member of an LLC is itself an LLC, then Plaintiff must likewise allege the membership of the member LLC.  (ECF 6, p. 2 (third emphasis added).)

In response to the Court's Order to Show Cause, Plaintiff filed an Addendum and specifically re-certified under Rule 11[2] to the Court what was a knowingly false factual

---

[1] Plaintiff attached a copy of this letter and its attachment as Exhibit 2 to its Complaint.  (*Id.* at 4; ECF 1, p. 4, ¶ 21.)

[2] Plaintiff's Complaint, its response to the Order to Show Cause, and all its pleadings, motions, and other papers filed before this Court were subject to Fed. R. Civ. P. 11(b)(3), which explicitly states:

**App. 235**

contention that "National Tree Company is an **S corporation** organized under the laws of the State of New Jersey ... ." (ECF 8, p. 2, ¶ 8.) Nowhere in Plaintiff's response to the Order to Show Cause did Plaintiff mention a word about NCP LLC, that it even existed, or that the LLC allegedly had any interest or claim in this case. (*See* ECF 8.) Plaintiff and its counsel were under an obligation mandated by Rule 11 and the Order to Show Cause to inquire about the factual contentions about Plaintiff's citizenship and corporate identity.

Sirking its obligations to this Court, Plaintiff subsequently filed over the next 19+ months **nearly two dozen** pleadings, motions, and other papers with this Court, maintaining that Plaintiff was a corporation, an "**Inc.**" (*See generally* Court Docket.) Defendant even served discovery requests on Plaintiff concerning its corporate status and related entities, with Plaintiff (unbeknownst to Defendant) limiting its responses explicitly to NCP INC while omitting NCP LLC from any of its answers. (ECF 142-1, p. 3; ECF 142-2, p. 6; ECF 142-3, p. 5.) Defendant also took the depositions of six of Plaintiff's corporate employees and upper management and none of them testified that they worked for NCP LLC. (*See, e.g.,* ECF 91, p. 2, ¶ 10.)

Plaintiff also obtained two discovery extensions to the scheduling order, all the while concealing its alleged status as an LLC from this Court and Defendant. (ECF 55 & 75.) Plaintiff admitted that "[o]n November 13, 2023, Plaintiff's CFO informed [counsel] that Plaintiff is not an S-Corp." but rather an LLC. (ECF 91, p. 2, ¶ 10.) But this was not new information to Plaintiff or its counsel, of course, as NCP INC was "**merged out of existence** and into National

---

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—**an attorney** or unrepresented party **certifies** that to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. (emphasis added.)

**App. 236**

Christmas Products, LLC, a Delaware LLC, in or about October 2019," **_two-and-a-half years_**

**_before_** Plaintiff even filed this lawsuit.  (ECF 91, p. 3, ¶ 11 (emphasis added).)

Incredibly, **_at no time_** during the 52 days between November 13, 2023 and the filing of its

motion to dismiss on January 4, 2024 did Plaintiff notify Defendant or this Court that (i) NCP

INC was not the correct party in interest or (ii) there was a subject matter jurisdiction issue.

**_Plaintiff indisputably knew those facts on November 13, 2023_**.  But Plaintiff and its counsel

intentionally withheld this information.

Once it became clear that Plaintiff's claims had fallen apart and it risked significant

exposure from Defendant's counterclaims, Plaintiff pulled its escape hatch to its great benefit and

to the great disadvantage of Defendant by filing a motion to dismiss for lack of subject matter

jurisdiction, asking the Court to dismiss this case on the eve of the dispositive motion deadline.

(ECF 91 and ECF 95.)  Magistrate Judge Strauss denied Defendant's expedited motion to "take

depositions of Plaintiff's CFO …, its counsel, and all others involved in any investigations (or

lack thereof) related to Plaintiff's responses to the Order to Show Cause and referenced in

Plaintiff's motion to dismiss." (ECF 96, p. 9, n.4; ECF 106, p. 6.)   Thereafter, Magistrate Judge

Strauss issued a Report and Recommendation that Plaintiff's motion to dismiss be granted and

this Court approved it, dismissing this case for lack of subject matter jurisdiction. (ECF 135;

ECF 138.)

Defendant subsequently filed its motion for sanctions based on Plaintiff and its counsel's

repeated misrepresentations throughout this case about its corporate status and the identity of the

real party in interest.  On October 8, 2024, Magistrate Judge Strauss issued his Report denying

Plaintiff's Motion, wherein he found that "Defendant [] failed to demonstrate either subjective or

objective bad faith by Plaintiff or its counsel."  (ECF 143, p. 5.)  In doing so, Magistrate Judge

**App. 237**

Strauss referred on 10 occasions to a self-serving declaration from Plaintiff's counsel on its corporate investigations as "unrebutted," ***even after*** the Court had denied Defendant's motion to seek discovery on and depose Plaintiff and its counsel on those very same investigations.  (ECF 106, p. 6.)  Defendant hereby objects to specific portions of the Report within 14 days and the setting aside of the Report.

## LEGAL STANDARD

"Rule 72(a) requires a district court to modify or vacate a magistrate judge's order to the extent that the order 'is clearly erroneous or is contrary to law.'" *Matter of Application of O'Keefe*, 184 F. Supp. 3d 1362, 1366 (S.D. Fla. 2016) (quoting Fed. R. Civ. P. 72(a)) (sustaining objections to and setting aside magistrate judge's order). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997). An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure. *Tolz v. Geico Gen. Ins. Co.*, No. 08–80663–CIV, 2010 WL 384745, at *2 (S.D. Fla. Jan. 27, 2010).

## OBJECTIONS AND ARGUMENT

I.   **Defendant objects to the Report relying upon a self-serving declaration of Plaintiff's counsel's citizenship investigation (or the lack thereof) after denying Defendant's motion to conduct discovery on that very same issue.**

In the Report, the Court relied on no less than 10 times a declaration from Plaintiff's counsel on the investigations (or lack thereof) related to Plaintiff's citizenship and corporate status, which Magistrate Judge Strauss characterized as "unrebutted."  (ECF 141-1; *see generally* ECF 143.)  But NCP INC refused to engage in discovery, and Magistrate Judge Strauss ***denied*** Defendant's expedited motion to "take depositions of Plaintiff's CFO …, its counsel, and all

**App. 238**

others involved in any investigations (or lack thereof) related to Plaintiff's responses to the Order to Show Cause and referenced in Plaintiff's motion to dismiss." (ECF 96, p. 9, n.4; ECF 106, p. 6.)  This is not how discovery is supposed to work.  "The discovery process is designed to allow one party to test the other's factual contentions," which was expressly not permitted here. *Ruderman by and through Schwartz v. Washington Nat'l Ins. Corp.*, No. 08-23401, 2009 WL 10667425, at *1 (S.D. Fla. July 17, 2009) (citing *Platypus Wear, Inc. v. Fernando Caldas, Sr.*, No. 06-20976, 2007 WL 778976, at *1 (S.D. Fla. Mar. 9, 2007) (finding documents relevant to test veracity of defendant's claims and compelling production); *In re Lawrence*, 227 B.R. 907, 915 (S.D. Fla. 1998) (quoting *U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)) ("it is axiomatic that the purpose of discovery is make a trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent' possible.")).

As a result, Defendant was specifically prevented the opportunity to expose the facts surrounding Plaintiff's corporate status, including but not limited to (i) what Plaintiff and its counsel did (if anything) in response to the Court's Order to Show Cause, (ii) what communications Plaintiff and its counsel had about its citizenship throughout the case, including in response to Defendant's discovery requests on the subject, (iii) what the internal communications were that led to the convenient revelation on November 13, 2023 that the plaintiff should have been the LLC, not the INC, and (iv) testing the veracity through cross-examination and discovery requests of Plaintiff and its counsel's self-serving excuses about its "investigations."  The Report, which is based largely on Plaintiff's self-serving "facts" on which no discovery was permitted, must not be the basis for allowing Plaintiff to escape the consequences of its wrongful actions and failures.

**App. 239**

The *Itel Containers* case -- not surprisingly completely avoided by Plaintiff in its response to Defendant's Motion and also not mentioned in the Report -- addresses a virtually identical situation as here.  In that case, the defendant knew facts from the outset of the case that would lead to the dismissal of the case for lack of subject matter jurisdiction, just as Plaintiff did here.  *Itel Containers International Management, Inc. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 97-98 (D.N.J. 1985).  Like in this case, the defendant concealed from the Court and the opposing party for ***nearly two years*** the true nature of its corporate status and citizenship before filing a motion to dismiss for lack of subject matter jurisdiction.  *Id.* at 98-99.  Similarly, the *Itel* court noted that the offending party and its counsel "could have terminated the matter quickly" at the outset of the case, but "[i]nstead they forged a pattern of concealment" that lasted for years.  *Id.* at 101.

Unlike in this case, however, the *Itel* court allowed discovery and testimony on the jurisdictional defect, which included the sworn testimony by the defendant's attorneys during an evidentiary hearing, which exposed the concealment to the court.  *Id.* at 99-101.  In the precedential Eleventh Circuit case, *Oxford Mall*, cited in the Report, discovery was also permitted on internal communications surrounding the offending party's knowledge of its members' citizenship issues.[3]  But here, Defendant was completely precluded from conducting any discovery on Plaintiff's corporate status, the proper party in interest, and the alleged investigations surrounding it.  Defendant cannot rightly be penalized with "unrebutted" evidence when its calls to rebut and conduct discovery on that very evidence were stifled.  At the very least, the self-serving declaration from Plaintiff's counsel should not have been considered at all

---

[3] *J.C. Penney Corp. v. Oxford Mall, LLC,* 100 F.4th 1340, 1346 (11th Cir. 2024) ("Oxford's contention that it did not consider the connection between its two tenant disputes at the same property until after mediation was disproven by attorney Grovenstein's own September 2019 email spelling out the implications of the Hibbett jurisdictional inquiry to the J.C. Penney litigation").

9

**App. 240**

as part of the bad faith analysis.  But instead, it served as the cornerstone of erroneously finding *no bad faith*.

With the one-sided self-serving declaration disregarded, there was ample evidence from Plaintiff and its counsel themselves that spoke to their bad faith.  Plaintiff and its counsel made knowing misrepresentations in response to the Order to Show Case and in dozens of filings on the docket, and served all its discovery responses in the name of NCP INC, an entity they knew hadn't existed in well over two years.  Plaintiff and its counsel should be found to have litigated this case in bad faith and sanctioned, like the offending party and its counsel was in *Itel* and *Oxford Mall*.

**II.      Defendant objects that the Report likened this case to *Purchasing Power* when it was instead like *Oxford Mall* and ignored the persuasive *Soliant Health* opinion.**

The Report held that "[t]he facts here are more akin to the facts of *Purchasing Power*[4] [where sanctions were reversed] rather than *Oxford Mall*[5] [where sanctions were affirmed]." (ECF 143, p. 12.)  This conclusion was based on the Report's reliance on "Plaintiff's counsel's unrebutted declaration, [that] Plaintiff and its counsel became aware of the *mistake* [about corporate structure] in November 2023 and spent one month investigating whether the mistake actually undermined subject matter of jurisdiction."  (*Id.* (emphasis added).)  There are several problems with this conclusion.  *First*, the Report should not have relied on the self-serving, "unrebutted declaration" as described above.   *Second*, it is undisputed that Plaintiff and its counsel knew (i) NCP INC was "merged out of existence" over two years before Plaintiff filed this case,[6] and (ii) before filing the Complaint that Plaintiff was an LLC.[7]   *Third*, even taking Plaintiff's counsel at its self-serving word (which the Court shouldn't for the reasons stated

---

[4] *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017).
[5] *J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340 (11th Cir. 2024).
[6] ECF 95, p. 3, ¶ 12; ECF 95-1.
[7] ECF 1-4, pp. 1-2.

**App. 241**

*supra*), Plaintiff and its counsel admittedly did not even minimally investigate or confirm the type of entity Plaintiff actually was prior to filing the Complaint or in response to the Court's Order to Show Cause[8]  And *fourth*, the alleged investigation did not take "one month" but 52 days, during which extensive discovery by Defendant was continuing. Nonetheless, Plaintiff concealed that NCP INC was not the real party in interest.  Plaintiff and its counsel were obligated to immediately inform Defendant of that fact that NCP LLC was the proper party, as regardless of the citizenship of NCP LLC, the real party in interest was not named in the lawsuit, and Plaintiff's responses to the Order to Show Cause and Defendant's discovery requests were false.

These facts alone distinguish the facts of *Purchasing Power* from those of this case, as in that case the plaintiff's investigation, albeit "lacking," actually occurred and there was no proof, unlike here, that the *Purchasing Power* plaintiff *knew* the true facts about its corporate status. (ECF 143, p. 10 (citing *Purchasing Power*, at 1226-27).  But based on the contemporaneous evidence of record here, Plaintiff and its counsel indisputably *knew*.

Indeed, the Eleventh Circuit in *Oxford Mall* affirmed sanctions for comparable conduct, where the defendant knew from the outset of the case it was an LLC and it did not know the full membership of its company, yet largely ignored the issue.  100 F.4th at 1343-45.  Over a year into its litigation, the defendant finally uncovered that it shared the same citizenship as the plaintiff and then concealed that information from the plaintiff and the court for well over a year. *Id.* at 1345.  Only "when it was poised to lose the case, [did the defendant] inform the court that it lacked subject matter jurisdiction over the lawsuit."  *Id.* at 1343.  The district court issued sanctions under its inherent powers and the Eleventh Circuit affirmed, holding "[t]he district court's determination of bad faith is far more than 'plausible in light of the entire record,' and we

---

[8] ECF 6, p. 2 (emphasis added); ECF 141, p. 2, ¶ 3.

**App. 242**

do not disturb it." *Id.* at 1347 (quoting *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 141 S. Ct. 2321, 2349, 210 L.Ed.2d 753 (2021)).

Here, the Report relied on Plaintiff counsel's declaration about an alleged investigation of *the citizenship* of NCP LLC that allegedly took place in November - December 2023. Yet the Report entirely ignores that the investigation was admittedly done in **secret**. (ECF 141-1.)  The Report also ignores that Plaintiff was required to "prosecute[] [its action in the name of the real party in interest,"[9] correct inaccurate discovery responses,[10] and notify the Court of prior misrepresentations,[11] not hide these issues from the Court and Defendant for months/years.  Like the defendant's actions in *Oxford Mall*, Plaintiff and its counsel's concealment of the true facts about the real party in interest intentionally kept the Court and Defendant in the dark until such time as Plaintiff could spring its motion to dismiss on Defendant days before the dispositive motion deadline.  At that time, discovery was closed and it was clear that Plaintiff's claims were meritless, as they were disproven by Plaintiff's own documents and testimony, and that Defendant's counterclaims were strong and supported significantly higher damages than Plaintiff's claims.  Thus, Plaintiff and its counsel had every reason to activate its escape route out of this case, which they had been concealing from the Court and Defendant for months, even years.  Plaintiff and its counsel did not and cannot cite any case that condones such serendipitous conduct.  To the contrary, all case law condemns it as bad faith conduct.

What's more, Plaintiff and its counsel's alleged failure to conduct a reasonable inquiry mandates sanctions, not relief from them.  Indeed, "[i]f an attorney has failed to conduct a

---

[9] Fed. R. Civ. P. 17(a)(1).

[10] Fed. R. Civ. P. 26(e)(1)(A).

[11] *Soliant Health, LLC v. Aequor Healthcare Services, LLC*, No. 1:23-cv-02354-LMM, 2024 WL 2158710, at *2 (N.D. Ga. Apr. 19, 2024) (noting that the defendant failed to notify the court about its misrepresentation for months, holding that "Defendant's failure to correct an obvious misrepresentation supports a finding of bad faith," and finding "that sanctions are appropriate" under the court's inherent powers).

**App. 243**

reasonable inquiry into the matter [like Plaintiff admits here], then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1268 (11th Cir. 2007) (quoting *In re Mroz*, 65 F.3d 1567, 1573, 1573 (11th Cir. 1995)).  Here, Plaintiff's counsel admitted in his declaration that the firm just relied on a few client documents and their client's approval of the draft complaint that listed NCP INC as the real party in interest, even though the demand letter identified <u>NCP LLC</u> as the real party in interest.[12]  (ECF 141-1, pp. 1-2, ¶¶ 2-6.)  Plaintiff's counsel's alleged "good faith in their belief in their client does not insulate them from the requirements of the federal rules to investigate the claims they bring to the court. 'Blind reliance on the client is seldom a sufficient inquiry ....'" *Amlong*, 500 F.3d at 1268 (quoting *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)).  Plaintiff and its counsel were obligated to sort that issue out before filing suit, not over a year-and-a-half into the case.

In addition to the *Oxford Mall* and *Amlong* precedents, *Soliant Health* -- another case ignored in the Report -- is a persuasive Eleventh Circuit district opinion directly on point. In that case, the defendant misrepresented a fact in answering a court's question during a hearing, on which the court relied.  *Soliant Health*, 2024 WL 2158710, at *1.  After the misrepresentation came to light during discovery, the plaintiff moved for sanctions.  *Id.*  Like Plaintiff did here, the defendant tried to minimize the misrepresentation by unilaterally limiting the scope of the Court's general question, months after the fact.  *Id.* at *2.  The court rejected the defendant's pretexts, "find[ing] that this misrepresentation constitutes bad faith misconduct."  *Id.*  Indeed, the court explicitly found that "[d]espite possessing [the true] information, Defendant represented to

---

[12] The Report criticizes Defendant for "not notic[ing] the discrepancy between Plaintiff and NCP LLC either."  (ECF 143, p. 7.)  But as the *Itel* court held in rejecting such an argument, Defendant "had a right to believe [it] was dealing with honorable adversaries." *Itel*, 108 F.R.D. at 104-05.

**App. 244**

the Court that it had adequately investigated the matter" when providing its false answer. *Id.* "Ultimately, however, this statement was untrue, and a minimally adequate investigation should have revealed [the truth]." *Id.*   The Court also noted that the defendant failed to notify the court about its misrepresentation for months, holding that "Defendant's failure to correct an obvious misrepresentation supports a finding of bad faith," and found "that sanctions are appropriate" under the court's inherent powers. *Id.*

Likewise, here, Plaintiff and its counsel subjectively knew before this case was even filed that NCP LLC was the real party in interest and NCP INC no longer existed.   Nonetheless, in response to the Court's Order to Show Cause issued the day after the Complaint was filed, Plaintiff affirmatively represented to the Court that it "[wa]s an S corporation." And like the sanctioned defendant did in *Soliant Health*, Plaintiff and its counsel unilaterally limited – in its self-serving declaration made ***801 days after-the-fact*** -- the scope of their response to the Order to Show Cause "to the membership and citizenship of OJ[C]" only,[13] despite Plaintiff being ordered to conduct an investigation and "list[] the citizenship of every member of **any Party** that is a limited liability company."[14] Plaintiff and its counsel's response to the Order to Show Cause made no mention that only an investigation of Defendant was done, as they now claim. (ECF 8.) To the contrary, Plaintiff and its counsel were unequivocal – certifying under Rule 11 that a reasonable investigation of NCP INC was conducted – and that Plaintiff was an S corporation and the real party in interest. But "a minimally adequate investigation [in response to the Order to Show Cause] should have revealed" that their factual contentions were clearly false.  *Soliant Health*, 2024 WL 2158710, at *1.  Plaintiff and its counsel's failure to do an investigation of NCP INC while certifying that they did proves bad faith.  *Id.*; *Amlong*, 500 F.3d at 1268 ("[i]f an

---

[13] ECF 141-1, p. 2, ¶ 9; ECF 141, p. 2, ¶ 3.
[14] ECF 6, p. 2 (emphasis added).

**App. 245**

attorney has failed to conduct a reasonable inquiry into the matter [like Plaintiff admits here], then the court is **obligated** to impose sanctions even if the attorney had a good faith belief that the claim was sound" (emphasis added)); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith.").

### III.   Defendant objects to the Report's erroneous conclusion that Plaintiff waiting 52 days to inform the Court and Defendant that Plaintiff was not the real party in interest was reasonable.

Plaintiff admits that it was aware since November 13, 2023, that "is not an S-Corp." but rather an LLC. (ECF 91, p. 2, ¶ 10.), and its response to the Order to Show Cause was false. Yet Plaintiff waited *52 days*, until January 4, 2024 to advise the Court or Defendant, which the Report characterized as "Plaintiff promptly alert[ing] the Court." (ECF 143, p. 12.) But there is no provision in the entire Federal Rules of Civil Procedure that permits a supplemental time as long as 52 days. Such a delay is neither authorized nor considered prompt under any rule.

Indeed, in the Order to Show Cause itself, this Court gave Plaintiff *6 days* (4 business days) to  list the citizenship of every member of any Party that is a limited liability company or any other form of unincorporated business or association. (ECF 6, p. 2 (issued May 13, 2022, response due by May 19, 2022).)  Tellingly, the Report is silent why Plaintiff taking 52 days to correct its misrepresentation in response to the Order to Show Cause was considered reasonable, when the Order to Show Cause required a response within 6 days.   Indeed, there was no "investigation" to be done concerning Plaintiff's alleged epiphany about its corporate status. It knew on November 13, 2023 that Plaintiff was not the proper party, and It should have informed the Court and Defendant on the same day, or at most within 6 days—not 52 days, long after discovery was closed.  *See Soliant Health*, 2024 WL 2158710, at *2 (sanctioning party for not

# App. 246

correcting a prior misrepresentation to the court in less than three months, holding that "Defendant's failure to correct an obvious misrepresentation supports a finding of bad faith").

**IV.   Defendant objects to the Report's conclusion that the damage done to Plaintiff and its counsel was the "appropriate sanction," while utterly disregarding the substantial harm suffered by Defendant.**

In the Report, Magistrate Judge Strauss, relying on *Purchasing Power*, asserts that "the damage done to Plaintiff and its counsel's credibility, finances, and time is an appropriate sanction to curb their conduct and serve as a warning to them and future litigants." (ECF 143, pp. 13-14.)[15] This reliance is fundamentally flawed. In *Purchasing Power*, the plaintiff's losses in time, finances, and claims may have sufficed because there were no counterclaims from the defendant. But here, the critical distinction—which the Report completely omits—is that *Purchasing Power* dealt only with **the plaintiff's losses** since no counterclaims were raised by the defendant. (Case No. 1:12-cv-00258-WSD, ECF 44)[16]

More egregiously, the Report inexplicably neglects any mention of the significant damage inflicted upon Defendant's time, finances, and counterclaims—counterclaims that were dismissed after nearly two years of litigation and hundreds of thousands of dollars in costs and fees. The Report even acknowledges that "Plaintiff is … to blame for Plaintiff's jurisdictional pleading errors,"[17] and yet ignores Plaintiff's repeated acts of concealment regarding its corporate identity throughout the litigation. Despite this, it is Defendant who bore the brunt—losing time, resources, and the entirety of its counterclaims—with no penalty to Plaintiff or any form of compensation for Defendant. This is a glaring miscarriage of justice.

---

[15] In so holding, the Report again relied on "Plaintiff's counsel unrebutted declaration."  (ECF 143, p. 13.)

[16] A true and correct copy of the defendant's Answer to the Amended Complaint in *Purchasing Power* is hereby attached as **Exhibit A**.  Defendant requests that the Court take judicial notice of this public document.

[17] ECF 143, p. 7.

**App. 247**

Unlike the plaintiff in *Purchasing Power*, where the plaintiff suffered consequences for its actions, Plaintiff greatly benefitted from its own deception.  This is contrary to Eleventh Circuit precedent, which mandates that sanctions should be dictated by "the costs occasioned by the objectionable conduct." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).  And like in *Oxford Mall*, Plaintiff was on the verge of losing the vast majority of its damage claims on summary judgment, when it moved to dismiss this case, thereby creating a trap door out of this lawsuit that had turned against Plaintiff.  *Oxford Mall, LLC*, 100 F.4th at 1343 ("Just when it was poised to lose the case, Oxford informed the court that it lacked subject-matter jurisdiction over the lawsuit."). In light of these facts, the denial of sanctions accounting for Defendant's substantial losses is unjust and should be overturned. The Plaintiff's misconduct cannot be allowed to go unpunished, and Defendant deserves restitution for the immense harm it has suffered.

## CONCLUSION

Based on the foregoing, Defendant therefore respectfully requests that its objections to the Report (ECF 143) be sustained, that Defendant's Motion (ECF 139) be granted, and that the Court grant such other relief as is just and proper.

Dated: October 22, 2024                    Respectfully Submitted,

                                           By: /s/ Shlomo Y. Hecht_____
                                           Shlomo Y. Hecht
                                           Florida State Bar No.: 127144
                                           Shlomo Y. Hecht, P.A.
                                           3076 N Commerce Pkwy
                                           Miramar, FL  33025
                                           Phone: (954) 861-0025
                                           Email: sam@hechtlawpa.com

**App. 248**

Aaron W. Davis (admitted *Pro Hac Vice*)
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD  57730-0735
Phone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorneys for OJ Commerce, LLC*

## CERTIFICATE OF TRANSMITTAL / SERVICE

I HEREBY certify that on October 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served this document upon Plaintiff's counsel of record.

/s/Shlomo Y. Hecht
Shlomo Y. Hecht

18

**App. 249**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PURCHASING POWER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 1:12-cv-00258-WSD |
| | ) | |
| BLUESTEM BRANDS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**BLUESTEM BRANDS, INC.'S ANSWER TO**
**THE AMENDED COMPLAINT**

For its Answer to plaintiff Purchasing Power LLC's ("Purchasing Power")
Amended Complaint, defendant Bluestem Brands, Inc. ("Bluestem"), states as
follows:

**"PARTIES, JURISDICTION AND VENUE"**

1.     In answering paragraph 1 of the Amended Complaint, Bluestem
admits that Purchasing Power is a Georgia limited liability company but lacks
knowledge or information sufficient to form a belief as to the truth of the
remaining allegations contained in paragraph 1 of the Amended Complaint and
therefore denies them.

**Ex. A**

2.    Bluestem admits the allegations contained in paragraph 2 of the Amended Complaint.

3.    Bluestem denies the allegations contained in paragraph 3 of the Amended Complaint.

4.    Bluestem denies the allegations contained in paragraph 4 of the Amended Complaint

### "FACTS"

5.    In answering paragraph 5 of the Amended Complaint, Bluestem admits that Purchasing Power is a company that offers employer sponsored voluntary benefit programs, and that the programs enable employees to purchase retail items through payroll deductions, but denies the remaining allegations contained in paragraph 5 of the Amended Complaint.

6.    Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Amended Complaint, and therefore denies them.

7.    Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Amended Complaint, and therefore denies them.

**App. 251**

8.    Answering paragraph 8 of the Amended Complaint, Bluestem admits that its CEO, Brian Smith, received a July 19, 2010 e-mail from Paul Zurlo, and further states that the e-mail speaks for itself.

9.    Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Amended Complaint, and therefore denies them.

10.    Answering paragraph 10 of the Amended Complaint, Bluestem admits that Mr. Smith sent an e-mail to Purchasing Power's CEO, Keith Calhoun, on July 20, 2010, and further states that the e-mail speaks for itself.

11.    Answering paragraph 11 of the Amended Complaint, Bluestem admits that Mssrs. Smith, Calhoun and Delp had a telephone conversation on or around July 27, 2010 where they shared information about each other's business and operations, but denies the remaining allegations contained in paragraph 11 of the Amended Complaint.

12.    Answering paragraph 12 of the Amended Complaint, Bluestem admits that Mr. Smith told Messrs. Calhoun and Delp during the July 27 telephone call that the only things he knew about Purchasing Power's business were what he had recently learned, and that, prior to learning of Purchasing Power in June 2010, he had not previously focused on their employer-sponsored voluntary benefit

**App. 252**

program, but denies the remaining allegations contained in paragraph 12 of the Amended Complaint.

13.    Answering paragraph 13 of the Amended Complaint, Bluestem admits that during the July 27 telephone call, Mr. Smith indicated an interest in exploring further a business alliance between Purchasing Power and Bluestem, including a possible trip to Atlanta to talk further, but denies the remaining allegations contained in paragraph 13 of the Amended Complaint.

14.    Bluestem admits the allegations contained in paragraph 14 of the Amended Complaint.

15.    Answering paragraph 15 of the Amended Complaint, Bluestem admits that Mr. Smith sent Mr. Calhoun an e-mail on August 5, 2010 and further states that the e-mail speaks for itself.

16.    Answering paragraph 16 of the Amended Complaint, Bluestem admits that Mr. Calhoun sent Mr. Smith an e-mail on August 9, 2010 and further states that the e-mail speaks for itself.

17.    Answering paragraph 17 of the Amended Complaint, Bluestem admits that Mr. Smith and Mr. Calhoun spoke by phone on or about August 11, 2010 and that the parties discussed signing a non-disclosure agreement ("NDA"), but denies the remaining allegations contained in paragraph 17 of the Amended Complaint.

**App. 253**

18.    Answering paragraph 18 of the Amended Complaint, Bluestem admits that Ms. Street e-mailed Mr. Calhoun on August 11, 2010, and further states that the e-mail speaks for itself.

19.    Answering paragraph 19 of the Amended Complaint, Bluestem admits that Ms. Street e-mailed Mr. Calhoun on August 31, 2010, and further states that the e-mail speaks for itself.

20.    Answering paragraph 20 of the Amended Complaint, Bluestem admits that Mr. Calhoun made no changes to the NDA drafted by Bluestem, signed it, and sent an executed copy to Bluestem via e-mail on September 7, 2010.  As to the remaining allegations contained in paragraph 20 of the Amended Complaint, Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

21.    Answering paragraph 21 of the Amended Complaint, Bluestem admits that it sent a fully executed copy of the NDA via e-mail to Mr. Calhoun on September 10, 2010, but denies the remaining allegations contained in paragraph 21 of the Amended Complaint.

22.    Answering paragraph 22 of the Amended Complaint, Bluestem responds that the NDA speaks for itself and denies the remaining allegations

**App. 254**

contained in paragraph 22 of the Amended Complaint. To the extent that paragraph 22 alleges a legal conclusion, it requires no response.

23. Answering paragraph 23 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

24. Answering paragraph 24 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

25. Answering paragraph 25 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

26. Answering paragraphs 26 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

27. Answering paragraph 27 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

28. Answering paragraph 28 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

29. Answering paragraph 29 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

30. Answering paragraph 30 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

**App. 255**

31.     Answering paragraph 31 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

32.     Answering paragraph 32 of the Amended Complaint, Bluestem responds that the NDA speaks for itself.

33.     Answering paragraph 33 of the Amended Complaint, Bluestem admits that, following execution of the NDA by both parties, Bluestem had further discussions with Purchasing Power in connection with its potential interest in acquiring or investing in Purchasing Power, but denies the remaining allegations contained in paragraph 33 of the Amended Complaint.

34.     Answering paragraph 34 of the Amended Complaint, Bluestem admits that, following execution of the NDA, the parties proceeded with planning visits to Minneapolis and Atlanta to visit each other's facilities, but denies the remaining allegations contained in paragraph 34 of the Amended Complaint.

35.     Answering paragraph 35 of the Amended Complaint, Bluestem admits that Mr. Smith sent Mr. Calhoun an e-mail on September 27, 2010 and further states that the e-mail speaks for itself.  Bluestem denies the remaining allegations in paragraph 35 of the Amended Complaint.

36.     Answering paragraph 36 of the Amended Complaint, Bluestem admits that Mr. Smith sent Mr. Calhoun an e-mail on September 27, 2010 and further

**App. 256**

states that the e-mail speaks for itself.  Bluestem denies the remaining allegations in paragraph 36 of the Amended Complaint.

37.     Answering paragraph 37 of the Amended Complaint, Bluestem admits that Mr. Smith sent an e-mail to Mr. Calhoun on October 1, 2010 and further states that the e-mail speaks for itself.  Bluestem denies the remaining allegations in paragraph 37 of the Amended Complaint.

38.     Answering paragraph 38 of the Amended Complaint, Bluestem admits that discussions about scheduling visits between Bluestem and Purchasing Power resulted in Purchasing Power first visiting Bluestem's Minnesota offices, but denies the remaining allegations contained in paragraph 38 of the Amended Complaint.

39.     Bluestem admits the allegations contained in paragraph 39 of the Amended Complaint.

40.     Bluestem denies the allegations contained in paragraph 40 of the Amended Complaint.

41.     Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Amended Complaint, and therefore denies them.

42.     Answering paragraph 42 of the Amended Complaint, Bluestem admits that, during Purchasing Power's visit to Bluestem's facilities, Bluestem shared information concerning its business model, merchandising, marketing, credit, product offerings, and financials, but denies the remaining allegations contained in paragraph 42 of the Amended Complaint.

43.     Bluestem admits that during the October 26th meeting, Bluestem presented information about its products, but denies the remaining allegations contained in paragraph 43 of the Amended Complaint.

44.     Answering paragraph 44 of the Amended Complaint, Bluestem admits that Purchasing Power's officers made general statements about Purchasing Power's business at the October 26th meeting, but denies the remaining allegations contained in paragraph 44 of the Amended Complaint.

45.     Answering paragraph 45 of the Amended Complaint, Bluestem admits that following the October 26th meeting, it asked Purchasing Power to provide additional information about Purchasing Power's business, and that Purchasing Power provided some of that information in subsequent discussions, including in a later meeting in Atlanta.  Bluestem denies the remaining allegations in paragraph 45 of the Amended Complaint.

**App. 258**

46.     Bluestem admits the allegations contained in paragraph 46 of the Amended Complaint.

47.     Bluestem admits the allegations contained in paragraph 47 of the Amended Complaint.

48.     Answering paragraph 48 of the Amended Complaint, Bluestem admits that Purchasing Power disclosed some information about its business to Bluestem, including via a PowerPoint presentation, but denies the remaining allegations contained in paragraph 48 of the Amended Complaint.

49.     Bluestem denies the allegations contained in paragraph 49 of the Amended Complaint.

50.     Answering paragraph 50 of the Amended Complaint, Bluestem admits that it was interested in Purchasing Power's business at the November 2010 meeting in Atlanta, and that Mr. Smith stated at some point (but not necessarily at the November 2010 meeting) that he had not previously focused on their employer-sponsored voluntary benefit program.  Bluestem further answers that Mr. Smith told Purchasing Power at some point (but not necessarily at the November 2010 meeting) that Bluestem did not have an employer-sponsored voluntary benefit program, and that he thought Purchasing Power could create a good synergy with

Bluestem.  Bluestem denies the remaining allegations contained in paragraph 50 of the Amended Complaint.

51.    Answering paragraph 51 of the Amended Complaint, Bluestem admits that after the November 2010 meeting, Bluestem contacted Purchasing Power to request additional information about Plaintiff's business, but denies the remaining allegations contained in paragraph 51 of the Amended Complaint.

52.    Answering paragraph 52 of the Amended Complaint, Bluestem admits that Purchasing Power responded to some of Bluestem's further requests for information verbally and in three separate mailings.  Bluestem is without information sufficient to form a belief as to the precise dates of the mailings, and therefore denies them.  Bluestem denies the remaining allegations contained in paragraph 52 of the Amended Complaint.

53.    Answering paragraph 53 of the Amended Complaint, Bluestem admits that it had several telephone discussions with Purchasing Power between December 7 and 8, 2010, and the parties discussed some aspects of Purchasing Power's business.  Bluestem denies the remaining allegations contained in paragraph 53 of the Amended Complaint.

54.    Answering paragraph 54 of the Amended Complaint, Bluestem admits that it contacted Purchasing Power to arrange a meeting to present its letter of

intent, but denies the remaining allegations contained in paragraph 54 of the Amended Complaint.

55.    Bluestem admits the allegations contained in paragraph 55 of the Amended Complaint.

56.    Answering paragraph 56 of the Amended Complaint, Bluestem admits that Smith stated at some point (but not necessarily at the December 17 meeting) that Bluestem had not previously focused on Purchasing Power's employer-sponsored voluntary benefit program, but denies the remaining allegations contained in paragraph 56 of the Amended Complaint.

57.    Answering paragraph 57 of the Amended Complaint, Bluestem admits that it presented Purchasing Power with written materials at the December 17 meeting, and further states that the materials speak for themselves.

58.    Answering paragraph 58 of the Amended Complaint, Bluestem admits that it presented its acquisition offer to Purchasing Power at the December 17 meeting in Little Rock and that Purchasing Power rejected it at a subsequent date. Bluestem lacks knowledge or information sufficient to form a belief as to Purchasing Power's opinion about the offer, and therefore denies it.  Bluestem denies the remaining allegations contained in paragraph 58 of the Amended Complaint.

**App. 261**

59. Bluestem admits the allegations contained in paragraph 59 of the Amended Complaint.

60. Answering paragraph 60 of the Amended Complaint, Bluestem admits that on February 23, 2011, Ms. Street sent to Mr. Calhoun "original and copies of materials that were provided by plaintiff to defendant (the 'Confidential Information'), subject to the terms of the NDA" and further states that the letter speaks for itself.

61. Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Amended Complaint and therefore denies them.

62. Answering paragraph 62 of the Amended Complaint, Bluestem lacks knowledge or information sufficient to form a belief as to what Purchasing Power learned about Bluestem on or around September 29, 2011, and therefore denies that allegation. Bluestem denies the remaining allegations in paragraph 62 of the Amended Complaint.

63. Answering paragraph 63 of the Amended Complaint, Bluestem lacks knowledge or information sufficient to form a belief as to what Purchasing Power learned about Bluestem on or around September 29, 2011, and therefore denies that

**App. 262**

allegation. Bluestem denies the remaining allegations in paragraph 63 of the Amended Complaint.

64. Answering paragraph 64 of the Amended Complaint, Bluestem admits that it has discussed its "Paycheck Direct" program with industry brokers and that it launched its program in Minnesota, Oregon, Arkansas, and Delaware on or around November 1, 2011, and expanded the program nationwide on or around May 1, 2012, but denies the remaining allegations contained in paragraph 64 of the Amended Complaint.

65. Answering paragraph 65 of the Amended Complaint, Bluestem admits that during the business negotiations, it told Purchasing Power that Bluestem did not offer an employer-sponsored voluntary benefit program, but denies the remaining allegations contained in paragraph 65 of the Amended Complaint.

66. Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Amended Complaint and therefore denies them.

67. In answering paragraph 67 of the Amended Complaint, Bluestem admits that it received a letter dated November 7, 2011, from Purchasing Power, and further states that the letter speaks for itself. Bluestem denies the remaining allegations of paragraph 67 of the Amended Complaint.

**App. 263**

68. In answering paragraph 68 of the Amended Complaint, Bluestem admits that it sent plaintiff a letter dated November 16, 2011, and further states that the letter speaks for itself. Bluestem denies the remaining allegations of paragraph 68 of the Amended Complaint.

69. Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Amended Complaint, and therefore denies them.

70. Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Amended Complaint, and therefore denies them.

71. Answering paragraph 71 of the Amended Complaint, Bluestem admits that it is marketing its PayCheck Direct product line, but denies the remaining allegations contained in paragraph 71 of the Amended Complaint.

72. Answering paragraph 72 of the Amended Complaint, Bluestem admits that Robert Andrew Hillyer, a former employee of Purchasing Power and current employee of Bluestem, has contacted brokers in the industry to discuss Bluestem and the PayCheck Direct program, but denies the remaining allegations contained in paragraph 72 of the Amended Complaint.

73.     Answering paragraph 73 of the Amended Complaint, Bluestem admits that Purchasing Power has attached as Exhibit "O" a redacted e-mail and that the e-mail speaks for itself.  Bluestem denies the remaining allegations contained in paragraph 73 of the Amended Complaint.

74.     Answering paragraph 74 of the Amended Complaint, Bluestem lacks knowledge or information sufficient to form a belief as to what has been brought to Purchasing Power's attention about Mr. Hillyer, and therefore denies those allegations.  Bluestem denies the remaining allegations contained in paragraph 74 of the Amended Complaint.

75.     Bluestem denies the allegations contained in paragraph 75 of the Amended Complaint.

76.     Answering paragraph 76 of the Amended Complaint, Bluestem admits that it received a letter from Purchasing Power dated July 3, 2012 relating to Mr. Hillyer, and further states that the letter speaks for itself.

77.     Answering paragraph 77 of the Amended Complaint, Bluestem admits that its counsel sent a letter to Purchasing Power dated July 13, 2012 relating to Mr. Hillyer, and further states that the letter speaks for itself.

**App. 265**

78.     Answering paragraph 78 of the Amended Complaint, Bluestem admits that it received a letter from Purchasing Power dated July 18, 2012 relating to Mr. Hillyer, and further states that the letter speaks for itself.

79.     Answering paragraph 79 of the Amended Complaint, Bluestem admits that it sent a letter to Purchasing Power dated August 3, 2012 relating to Mr. Hillyer, and further states that the letter speaks for itself.  Bluestem denies the remaining allegations contained in paragraph 79 of the Amended Complaint.

80.     Bluestem lacks knowledge or information sufficient to form a belief as to what brokers have advised Purchasing Power and therefore denies those allegations.  Bluestem denies the remaining allegations contained in paragraph 80 of the Amended Complaint.

81.     Bluestem lacks knowledge or information sufficient to form a belief as to whether Purchasing Power's vendor at salesforce.com notified it of any potential activity in Mr. Hillyer's salesforce.com account and therefore denies the allegation.  Bluestem denies the remaining allegations in paragraph 81 of the Amended Complaint.

82.     Bluestem denies the allegations contained in paragraph 82 of the Amended Complaint.

**App. 266**

**COUNT I**

**"<u>VIOLATIONS OF GEORGIA TRADE SECRETS ACT</u>"**

83.     With respect to paragraph 83 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

84.     Bluestem denies the allegations contained in paragraph 84 of the Amended Complaint.

85.     Bluestem denies the allegations contained in paragraph 85 of the Amended Complaint.

86.     Bluestem denies the allegations contained in paragraph 86 of the Amended Complaint.

87.     Bluestem denies the allegations contained in paragraph 87 of the Amended Complaint.

88.     Bluestem denies the allegations contained in paragraph 88 of the Amended Complaint.

89.     Bluestem denies the allegations contained in paragraph 89 of the Amended Complaint.

90.     Bluestem denies the allegations contained in paragraph 90 of the Amended Complaint.

**App. 267**

91.　　Bluestem denies the allegations contained in paragraph 91 of the Amended Complaint.

92.　　Bluestem denies the allegations contained in paragraph 92 of the Amended Complaint.

## COUNT II

### "BREACH OF CONTRACT/BREACH OF NDA"

93.　　With respect to paragraph 93 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

94.　　Bluestem denies the allegations contained in paragraph 94 of the Amended Complaint.

95.　　Bluestem denies the allegations contained in paragraph 95 of the Amended Complaint.

96.　　In answering paragraph 96 of the Amended Complaint, Bluestem states that because there are no factual assertions with respect to the statement that "at this time it is unclear whether Defendant was secretly developing the 'Paycheck Direct' program by and through its alleged 'Project Cortes' all along, or whether Defendant decided to develop and launch this competing program after its business negotiations with Plaintiff fell through," no answer is required.  To the extent

Bluestem is required to respond, Bluestem denies the allegations. Bluestem denies the remaining allegations contained in paragraph 96 of the Amended Complaint.

97. Bluestem denies the allegations contained in paragraph 97 of the Amended Complaint.

98. Bluestem denies the allegations contained in paragraph 98 of the Amended Complaint.

99. Bluestem denies the allegations contained in paragraph 99 of the Amended Complaint.

**COUNT III**

**"REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION"**

100. With respect to paragraph 100 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

101. Answering paragraph 101 of the Amended Complaint, Bluestem responds that the document speaks for itself. To the extent Bluestem is required to respond, Bluestem denies the allegations contained in paragraph 101 of the Amended Complaint.

102. Answering paragraph 102 of the Amended Complaint, Bluestem responds that the document speaks for itself. To the extent Bluestem is required to

respond, Bluestem denies the allegations contained in paragraph 102 of the Amended Complaint.

103.  Bluestem denies the allegations contained in paragraph 103 of the Amended Complaint.

104.  Bluestem denies the allegations contained in paragraph 104 of the Amended Complaint.

105.  Bluestem denies the allegations contained in paragraph 105 of the Amended Complaint.

## COUNT IV

### "FRAUD"

106.  With respect to paragraph 106 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

107.  Bluestem denies the allegations contained in paragraph 107 of the Amended Complaint.

108.  Answering the allegations in paragraph 108, Bluestem admits that Mr. Smith told Purchasing Power during the July 27 telephone call that the only things he knew about Purchasing Power's business were what he had recently learned, and that, prior to learning of Purchasing Power in June 2010, he had not previously focused on their employer-sponsored voluntary benefit program. Bluestem further

admits that Mr. Smith stated at some point (but not necessarily at the November 2010 and/or December 2010 meetings) that he had not previously focused on Purchasing Power's employer-sponsored voluntary benefit program, that Bluestem did not have an employer-sponsored voluntary benefit program, and that he thought Purchasing Power could create a good synergy with Bluestem. Bluestem denies the remaining allegations contained in paragraph 108 of the Amended Complaint.

109.  Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the Amended Complaint, and therefore denies them.

110.  Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of the Amended Complaint, and therefore denies them.

111.  Bluestem denies the allegations contained in paragraph 111 of the Amended Complaint.

112.  Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112 of the Amended Complaint, and therefore denies them.

**App. 271**

113.   Bluestem denies the allegations contained in paragraph 113 of the Amended Complaint.

114.   Bluestem denies the allegations contained in paragraph 114 of the Amended Complaint.

115.   Bluestem denies the allegations contained in paragraph 115 of the Amended Complaint.

## COUNT V

## "NEGLIGENT MISREPRESENTATION"

116.   With respect to paragraph 116 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

117.   Bluestem denies the allegations contained in paragraph 117 of the Amended Complaint.

118.   Answering paragraph 118 of the Amended Complaint, Bluestem admits that Mr. Smith stated at some point to Purchasing Power that he had not previously focused on their employer-sponsored voluntary benefit program, that Bluestem did not have an employer-sponsored voluntary benefit program, and that he thought Purchasing Power could create a good synergy with Bluestem, but denies the remaining allegations.

119.   Bluestem lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 119 of the Amended Complaint and therefore denies them.

120.   Bluestem denies the allegations contained in paragraph 120 of the Amended Complaint.

121.   Bluestem denies the allegations contained in paragraph 121 of the Amended Complaint.

## COUNT VI

## "TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS"

122.   With respect to paragraph 122 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

123.   Answering paragraph 123 of the Amended Complaint, Bluestem admits that Purchasing Power has relationships with certain brokers and that Purchasing Power has contracts with certain customers who have participated in Purchasing Power's employer-sponsored voluntary benefit programs.   Bluestem denies the remaining allegations contained in paragraph 123 of the Amended Complaint.

124.   Bluestem denies the allegations contained in paragraph 124 of the Amended Complaint.

125.   Bluestem denies the allegations contained in paragraph 125 of the Amended Complaint.

126.   Bluestem denies the allegations contained in paragraph 126 of the Amended Complaint.

## COUNT VII

## "TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS"

127.   With respect to paragraph 127 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

128.   Bluestem denies the allegations contained in paragraph 128 of the Amended Complaint.

129.   Bluestem denies the allegations contained in paragraph 129 of the Amended Complaint.

130.   Bluestem denies the allegations contained in paragraph 130 of the Amended Complaint.

## COUNT VIII

## "PUNITIVE DAMAGES"

131.   With respect to paragraph 131 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

# App. 274

132.   Bluestem denies the allegations contained in paragraph 132 of the Amended Complaint.

133.   Bluestem denies the allegations contained in paragraph 133 of the Amended Complaint.

134.   Bluestem denies the allegations contained in paragraph 134 of the Amended Complaint.

## COUNT IX

## "ATTORNEY'S FEES"

135.   With respect to paragraph 135 of the Amended Complaint, Bluestem incorporates by reference all of the foregoing paragraphs.

136.   Answering paragraph 136 of the Amended Complaint, Bluestem answers that the document speaks for itself.

137.   Bluestem denies the allegations contained in paragraph 137 of the Amended Complaint.

138.   Bluestem denies the allegations contained in paragraph 138 of the Amended Complaint.

139.   Bluestem denies the allegations contained in paragraph 139 of the Amended Complaint.

**App. 275**

140. Except as specifically admitted, qualified, or otherwise answered herein, Bluestem denies each allegation in plaintiff's Amended Complaint.

## AFFIRMATIVE AND RULE 12 DEFENSES

Bluestem alleges and asserts the following defenses in response to the allegations by plaintiff, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

1.    The Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.    Bluestem has independently developed its PayCheck Direct program, without access to any alleged confidential, proprietary, or trade secret information of Purchasing Power.

3.    Purchasing Power's claims fail, in whole or in part, due to waiver.

4.    Purchasing Power's claims fail, in whole or in part, due to estoppel.

5.    Purchasing Power's claims fail, in whole or in part, due to laches.

6.    Purchasing Power's claims fail, in whole or in part, due to release.

7.    Purchasing Power's claims fail, in whole or in part, due to plaintiff's failure to mitigate its damages.

**App. 276**

8.    Purchasing Power's claims fail, in whole or in part, because of the competitor's privilege.

9.    Purchasing Power's claims fail, in whole or in part, because they are preempted by the Georgia Trade Secrets Act, O.C.G.A. § 10-1-767.

10.   Purchasing Power's claims fail because this court lacks personal jurisdiction over Bluestem.

WHEREFORE, Bluestem respectfully asks that the Court dismiss this action on the merits and with prejudice and that the Court award Bluestem all costs and attorneys' fees allowed by law, along with any other relief that the Court deems just and equitable.

Dated:  September 4, 2012

**KILPATRICK TOWNSEND &**          /s/ Audra A. Dial
**STOCKTON LLP**                    Audra A. Dial
1100 Peachtree Street               Georgia Bar No. 220298
Suite 2800
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500
Fax: (404) 815-6555
adial@kilpatricktownsend.com

**FAEGRE BAKER DANIELS LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
randall.kahnke@faegreBD.com
kerry.bundy@faegreBD.com
synda.mark@faegreBD.com
jeff.justman@faegreBD.com

Randall E. Kahnke (*pro hac vice*)
Kerry L. Bundy (*pro hac vice*)
Synda A.J. Mark (*pro hac vice*)
Jeffrey P. Justman (*pro hac vice*)

**FAEGRE BAKER DANIELS LLP**
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
Tel: (317) 237-0300
Fax: (317) 237-1100
katrina.gossett@faegreBD.com

Katrina M. Gossett (*pro hac vice*)

*Attorneys for Defendant Bluestem Brands, Inc.*

fb.us.7952098.05

29
**App. 278**

## CERTIFICATE OF SERVICE

    I hereby certify that I electronically filed the foregoing BLUESTEM BRANDS, INC.'S ANSWER TO THE AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

    This 4th day of September, 2012.

*/s/ Audra A. Dial*

Audra A. Dial

Georgia Bar No. 220298

KILPATRICK TOWNSEND &

STOCKTON LLP

1100 Peachtree Street, Suite 2800

Atlanta, Georgia 30309-4528

Tel: (404) 815-6500

Fax: (404) 815-6555

adial@kilpatricktownsend.com

**App. 279**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-60897 - CIV-DIMITROULEAS

NATIONAL CHRISTMAS PRODUCTS, INC

    Plaintiff,

v.

OJ COMMERCE, LLC

    Defendant.

_____/

## <u>ORDER APPROVING REPORT OF MAGISTRATE JUDGE;</u>
## <u>OVERRULING OBJECTIONS;</u>
## <u>DENYING MOTION FOR SANCTIONS</u>

THIS CAUSE is before the Court upon Defendant OJ Commerce's Motion for Sanctions Against Plaintiff and its Counsel [DE 139] and the Report of Magistrate Judge Jared M. Strauss dated October 8, 2024. [DE 143]. The Court has conducted a *de novo* review of the Motion, the Report, Defendant's Objection to the Magistrate's Report and Recommendation [DE 144] and is otherwise fully advised in the premises. The Court agrees with the Magistrate's conclusion that the motion for sanctions sought by Defendant OJ Commerce should be denied.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     The Magistrate Judge's Report [DE 143] is hereby **APPROVED**;

2.     Defendant's Objections [DE 144] are **OVERRULED**;

3.     Defendant's Motion for Sanctions [DE 139] is **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of December, 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

**App. 280**

Copies provided to:
Counsel of Record

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

        Plaintiff,

-vs-

OJ COMMERCE, LLC,

        Defendant.

_____/

**<u>DEFENDANT'S NOTICE OF APPEAL</u>**

    Pursuant to Fed. R. App. P. 3 and 4, notice is hereby given that defendant in the above-referenced case hereby appeal to the United States Court of Appeals for the Eleventh Circuit from the Order Approving the and Adopting Report and Recommendations on Defendant's Motion for Sanctions against Plaintiff (ECF No. 146), entered in this action on the 9st day of December, 2024.

**<u>CERTIFICATE OF TRANSMITTAL / SERVICE</u>**

    I HEREBY certify that on July 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served this document upon Plaintiff's counsel of record.

<u>/s/Shlomo Y. Hecht_____</u>
Shlomo Y. Hecht

1

**App. 282**

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA**

| | | |
|---|---|---|
| OJ COMMERCE LLC, | ) | Case No.: _____ |
| *Plaintiff,* | ) | |
| -vs- | ) | |
| NATIONAL CHRISTMAS PRODUCTS, | ) | |
| LLC d/b/a NATIONAL TREE COMPANY, | ) | |
| *Defendant* | ) | |

_____

## COMPLAINT FOR MONETARY DAMAGES

COMES NOW, Plaintiff OJ COMMERCE LLC ("OJC" or "Plaintiff"), by and through

undersigned counsel, and sues defendant NATIONAL CHRISTMAS PRODUCTS, LLC d/b/a

NATIONAL TREE COMPANY ("National Tree" or "Defendant"), for damages, and alleges the

following:

### PARTIES

1.      OJC is a Delaware limited liability company with its principal place of business in

Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer

engaged in interstate commerce and is selling consumer goods to customers.

2.      Upon information and belief, National Christmas Products, LLC d/b/a National

Tree Company is a limited liability company organized under the laws of the State of New Jersey

with its principal place of business in the State of New Jersey.  Upon information and belief, at

least one of Defendant's members is a citizen and resident of the State of Florida.

### JURISDICTION

3.      This Court has subject matter jurisdiction over this case, pursuant to § 26.012

(2)(a), Fla. Stat., because it is an action for damages in excess of $50,000.00, exclusive of

interest, attorney's fees, and costs.

# App. 283

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 11/25/2024 06:45:51 PM.****

4.      This Court has personal jurisdiction, pursuant to Fla. Stat. § 48.193(1) over Defendant because it, *inter alia*, (a) transacted business within the State of Florida, (b) sold products including artificial Christmas tree products throughout the State of Florida, (c) has substantial contacts in the State of Florida, including by having an agreement with OJC which contained a mandatory forum selection clause for venue and exclusive jurisdiction in Broward County, Florida, (d) committed tortious acts and causing injury in the State of Florida, and (e) engaged in solicitation and service activities in the State of Florida, and (f) processed, serviced, and manufactured products and materials, including but not limited to artificial Christmas tree products, that were used and consumed with the State of Florida in the ordinary course of Defendant's commerce, trade, and use.

5.      Venue is proper in Broward County, Florida pursuant to § 47.051, Fla. Stat., because this is where the cause of action accrued and the parties' contract, which contained a mandatory forum selection clause for venue and exclusive jurisdiction in Broward County, Florida.

## FACTS COMMON TO ALL COUNTS

6.      On August 15, 2017, National Tree and OJC executed the sole agreement between the parties, an E-Commerce Vendor Agreement ("Agreement"), which governed their e-commerce business relationship.  A true and correct copy of the Agreement is attached to this Counterclaim as **Exhibit A** and is incorporated herein.

7.      National Tree primarily sells Christmas tree products that are very seasonal, and are extremely time sensitive to the Christmas holiday.

8.      The nature of the relationship between National Tree and OJC was for Christmas tree product orders to be drop shipped.  That means that OJC sells National Tree Christmas tree

App. 284

products to its customers, and National Tree was to fulfill those orders by directly shipping the products to OJC's customers.

9.      The Agreement defined "Drop Shipment" "as the process of Seller sending individual purchase orders to the [National Tree], and the [National Tree] shipping the purchase order merchandise from a [National Tree's] facility direct to an End Consumer, without passing through the warehouse of [OJC]"

10.     In their relationship, National Tree had manufactured, stocked, and shipped the Christmas tree products for sale to OJC's customers.

11.     In turn, OJC relied on National Tree to accurately and honestly account for how many Christmas tree products National Tree had in stock, when the products were shipped, and the tracking information related to National Tree's shipments.

12.     Tracking numbers are assigned by shipping carriers, such as FedEx, when a shipper, like National Tree, creates a shipping label or shipping note. They allow the intended recipient of the package to track the status and progress of the shipment, and delivery of their order.

13.     The vast majority of Christmas tree product consumer sales for any given year take place in a 4-6 week period before Christmas, from around early-mid November through early-mid-December.

14.     This small window of time for Christmas tree product sales is the norm every year, and is based on consumer's seasonal shopping patterns, wherein the great majority of consumers purchase Christmas tree products soon before Christmas.

15.     It is critical to satisfying the customers who order Christmas tree products to ship and deliver them in a timely manner, as Christmas trees are almost always the central decoration for households that celebrate Christmas.

16.     Therefore, if a company does not deliver a customer's orders for Christmas tree products in the window of time they are needed by the customer, there is no making up for it after the fact.

17.     In other words, delivering a Christmas tree after Christmas, or not in the time frame promised, creates an extremely adverse effect on the customer because the customer's Christmas celebration has been negatively affected.

18.     This in turn creates an extremely adverse effect on the company selling the Christmas trees, as the customers take their frustration and disappointment out on the company selling the Christmas trees.

19.     Furthermore, because of the time-sensitive nature of the purchase by the customer, the failure to deliver a Christmas tree product as promised will more often than not have an adverse effect on other sales the company would have made because the customer will now not trust the seller of the Christmas tree product for any of their other purchases, and will often post negative feedback on the Internet for other customers to review and consider when making their purchasing decisions, and will tell friends and family about their bad experience.

20.     OJC worked with National Tree prior to the 2020 Christmas holiday season to prepare for the expected sales, so that all transactions would go smoothly and timely for OJC's customers.

21.     OJC's time and effort was devoted to promoting National Tree's Christmas tree products, creating and optimizing images, advertisements, marketing material, and content for

OJC's website and on third-party marketplaces, integrating its computer systems, and otherwise preparing for the holiday sales season (collectively, "setting up" the National Tree products).

22.     During those preparations, National Tree made promises to OJC that National Tree could meet the demand of OJC's customers, would ship the products promptly, and have the Christmas tree products delivered in a timely fashion.

23.     Reasonably relying on National Tree's promises, and in order to make sure that the sales and deliveries would go as successfully and smoothly as possible, for many months prior to the 2020 Christmas shopping season, OJC spent a significant amount of time and money setting up the National Tree Christmas tree products.

24.     OJC also set up National Tree products to be sold on a variety of third-party marketplaces, such as Amazon and Walmart.

25.     As a result of its preparation and investments, OJC was successful in selling a large number of National Tree Christmas tree products for the 2020 Christmas season on its website, and other marketplaces.

26.     Unbeknownst to OJC, however, National Tree, for its part, was extremely negligent, reckless, and fraudulent when it came to processing the orders made by OJC's customers.

27.     Beginning in November 2020, National Tree notified OJC that it had shipped a large number of orders, and provided OJC with shipment tracking numbers for those orders.

28.     In turn, OJC provided those tracking numbers to its customers advising them that their orders were shipped.

29.     Although OJC did not know at the time that it supplied the tracking information to its customers, the shipment information and tracking numbers provided by National Tree was misleading and dishonest.

30.     National Tree had simply generated tracking numbers, but never actually shipped the orders and when customers tried tracking their orders on the shipping carrier websites, the shipping carrier showed no movement on those tracking numbers, as those packages were not actually shipped by National Tree.  These tracking numbers that were generated but did not result in a shipment are herein referred to as "non-moving tracking numbers."

31.     Indeed, National Tree did not even have the Christmas tree products in stock while it was telling OJC and its customers that National Tree's Christmas tree products were in fact in stock and ready to ship.

32.     Fairly early in the Christmas ordering season, on November 17, 2020, OJC notified National Tree that 724 orders were late, with 311 having non-moving tracking numbers and another 431 well past their delivery due dates.  A true and correct copy of the November 17, 2020 from OJC to National Tree is attached to this Counterclaim as **Exhibit B** and is incorporated herein.

33.     Approximately a week later, on November 25, 2020, OJC had determined that National Tree now had issued at least 468 non-moving tracking numbers.

34.     On December 11, 2020 – extremely close to the Christmas holiday – OJC informed National Tree that **2,863** orders, upwards of four weeks old, had non-moving tracking numbers.  A true and correct copy of the December 11, 2020 from OJC to National Tree is attached to this Counterclaim as **Exhibit C** and is incorporated herein.

35.    In response, National Tree claimed that orders were picked up by the carrier, but National Tree was unable to provide pickup location details for OJC's confirmation.

36.    Due to National Tree's failure to promptly ship OJC's customers' orders, many Christmas tree products were not delivered until either right before – after a customer had already made a substitute purchase due to the lateness of the shipment – or even after Christmas.

37.    Also due to National Tree's failure to promptly ship OJC's customers' orders, many OJC customers canceled their orders but National Tree later shipped the orders anyway, which resulted in OJC being charged for the product by National Tree and shipping fees when OJC had already refunded its customer's money.

38.    National Tree's failures caused OJC's customers to file numerous chargeback claims with their credit card companies (wherein the customer seeks a refund or cancellation of a credit card charge due to a problem with an order), refund requests, and other economic losses.

39.    National Tree's providing misleading tracking numbers, defective products, and late shipments, and shipping of already canceled orders, continued throughout and even after the Christmas holiday season.

40.    Due to National Tree's ever-increasing orders with non-moving tracking numbers, defective trees, and late shipments, and those that were canceled altogether, OJC was overwhelmed with calls and messages from angry customers, cancellations, and a large number of negative reviews posted all over the world wide web where millions of potential OJC customers can review and use them to make decisions about whether to order from OJC in the first place.

41.     Listed below are just five of the numerous negative reviews that OJC's customers posted online as a result of National Tree's failure to promptly ship OJC's customers' Christmas tree orders and/or shipping defective trees:

    A.  DO NOT ORDER FROM THEM! My order 'shipped' on the 9th and I never received. Apparently it was never even in stock and I only found out cause I called after it was suppose to arrive and they said it was out of stock and didn't even care. Talk about The Grinch.

    B.  They cancelled my order the day before it should have arrived, this ruined my Christmas. Too late to make other arrangements for a tree. I will never buy from this company.

    C.  Do not order from this company. We ordered a Christmas tree ON THE 6th. The seller said it shipped on the 7th and then when we contacted them about the order (10 days later) they blamed FedEx for not picking up the order. The package was still sitting in their warehouse in California. I will never order from this seller, and will from now on be looking at all 3rd party reviews before buying.

    D.  Order placed 12/1. Should've suspected something was amiss because there was never a valid tracking number. Originally, it was supposed to arrive between 12/8-11. Then I was told between 12/12-17. Today, 12/18, I receive an email stating my order was credited back to my CC. Thats all fine & dandy but my new gate looks pretty stupid w/garland & no wreath. I will never buy from this vendor.

    E.  I waited for the arrival of the Christmas tree. I ordered the tree in advance so I would have it the first of December. I received it today and imagine my disappointment when some the electrical connectors are missing. Now, I have to wait for your response to approve return and then order another tree and wait again. My husband just died and this Christmas is important to me. Please help!

42.     Throughout the Christmas shopping season, OJC repeatedly advised National Tree that these cancellations, late shipments, defective shipments, and mis-shipments, will cause significant economic damages to OJC.

43.     National Tree's wrongful conduct described above did in fact cause significant economic damages to OJC, including but not limited to money spent or lost on refunds,

appeasements, additional customer service personnel hours, and loss of money spent on marketing, as OJC's customers were extremely upset, felt mistreated, and took their frustrations out on OJC.

44.    National Tree's wrongful conduct described above also caused the loss of sales of other products that OJC did not receive or otherwise lost due to its customers' negative experiences with the National Tree Christmas tree products being taken out on OJC.

45.    National Tree's wrongful actions, which caused extreme backlash by OJC's customers against OJC – who was not the source of the problems – also caused significant economic harm to OJC's reputation and goodwill.

### Count I - Breach of Contract

46.    OJC incorporates by reference paragraphs 1 through 45.

47.    OJC entered into a valid and enforceable Agreement with National Tree for the proper and timely fulfillment of dropship orders to OJC's customers.

48.    Pursuant to the Agreement, OJC, as reseller, would promote and display National Tree's approved products for sale on OJC's website and third-party marketplaces, and National Tree, as vendor, would supply the products to OJC's customers.

49.    Pursuant to Section 2.4.3 of the Agreement, "[a] Defective Return is the responsibility of [National Tree]."

50.    On many occasions, National Tree shipped orders that were defective.

51.    National Tree breached the Agreement, because it did not take responsibility for defective products, and did not apply the proper refunds to OJC for those orders.

52.    The parties' course of dealing was that they operated under Section 2.4.3 of the Agreement, not Section 2.4.4, because National Tree never provided to OJC a flat rate defective allowance of 3%.

53.    Pursuant to Section 2.4.5 of the Agreement, a "Mis-shipped Product" was the responsibility of National Tree.

54.    On many occasions National Tree mis-shipped order products.

55.    National Tree breached the Agreement, because it did not take responsibility for mis-shipped orders, and did not apply the proper refunds to OJC for those orders.

56.    Pursuant to Section 2.6 of the Agreement, "[National Tree] accepts returns for cancelled orders that were shipped in error and not stopped by [National Tree], and [National Tree] pays for the freight charges, intercept fees and any return freight charges for shipping the cancelled order pursuant to the terms in section 2.4."

57.    On many occasions National Tree shipped orders in error, after they were canceled, and National Tree did not stop those shipments.

58.    National Tree breached the Agreement, because it (a) did not accept those returns, (b) did not pay for the freight charges, (c) did not pay for the intercept fees, and (d) did not pay for the return freight charges of those orders.

59.    Pursuant to Section 2.7.4 of the Agreement, OJC transmitted purchase orders ("POs") to National Tree.

60.    Those POs contained OJC's customer name, and their address, product choice and quantity, and ship date, among other information.

61.    National Tree was obligated to ship each of OJC's customer's orders within a reasonable time.

62.     For each order that was transmitted to National Tree, National Tree was advised of the reasonable time the customer expected the order, and a specific ship date was listed on each PO.

63.     On some occasions, National tree did not ship OJC's orders within a reasonable time.

64.     On some occasions, National tree did not ship OJC's orders within the time expected that was provided on the PO.

65.     Pursuant to Section 2.7.4 of the Agreement, OJC was only required to pay the price it indicated on its PO.

66.     National Tree did not request an approval from OJC to charge above the PO price prior to shipping the orders.

67.     National Tree did not receive an approval from OJC that it may charge above the PO prices.

68.     Nevertheless, on some occasions, National Tree invoiced and charged OJC above the price that was indicated on the PO.

69.     National Tree breached the Agreement, including but not limited to at least Sections 2.4, 2.4.3, 2.4.5, 2.6, and 2.7.4 of the Agreement, by National Tree's improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and mis-shipments;

70.     National Tree failed to take responsibility for its actions, by failing to apply proper refunds for improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and mis-shipments, as per the terms of the Agreement.

71.     As a result of National Tree's breaches, OJC suffered monetary damages, in the form of refunds made to its customers that National Tree – not OJC – was required to make.

72.     As a result of National Tree's breaches, OJC suffered hundreds of thousands of dollars in damages, in the form of missing credits from National Tree, refunds made to OJC's customers, negative reviews by OJC's customers, and negatively affecting OJC's ability to sell its products on third party marketplaces.

**Count II - Breach of Implied Covenant of Good Faith and Fair Dealing**

73.     OJC incorporates by reference paragraphs 1 through 72.

74.     OJC entered into a valid and enforceable Agreement with National Tree for the proper and timely fulfillment of dropship orders to OJC's customers.

75.     Implied in the parties' Agreement was National Tree's promise to ship OJC's customers' orders in a timely fashion, not to supply misleading non-moving tracking numbers to OJC and its customers, and not to ship already-cancelled orders.

76.     National Tree through its conscious reckless and deliberate actions failed to ship in a timely manner orders placed by OJC and the POs referenced therein.

77.     National Tree did not apply proper credits and refunds for those improperly processed orders.

78.     National Tree's conduct deprived OJC from the benefit of the Agreement, as OJC suffered monetary damages in the form of cancellations, negative feedback, chargebacks, refund demands, and other negative effects as outlined above due to National Tree's failure to properly and timely fulfill OJC's customer orders.

79.     As a result of National Tree's breaches, OJC suffered hundreds of thousands of dollars in damages.

## Count III - Breach of Implied Warranty

80. OJC incorporates by reference paragraphs 1 through 79.

81. National Tree is a merchant with respect to goods of the kind involved in the instant matter, namely consumer goods, including but not limited to Christmas tree products.

82. National Tree sold goods to OJC and its consumers to be used for their ordinary purpose.

83. National Tree's goods and shipments thereof were therefore subject to an implied warranty.

84. On many occasions, National Tree delivered defective merchandise that failed to pass without objection in the trade of consumer goods, by the shipping carriers, breaching the implied warranty outlined in § 672.314, Fla. Stat.

85. On many occasions, National Tree also breached the implied warranty by failing to properly contain, package, and label the products as requested resulting in defective shipments.

86. OJC promptly notified National Tree about all those defective merchandise and defective shipments.

87. National Tree did not honor its warranty, and did not replace, refund, or otherwise credit OJC for those defective merchandise and defective shipments.

88. As a result of National Tree's breach of implied warranty, OJC suffered hundreds of thousands of dollars in damages.

## Count IV - Tortious Interference with Business Relationship

89. OJC incorporates by reference paragraphs 1 through 88.

90. Between 2018 and late 2021, OJC established business relationships with approximately 70,000 online retail customers.

91. The nature of the relationship with those customers was that they purchased National Tree products from OJC.

92. OJC also had long-standing business relationships with third-party marketplaces, including Amazon and Walmart.

93. The nature of the relationship with those marketplaces was that OJC can place its products for sale on these marketplaces, including National Tree products.

94. National Tree knew of OJC's business relationships with its more than 70,000 customers, because every single order that OJC received for a National Tree product, OJC sent a purchase order to National Tree with all the details of that customer, and exact product that customer purchased.

95. National Tree also knew about OJC's relationship with its marketplaces, as OJC informed National Tree that its products are sold on these marketplaces.

96. National Tree recklessly, intentionally, and unjustly interfered with OJC's business relationship with its customers and with its third-party marketplaces, by National Tree issuing misleading tracking numbers and false promises about shipments, and causing improper cancellations, late shipments, defective shipments, and mis-shipments.

97. As a result of National Tree's actions, many of OJC's existing customers terminated their business relationship with OJC, in the form of canceling their orders, and seeking a full refund for their transactions.

98. As a result of National Tree's actions, many of OJC's existing customers wrote negative reviews about OJC, and refused to continue purchasing anymore products from OJC.

99. The third-party marketplaces have a system to monitor and track the performance of third-party sellers, such as OJC.

100. As part of the third-party marketplace performance monitoring system, they score each seller on how many orders are shipped late, canceled, damaged, defective, and mis-shipped.

101. Additionally, the third-party marketplaces flag seller accounts as potentially fraudulent accounts, when that account provides its customers with fake tracking numbers.

102. The third-party marketplaces also monitor negative reviews for a seller that are left by customers after completing a transaction.

103. As a result of National Tree's actions, the third-party marketplaces negatively flagged OJC, as having a high rate of late shipments, cancellations, damages, defectives, negative reviews, and mis-shipments.

104. As a result of National Tree's actions, the third-party marketplaces negatively flagged OJC, as a potentially fraudulent account for providing fake tracking numbers that OJC received from National Tree.

105. As a result of National Tree's actions, OJC's account was limited and restricted by the third marketplaces, and OJC's sales on those third-party marketplaces was diminished.

106. OJC repeatedly advised National Tree that its reckless actions would affect OJC's relationships with its customers and with its third-party marketplaces. Nonetheless, National Tree persisted with its wrongful conduct.

107. As a direct result of National Tree's wrongful conduct, which led to breaches of and harm to OJC's relationships, OJC suffered hundreds of thousands of dollars in damages.

## Count V - Fraud

108. OJC incorporates by reference paragraphs 1 through 107.

109.    National Tree knowingly and intentionally, or with reckless disregard, made false statements to OJC about its ability to timely ship products during the Christmas holiday season, with the intent to induce OJC to sell National Tree products.

110.    National Tree made its knowingly false statements with the intent to induce OJC to sell National Tree products during the 2020 Christmas season.

111.    For example, on August 5, 2019, Steve Downs, a representative from National Tree, sent an email message to OJC promising that for the upcoming season there would be no out-of-stock problems for National Tree's Christmas tree products.

112.    National Tree's representation was material to OJC's decision to market and sell National Tree's Christmas tree products during the 2020 Christmas holiday season.

113.    OJC reasonably relied on these statements to market, promote and sell to its customers National Tree products.

114.    National Tree also knowingly and intentionally made false statements to OJC about the status of its orders, by providing tracking numbers and representing to OJC that orders were shipped, when in fact those tracking numbers showed no movement, and those orders were not shipped.

115.    National Tree made its knowingly false statements with the intent to induce OJC to continue selling National Tree products during the 2020 Christmas season.

116.    For example, on November 27, 2020, Mark Gardner, a representative from OJC, sent a message to Steve Downs of National Tree asking about the status of 432 orders that OJC received tracking numbers, but were showing no movement for more than seven days.

117.    In response, Steve Downs of National Tree stated that all of these 432 tracking numbers were picked up by the shipping carrier, and they were picked up by the shipping carrier.

118. National Tree's representation was material to OJC continuing to sell National Tree's Christmas tree products.

119. However, unknown to OJC at the time, National Tree's statement and assurances were knowingly false.

120. At the time the tracking numbers were provided by National Tree, OJC reasonably relied on National Tree's statements of fact to advise its customers and other third-party marketplaces, that these 432 orders were shipped, and that they would be delivered prior to Christmas.

121. At a later date, however, OJC discovered that no containers were picked up from National Tree with the 432 packages intended for OJC's customers.

122. As a result of National Tree's fraudulent conduct, OJC suffered hundreds of thousands of dollars in damages, in the form of customer cancellations, refunds, loss of existing sales, and negative treatment by its third-party-marketplaces (*See, e.g.,* paragraphs 98-104 *supra.*).

### Count VI - Florida Deceptive and Unfair Trade Practices Act ("FDUPTA")

123. OJC incorporates by reference paragraphs 1 through 44.

124. This action arises out of a violation of §501.204(1), Florida Statutes, prohibiting unfair and deceptive trade practices.

125. National Tree committed an unfair and deceptive trade practice while conducting commerce, by knowingly and intentionally making false statements to OJC about ts ability to ship products timely during the Christmas holiday season, and by providing tracking numbers and representing to OJC that orders were shipped, when in fact those tracking numbers showed no movement, and those orders were not shipped.

126.     Such a dishonest act is unconscionable, deceptive, unfair, and violates established public policy of fair dealings.

127.     As a result of National Tree's fraudulent conduct, OJC suffered hundreds of thousands of dollars in damages, in the form of customer cancellations, refunds, loss of existing sales, and negative treatment by its third-party-marketplaces (*See supra.*).

128.     OJC suffered hundreds of thousands of dollars in damages as result of National Tree's violations of FDUPTA, in the form of order cancellations, customer refunds, and lost sales.

129.     OJC also suffered damages in the form of lost value of the products at the time of delivery, because National Tree delivered pre-Christmas orders after Christmas, and the price and value of Christmas trees significantly drops after Christmas.

130.     As a result of National Tree's wrongful conduct, OJC seeks its actual damages, cost of this litigation including attorney's fees, as provided in § 501.211(1), Fla. Stat., prejudgment and postjudgment interest, and any other relief this Court finds just and proper.

**OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

WHEREFORE, OJC respectfully demands the following relief:

a.     Judgment against National Tree on all OJC's claims;

b.     Judgment against National Tree for damages in the amount to be determined at trial;

c.     Award of OJC's attorneys' fees and costs, pursuant to § 501.211(1), Fla. Stat.;

d.     OJC's costs incurred in obtaining judgment against National Tree; and

e.  Such other relief as the Court considers just and proper.


Dated:  November 25, 2024            Respectfully Submitted,
                                     Shlomo Y. Hecht, P.A.
                                     3076 N Commerce Parkway
                                     Miramar, FL 33025
                                     Phone: 954-861-0025

                                     By: /s/ Shlomo Y Hecht
                                     Florida State Bar No.: 127144
                                     Email: sam@hechtlawpa.com
                                     *Attorney for Plaintiff OJ Commerce, LLC*

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

**App. 301**




# E-COMMERCE VENDOR AGREEMENT

This E-Commerce Vendor Agreement ("Agreement") is made on _August 15, 2017_ (Effective Date) by and between _National Christmas Products, Inc. DBA National Tree Company_ (hereinafter "Vendor") a _S Corp_ company with its principal place of business at (a _2 Commerce Dr. Cranford, NJ 07016_ and OJCommerce, LLC (hereinafter "Seller and Customer"), a Florida Limited Liability Company with its principal place of business at 1700 NW 64 ST STE 460, Fort Lauderdale, FL 33309.

WHEREAS, the parties desire to enter into this Agreement to set forth the obligations and responsibilities of each in connection with their contractual relationship.

## DEFINITIONS:

**"Buyer's Remorse Return"** is defined as a product received by an End Consumer that is returned in the original manufacturer's packaging, unused and undamaged and within 30 days of shipment with Vendor pre-approved Return Authorization number(s) for any reason other than that of defective returns, and damaged returns (as defined below).

**"Carrier"** is defined as the party transporting / conveying product goods from the Vendor to End Consumer.

**"Damage Return"** is defined as any breakage, bent part, scratch, gouge, dent or nick that renders the product in less than new condition. Damage may be visible or concealed inside the carton. Damage generally occurs in transit by a carrier. Seller recognizes many finishes are intentionally "distressed" as part of the unique character of the item. Vendor and Seller agree "Distressed" finishes are not damaged.

**"Defective Return"** is defined as a visible run in the paint or clear finish, a flaking/peeling finish, the compromised structural integrity of a product, improper manufacture of a product preventing assembly or other issues resulting from manufacturing or packaging issues.

**"Defective Replacement"** is defined as any shipment of a subsequent complete unit, not a part, to fulfill an End Consumer's shipment which was deemed defective and requiring a new complete unit.

**"Defective Part"** is defined as a shipment that is mostly intact upon arrival to an End Consumer but piece(s) required to assemble the item are defective or missing.

**"Drop Shipment"** is defined as the process of Seller sending individual purchase orders to the Vendor, and the Vendor shipping the purchase order merchandise from a Vendor's facility direct to an End Consumer, without passing through the warehouse of the Seller & Customer.

**"End Consumer"** is defined as any third party (including individuals and entities) with a relationship to OJCommerce and/or its business, products or services, including without limitation, actual and prospective business customers.

**"Lost and Recovered Shipment"** is defined as a shipment which is lost, subsequently found and may be delivered to the End Consumer if a replacement or refund has not been provided to an End Consumer and the End Consumer would like to continue with the delivery.

**"Mis-shipped Product"** is defined as a shipment in which the Vendor ships any item other than was ordered on the purchase order.

OJCommerce LLC | 1700 NW 64 St, Suite 460 – Fort Lauderdale, FL 33309 | 954-519-2955

**App. 302**

Ex. A

REV122015




**"Refused Return"** is defined as a shipment that is not accepted for delivery by an End Consumer.

**"Return"** is defined as any merchandise shipments ordered by the Customer from the Vendor and drop shipped to an End Consumer and subsequently the merchandise delivers back to the Vendor's facility either by the same carrier or another carrier selected by the End Consumer.

**"Seller" & "Customer"** are defined as OJCommerce, LLC as the recipient and or reseller of product goods or services from "Vendor" defined as a party in the Agreement and obligated under this Attachment.

**"Vendor"** is defined as the supplier, vendor, or other business partner defined as a party in the Agreement and obligated under this Attachment.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1 **CUSTOMER RESPONSIBILITES:** With utmost reverence, Customer is to promote and display Vendor approved products for sale on the Customer's website. To best promote Vendor's products, Customer obligations shall include the following:

    1.1 **Display of Products:** Customer shall display clear photos of Vendor approved products for consumer viewing and will display alternative views and close-ups, if available. Additionally, detailed product information will be made available for consumer viewing, such as style, construction, material finish, color, dimension, of product.

    1.2 **Product Information:** The Customer may choose to use Vendor's actual product names and part numbers to accurately describe the products. Customer also reserves the right to modify the provided product names and/or part numbers in manner consistent with the provided product names and/or part numbers in order to meet technical requirements.

    1.3 **Customer Service:** Customer is required to provide live, professional customer service representatives ("CSR") available to consumers. Customer's customer service shall be the point of contact for all End Consumer issues/inquires.
        1.3.1 Customer service shall provide prompt, efficient and courteous service for all product orders and/or inquiries.
        1.3.2 CSR must be trained and knowledgeable of Vendor's products.

    1.4 **Processing/Chargeback Fees:** Customer shall be accountable for all processing fees associated with consumer's payments including, but not limited to, credit card processing fees or fraudulent transaction fees.

    1.5 **Home Delivery:** Customer shall be responsible for establishing and maintaining the appropriate method of delivery service encouraged by Vendor to include White Glove, Threshold, Curbside and Standard Delivery. This will be approved on a product specific basis. Parcel items and threshold items will not require white glove service.
        1.5.1 Customer shall be responsible for filing all freight claims, including transit damage, with their carrier. There will be recourse against Vendor for any carrier related claims due to improper packaging pursuant to the terms in section 2.4.
        1.5.2 Customer shall provide the Vendor with all routing and contact information for their carrier(s). The Customer's carrier is expected to pick up orders at the Vendor pick up point within one week of the orders being approved and released.



Customer will arrange and pay for their own freight. The Vendor will not pre-pay freight charges.

**2** __VENDOR RESPONSIBLITIES:__ Upon the completion and return of the E-Commerce Vendor Agreement, the Vendor shall provide the necessary product information to the Customer as to best promote Vendor's products. The Vendor shall provide the following:

2.1 **Photos:** Clear photos of products shall be provided in accordance with Seller's image standards, which are based on industry standards.

2.2 **Product Information:** Vendor shall provide information for each product including, style, construction, material finish, color, dimension, and any feature and benefits of product that may be included in the Vendor's marketing materials. Any customer service related question regarding products will be answered within two (2) business days of receipt of inquiry. Vendor agrees to clearly define distressed finishes in the product features and/or description.

2.3 **Parts:** Parts shall be provided, as necessary, to consumers that have received damaged due to improper packaging, defective or incomplete items at no charge. Parts will be sent under Vendors account number via Standard Ground, unless otherwise specified by customer. If customer specifies a different type of delivery service, the customer will be responsible for all freight charges. OJCommerce expects most parts to ship within 3 to 5 business days to End Consumer or unless otherwise specified by Vendor and agreed to by OJCommerce, LLC on a case by case basis.

2.4 **Returns**

   2.4.1 **Buyer's Remorse Returns**: Vendor agrees to process all Buyer's Remorse Returns on behalf of the Seller to their facility. End consumer will request return authorization (RA) within 30 days of shipment. The Vendor will be notified of the buyer remorse return request via OJCommerce support ticket and Vendor shall provide the RA and the return address into the OJCommerce support ticket web portal within 1 business day. Seller will subsequently provide the End Consumer the RA and return address. End consumer will have additional 10 days to ship and deliver to the Vendor the Buyer's Remorse Return to the return address provided with RA on the carton. Seller requests return tracking information from the End Consumer and provides the return tracking information to the Vendor via the OJCommerce portal. If the End Consumer fails to ship and return Buyer Remorse return to Vendor within 45 days of shipment, Vendor will refuse delivery and shipment is the property of the End Consumer and the shipment will be returned to End Consumer at the End Consumer's expense. The End Consumer is responsible for the return freight charges by appropriate carrier of equal or better service level of initial shipment to the End Consumer. Buyer Remorse Return is the property of the End Consumer until received, signed and inspected in full by the Vendor. Vendor shall not assess a restocking fee on Buyer's Remorse Returns unless otherwise agreed upon in writing by Vendor and Customer. Any Lost and Recovered Shipment that is no longer desired, could not be delivered as addressed or labeled and End Consumer no longer desires shipment, the shipment will be returned by the carrier to the Vendor and are resolved as buyer remorse returns with the purchase order number. A Refused Return is resolved as a Buyer's Remorse Return except when noted as damaged and Seller is notified by the End Consumer prior to the Return.

   2.4.2 **[Reserved]**

OJCommerce LLC   |   1700 NW 64 St, Suite 460 – Fort Lauderdale, FL 33309   |   954-519-2555

**App. 304**

REV122015



2.4.3 **Damage Returns and Defective Returns**: A Damage Return is the responsibility of the Seller if both of the following conditions apply: (i) the item is shipped on the Seller's Carrier, and (ii) the packaging of the product is certified by FedEx or UPS as sufficient. A Damage Return is the responsibility of the Vendor if the item: (i) ships via the Vendor's Carrier, or (ii) ships via the Seller's Carrier in packaging that is not certified by FedEx or UPS as sufficient. The Seller is not responsible for resolving Carrier claims when products are shipped via the Vendor's Carrier. The Vendor is not responsible for resolving Carrier claims when products are shipped via the Seller's Carrier. A Damage Return due to insufficient packaging by the Vendor is considered a Defective Return. A Defective Return is the responsibility of the Vendor. The decision to donate, issuing a carrier call tag for pickup, return label to return ship, sending parts or a full replacement, Warranty claims, field destroying the defective product is the responsibility of the Vendor. Notification for resolution is from the Vendor via the Seller's web portal support ticket interface.

2.4.4 **Damage/Defective Allowance**: In the event Vendor does not agree to section 2.4.3, section 2.4.3 shall not apply and a Damage Returns and Defective Returns allowance (excluding parts) will be granted to Customer in lieu of deductions, defect returns and/or credits in the amount of 3%.

2.4.5 **Allowances**: If applicable, Customer shall deduct the appropriate percentage from each invoice upon payment. Mis-shipped Product is the responsibility of the Vendor and is not applicable to the allowance. A quarterly review of allowances and remorse/damaged/defective product rates will determine if the allowance(s) should be adjusted to actual rate experienced.

2.5 **Cancels**: Vendor shall approve order cancellations for any orders that are not capable of shipping within 24 hours of the cancel request. Vendor shall accept/approve cancellations in the OJCommerce PO Web Portal. Vendor will respond within 4 business hours (0.5 business days) of the cancellation notice into the OJCommerce PO Web Portal. OJCommerce Purchase Orders that are notified cannot be cancelled in the OJCommerce PO Web Portal and that are shipped with tracking information within the 24-hour period of the cancel request are considered shipped by both the Vendor and the Seller. If the shipped order is refused at delivery by End Consumer and carrier returns the shipment to the Vendor facility the shipment is considered and processed as buyer remorse using OJCommerce PO # as RA pursuant to the terms in section 2.4.

2.6 **Confirmed Cancels and Shipped**: Vendor confirms cancellation of order by OJCommerce Web Portal or via email. Vendor accepts returns for cancelled orders that were shipped in error and not stopped by Vendor, and Vendor pays for the freight charges, intercept fees and any return freight charges for shipping the cancelled order pursuant to the terms in section 2.4.

2.7 **Invoicing and Payments:** Vendor shall generate a consolidated invoice for all services, including any applicable shipping and administrative fees. One complete copy of the invoice with a statement of activity for the prior period will be submitted either: (i) via email weekly or monthly to OJCommerce LLC's corporate office to accounting@ojcommerce.com; or (ii) via prearranged electronic transmission (EDI, FTP, etc). OJCommerce is paperless and no mailed invoice correspondence will be processed when mailed to the corporate office. All invoices must include, at a minimum, the following information: (i) Name and address of Vendor; (ii) Invoice number; (iii) OJCommerce Purchase Order Number; (iv) Description of Services or Products to OJCommerce, LLC; (v) Date; and (vi) Dollar amount due.

App. 305

REV122015




OJCommerce agrees to provide remittance detailing the invoices to be paid for the week or month.  OJCommerce agrees to pay Vendor for Services rendered in the amounts set forth after the receipt of a correct invoice from Vendor. OJCommerce will pay all undisputed invoice amounts within 30 days of invoice date.

2.7.1 **[Reserved]**

2.7.2 Any disputed invoice amounts will be documented in writing and forwarded to Vendor within 30 days of invoice receipt. Within 30 days of Vendor's receipt of documentation of disputed amounts, Vendor will have responded to OJCommerce's claim. Upon resolution of disputed items in favor of Vendor, payment will be remitted within 10 days. If the resolution of disputed items is in favor of OJCommerce and not contested, no further action is required.

2.7.3 OJCommerce will not pay for any services that are invoiced greater than 90 days following the date services are actually performed.

2.7.4 OJCommerce will only be liable for payment of the dollar amount transmitted on the PO if the PO is shipped by Vendor. In the event Vendor believes the dollar amount on the PO is incorrect, Vendor must request and receive approval in writing from OJCommerce to ship and invoice the order at a greater amount before shipping the PO.

2.7.5 Vendor is prohibited from invoicing OJCommerce for any taxes, fees, surcharges or other charges including, but not limited to, taxes, drop ship fees, handling charges, packaging fees and any other order or item based fees in excess of the cost transmitted on the PO.

**3    ADDITIONAL INSURED:** By signing this agreement Vendor is required to name OJCommerce, LLC as an additional insured party Vendor's general liability insurance policy for the sum of at least $1MIL for all products sold to OJCommerce, LLC and its customers. To the fullest extent permitted by law, Vendor shall and hereby indemnifies and holds harmless, OJCommerce, LLC and its affiliates, agents and employees against all claims, damages, losses and expenses, including but not limited to, attorney's fees, arising out of or resulting from the performance of Vendor's work under this agreement, whether caused in whole or in part by a negligent act or omission of Vendor's, or anyone directly or indirectly employed by Vendor, Vendor shall be liable, regardless of whether it is caused in part by a party indemnified here. In the event Vendor fails to provide a valid certificate of insurance to Customer, Vendor shall be liable for the same.

**4    ACCOUNT SUPPORT:** Vendor will provide call center customer support during regular business hours Monday through Friday.  This support center will be used to check order status, and work through exception issues on a case by case incident "Support Ticket".  All issues will be documented and communicated via OJCommerce Support Ticket web portal.  Any customer service related incidents will be resolved within 2 business days from the time the Customer notifies the call center of the issue.

**5    ADDITIONAL VENDOR DISCOUNTS:**  From time to time the Vendor may offer Customer an additional allowance to promote their product(s).  The Vendor requires that the Customer will post and promote their product on the Customer's websites as designated for an agreed upon length of time. In accordance with this, the Vendor reserves the right to verify the said promotion before order processing begins.

**6    NOTICE**: Any notice or communication permitted by this Agreement shall be deemed effective when personally delivered or deposited, postage prepaid by mail to the appropriate party at the address set forth below:

**App. 306**

REV122015




| If to Customer: | If to Vendor: |
| --- | --- |
| OJCommerce, LLC | Name: <u>National Christmas Products, Inc. DBA National Tree Company</u> |
| 1700 NW 64 ST, STE 460 | Address: <u>2 Commerce Dr</u> |
| Fort Lauderdale, FL 33309 | City, ST Zip: <u>Cranford, NJ 07016</u> |

**7**   <u>**TERM & TERMINATION**</u>:   This agreement is effective on the Effective Date for one (1) year. Either party may terminate this agreement at any time with or without cause. Vendor must provide fifteen (15) days' notice to terminate this agreement. This agreement will automatically renew each year unless terminated by either party. Upon termination of this agreement, the parties shall remain liable for fulfilling the obligations contained herein pertaining to the fulfillment, payment and servicing of returns, warranties and other claims of open and previously fulfilled orders.

**8**   <u>**ADDITIONAL TERMS**</u>

8.1 **Confidentiality of Information.** The receiving party agrees to keep confidential and not to disclose to third parties any information provided by the disclosing party pursuant to or learned by the receiving party during the course of the Agreement unless the receiving party has received the prior written consent of the disclosing party to make such disclosure. This provision shall survive expiration and termination of the Agreement. This obligation of confidentiality does not extend to any information that: 1) Was in the possession of the receiving party at the time of disclosure by the disclosing party, directly or indirectly; 2) Is or shall become, through no fault of the receiving party, available to the general public; or 3) Is independently developed and hereafter supplied to the receiving party by a third party without restriction or disclosure. This provision shall survive the termination of the Vendor Agreement for any reason.

8.2 **Assignment.** A party shall not assign or delegate its rights and obligations under this Agreement or any part hereof without the prior written consent of the other party.

8.3 **Conflicts.** Vendor represents that no trustee, officer, employee or any other person affiliated with OJCommerce, LLC and having involvement with this Vendor Agreement (1) is affiliated with the Vendor, and (2) received, was promised, or will receive anything of value in connection with this Vendor Agreement or performance contemplated hereunder.

8.4 **Force Majeure.** In the event that either party is unable to perform its obligations under this Agreement as a result of a force majeure, neither party shall be liable to the other for direct or consequential damages resulting from lack of performance. "Force Majeure" shall mean fire, earthquake, flood, act of God, strikes, work stoppages, or other labor disturbances, riots or civil commotions, acts of terrorism or other hostilities, litigation, war or other act of any foreign nation, power of government, or governmental agency,  injunctions, labor strikes, other than those of Vendor, that prevent Vendor from furnishing the products, materials or equipment, and other like events that are beyond the reasonable anticipation and control of the party affected thereby, despite such party's reasonable efforts to prevent, avoid, delay, or mitigate the effect of such acts, events or occurrences, and which events or the effects thereof are not attributable to a party's failure to perform its obligations under this Agreement.

8.5 **Governing Laws/Venue.** All disputes regarding the construction, interpretation and the parties' obligations under this Vendor Agreement shall be governed by the laws of the State of Florida, notwithstanding any of that state's laws to the contrary. The venue and jurisdiction for the resolution of any such disputes shall be in the State or Federal courts located in the State of Florida, Broward County.

App. 307

REV122015



8.6 **Limitation of Liability.** Notwithstanding anything contained herein, nothing in this Vendor Agreement shall limit the liability of the Vendor.

8.7 **Non-waiver.** Either party's failure to insist upon the performance of any term of this Agreement shall not be construed as a waiver of that party's present or future right to such performance and each Party's obligations in respect thereto shall continue in full force and effect.

8.8 **No Authority.** Neither party shall have authority to take any action, create any obligation, make any commitment, incur any indebtedness, or enter into any agreement that binds the other party. Neither party shall in connection with any services provided to or on behalf of the other party represent to any person or entity that the parties are associated in any capacity other than that of an independent contractor.

8.9 **Performance with Laws/Policies.** Vendor and Seller warrant that they will comply with all federal, state and local laws applicable to their performance hereunder, including but not limited to those relating to nondiscrimination, equal employment opportunity, and affirmative action. Vendor agrees to comply with communicated OJCommerce, LLC policies

8.10 **Severability.** The terms of this Vendor Agreement are severable such that if any term or provision is declared by a court of competent jurisdiction to be illegal, void, or unenforceable, the remainder of the provisions shall continue to be valid and enforceable.

8.11 **[Reserved]**

9 <u>**ENTIRE AGREEMENT**</u>: This Agreement, including Amendments, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior or contemporaneous agreements, understandings, negotiations, representations, applications or proposals or any kind, whether written, oral or otherwise. Neither party has relied upon any statements, representations or other communications that are not contained in this Agreement. Vendor, by executing and delivering this Agreement to Customer, represents and warrants to Customer that this Agreement has not been altered or modified in any manner whatsoever from the version that Customer delivered to Vendor for execution. All changes to this Vendor Agreement must be in writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this E-Commerce Vendor Agreement by their duly authorized representatives as of the day and year first written above.

**Vendor**                                                **Customer**

National Christmas Products, Inc. DBA National Tree Company

Company                                               OJCommerce, LLC
                                                            Company

_Rich Puleo_                                          _[signature]_

Signature                                             Signature

Richard Puleo                                         Jacob Weiss

Print Name                                            Print Name

Vice President                                        President

Title                                                     Title

App. 308

REV122015



Auagust 15, 2017
_____          _____
Date                                              Date

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

OJCommerce LLC   |   1700 NW 64 St, Suite 460 – Fort Lauderdale, FL 33309   |   954-519-2555

**App. 309**

REV122015

| | |
|---|---|
| **From:** | Mark Gardner |
| **Sent:** | Tuesday, November 17, 2020 9:02 AM |
| **To:** | 'Steve Downs' |
| **Cc:** | Lindsay Reeseg; Joshua Cunha; Doreal Wilkinson |
| **Subject:** | RE: OJCommerce - National Tree Company OOS & PO Fulfillment |
| **Attachments:** | National Tree Orders -11172020.xlsx |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Attached report of Current NT orders.
Tab #1 – Orders process but not yet picked up by FedEx –Shipper Location needed!
Tab #2 – 1433 New Orders not pending processing; 413 are past due!

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Tuesday, November 17, 2020 10:18 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Mark,
Unfortunately I cannot commit to a time to call right now. We have major shipping issues going on, as you know, and I just can't break away.

Regarding the 311 already processed, can you send me a list of those? We think this is most likely due to those being picked up, but sitting in a FedEx yard waiting to be further processed. If you can provide a list, we can check with the facilities to make sure they are out their doors.

For the 1433, as I previously mentioned, we are still slightly behind due to the Covid outbreak we had last week. Unfortunately, it has not gotten better. Every day we are getting more staff with positive tests either for them or family members that are causing them to quarantine and not report to work. We are doing our best to get every order processed as fast as we can move right now with the small safe and healthy crew do have working. We were able to do a large catch up yesterday and think we can keep the momentum today. I know this is not an optimal situation, but we have no other leers to pull right now.

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Tuesday, November 17, 2020 9:53 AM
**To:** Steve Downs <SDowns@nationaltree.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>; Doreal Wilkinson

Ex. B

<dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Steve,
I reviewed open orders as of this morning and this is a summary. I also left you a vm this morning. How soon can we get on a brief call?

- **1433** ~ Pending processing
  - 415 ~processed before 11/16/2020 ....so these are just late being processed by NT!!
  - 1018 ~processed since yesterday -11/16/2020 ...so these should all be processed by today or tomorrow!!

- **311** ~ Already processed with FedEx trackers, but not picked up. **We are looking for information on which warehouse (City, State) has the majority of these**, so we can press carrier from our end as well.

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Monday, November 16, 2020 8:49 PM
**To:** Steve Downs <SDowns@nationaltree.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Steve,
This is a bit confusing, can we get on a quick call in the morning?

Why cant we get a list of our orders by ship location pending pickup?
There are almost 2000 orders pending!!

On Nov 16, 2020 6:36 PM, Steve Downs <SDowns@nationaltree.com> wrote:
Mark,
See below for updates on each point.

**Steve Downs**
*Senior Vice President of Revenue*
P: 908-709-4141 x. 226

**App. 311**

F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Monday, November 16, 2020 9:11 AM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>
**Cc:** Joshua Cunha <JCunha@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Steve,

Since our call last week, there are a few pending follow up items we need immediate updates on!!

1.  FedEx pick-up PENDING –National Tree to provide list of processed orders pending FedEX pickup, by Location I am told there is not a way to have this information collected. Each of our locations processes all orders from every customer and stages them for pick up every day. They are not sorted by retailer. They are all staged by carrier so your orders cannot be separated out. We discussed being able to separate your orders out beforehand while they are being picked, but I am being told that this would really slow things down and constrict the efficiency of getting all orders done. As I mentioned, all orders get picked each day with the expectation of a carrier pickup as soon as possible, which right now is a bad situation.

2.  Verification inventory availability not impacted by MAP software I had a further discussion with IT and our officers and it has been determined that the MAP software cannot exclude any retailer. It is tied into our inventory and adjusting based on the MAP scraping that is going on. I'm sorry I am not able to move the needle here, but I did try. To combat this, the suggestion is that you set your system to match the retails of Amazon. That will prevent the software from acting.

3.  Out of Stock (OOS) items status We are experiencing out of stock due to high demand and much of that demand was pulled forward into earlier months of the year. This was unexpected when we planned our inventory arrival flow so we thought we would have more availability later in the season. We also have major shipping issues in getting containers and vessels to ship the goods from overseas. We still have hundreds of containers that we expected to arrive last month, that we will not get until around the week of Christmas. There is nothing we can do here and do realize that it is costing valuable sales.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, November 11, 2020 1:23 PM
**To:** Lindsay Reeseg <LReeseg@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Cc:** Mark Gardner <mgardner@ojcommerce.com>; Joshua Cunha <JCunha@nationaltree.com>
**Subject:** Re: OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Doreal,
As we are all aware, the carriers are a major contributor to this problem. We are having trouble getting equipment from them to service our facilities. We are working closely with them as much as we can to make sure we can get the level of service that we expect from them.

I do also have to tell you that late last week we had a Covid crisis within our warehouses. We have multiple confirmed cases of Covis in our buildings and we had to shut a couple of them down completely. As our warehouse employees tests are coming back negative we are working on getting them reopened and re-staffed. We are ramping up with labor as quickly as we can while still staying as safe as possible. This caused us some delays in shipping and we are doing our best to catch up. We should be caught up in all buildings by tomorrow or Friday at the latest.

Thanks

Steve Downs
Senior V.P. of Revenue

---

**From:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Sent:** Wednesday, November 11, 2020 12:44:56 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>
**Cc:** Mark Gardner <mgardner@ojcommerce.com>; Joshua Cunha <JCunha@nationaltree.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Steve,

There is another metric point to address. **LATE SHIPMENTS.** Our most recent reporting shows the 14/day and 7/day period(s) exceeding the threshold limits.

Currently, lead-times are set at 3-4 business days – but it looks like shipments are taking more than 5 bus days. I am hesitant to increase the processing period, because it will influence conversion rates. Are there constraints in the warehouse we should be aware of?

<u>Please share your insight into this matter</u>.

Thanks,



**Doreal Wilkinson**
*Sr.Buyer*
3076 N Commerce Pkwy
Miramar, FL 33025
Phone: 1-954-519-2555 x 257
www.ojcommerce.com
dwilkinson@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Tuesday, November 10, 2020 4:16 PM
**To:** 'Steve Downs' <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Steve,

I hate to state the obvious here, but 40+ cancellations as we're just getting started is very concerning. Not only will these hit our platform relationships and account standing, but is not a good start!

This is all on us, so to that point, National Tree is not feeling any pressure from 40+ angry customers, explaining to our channel partners the cancel reasons, nor are you currently supporting any financial impact to OJ.

We need to ensure your inventory feeds are immediately corrected. Please also advise any possible substitutions we can offer these customers.

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Tuesday, November 10, 2020 4:02 PM
**To:** Doreal Wilkinson <dwilkinson@ojcommerce.com>; Lindsay Reeseg <LReeseg@nationaltree.com>
**Cc:** Joshua Cunha <JCunha@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Doreal,
Unfortunately, this is due to late shipments from overseas. These items are ordered, we are just waiting to get them. All overseas shipping include domestic ports are clogged up. We will look into the inventory to see why you are getting in stock notifications on your side.

Also, we do not have anything else like this in our line to suggest an alternate.

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Sent:** Tuesday, November 10, 2020 3:46 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>
**Cc:** Joshua Cunha <JCunha@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Subject:** OJCommerce - National Tree Company OOS & PO Fulfillment

Hi Steve/Lindsey,

As we monitor PO fulfillment for National Tree Co, we're concerned with backorder reporting.

There are **42 orders** in jeopardy of cancellation when inventory showed as IN STOCK when the orders were placed (**ITEM: DF-140009U** is most impacted). You previously mentioned, NTC increased stock levels by 40% due to LY demand and operational forecasting. What steps can OJ take to avoid continuous backorders from occurring as we head further into the holiday shopping season.

5

NOTE: Do you have any alternate option to suggest for DF-140009U

Please send or let me know if you have any questions.

Thanks and stay safe.



**Doreal Wilkinson**
*Sr.Buyer*
3076 N Commerce Pkwy
Miramar, FL 33025
Phone: 1-954-519-2555 x 257
www.ojcommerce.com
dwilkinson@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

| | |
|---|---|
| **From:** | Mark Gardner |
| **Sent:** | Friday, December 11, 2020 6:40 AM |
| **To:** | 'Steve Downs'; 'Lindsay Reeseg'; 'Joshua Cunha' |
| **Cc:** | Doreal Wilkinson |
| **Subject:** | RE: OJCommerce: National Tree Co Order Status Update |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Steve,

I've tried calling, but have not been able to get through to you or Lindsay. We need to get on a call asap!!!
Some of these 2863 Non-Moving trackers go back 4+ weeks!!

I asked before that we discuss and include your FedEx rep, since you are unable to provide us with the actual Order pickup locations. At this point, National Tree will need to ship replacements for these very old orders and follow up with your FedEx rep for reimbursement. Orders without movement 2 ...3 ....4 weeks after being picked up is unprecedented and your are the only company relaying this.


Sincerely,




**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

---

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.


**From:** Mark Gardner
**Sent:** Thursday, December 10, 2020 10:35 AM
**To:** 'Steve Downs' <SDowns@nationaltree.com>; 'Lindsay Reeseg' <LReeseg@nationaltree.com>; 'Joshua Cunha' <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update


Hi Lindsay/Steve,

Here is the current Order updates/dashboard, as of 12/10/2020.

Ex. C

1. **241 PO's** –Tab #1 - Pending order confirmations; **153 already Past Due w/ NO Tracking (>7 days old)!!**
2. **2863 PO's** –Tab #2 - "shipped" but Non-moving". 1775 orders are >7 days since shipped, but show no movement. *Higher Risk of being Cancelled!!*
3. **32 PO's** –Tab #3 - Cancellation pending in your Portal.

**From:** Mark Gardner
**Sent:** Monday, December 7, 2020 12:40 PM
**To:** 'Steve Downs' <SDowns@nationaltree.com>; 'Lindsay Reeseg' <LReeseg@nationaltree.com>; 'Joshua Cunha' <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Hi Lindsay/Steve,

Here is the current Order updates/dashboard, as of 12/07/2020.

1. **1808 PO's** –Tab #1 - Pending order confirmations; **336 already Past Due w/ NO Tracking (>7 days old)!!**
2. **2449 PO's** –Tab #2 - "shipped" but Non-moving". 99 orders are >14 days since shipped, but show no movement. *Higher Risk of being Cancelled!!*
3. **141 PO's** –Tab #3 - Remorse Cancellation pending in your Portal.

**From:** Mark Gardner
**Sent:** Thursday, December 3, 2020 2:33 PM
**To:** 'Steve Downs' <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Hi Lindsay/Steve,

Here is the current Order updates/dashboard, as of 12/03/2020.

1. **1311 PO's** –Tab #1 - Pending order confirmations; **448 already Past Due w/ NO Tracking!!**
2. **2463 PO's** –Tab #2 - "shipped" but Non-moving". 70 orders are >14 days since shipped, but show no movement. *Higher Risk of being Cancelled!!*
3. **37 PO's** –Tab #3 - Remorse Cancellation pending in your Portal.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, December 2, 2020 7:39 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Mark,
Sorry I am just getting to this, time got away from me today.
As I stated the carrier has picked up the product. Sometimes they do some random scanning when they pick up, but most of the time they pick up the full trailer and bring it back to their hub for the next steps. I am not sure how you understand the proof as you outline below, but this is how we have been doing the process for many years. Sure, there are times when packages may get lost by the carriers and those and handled on an individual basis. Once they get the trailer back to the hub and scan it, is when the origin scan would appear and them the scans as it moves through their network.

I think we have mentioned before that we are seeing major slowdowns with carriers this year and have seen instances of weeks without scans. Again, it is possible a package has gotten lost, but those are not common. Also I think we have mentioned that our facilities hand off everything to the carrier using a FIFO method, but again have no control of the sequence of how the carrier performs their next steps. Once packages are in the carrier's possession, I'm not sure how you see us as responsible. We do our part as a vendor to a retailer. That being said, we are willing to look at the possibility of reshipping a long aged order if we have the inventory.

We are in contact with our regional reps every day to make sure everything is getting done as efficiently and accurately as they are capable. All I can tell you is that everything has been handed off. Why would we want to hold onto any packages? Not only do they take us space in the buildings, but it hurts the relationship with our retail partners. That does not make sense for us to do.

I am not trying to spin a story here or create confusion or disappointment to try to cover something up. This is how the process works and how we have done it for over 10 years.

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Wednesday, December 2, 2020 2:36 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Steve,

I think we should get on a quick call. We seem to be missing each other. If any carrier takes your product, they are responsible to provide some proof of receipt (usually a scanned movement). Where this scan doesn't happen at time of

handoff, they are to provide you some reference as to when scan will be completed. Otherwise you are simply giving away your goods.

With the information you've provided on these 400+ orders, there simply isn't a way we can communicate status to customer. It's highly improbable a carrier has package for 4 weeks and not provide movement, especially where more recent shipment are showing movement and/or delivery. Something isn't adding up and unless there is proof of shipment transit (in a relatively timely manner from "initial info sent to carrier"), these will ultimately be National Tree's responsibility.

National Tree has not provided any proof that shipment were handed off, no proof of Carrier pick-up location(s) (City, State, Zip), so there's no way to pursue. You really need to involve your regional rep to drive this.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, December 2, 2020 12:47 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Mark,
Yes, all of the building are clean. We don't have visibility into the specific carrier pickup times for just your orders. They are commingled with other packages and the carrier take as much as fills the trailers that day.

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Wednesday, December 2, 2020 12:09 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Steve,

Are you saying FedEx has physically picked up these trailers, moved them to their facilities/terminals, but have not yet scanned to show this movement?
Help me provide the carrier with specific pick up times and/or pickup locations (City, State, Zip) for these orders.

We all want to make the sale happen, but no one wants a tree after Christmas. And we know customer will not pay for these if not delivered.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, December 2, 2020 12:03 PM
**To:** Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>

**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** Re: OJCommerce: National Tree Co Order Status Update

They are not.

Thanks
Steve Downs
Senior V.P. of Revenue

---

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Wednesday, December 2, 2020 12:00:41 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

The physical trailers are still at National Tree facilities, correct?

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, December 2, 2020 12:00 PM
**To:** Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** Re: OJCommerce: National Tree Co Order Status Update

Mark,

These are not on our docks. They are with the carrier waiting for them to scan/move them.

Thanks

Steve Downs

Senior V.P. of Revenue

---

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Wednesday, December 2, 2020 11:56:19 AM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

NOT AN OFFICIAL COPY CCC – ATTORNEY OF RECORD

Steve/Lindsay,

What do you mean "The 422 not moving PO's are due to carrier capacity, they have all been picked up."?

Majority of these are still showing no movement. Are these still on your docks or not?

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Tuesday, December 1, 2020 8:50 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Hi Mark,

These PO's had to be canceled due to out of stock.

9950218510
9950224270
9950225310
9950226130
9950226170
9950226360
9950227070
9950229670
9950230040
9950230690
9950232380
9950232720
9950232750
9950232760
9950232910
9950233000
9950233380
9950234290
9950234390
9950234410

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

9950234580
9950238040
9950238530
9950238600
9950240270
9950240340
9950241610
9950241990
9950243140
9950243930
9950245240
9950245330
9950245550
9950245790
9950245870
9950248480
9950248570
9950249710
9950249730
9950249790
9950249830
9950250730
9950251120
9950251290
9950251480
9950252780
9950253360
9950253930
9950254140
9950254480
9950254660
9950255240
9950285850
9950302290
9950309600
9950311990
9950317340
9950317390
9950328060
9950335930
9950349900
9950352180
9950352280
9950352290
9950352310
9950352970
9950353020

9950353060
9950353360
9950353380
9950353410
9950353500
9950353560
9950353610
9950353620
9950353730
9950353890
9950353910
9950354170
9950355700
9950356040
9950356060
9950356880
9950357720
9950357730
9950357860
9950359000
9950359200
9950359210
9950359350
9950359400
9950360530
9950360560
9950360670
9950360730
9950361060
9950361110
9950361330
9950367200
9950370310
9950375760
9950381860
9950383930
9950385570
9950386130
9950393630
9950532700
9950539550
9950584870
9950610170

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

We will research these PO's:

9949965630
9950006040
9950126820
9950137710
9950150510
9950152390
9950178330
9950184190
9950233540
9950235900
9950246800
9950249260
9950258010
9950284080
9950289700
9950295050
9950295470
9950295510
9950297140
9950301090
9950318210
9950318430
9950320250
9950321130
9950322620
9950328010
9950335260
9950335750
9950337910
9950338950
9950341880
9950349600
9950349780
9950349860
9950349920
9950349930
9950350180
9950350220
9950350520
9950351850
9950362570
9950364100
9950365380
9950365590
9950369920

9950373280
9950386370
9950386460
9950410940
9950418540
9950422300

The others on your list are from Thanksgiving day though today. We are working on getting those resolved.

The 422 not moving PO's are due to carrier capacity, they have all been picked up.

Steve Downs

Senior Vice President of Revenue

P: 908-709-4141 x. 226

F: 908-709-4145

Steve@NationalTree.com

www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Tuesday, December 1, 2020 6:02 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Hi Lindsay/Steve,

Here is the current Order updates/dashboard, as of 12/01/2020.

1. **4098 PO's** –Pending order confirmations; **2070 already Past Due w/ NO Tracking!!**
2. **422 PO's** –"shipped" but Non-moving". 390 of the 422 orders are >7 days since shipped, but not picked up. Higher Risk of being Cancelled!!
3. **74 PO's** –Cancellation confirmation pending in your Portal Lindsay will work on these.

NOT AN OFFICIAL COPY - CCIS - ATTORNEY OF RECORD

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*

3076 N. Commerce Parkway

Miramar, FL 33025

954-519-2555, ext 259

mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Friday, November 27, 2020 4:59 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

The 432 are most likely sitting with the carrier somewhere either in a trailer or facility. We have been seeing upwards of 2 weeks for them to initially scan the packages in some cases.

I would have to ask each facility how many trailers they are getting, but they are telling us it is enough.

**Steve Downs**

OJCOMMERCE SPECIAL COPY — CUNHA — ATTORNEY OF RECORD

Senior Vice President of Revenue

P: 908-709-4141 x. 226

F: 908-709-4145

Steve@NationalTree.com

www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Friday, November 27, 2020 4:54 PM
**To:** Steve Downs <SDowns@nationaltree.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

I hear you Steve! We just want to ensure communication lines are open and you have dashboard visibility to orders and exposure. Today was a Capstone for the past few days, as was expected for Black Friday activities.

It's great to hear that things are moving faster now. If all your facilities are now clean, then what about the 432 orders more than 7 days old?

How many trailers are you now getting per day from FedEx?

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Friday, November 27, 2020 4:48 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Mark,

1. Of the 2018 pending, almost 1800 are from the last 3 days. We are working on those while having yesterday's closure from the holiday. We will research the rest.
2. There is nothing we can do with non-moving orders at this point. We are seeing things moving faster now. All of our facilities are clean with orders out their doors. They have all been picked up and are waiting on FedEx to do their next steps.

**Steve Downs**

Senior Vice President of Revenue

P: 908-709-4141 x. 226

F: 908-709-4145

Steve@NationalTree.com

www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Friday, November 27, 2020 4:26 PM
**To:** Lindsay Reeseg <LReeseg@nationaltree.com>; Steve Downs <SDowns@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update

Hi Lindsay/Steve,

I hope you had a Happy Thanksgiving.

Here is the current Order updates/dashboard, as of 11/27/2020!!

1. **2018 PO's** –Pending order confirmations
2. **801 PO's** –"shipped" but Non-moving". There are n ow 432 of 801 orders are >7 days since shipped, but not picked up. Higher Risk of being Cancelled!!
3. **43 PO's** –Cancellation confirmed in your Portal

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*

3076 N. Commerce Parkway

Miramar, FL 33025

954-519-2555, ext 259

mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Mark Gardner
**Sent:** Wednesday, November 25, 2020 2:23 PM
**To:** 'Lindsay Reeseg' <LReeseg@nationaltree.com>; Steve Downs <SDowns@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20

Hi Lindsay,

We understand how trying this must all be and hope that you and team remain safe!

We just need information and communication. Specifically:

1.  Where orders were already processed, with ship labels created, over 1+-week ago, the next adverse impact is customer & marketplace cancellations. Doreal sent you a message about these earlier today. If shipped in error (after cancelled) OJ will not be able to collect funds and product recall and expense will fall on National Tree. Obviously, we would rather avoid this and make the sale, but this is a growing concern.

2. Trailer delays withstanding, if you're receiving trailer daily, this backlog should have been cleared by now and priority for future PO processing by FIFO methodology.

3. Are you still processing inventory daily? Hourly?

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*

3076 N. Commerce Parkway

Miramar, FL 33025

954-519-2555, ext 259

mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Lindsay Reeseg <LReeseg@nationaltree.com>
**Sent:** Wednesday, November 25, 2020 2:11 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Steve Downs <SDowns@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** Re: OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20

Hi Mark,

Our warehouses were infected with COVID-19 for the past few weeks.

We are working tirelessly to get all orders printed and shipped as soon as possible, following all state mandated staff capacity guidelines.

Unfortunately, we have been experiencing some pushback from both UPS and FedEx not being able to take all of our packed orders for the day. In some cases, our facilities are waiting up to a week not only for pickups on the packages, but also for them to be processed by the carrier. Our teams across the board are all in contact with the carriers daily to try to get their support.

We appreciate your patience and understanding during this time.

I will be sure to cross reference your lists personally each day to stay on top of the progress.

Best,

Lindsay Reeseg

Account Manager

National Tree Company

P: 908-709-4141

E: LReeseg@nationaltree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Date:** Wednesday, November 25, 2020 at 2:08 PM
**To:** Lindsay Reeseg <LReeseg@nationaltree.com>, Steve Downs <SDowns@nationaltree.com>, Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20

Lindsay,

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

We did not get an update back from you on these points? Below is the current dashboard of Pending and Late orders.

1. **1171 PO's** –Pending order confirmations
2. **468 PO's** –"shipped" but Non-moving". We need to know why you have **331 orders >7 days shipped but not picked up**. If you are getting 1/trailer/day, they should have moved by now!!

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*

3076 N. Commerce Parkway

Miramar, FL 33025

954-519-2555, ext 259

mgardner@ojcommerce.com

---

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Mark Gardner
**Sent:** Monday, November 23, 2020 1:12 PM
**To:** 'Lindsay Reeseg' <LReeseg@nationaltree.com>; Steve Downs <SDowns@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20

NOT AN OFFICIAL COPY - CCIS - ATTORNEY OF RECORD

Attached file lists:

1. **2524 PO's** –Pending order confirmations
2. **567 PO's** –"shipped" but Non-moving". We need to know why you have 379 orders >7 days shipped but not picked up. If you are getting 1/trailer/day, they should have moved by now!!

**From:** Lindsay Reeseg <LReeseg@nationaltree.com>
**Sent:** Monday, November 23, 2020 12:52 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Steve Downs <SDowns@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** Re: OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20

Hi Mark,

We understand the concern. We are working tirelessly to make sure all orders go out as soon as possible.

I am running reports on OJ Commerce right now.

Can you obtain a list of PO's waiting on an update for me?

Thanks,

Lindsay Reeseg

Account Manager

National Tree Company

P: 908-709-4141

E: LReeseg@nationaltree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Date:** Monday, November 23, 2020 at 12:49 PM
**To:** Steve Downs <SDowns@nationaltree.com>, Lindsay Reeseg <LReeseg@nationaltree.com>, Joshua Cunha <JCunha@nationaltree.com>

NOT AN OFFICIAL COPY - CCIS ATTORNEY OF RECORD

18

**App. 334**

**Cc:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20

Steve/Lindsay,

At this point we are beyond concerned. Not just by the lack of response/updates from National Tree, but the alarming amount of orders that are processed (with Shipping Trackers), but non-moving.

I am not inclined to believe that National Tree is deliberating withholding information necessary for OJCommerce's marketplace & customer management, so I MUST insist we have a call with you today!!

Here are the high level points of concern with pending shipments and incoming new orders:

1. 568 orders processed/shipped w/ FedEx tracking, including 379 orders greater that 1-week (since 11/16/2020).
2. 2300+ new orders processed this past weekend that we need to confirm are being processed.

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*

3076 N. Commerce Parkway

Miramar, FL 33025

954-519-2555, ext 259

mgardner@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Sent:** Monday, November 23, 2020 9:51 AM
**To:** 'Lindsay Reeseg' <LReeseg@nationaltree.com>; 'Steve Downs' <SDowns@nationaltree.com>
**Cc:** 'Joshua Cunha' <JCunha@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Subject:** OJCommerce: National Tree Co Order Status Update Wk 11/22 - 11/28/20
**Importance:** High

Good morning Lindsay/ Steve,

Sales over the weekend were phenomenal; therefore, I am reaching out to check on the status of order fulfillment.

Below is a snapshot of **TOP SELLERS** and pending orders:

| Vendor | MPN/SKU | Qty of Items | Pending Orders |
|---|---|---|---|
| National Tree Company | PENS3-357-30-BS | 256 | 211 |
| National Tree Company | FRB-300-18U-B | 180 | 75 |
| National Tree Company | KW7-500-75 | 156 | 154 |
| National Tree Company | FRB-20HLW-B1 | 152 | 79 |
| National Tree Company | DF-070005U | 115 | 90 |
| National Tree Company | ED3-307-30 | 107 | 75 |
| National Tree Company | PECO1-300-18U-B | 98 | 59 |
| National Tree Company | DUH-75 | 93 | 93 |
| National Tree Company | CAP3-306-65 | 87 | 87 |
| National Tree Company | DF-160002L | 77 | 76 |
| National Tree Company | PECC3-300-24WB1 | 60 | 30 |
| National Tree Company | NRV7-500-65 | 56 | 56 |
| National Tree Company | NRV7-500-60 | 51 | 51 |
| National Tree Company | PEDD4-392D-65 | 50 | 50 |
| National Tree Company | CW7-309L-30W-B1 | 50 | 44 |
| National Tree Company | FRB-9GLO-1 | 48 | 22 |
| National Tree Company | RAC-ASST-3 | 45 | 44 |

20

| | | | |
|---|---|---|---|
| National Tree Company | MC7-308-40 | 39 | 27 |
| National Tree Company | KW7-300-100 | 37 | 37 |
| National Tree Company | KW7-300-70 | 37 | 36 |

Although we're aware of the carrier challenges, can you please let me know how operations stand in the warehouse. Have you been able to stabilize staffing due to the COVID outbreak? Will orders get released in transit based in the 3-4 bus days lead time? Are you experiencing shortages on stock levels? When can we get an update on the EDI inventory feed providing status on an hourly basis?

Your prompt and immediate response to this matter is greatly appreciated.

Feel free to contact me directly with any questions.

Thanks and stay safe.



**Doreal Wilkinson**
*Sr.Buyer*
3076 N Commerce Pkwy

Miramar, FL 33025
Phone: 1-954-519-2555 x 257
www.ojcommerce.com

dwilkinson@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Lindsay Reeseg <LReeseg@nationaltree.com>
**Sent:** Wednesday, November 18, 2020 7:32 PM

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

**To:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Company Inventory Reporting


Hi Doreal,


I submitted this to my EDI team. I'll let you know what we can do!


Thanks,

Lindsay Reeseg

Account Manager

National Tree Company

P: 908-709-4141

E: LReeseg@nationaltree.com


**From:** Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Sent:** Wednesday, November 18, 2020 5:29 PM
**To:** Lindsay Reeseg <LReeseg@nationaltree.com>; Joshua Cunha <JCunha@nationaltree.com>
**Cc:** Steve Downs <SDowns@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: OJCommerce: National Tree Company Inventory Reporting


Hi Lindsay,


Still waiting to hear back about the inventory reporting frequency. As we monitor order fulfillment, we are noticing more and more backorders and stock was reported as Available when the orders were placed. Please review the attached file.


Can we get the EDI feed to update on an hourly basis?


Your prompt attention to this request is greatly appreciated.

**App. 338**

Thanks!



**Doreal Wilkinson**
*Sr.Buyer*
3076 N Commerce Pkwy

Miramar, FL 33025
Phone: 1-954-519-2555 x 257
www.ojcommerce.com

dwilkinson@ojcommerce.com


CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.


**From:** Doreal Wilkinson
**Sent:** Monday, November 16, 2020 11:33 AM
**To:** 'Lindsay Reeseg' <LReeseg@nationaltree.com>; 'Joshua Cunha' <JCunha@nationaltree.com>
**Cc:** 'Steve Downs' <SDowns@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Subject:** OJCommerce: National Tree Company Inventory Reporting
**Importance:** High


Hi Lindsay/Joshua,


This is an **URGENT** matter and requires **immediate** attention.


Can you confirm the frequency in which EDI inventory is being reported? During our conversation on Friday (11/13/20) with Steve, it was determined **hourly** updates could be sent through the feed. Currently, there is a high level of pending order for DF-07005U and the item is showing as SOLD OUT.


Please advise.

Thanks and stay safe.

**Doreal Wilkinson**
*Sr.Buyer*
3076 N Commerce Pkwy



Miramar, FL 33025
Phone: 1-954-519-2555 x 257
www.ojcommerce.com

dwilkinson@ojcommerce.com

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

---

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

---

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, d*

25

**App. 341**

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE24017004

OJ COMMERCE LLC,

     Plaintiff/Counter-Defendant,

vs.

NATIONAL CHRISTMAS PRODUCTS,
LLC d/b/a NATIONAL TREE COMPANY,

     Defendant/Counter-Plaintiff/Third-Party Plaintiff,

vs.

JACOB WEISS,

     Third-Party Defendant.

_____/

**NATIONAL CHRISTMAS PRODUCTS, LLC D/B/A NATIONAL TREE COMPANY'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

National Christmas Products, LLC d/b/a National Tree Company ("Defendant," "National Tree," or "NTC"), by and through undersigned counsel, hereby submits: (1) its Answer and Affirmative Defenses to Plaintiff OJ Commerce, LLC's ("Plaintiff" or "OJC") Complaint, as filed on November 25, 2024; (2) its Counterclaims against OJC; and (3) its Third-Party Complaint against Jacob Weiss ("Mr. Weiss"), as follows:

**ANSWER**

**PARTIES**

1.  Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 1.

2.  Defendant admits the allegations in Paragraph 2 but denies that it is a limited liability

**App. 342**

company organized under the laws of the State of New Jersey.

## JURISDICTION

3.  Paragraph 3 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 3.

4.  Paragraph 4 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 4.

5.  Paragraph 5 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 5.

## FACTS COMMON TO ALL COUNTS

6.  Defendant admits that National Christmas Products, Inc. entered into an agreement with OJC, dated August 15, 2017 (the "Vendor Agreement") but otherwise denies the allegations in Paragraph 6. To the extent the allegations in Paragraph 6 refer to the Vendor Agreement, Defendant refers to that document for its complete and accurate terms.

7.  Defendant denies the allegations in Paragraph 7.

8.  Defendant denies the allegations in Paragraph 8. To the extent the allegations in Paragraph 8 refer to the Vendor Agreement, Defendant refers to that document for its complete and accurate terms.

9.  Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms.

10. Defendant admits that National Tree manufactured, stocked, and shipped Christmas tree products ordered by customers. To the extent the allegations in Paragraph 10 refer to the Vendor Agreement, Defendant refers to that document for its complete and accurate terms.

11. Defendant denies knowledge or information sufficient to form a belief as to the allegations

in Paragraph 11.

12. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 12 but admits that tracking numbers are assigned by shipping carriers, such as FedEx.

13. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 13.

14. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 14.

15. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 15.

16. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 16.

17. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 17.

18. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 18.

19. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 19.

20. Defendant admits that it worked with OJC prior to the 2020 Christmas holiday season, but otherwise denies the allegations in Paragraph 20.

21. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 21.

22. Defendant denies the allegations in Paragraph 22.

23. Defendant denies knowledge or information sufficient to form a belief as to the allegations

in Paragraph 23. Paragraph 23's reference to OJC's "reasonable" reliance is also a legal conclusion that does not require a response; to the extent a response is required, Defendant denies it.

24. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 24.

25. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 25.

26. Paragraph 26 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 26.

27. Defendant admits that National Tree provided OJC with tracking numbers provided by the shipping carrier for products shipped by National Tree but otherwise denies the allegations and characterizations in Paragraph 27.

28. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 28.

29. Defendant denies the allegations in Paragraph 29.

30. Defendant denies the allegations in Paragraph 30.

31. Defendant denies the allegations in Paragraph 31.

32. Defendant admits that OJC notified National Tree that certain orders were late but otherwise denies the allegations and characterizations in Paragraph 32. To the extent the allegations in Paragraph 32 refer to an email annexed to the Complaint (not the Counterclaim) as Exhibit B, Defendant refers to that email for its complete and accurate contents.

33. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 33.

34. Defendant denies the allegations in Paragraph 34. To the extent the allegations in Paragraph

34 refer to an email annexed to the Complaint (not the Counterclaim[1]) as Exhibit C, Defendant refers to that email for its complete and accurate contents.

35. Defendant denies the allegations in Paragraph 35.

36. Defendant denies the allegations in Paragraph 36. To the extent Paragraph 36 alleges "substitute purchase[s]" by OJC's customers, Defendant denies knowledge or information sufficient to form a belief as to the allegation.

37. Defendant denies the allegations in Paragraph 37.

38. Defendant denies the allegations in Paragraph 38.

39. Defendant denies the allegations in Paragraph 39.

40. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 40.

41. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 41.

42. Defendant denies the allegations in Paragraph 42.

43. The allegations in Paragraph 43 state multiple legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 43.

44. The allegations in Paragraph 44 state multiple legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 44.

45. The allegations in Paragraph 45 state multiple legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 45.

### Count I- Breach of Contract

46. Defendant reasserts and realleges the foregoing responses to the allegations contained in

---

[1] Paragraph 32 appears to have been copied and pasted *verbatim* from a pleading in a prior litigation.

NOT AN OFFICIAL COPY – CGIS – ATTORNEY OF RECORD

paragraphs 1 through 45 of this answer as if fully set forth herein.

47. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, but otherwise denies the allegations in Paragraph 47 and refers to the Vendor Agreement for its complete and accurate terms.

48. Defendant denies the allegations in Paragraph 48 and refers to the Vendor Agreement for its complete and accurate terms.

49. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms.

50. Defendant denies the allegations in Paragraph 50.

51. Paragraph 51 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 51.

52. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms. To the extent Paragraph 52 refers to the parties "course of dealing", it states a legal conclusion that does not require a response.

53. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms.

54. Defendant denies the allegations in Paragraph 54.

55. Paragraph 55 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 55.

56. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms.

57. Defendant denies the allegations in Paragraph 57.

58. Paragraph 58 states multiple legal conclusions that do not require a response. To the extent

a response is required, Defendant denies the allegations in Paragraph 58.

59. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms.

60. Paragraph 60 refers to purchase orders ("PO's") and Defendant refers to each PO for its complete and accurate contents.

61. Paragraph 61 states a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 61.

62. Defendant denies the allegations in Paragraph 62.

63. Defendant denies the allegations in Paragraph 63.

64. Defendant denies the allegations in Paragraph 64.

65. Defendant admits that the Vendor Agreement is a valid and enforceable agreement, and refers to that document for its complete and accurate terms.

66. Defendant denies the allegations in Paragraph 66.

67. Defendant denies the allegations in Paragraph 67.

68. Defendant denies the allegations in Paragraph 68.

69. Paragraph 69 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 69.

70. Defendant denies the allegations in Paragraph 70.

71. Paragraph 71 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 71.

72. Paragraph 72 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 72.

**Count II- Breach of Implied Covenant of Good Faith and Fair Dealing**

73. Defendant reasserts and realleges the foregoing responses to the allegations contained in paragraphs 1 through 72 of this Answer as if fully set forth herein.

74. Defendant admits that it entered into a valid and enforceable agreement with OJC but otherwise denies the allegations in Paragraph 74 and refers to the Vendor Agreement for its complete and accurate terms.

75. Paragraph 75 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 75 and refers to the Vendor Agreement for its complete and accurate terms.

76. Paragraph 76 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 76 and refers to the Vendor Agreement for its complete and accurate terms.

77. Defendant denies the allegations in Paragraph 77.

78. Paragraph 78 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 78.

79. Paragraph 79 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 79.

**Count III- Breach of Implied Warranty**

80. Defendant reasserts and realleges the foregoing responses to the allegations contained in paragraphs 1 through 79 of this Answer as if fully set forth herein.

81. To the extent Paragraph 81 defines Defendant as a "merchant", it states a legal conclusion which does not require a response; to the extent a response is required, Defendant denies it. Defendant otherwise denies knowledge or information sufficient to form a belief as to the

allegations in Paragraph 81, except admits that it sells, *inter alia*, Christmas tree products.

82. Paragraph 82 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 82.

83. Paragraph 83 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 83.

84. Paragraph 84 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 84.

85. Paragraph 85 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 85.

86. Paragraph 86 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 86.

87. Paragraph 87 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 87.

88. Paragraph 88 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 88.

### Count IV- Tortious Interference with Business Relationship

89. Defendant reasserts and realleges the foregoing responses to the allegations contained in paragraphs 1 through 88 of this Answer as if fully set forth herein.

90. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 90.

91. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 91. To the extent a response is required, Defendant denies the allegations in Paragraph 91.

92. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 92.

93. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 93.

94. Defendant denies the allegations in Paragraph 94.

95. Defendant denies the allegations in Paragraph 95.

96. Defendant denies the allegations in Paragraph 96.

97. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 97. To the extent a response is required, Defendant denies the allegations in Paragraph 97.

98. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 98. To the extent a response is required, Defendant denies the allegations in Paragraph 98.

99. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 99.

100. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 100.

101. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 101.

102. Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 102.

103. Defendant denies the allegations in Paragraph 103.

104. Defendant denies the allegations in Paragraph 104.

105.     Defendant denies the allegations in Paragraph 105.

106.     Defendant denies the allegations in Paragraph 106.

107.     Paragraph 107 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 107.

### Count V- Fraud

108.     Defendant reasserts and realleges the foregoing responses to the allegations contained in paragraphs 1 through 107 of this Answer as if fully set forth herein.

109.     Defendant denies the allegations in Paragraph 109.

110.     Defendant denies the allegations in Paragraph 110.

111.     Defendant admits that Steve Downs sent an email to OJC on August 5, 2019, but otherwise denies the allegations in Paragraph 111 and refers to that document for its complete and accurate contents.

112.     Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 112. To the extent a response is required, Defendant denies the allegations in Paragraph 112.

113.     Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 113. To the extent a response is required, Defendant denies the allegations in Paragraph 113.

114.     Defendant denies the allegations in Paragraph 114.

115.     Defendant denies the allegations in Paragraph 115.

116.     Defendant admits that Mark Gardner sent an email to National Tree on November 27, 2020 asking about the status of 432 orders, and refers to that message for its complete and accurate contents.

117.     Defendant admits that Steve Downs responded to OJC's email regarding 432 tracking numbers, and refers to that response for its complete and accurate contents.

118.     Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 118.

119.     Defendant denies the allegations in Paragraph 119.

120.     Paragraph 120 states a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 120.

121.     Defendant denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 121.

122.     Paragraph 122 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 122.

**Count VI- Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**

123.     Defendant reasserts and realleges the foregoing responses to the allegations contained in paragraphs 1 through 122 of this Answer as if fully set forth herein.

124.     Paragraph 124 states a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 124.

125.     Paragraph 125 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 125.

126.     Paragraph 126 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 126.

127.     Paragraph 127 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 127.

128.     Paragraph 128 states multiple legal conclusions that do not require a response. To

the extent a response is required, Defendant denies the allegations in Paragraph 128.

129.     Paragraph 129 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 129.

130.     Paragraph 130 states multiple legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 130.

## AFFIRMATIVE DEFENSES

Defendant alleges the following affirmative defenses to Plaintiff's Complaint:

### First Affirmative Defense

1.  The Complaint fails to state any claim upon which relief can be granted.

### Second Affirmative Defense

2.  The Complaint cannot be maintained upon documentary evidence.

### Third Affirmative Defense

3.  Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations, as well as the doctrines of waiver, estoppel, ratification, release, unclean hands, and/or laches.

### Fourth Affirmative Defense

4.  Plaintiff materially breached its agreement with Defendant.

### Fifth Affirmative Defense

5.  The Complaint should be dismissed because Plaintiff seeks recovery based on claims which are against public policy.

### Sixth Affirmative Defense

6.  The Complaint should be dismissed because Defendant's actions did not proximately cause Plaintiff's alleged damages, if any.

### Seventh Affirmative Defense

7.  The Complaint should be dismissed due to Plaintiff's failure to mitigate its alleged

damages.

**Eighth Affirmative Defense**

8.   The Complaint should be dismissed because any damages allegedly sustained by Plaintiff were the result solely of the acts, conduct or omissions of Plaintiff, or others acting through or in concert with Plaintiff, over whom Defendant exercised no control.

**Ninth Affirmative Defense**

9.   Plaintiff's damages, if any, must be off set based on the amount Plaintiff owes Defendant based on Plaintiff's material breach of the Vendor Agreement.

**Tenth Affirmative Defense**

10. OJC has failed to properly allege that National Tree has breached the Vendor Agreement.

**Eleventh Affirmative Defense**

11. To the extent they are alleged in the Complaint, National Tree avers that the mere occurrence of "improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and/or mis-shipments" do not constitute material breaches of the Vendor Agreement under its plain and unambiguous terms.

**Twelfth Affirmative Defense**

12. With respect to OJC's claim for Breach of Implied Warranty, National Tree avers failure of condition precedent. OJC never notified National Tree of any specific defect as required by Section 627.607, Florida Statutes. As a result, its claim for breach of implied warranty fails as a matter of law.

**Thirteenth Affirmative Defense**

13. National Tree avers that OJC has not alleged, and has not suffered, the requisite actual damages necessary to support a Florida Deceptive and Unfair Trade Practices Act claim.

## RESERVATION

National Tree reserves the right to assert any other affirmative defenses as the evidence may warrant up to and through trial of this action.

## JURY TRIAL DEMAND

National Tree demands a jury trial on all issues so triable.

**WHEREFORE,** National Tree respectfully requests that the Court: (a) enter judgment in favor of National Tree and against OJC on all of OJC's causes of actions; (b) dismiss the Complaint in its entirety with prejudice; (c) award to National Tree its reasonable attorney's fees and costs, pursuant to Section 501.2105 of FDUTPA; and (d) award any other relief in National Tree's favor which the Court deems fair and appropriate.

## COUNTERCLAIM

Counter-Plaintiff National Christmas Products, LLC d/b/a National Tree Company ("National Tree" or "NTC") by and through its undersigned counsel, hereby files its counterclaims against Counter-Defendant OJ Commerce, LLC ("OJC" or "Corporate Defendant") and Third-Party Defendant Jacob Weiss ("Mr. Weiss") (collectively, the "Counterclaim Defendants"), and alleges as follows:

## INTRODUCTION

1.    This is an action for money damages arising out of Counterclaim Defendants' failure to abide by the terms of an E-Commerce Vendor Agreement (the "Vendor Agreement"), and pay NTC for the provision of certain goods and services, despite repeated requests for payment.

2.    For the past 60 years, NTC has been a leading importer and wholesaler of artificial Christmas trees, wreaths and garlands as well as holiday decorations and fiber optics products.

3.      In or around August 15, 2017, NTC and OJC entered into the Vendor Agreement, under which NTC agreed to supply certain NTC approved products to OJC's consumers, and OJC agreed to sell those products on OJC's website.

4.      Although NTC has provided the agreed upon products to OJC's consumers, OJC has failed to remit payment for such products from invoices rendered in or around November 2020 through October 2021.

5.      NTC is currently owed no less than $646,341.14.

**PARTIES, JURISDICTION AND VENUE**

6.      This is an action for damages in excess of fifty thousand dollars ($50,000.00), exclusive of interest, costs and fees.

7.      NTC is a limited liability company with its principal place of business at 2 Commerce Dr., Cranford, New Jersey 07016.

8.      OJC was and is a limited liability company with its principal place of business at 3076 North Commerce Parkway, Miramar, FL 33025.

9.      Mr. Weiss is an individual who, at all times material, conducted substantial and continuous business in Broward County, Florida, resides in Broward County, Florida, and is subject to the laws of the State of Florida and is a citizen of Florida, and who is the sole member, owner and alter ego of OJC.

10.     Venue is proper in this Court because Section 8.5 of the Vendor Agreement places venue in "the State or Federal courts located in the State of Florida, Broward County," and a substantial part of the business transacted, events or omissions giving rise to this action occurred in Broward County, Florida.

11.     All conditions precedent to bringing this action have been met, waived or

otherwise satisfied.

<b><u>FACTUAL ALLEGATIONS</u></b>

**I.    <u>The Business Relationship</u>**

12.    On or around August 15, 2017, Plaintiff and OJC entered into the Vendor Agreement. A true and accurate copy of the Vendor Agreement is annexed hereto as <b><u>Exhibit 1</u></b>.

13.    Pursuant to the Vendor Agreement, OJC, as reseller, would promote and display NTC's approved products for sale on OJC's website, and NTC, as vendor, would supply the products to consumers.

14.    Pursuant to Section 2.7 of the Vendor Agreement, NTC agreed to generate a consolidated invoice for all services, including any applicable shipping and administrative fees.

15.    All invoices were transmitted to OJC via electronic data interchange (EDI).

16.    Pursuant to Section 2.7 of the Vendor Agreement, OJC agreed to (i) "provide remittance detailing the invoices to be paid for the week or month," (ii) pay NTC for Services rendered in the amounts set forth after the receipt of a correct invoice from NTC, and (iii) pay all undisputed invoice amounts within 30 days of the invoice date.

17.    Pursuant to Section 2.7.2 of the Vendor Agreement, any disputed invoice amounts would be documented in writing and forwarded to NTC within <u>30 days of invoice receipt</u> and within 30 days of receipt of any disputed amounts, NTC would respond to OJC's claim.

18.    Any disputed invoice amounts were sent by OJC to NTC via e-mail in the form of a remittance advice.

19.    Throughout the course of the relationship, OJC made payments to NTC by credit card, several of which were in Mr. Weiss' name, or Odelia Weiss's (Mr. Weiss's wife) name, despite the latter having no affiliation with OJC. The credit cards used in Mr. and Mrs. Weiss's

names had a different billing address than OJC and, upon information and belief, is not associated

with OJC. *See* Emails evidencing payments made by Odelia Weiss and Jacob Weiss are annexed

hereto as **Exhibit 2**.

20.     Mr. Weiss testified that he asked Mrs. Weiss to open up a credit card for OJC's

exclusive use. Mrs. Weiss, who does not work at or have any role at OJC, does not approve

payments from this card and lacks possession of this card.

21.     On several occasions, the aforementioned credit cards provided by OJC were

declined when NTC attempted to process the credit cards for payment.  True and accurate copies

of correspondence evidencing OJC's credit card being declined are annexed hereto as **Exhibit 3**.

22.     As a result, NTC implemented a $400,000 balance cap on OJC's account.

23.     On September 15, 2020, Mark Gardner, the Head of Merchandising & Vendor

Management of OJC ("Mr. Gardner"), emailed NTC seeking to remove the balance cap on OJC's

account for the fourth quarter of 2020. In response, NTC informed OJC that it would remove the

balance cap if OJC agreed to "Net 7" payment terms, such that OJC would be required to pay a

given invoice within seven (7) days of receipt of that invoice. A true and correct copy of the

September 15, 2020 email correspondence is annexed hereto as **Exhibit 4**.

24.     On October 22, 2020, Mr. Gardner stated that he reviewed the presented option,

and that it was not viable. Mr. Gardner then asked for a compromise of "Net 15" payment terms

(i.e. that invoices would be paid within fifteen (15) days of receipt). *See* Ex. 4.

25.     Unknown to Plaintiff, Mr. Gardner, who represented himself as having authority

to make that offer, in fact *did not* have such authority before making that offer. OJC, Mr. Gardner,

and Mr. Weiss all knew that Mr. Gardner had no such authority *before* Mr. Weiss directed Mr.

Gardener to make the offer to NTC.

26.     In an e-mail dated October 23, 2020, NTC agreed to temporarily remove the cap in exchange for "Net 15" payment terms from November 1, 2020 through December 30, 2020. Any orders from December 31, 2020 on would be subject to "Net 30" payment terms. *See* Ex. 4.

27.     NTC supplied the agreed upon goods and services, and timely submitted invoices to OJC for those goods and services under the terms of the Agreement.

28.     Pursuant to the Agreement, OJC is required to timely pay NTC for the goods and services provided.

## II.    The Invoices

29.     Unbeknownst to NTC, Jacob Weiss testified that OJC placed a "payment freeze" on NTC, while continuing to order products from NTC for OJC customers.

30.     On January 6, 2021, NTC emailed OJC demanding payment of OJC's outstanding balance, which was over $1.2 million.

31.     On January 15, 2021, OJC authorized payment of $544,623.57 towards its outstanding balance. A true and accurate copy of OJC's authorization is annexed hereto as **Exhibit 5**.

32.     On February 2, 2021, OJC emailed NTC to demand that it "recover costs of $126,890 against your account." OJC did not cite a single timely disputed order or any other basis under the Vendor Agreement for disputing $126,890. OJC did not otherwise object to the outstanding invoices. A true and accurate copy of that email is annexed hereto as **Exhibit 6**.

33.     That same day, NTC terminated the Vendor Agreement.

34.     Upon information and belief, once NTC terminated the Agreement, OJC retaliated by refusing to make any further payments absent an agreement to continue doing business with OJC on more favorable terms to OJC.

35.     Upon information and belief, once a third party demands payment duly owed, OJC (at Mr. Weiss's direction) manufactures excuses and complaints to avoid making those duly owed payments.[2]

36.     From November 16, 2020 through October 13, 2021, NTC transmitted approximately 12,457 invoices to OJC via EDI.

37.     In an e-mail dated June 4, 2021, that OJC sent to NTC, **OJC admitted that it owed NTC $646,341.14**. OJC refused to pay the amount it admitted was due and owing, or any other amounts. A true and accurate copy of the June 4, 2021 email is annexed hereto as **<u>Exhibit 7</u>**.

## III.     <u>Demand for Payment</u>

38.     On August 16, 2021, NTC sent OJC an e-mail containing an account statement totaling $781,332.69. OJC never objected to this account statement.

---

[2] *See, APL Co. Pte Ltd v. OJ Commerce, LLC*, Docket No. CACE20009013 (Fla. Cir. Ct. June 2, 2020) (Collections); *OEC Logistics v. OJ Commerce*, LLC, Docket No. CACE20017007 (Fla. Cir. Ct. Oct. 2, 2020) (Contracts and indebtedness); *Pilot Air Freight, LLC v. OJ Commerce, LLC*, Docket No. COCE20019505 (Fla. Cir. Ct. August 17, 2020) (Contracts and indebtedness); *QuanticMind, Inc. v. OJCommerce*, LLC, Docket No. CACE19006962 (Fla. Cir. Ct. March 29, 2019) (Contracts and indebtedness); *SPG Trust Corp. v. OJCommerce, LLC*, Docket No. CONO19008686 (Fla. Cir. Ct. March 29, 2019) (Eviction and collection); *Essick Air Products, Inc. v. OJ Commerce*, LLC, Docket No. CACE19021994 (Fla. Cir. Ct. Oct. 22, 2019) (Contracts and indebtedness); *E&E Co., Ltd. v. OJ Commerce, LLC*, Docket No. CACE 18027917 (Fla. Cir. Ct. Dec. 4, 2018) (Contracts and indebtedness); *Your Other Warehouse, LLC v. OJ Commerce, LLC,* Docket No. CACE17021326 (Fla. Cir. Ct. Nov 22, 2017) (Contracts and indebtedness*); Kidkraft LP v. OJ Commerce LLC,* Docket No. CACE17012420 (Fla. Cir. Ct. Jun 29, 2017) (Contracts and indebtedness); *Steve Silver Co. v. OJ Commerce, LLC,* Docket No. CACA 17003041 (Fla Cir. Ct. Feb. 10, 2017) (Contracts and indebtedness); *Essendante Co. v. OJ Commerce, LLC*, Docket No. CACE16012349 (Fla. Cir. Ct. Jul 6, 2016) (Contracts and indebtedness); *Baker, Govern & Baker, Inc. v. OJCommerce, LLC,* Docket No. CACE16010269 (Fla. Cir. Ct. June 6, 2016) (Contracts and indebtedness); *Continental Casualty Company v. OJ Commerce, LLC,* Docket No. CACE15001645 (Fla. Cir. Ct. Feb 2, 2015) (Contracts and indebtedness); *La-Z-Boy Greenboro, Inc. v. OJCommerce, LLC,* Docket No. CACE15001990 (Fla. Cir. Ct. Feb. 9, 2015) (Contracts and indebtedness); *Ryder Last Mile, Inc. v. OJCommerce*, LLC, Docket No. CACE140498789 (Fla. Cir. Ct. Oct. 15, 2014) (Contracts and indebtedness*); James Dar, LLC vs. OJ Commerce, LLC,* Docket No. 21- smcv-00815 (Cal. Super. Ct. April 30, 2021) (Collections); *Modway, Inc. vs. OJ Commerce, LLC,* Docket No. L-000107-20 (N.J. Super. Ct. Law Div. Jan. 8, 2020) (Collections). 4 *See, P&P Imports, LLC v. OJCommerce,* LLC, Docket No. 8 :2019-cv-00898 (C.D. Cal. May 13, 2019*); Noco Company v. OJ Commerce, LLC*, Docket No., 1:2019cv02298 (N.D. Ohio Oct, 2, 2019); *Static Media, LLC v. OJCommerce,* Docket No. 0:2019-cv-60270 (S.D. Fla. Jan. 30, 2019); *Guidecraft, Inc. v. OJCommerce, LLC,* Docket No. 0:2019cv62344 (S.D. Fla. Sept. 20, 2019); *HCY Logistics, Inc. v. OJ Commerce, LLC,* Docket No. 0:2023-cv-02050 (W.D.T February 2, 2023); *MNE Trucking, Inc. v. OJ Commerce, LLC,* 23-cv-05742 (C.D. Ca July 17, 2023); *OJ Commerce, LLC v. Traffic Tech, Inc.,* 24-cv-01407 (C.D. Ca. February 21, 2024).

39.     On or around March 14, 2022, NTC sent OJC a letter demanding payment for OJC's outstanding invoices to be received no later than March 21, 2022, and an accounts receivable aging report. A true and accurate copy of NTC's demand letter and the accounts receivable aging report is annexed hereto as **Exhibit 8**.

40.     OJC failed to make payment on or before March 21, 2022.

41.     To date, OJC has failed to remit any payment for the outstanding invoices.

## IV.   Mr. Weiss' Dominance and Control over OJC

42.     Mr. Weiss exercised complete ownership and control of the Corporate Defendant.

43.     Mr. Weiss dominated and controlled the finances, policies, and business practices of the Corporate Defendant to such an extent that the Corporate Defendant had no separate mind, will or existence of its own, and the Corporate Defendant is, in fact, an alter ego of Mr. Weiss.

44.     Mr. Weiss testified under oath that he paid himself "distributions" from OJC, effectively treating OJC as his own personal piggy bank.

45.     For example, any monies previously paid to NTC did not come from an OJC credit card, but rather Mr. Weiss' or his wife's credit cards that repeatedly declined. The Corporate Defendant merely serves as a corporate sham organized to evade Mr. Weiss' debts.

46.     Mr. Weiss used the Corporate Defendant fraudulently or for an improper purpose.

47.     Mr. Weiss' fraudulent or improper use of the Corporate Defendant caused injury to NTC.

## COUNT I
## BREACH OF CONTRACT
### (*AS TO ALL COUNTERCLAIM DEFENDANTS*)

48.     NTC repeats and realleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

49.     The Vendor Agreement is a valid and binding contract.

50.     NTC has duly performed all of its obligations under the Agreement without having received any objections from OJC.

51.     OJC has breached the Agreement by refusing to remit payment for the outstanding balance due for the products in accordance with the terms of the Agreement.

52.     Mr. Weiss exercised complete ownership and control of the Corporate Defendant.

53.     Mr. Weiss dominated and controlled the finances, policies, and business practices of the Corporate Defendant to such an extent that the Corporate Defendant had no separate mind, will, or existence of its own, and the Corporate Defendant is, in fact, an alter ego of Mr. Weiss.

54.     Mr. Weiss used the Corporate Defendant fraudulently or for an improper purpose, which caused NTC to suffer, and continue to suffer, damages.

55.     By reason of the foregoing, NTC has suffered and will continue to suffer damages in an amount to be determined at trial, but in no event less than $646,341.14.

56.     By reason of the foregoing, NTC is entitled to have judgment against Counterclaim Defendants in an amount to be determined at trial, but presently estimated to equal $646,341.14, together with applicable interest and costs.

**WHEREFORE**, NTC demands that this Court enter an order allowing the piercing of OJC's corporate veil and finding Mr. Weiss personally liable for the obligations of OJC, and enter a judgment in favor of NTC and against Counterclaim Defendants in an amount to be determined at trial, but estimated to be at least $646,341.14, plus costs, pre-judgment interest, and post-judgment interest, and for such further relief which the Court may deem just and proper.

## COUNT II
## ACCOUNT STATED
## (*AS TO ALL COUNTERCLAIM DEFENDANTS*)

57.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

58.     NTC provided the Invoices to OJC, and OJC did not object to the amounts stated in the Invoices.

59.     On June 4, 2021, OJC emailed NTC and **admitted that it owed NTC $646,341.14**. *See* Ex. 7. OJC refused to pay the amount it admitted was due and owing, or any other amounts.

60.     NTC demanded payment from OJC, and OJC failed or otherwise refused to pay $646,341.14 to NTC.

61.     OJC owes NTC $646,341.14 with interest on the account.

62.     Mr. Weiss exercised complete ownership and control of the Corporate Defendant.

63.     Mr. Weiss dominated and controlled the finances, policies, and business practices of the Corporate Defendant to such an extent that the Corporate Defendant had no separate mind, will, or existence of its own, and the Corporate Defendant is, in fact, an alter ego of Mr. Weiss.

64.     Mr. Weiss used the Corporate Defendant fraudulently or for an improper purpose, which caused NTC to suffer, and continue to suffer, damages.

**WHEREFORE**, NTC demands that this Court enter an order allowing the piercing of OJC's corporate veil and finding Mr. Weiss personally liable for the obligations of OJC, and enter a judgment in favor of NTC and against Counterclaim Defendants in an amount to be determined at trial, but estimated to be at least $646,341.14, plus costs, pre-judgment interest, and post-judgment interest, and for such further relief which the Court may deem just and proper.

## JURY TRIAL DEMAND

NTC demands a jury trial on all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 25, 2025, a copy of the foregoing has been sent via email through Florida's eFiling portal upon all parties and counsel of record.

**BLACK SREBNICK**
One Town Center, Suite 201
Boca Raton, FL 33486
Tel: 561-361-6800

/s/ Jordan D. Utanski
Lance W. Shinder
Florida Bar No. 851711
LShinder@RoyBlack.com
Kyle A. Johnson, Esq.
Florida Bar No. 113324
KJohnson@RoyBlack.com
Jordan D. Utanski
Florida Bar No. 119432
JUtanski@royblack.com

**ELLENOFF GROSSMAN & SCHOLE LLP**
John Horgan, Esq. (*admitted pro hac vice*)
jhorgan@egsllp.com
1345 Avenue of the Americas, 11th Floor
New York, NY 10105

*Counsel for National Christmas Products, LLC d/b/a National Tree Company*

NOT AN OFFICIAL COPY ATTORNEY OF RECORD

# EXHIBIT 1




# E-COMMERCE VENDOR AGREEMENT

This E-Commerce Vendor Agreement ("Agreement") is made on __August 15, 2017__ (Effective Date) by and between ___National Christmas Products, Inc. DBA National Tree Company___ (hereinafter "Vendor") a __S Corp__ company with its principal place of business at (a __2 Commerce Dr. Cranford, NJ 07016__ _____ and OJCommerce, LLC (hereinafter "Seller and Customer"), a Florida Limited Liability Company with its principal place of business at 1700 NW 64 ST STE 460, Fort Lauderdale, FL 33309.

WHEREAS, the parties desire to enter into this Agreement to set forth the obligations and responsibilities of each in connection with their contractual relationship.

---

**DEFINITIONS**:

**"Buyer's Remorse Return"** is defined as a product received by an End Consumer that is returned in the original manufacturer's packaging, unused and undamaged and within 30 days of shipment with Vendor pre-approved Return Authorization number(s) for any reason other than that of defective returns, and damaged returns (as defined below).

**"Carrier"** is defined as the party transporting / conveying product goods from the Vendor to End Consumer.

**"Damage Return"** is defined as any breakage, bent part, scratch, gouge, dent or nick that renders the product in less than new condition. Damage may be visible or concealed inside the carton. Damage generally occurs in transit by a carrier. Seller recognizes many finishes are intentionally "distressed" as part of the unique character of the item. Vendor and Seller agree "Distressed" finishes are not damaged.

**"Defective Return"** is defined as a visible run in the paint or clear finish, a flaking/peeling finish, the compromised structural integrity of a product, improper manufacture of a product preventing assembly or other issues resulting from manufacturing or packaging issues.

**"Defective Replacement"** is defined as any shipment of a subsequent complete unit, not a part, to fulfill an End Consumer's shipment which was deemed defective and requiring a new complete unit.

**"Defective Part"** is defined as a shipment that is mostly intact upon arrival to an End Consumer but piece(s) required to assemble the item are defective or missing.

**"Drop Shipment"** is defined as the process of Seller sending individual purchase orders to the Vendor, and the Vendor shipping the purchase order merchandise from a Vendor's facility direct to an End Consumer, without passing through the warehouse of the Seller & Customer.

**"End Consumer"** is defined as any third party (including individuals and entities) with a relationship to OJCommerce and/or its business, products or services, including without limitation, actual and prospective business customers.

**"Lost and Recovered Shipment"** is defined as a shipment which is lost, subsequently found and may be delivered to the End Consumer if a replacement or refund has not been provided to an End Consumer and the End Consumer would like to continue with the delivery.

**"Mis-shipped Product"** is defined as a shipment in which the Vendor ships any item other than was ordered on the purchase order.

REV122015

**App. 367**

NTC_026787

 
**"Refused Return"** is defined as a shipment that is not accepted for delivery by an End Consumer.

**"Return"** is defined as any merchandise shipments ordered by the Customer from the Vendor and drop shipped to an End Consumer and subsequently the merchandise delivers back to the Vendor's facility either by the same carrier or another carrier selected by the End Consumer.

**"Seller" & "Customer"** are defined as OJCommerce, LLC as the recipient and or reseller of product goods or services from "Vendor" defined as a party in the Agreement and obligated under this Attachment.

**"Vendor"** is defined as the supplier, vendor, or other business partner defined as a party in the Agreement and obligated under this Attachment.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1  <u>CUSTOMER RESPONSIBILITES</u>:  With utmost reverence, Customer is to promote and display Vendor approved products for sale on the Customer's website.  To best promote Vendor's products, Customer obligations shall include the following:

    1.1 **Display of Products:**  Customer shall display clear photos of Vendor approved products for consumer viewing and will display alternative views and close-ups, if available.  Additionally, detailed product information will be made available for consumer viewing, such as style, construction, material finish, color, dimension, of product.

    1.2 **Product Information:** The Customer may choose to use Vendor's actual product names and part numbers to accurately describe the products. Customer also reserves the right to modify the provided product names and/or part numbers in manner consistent with the provided product names and/or part numbers in order to meet technical requirements.

    1.3 **Customer Service:** Customer is required to provide live, professional customer service representatives ("CSR") available to consumers.  Customer's customer service shall be the point of contact for all End Consumer issues/inquires.
        1.3.1  Customer service shall provide prompt, efficient and courteous service for all product orders and/or inquiries.
        1.3.2  CSR must be trained and knowledgeable of Vendor's products.

    1.4 **Processing/Chargeback Fees:**  Customer shall be accountable for all processing fees associated with consumer's payments including, but not limited to, credit card processing fees or fraudulent transaction fees.

    1.5 **Home Delivery:**  Customer shall be responsible for establishing and maintaining the appropriate method of delivery service encouraged by Vendor to include White Glove, Threshold, Curbside and Standard Delivery. This will be approved on a product specific basis. Parcel items and threshold items will not require white glove service.
        1.5.1  Customer shall be responsible for filing all freight claims, including transit damage, with their carrier.  There will be recourse against Vendor for any carrier related claims due to improper packaging pursuant to the terms in section 2.4.
        1.5.2  Customer shall provide the Vendor with all routing and contact information for their carrier(s). The Customer's carrier is expected to pick up orders at the Vendor pick up point within one week of the orders being approved and released.

REV122015

**App. 368**

NTC_026788



Customer will arrange and pay for their own freight.  The Vendor will not pre-pay freight charges.

**2   VENDOR RESPONSIBLITIES:**  Upon the completion and return of the E-Commerce Vendor Agreement, the Vendor shall provide the necessary product information to the Customer as to best promote Vendor's products.  The Vendor shall provide the following:

2.1 **Photos:**  Clear photos of products shall be provided in accordance with Seller's image standards, which are based on industry standards.

2.2 **Product Information:**  Vendor shall provide information for each product including, style, construction, material finish, color, dimension, and any feature and benefits of product that may be included in the Vendor's marketing materials.  Any customer service related question regarding products will be answered within two (2) business days of receipt of inquiry. Vendor agrees to clearly define distressed finishes in the product features and/or description.

2.3 **Parts:**  Parts shall be provided, as necessary, to consumers that have received damaged due to improper packaging, defective or incomplete items at no charge.  Parts will be sent under Vendors account number via Standard Ground, unless otherwise specified by customer. If customer specifies a different type of delivery service, the customer will be responsible for all freight charges. OJCommerce expects most parts to ship within 3 to 5 business days to End Consumer or unless otherwise specified by Vendor and agreed to by OJCommerce, LLC on a case by case basis.

2.4 **Returns**

    2.4.1 **Buyer's Remorse Returns**: Vendor agrees to process all Buyer's Remorse Returns on behalf of the Seller to their facility.  End consumer will request return authorization (RA) within 30 days of shipment.  The Vendor will be notified of the buyer remorse return request via OJCommerce support ticket and Vendor shall provide the RA and the return address into the OJCommerce support ticket web portal within 1 business day.  Seller will subsequently provide the End Consumer the RA and return address. End consumer will have additional 10 days to ship and deliver to the Vendor the Buyer's Remorse Return to the return address provided with RA on the carton.  Seller requests return tracking information from the End Consumer and provides the return tracking information to the Vendor via the OJCommerce portal.  If the End Consumer fails to ship and return Buyer Remorse return to Vendor within 45 days of shipment, Vendor will refuse delivery and shipment is the property of the End Consumer and the shipment will be returned to End Consumer at the End Consumer's expense. The End Consumer is responsible for the return freight charges by appropriate carrier of equal or better service level of initial shipment to the End Consumer. Buyer Remorse Return is the property of the End Consumer until received, signed and inspected in full by the Vendor. Vendor shall not assess a restocking fee on Buyer's Remorse Returns unless otherwise agreed upon in writing by Vendor and Customer. Any Lost and Recovered Shipment that is no longer desired, could not be delivered as addressed or labeled and End Consumer no longer desires shipment, the shipment will be returned by the carrier to the Vendor and are resolved as buyer remorse returns with the purchase order number. A Refused Return is resolved as a Buyer's Remorse Return except when noted as damaged and Seller is notified by the End Consumer prior to the Return.

    2.4.2 **[Reserved]**

**App. 369**

NTC_026789



2.4.3 **Damage Returns and Defective Returns**: A Damage Return is the responsibility of the Seller if both of the following conditions apply: (i) the item is shipped on the Seller's Carrier, and (ii) the packaging of the product is certified by FedEx or UPS as sufficient. A Damage Return is the responsibility of the Vendor if the item: (i) ships via the Vendor's Carrier, or (ii) ships via the Seller's Carrier in packaging that is not certified by FedEx or UPS as sufficient. The Seller is not responsible for resolving Carrier claims when products are shipped via the Vendor's Carrier. The Vendor is not responsible for resolving Carrier claims when products are shipped via the Seller's Carrier. A Damage Return due to insufficient packaging by the Vendor is considered a Defective Return. A Defective Return is the responsibility of the Vendor. The decision to donate, issuing a carrier call tag for pickup, return label to return ship, sending parts or a full replacement, Warranty claims, field destroying the defective product is the responsibility of the Vendor. Notification for resolution is from the Vendor via the Seller's web portal support ticket interface.

2.4.4 **Damage/Defective Allowance:** In the event Vendor does not agree to section 2.4.3, section 2.4.3 shall not apply and a Damage Returns and Defective Returns allowance (excluding parts) will be granted to Customer in lieu of deductions, defect returns and/or credits in the amount of 3%.

2.4.5 **Allowances**: If applicable, Customer shall deduct the appropriate percentage from each invoice upon payment. Mis-shipped Product is the responsibility of the Vendor and is not applicable to the allowance. A quarterly review of allowances and remorse/damaged/defective product rates will determine if the allowance(s) should be adjusted to actual rate experienced.

2.5 **Cancels**: Vendor shall approve order cancellations for any orders that are not capable of shipping within 24 hours of the cancel request. Vendor shall accept/approve cancellations in the OJCommerce PO Web Portal. Vendor will respond within 4 business hours (0.5 business days) of the cancellation notice into the OJCommerce PO Web Portal. OJCommerce Purchase Orders that are notified cannot be cancelled in the OJCommerce PO Web Portal and that are shipped with tracking information within the 24-hour period of the cancel request are considered shipped by both the Vendor and the Seller. If the shipped order is refused at delivery by End Consumer and carrier returns the shipment to the Vendor facility the shipment is considered and processed as buyer remorse using OJCommerce PO # as RA pursuant to the terms in section 2.4.

2.6 **Confirmed Cancels and Shipped**: Vendor confirms cancellation of order by OJCommerce Web Portal or via email. Vendor accepts returns for cancelled orders that were shipped in error and not stopped by Vendor, and Vendor pays for the freight charges, intercept fees and any return freight charges for shipping the cancelled order pursuant to the terms in section 2.4.

2.7 **Invoicing and Payments:** Vendor shall generate a consolidated invoice for all services, including any applicable shipping and administrative fees. One complete copy of the invoice with a statement of activity for the prior period will be submitted either: (i) via email weekly or monthly to OJCommerce LLC's corporate office to accounting@ojcommerce.com; or (ii) via prearranged electronic transmission (EDI, FTP, etc). OJCommerce is paperless and no mailed invoice correspondence will be processed when mailed to the corporate office. All invoices must include, at a minimum, the following information: (i) Name and address of Vendor; (ii) Invoice number; (iii) OJCommerce Purchase Order Number; (iv) Description of Services or Products to OJCommerce, LLC; (v) Date; and (vi) Dollar amount due.

OJCommerce LLC | 1700 NW 64 St, Suite 460 – Fort Lauderdale, FL 33309 | 954-519-2555

REV122015

# App. 370

NTC_026790



OJCommerce agrees to provide remittance detailing the invoices to be paid for the week or month. OJCommerce agrees to pay Vendor for Services rendered in the amounts set forth after the receipt of a correct invoice from Vendor. OJCommerce will pay all undisputed invoice amounts within 30 days of invoice date.

2.7.1 **[Reserved]**

2.7.2 Any disputed invoice amounts will be documented in writing and forwarded to Vendor within 30 days of invoice receipt. Within 30 days of Vendor's receipt of documentation of disputed amounts, Vendor will have responded to OJCommerce's claim. Upon resolution of disputed items in favor of Vendor, payment will be remitted within 10 days. If the resolution of disputed items is in favor of OJCommerce and not contested, no further action is required.

2.7.3 OJCommerce will not pay for any services that are invoiced greater than 90 days following the date services are actually performed.

2.7.4 OJCommerce will only be liable for payment of the dollar amount transmitted on the PO if the PO is shipped by Vendor. In the event Vendor believes the dollar amount on the PO is incorrect, Vendor must request and receive approval in writing from OJCommerce to ship and invoice the order at a greater amount before shipping the PO.

2.7.5 Vendor is prohibited from invoicing OJCommerce for any taxes, fees, surcharges or other charges including, but not limited to, taxes, drop ship fees, handling charges, packaging fees and any other order or item based fees in excess of the cost transmitted on the PO.

3 <u>**ADDITIONAL INSURED:**</u> By signing this agreement Vendor is required to name OJCommerce, LLC as an additional insured party Vendor's general liability insurance policy for the sum of at least $1MIL for all products sold to OJCommerce, LLC and its customers. To the fullest extent permitted by law, Vendor shall and hereby indemnifies and holds harmless, OJCommerce, LLC and its affiliates, agents and employees against all claims, damages, losses and expenses, including but not limited to, attorney's fees, arising out of or resulting from the performance of Vendor's work under this agreement, whether caused in whole or in part by a negligent act or omission of Vendor's, or anyone directly or indirectly employed by Vendor, Vendor shall be liable, regardless of whether it is caused in part by a party indemnified here. In the event Vendor fails to provide a valid certificate of insurance to Customer, Vendor shall be liable for the same.

4 <u>**ACCOUNT SUPPORT:**</u> Vendor will provide call center customer support during regular business hours Monday through Friday. This support center will be used to check order status, and work through exception issues on a case by case incident "Support Ticket". All issues will be documented and communicated via OJCommerce Support Ticket web portal. Any customer service related incidents will be resolved within 2 business days from the time the Customer notifies the call center of the issue.

5 <u>**ADDITIONAL VENDOR DISCOUNTS:**</u> From time to time the Vendor may offer Customer an additional allowance to promote their product(s). The Vendor requires that the Customer will post and promote their product on the Customer's websites as designated for an agreed upon length of time. In accordance with this, the Vendor reserves the right to verify the said promotion before order processing begins.

6 <u>**NOTICE**</u>: Any notice or communication permitted by this Agreement shall be deemed effective when personally delivered or deposited, postage prepaid by mail to the appropriate party at the address set forth below:

 

| If to Customer: | If to Vendor: |
|---|---|
| OJCommerce, LLC | Name: National Christmas Products, Inc. DBA National Tree Company |
| 1700 NW 64 ST, STE 460 | Address: 2 Commerce Dr |
| Fort Lauderdale, FL 33309 | City, ST Zip: Cranford, NJ 07016 |

**7**   **TERM & TERMINATION**:  This agreement is effective on the Effective Date for one (1) year. Either party may terminate this agreement at any time with or without cause. Vendor must provide fifteen (15) days' notice to terminate this agreement. This agreement will automatically renew each year unless terminated by either party. Upon termination of this agreement, the parties shall remain liable for fulfilling the obligations contained herein pertaining to the fulfillment, payment and servicing of returns, warranties and other claims of open and previously fulfilled orders.

**8**   **ADDITIONAL TERMS**

8.1 **Confidentiality of Information.** The receiving party agrees to keep confidential and not to disclose to third parties any information provided by the disclosing party pursuant to or learned by the receiving party during the course of the Agreement unless the receiving party has received the prior written consent of the disclosing party to make such disclosure. This provision shall survive expiration and termination of the Agreement. This obligation of confidentiality does not extend to any information that: 1) Was in the possession of the receiving party at the time of disclosure by the disclosing party, directly or indirectly; 2) Is or shall become, through no fault of the receiving party, available to the general public; or 3) Is independently developed and hereafter supplied to the receiving party by a third party without restriction or disclosure. This provision shall survive the termination of the Vendor Agreement for any reason.

8.2 **Assignment.** A party shall not assign or delegate its rights and obligations under this Agreement or any part hereof without the prior written consent of the other party.

8.3 **Conflicts.** Vendor represents that no trustee, officer, employee or any other person affiliated with OJCommerce, LLC and having involvement with this Vendor Agreement (1) is affiliated with the Vendor, and (2) received, was promised, or will receive anything of value in connection with this Vendor Agreement or performance contemplated hereunder.

8.4 **Force Majeure.** In the event that either party is unable to perform its obligations under this Agreement as a result of a force majeure, neither party shall be liable to the other for direct or consequential damages resulting from lack of performance. "Force Majeure" shall mean fire, earthquake, flood, act of God, strikes, work stoppages, or other labor disturbances, riots or civil commotions, acts of terrorism or other hostilities, litigation, war or other act of any foreign nation, power of government, or governmental agency,  injunctions, labor strikes, other than those of Vendor, that prevent Vendor from furnishing the products, materials or equipment, and other like events that are beyond the reasonable anticipation and control of the party affected thereby, despite such party's reasonable efforts to prevent, avoid, delay, or mitigate the effect of such acts, events or occurrences, and which events or the effects thereof are not attributable to a party's failure to perform its obligations under this Agreement.

8.5 **Governing Laws/Venue.** All disputes regarding the construction, interpretation and the parties' obligations under this Vendor Agreement shall be governed by the laws of the State of Florida, notwithstanding any of that state's laws to the contrary. The venue and jurisdiction for the resolution of any such disputes shall be in the State or Federal courts located in the State of Florida, Broward County.

REV122015

**App. 372**

NTC_026792



8.6 **Limitation of Liability.** Notwithstanding anything contained herein, nothing in this Vendor Agreement shall limit the liability of the Vendor.

8.7 **Non-waiver.** Either party's failure to insist upon the performance of any term of this Agreement shall not be construed as a waiver of that party's present or future right to such performance and each Party's obligations in respect thereto shall continue in full force and effect.

8.8 **No Authority.** Neither party shall have authority to take any action, create any obligation, make any commitment, incur any indebtedness, or enter into any agreement that binds the other party. Neither party shall in connection with any services provided to or on behalf of the other party represent to any person or entity that the parties are associated in any capacity other than that of an independent contractor.

8.9 **Performance with Laws/Policies.** Vendor and Seller warrant that they will comply with all federal, state and local laws applicable to their performance hereunder, including but not limited to those relating to nondiscrimination, equal employment opportunity, and affirmative action. Vendor agrees to comply with communicated OJCommerce, LLC policies

8.10 **Severability.** The terms of this Vendor Agreement are severable such that if any term or provision is declared by a court of competent jurisdiction to be illegal, void, or unenforceable, the remainder of the provisions shall continue to be valid and enforceable.

8.11 **[Reserved]**

9 <u>**ENTIRE AGREEMENT**</u>: This Agreement, including Amendments, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior or contemporaneous agreements, understandings, negotiations, representations, applications or proposals or any kind, whether written, oral or otherwise. Neither party has relied upon any statements, representations or other communications that are not contained in this Agreement. Vendor, by executing and delivering this Agreement to Customer, represents and warrants to Customer that this Agreement has not been altered or modified in any manner whatsoever from the version that Customer delivered to Vendor for execution. All changes to this Vendor Agreement must be in writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this E-Commerce Vendor Agreement by their duly authorized representatives as of the day and year first written above.

**Vendor**

National Christmas Products, Inc. DBA National Tree Company
Company

*Rich Puleo*
Signature

Richard Puleo
Print Name

Vice President
Title

**Customer**

OJCommerce, LLC
Company

Signature

Jacob Weiss
Print Name

President
Title

REV122015

**App. 373**

NTC_026793



_____

___Auagust 15, 2017_____     _____
Date                                Date

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

OJCommerce LLC   |   1700 NW 64 St, Suite 460 – Fort Lauderdale, FL 33309   |   954-519-2555

REV122015

App. 374

NTC_026794

# EXHIBIT 2

| | |
|---|---|
| **From:** | donotreply@ojcommerce.com |
| **Sent:** | Monday, November 11, 2019 11:45 PM EST |
| **To:** | Donna Cyril; Mary Ellen Montalvo |
| **CC:** | accounting@ojcommerce.com |
| **Subject:** | OJ Commerce Remittance - National Tree Company |
| **Attachments:** | Vendor Remittance.xlsx |

External Email Alert - This email originates from outside of the organization.

Dear National Tree Company,

Please find a remittance attached;

Remittance amount: $34721.98

Method:

███████ 3595

Odelia Weiss
PO Box 545834
Surfside, FL 33154

The file attached contains a summary tab along with several detail tabs for clarity.

Thank you,

OJ Commerce
accounting@ojcommerce.com

_____

This email was scanned for National Tree Company by Bitdefender

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

**App. 376**

| From: | NATIONAL TREE COMPANY |
|-------|------------------------|
| Sent: | Thursday, January 23, 2020 9:12 AM EST |
| To: | Donna Cyril |
| Subject: | Receipt from NATIONAL TREE COMPANY |

External Email Alert - This email originates from outside of the organization.

OJ Commerce CC 2879 Receipt

Receipt follows:

========= TRANSACTION RECORD =========
NATIONAL TREE COMPANY
2 COMMERCE DRIVE
CRANFORD, NJ 07016
United States
NATIONALTREE.COM

TYPE: Purchase

ACCT: Mastercard     $ 100,000.00 USD

CARDHOLDER NAME : Odelia Weiss
CARD NUMBER    : ###########2879
DATE/TIME     : 23 Jan 20 09:12:03
REFERENCE #    : 001 0538139 T
AUTHOR. #     : 63970P
TRANS. REF.    : CC Payment 1-23-20B

    Approved - Thank You 100

Please retain this copy for your records.

Cardholder will pay above amount to
card issuer pursuant to cardholder
agreement.
=========================================

This email was scanned for National Tree Company by Bitdefender

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

**App. 377**

| | |
|---|---|
| **From:** | Simon Hecht |
| **Sent:** | Friday, January 15, 2021 9:38 AM EST |
| **To:** | 'SDowns@nationaltree.com' |
| **CC:** | Mark Gardner; Doreal Wilkinson |
| **Subject:** | RE: OJ Commerce Remittance - National Tree Company |

Please charge the 544,623.57 to cc 7734. Dial 954-519-2555 Extension 52619 PIN 5951

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, January 13, 2021 8:36 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** FW: OJ Commerce Remittance - National Tree Company

Mark,
What is going on here? Why do we keep having this problem?

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Donna Cyril <DCyril@nationaltree.com>
**Sent:** Wednesday, January 13, 2021 8:33 AM
**To:** accounting@ojcommerce.com
**Cc:** Steve Downs <SDowns@nationaltree.com>; Dennis Cooke <DCooke@nationaltree.com>
**Subject:** FW: OJ Commerce Remittance - National Tree Company

Please be advised the credit card provide below has declined again.

Please provide a valid credit card to process payment.

Thank you,

Donna Cyril
National Christmas Products, LLC

**From:** donotreply@ojcommerce.com <donotreply@ojcommerce.com>
**Sent:** Tuesday, January 12, 2021 11:46 PM
**To:** Donna Cyril <DCyril@nationaltree.com>; Mary Ellen Montalvo <MMontalvo@nationaltree.com>
**Subject:** OJ Commerce Remittance - National Tree Company

Dear National Tree Company,

Please find a remittance attached;

Remittance amount: $544623.57

NTC_026239

Method:

■ 5185

■

Jacob Weiss
PO Box 545834
Surfside, FL 33154

The file attached contains a summary tab along with several detail tabs for clarity.

Thank you,

OJ Commerce
accounting@ojcommerce.com

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

NTC_026240

# EXHIBIT 3

| | |
|---|---|
| **From:** | Jacob Weiss |
| **Sent:** | Wednesday, January 22, 2020 8:54 AM EST |
| **To:** | Mark Gardner |
| **CC:** | Simon Hecht |
| **Subject:** | RE: OJ Commerce Payment Information for National Tree Company |

Simon????


Sent from my T-Mobile 4G LTE Device



-------- Original message --------
From: Mark Gardner <mgardner@ojcommerce.com>
Date: 1/22/20 9:53 AM (GMT-04:00)
To: Jacob Weiss <jacob@ojcommerce.com>
Cc: Simon Hecht <simon@ojcommerce.com>
Subject: FW: OJ Commerce Payment Information for National Tree Company

Jacob,

Looping you in on National Tree CC declined. Simon and I have discussed last few days and I know he's managing. This is starting to affect orders and I'm sure they'll attempt to make our terms more restrictive when we were making the case for Net terms.


-----Original Message-----
From: Steve Downs [mailto:steve@nationaltree.com]
Sent: Wednesday, January 22, 2020 8:33 AM
To: Mark Gardner <mgardner@ojcommerce.com>
Cc: Doreal Wilkinson <dwilkinson@ojcommerce.com>
Subject: RE: OJ Commerce Payment Information for National Tree Company

Hi Mark,
Again, this morning the card has been declined. We are supposed to have a card dedicated to us. Also, Donna has not be receiving any replies to her emails when notifying your company of the declined cards. We need this remedied today.

Thanks

Steve Downs
Senior Vice President of Sales
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

-----Original Message-----
From: Mark Gardner <mgardner@ojcommerce.com>
Sent: Tuesday, January 21, 2020 8:44 AM

To: Steve Downs <steve@nationaltree.com>
Cc: Doreal Wilkinson <dwilkinson@ojcommerce.com>
Subject: RE: OJ Commerce Payment Information for National Tree Company

Hi Steve,

I spoke with our Finance department leader yesterday and expect his update today. Will confirm CC info as soon as I get it. Apologies for the inconvenience.


Sincerely,



Mark Gardner Head of Merchandising & Vendor Management
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259 mgardner@ojcommerce.com

---

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.


-----Original Message-----
From: Steve Downs [mailto:steve@nationaltree.com]
Sent: Tuesday, January 21, 2020 8:41 AM
To: Mark Gardner <mgardner@ojcommerce.com>
Cc: Doreal Wilkinson <dwilkinson@ojcommerce.com>
Subject: FW: OJ Commerce Payment Information for National Tree Company
Importance: High

Mark,
What is going on here?

Steve Downs
Senior Vice President of Sales
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

-----Original Message-----
From: Donna Cyril <Donna@nationaltree.com>
Sent: Tuesday, January 21, 2020 8:22 AM
To: 'info@ojcommerce.com' <info@ojcommerce.com>
Cc: Steve Downs <steve@nationaltree.com>
Subject: FW: OJ Commerce Payment Information for National Tree Company
Importance: High

Hello,

The credit card was decline again!  Please forward a valid credit card for me to process this payment.

Thank you,

Donna Cyril
Accounting Manager
National Tree Company

-----Original Message-----
From: Donna Cyril
Sent: Monday, January 20, 2020 10:18 AM
To: 'info@ojcommerce.com' <info@ojcommerce.com>
Cc: Steve Downs <steve@nationaltree.com>
Subject: RE: OJ Commerce Payment Information for National Tree Company
Importance: High

Hello,

The below is the same information that was provided previously and the card declined!

Please forward card information designated for use by NTC that will not decline.

Thank  you,

Donna Cyril
Accounting Manager
National Tree Company

-----Original Message-----
From: info@ojcommerce.com [mailto:info@ojcommerce.com]
Sent: Monday, January 20, 2020 9:13 AM
To: Donna Cyril <Donna@nationaltree.com>; Mary Ellen Montalvo <MaryEllen@nationaltree.com>
Cc: Steve Downs <steve@nationaltree.com>
Subject: OJ Commerce Payment Information for National Tree Company

External Email Alert - This email originates from outside of the organization.


Dear National Tree Company

The requested OJ Commerce payment information is as follows:

Dial 954-519-2555 Extension 52617 PIN 6852


_____
This email was scanned for National Tree Company by Bitdefender

| | |
|---|---|
| **From:** | Mark Gardner |
| **Sent:** | Tuesday, December 1, 2020 2:49 PM EST |
| **To:** | Steve Downs; Doreal Wilkinson |
| **CC:** | Donna Cyril |
| **Subject:** | RE: OJ Commerce Settlement - National Tree Company |

Finance just advised approval to charge approved amount of $795,615.10
Let me know if you have an issue.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Tuesday, December 1, 2020 10:00 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Cc:** Donna Cyril <DCyril@nationaltree.com>
**Subject:** FW: OJ Commerce Settlement - National Tree Company

Mark,
I thought we had this solved?

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Donna Cyril <DCyril@nationaltree.com>
**Sent:** Tuesday, December 1, 2020 9:58 AM
**To:** accounting@ojcommerce.com
**Cc:** Steve Downs <SDowns@nationaltree.com>
**Subject:** FW: OJ Commerce Settlement - National Tree Company

Hello,

Please note the credit card has declined.

Please provide a valid card to process payment below.

Thank you,

Donna Cyril
National Tree Company

**From:** donotreply@ojcommerce.com <donotreply@ojcommerce.com>
**Sent:** Tuesday, December 1, 2020 5:02 AM
**To:** Donna Cyril <DCyril@nationaltree.com>; Mary Ellen Montalvo <MMontalvo@nationaltree.com>
**Cc:** accounting@ojcommerce.com
**Subject:** OJ Commerce Settlement - National Tree Company

NOT AN OFFICIAL ... - CCIS - ATTORNEY OF RECORD

# App. 384

Dear National Tree Company,

Please find a settlement file attached.

Settlement amount $795615.10

Method: Dial 954-519-2555 Extension 52617 PIN 6852

Thank you,

OJCOMMERCE

---

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

NOT AN OFFICIAL COPY – CCIS – APPELLATE RECORD

**App. 385**

| | |
|---|---|
| **From:** | Simon Hecht |
| **Sent:** | Friday, January 15, 2021 9:38 AM EST |
| **To:** | 'SDowns@nationaltree.com' |
| **CC:** | Mark Gardner; Doreal Wilkinson |
| **Subject:** | RE: OJ Commerce Remittance - National Tree Company |

Please charge the 544,623.57 to cc 7734. Dial 954-519-2555 Extension 52619 PIN 5951

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, January 13, 2021 8:36 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** FW: OJ Commerce Remittance - National Tree Company

Mark,
What is going on here? Why do we keep having this problem?

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Donna Cyril <DCyril@nationaltree.com>
**Sent:** Wednesday, January 13, 2021 8:33 AM
**To:** accounting@ojcommerce.com
**Cc:** Steve Downs <SDowns@nationaltree.com>; Dennis Cooke <DCooke@nationaltree.com>
**Subject:** FW: OJ Commerce Remittance - National Tree Company

Please be advised the credit card provide below has declined again.

Please provide a valid credit card to process payment.

Thank you,

Donna Cyril
National Christmas Products, LLC

**From:** donotreply@ojcommerce.com <donotreply@ojcommerce.com>
**Sent:** Tuesday, January 12, 2021 11:46 PM
**To:** Donna Cyril <DCyril@nationaltree.com>; Mary Ellen Montalvo <MMontalvo@nationaltree.com>
**Subject:** OJ Commerce Remittance - National Tree Company

Dear National Tree Company,

Please find a remittance attached;

Remittance amount: $544623.57

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

# App. 386

Method:

5185

Jacob Weiss
PO Box 545834
Surfside, FL 33154

The file attached contains a summary tab along with several detail tabs for clarity.

Thank you,

OJ Commerce
accounting@ojcommerce.com

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

**App. 387**

# EXHIBIT 4

NOT AN OFFICIAL COPY – CCIS ATTORNEY OF RECORD

NOT AN OFFICIAL COPY – CCIS ATTORNEY OF RECORD

| From: | Steve Downs |
|---|---|
| Sent: | Friday, October 23, 2020 6:02 AM EDT |
| To: | Mark Gardner |
| CC: | Lindsay Reeseg; Doreal Wilkinson |
| Subject: | RE: Balance Limit -National Tree |

Hi Mark,

We can agree to Net 15 from 11/1-12/30. Orders from 12/31 on can go to Net 30.

Thanks

**Steve Downs**
*Senior Vice President of Revenue*
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Thursday, October 22, 2020 5:32 PM
**To:** Steve Downs <SDowns@nationaltree.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: Balance Limit -National Tree

Hi Steve,

Thanks for touching base. I did review your presented option, and while we appreciate the move and strongly believe Net terms to be appropriate give our sales performance history, N7 is just not viable. This is especially so given the short window for National Tree's products sales push.

We're actually in the process of pushing off the few remaining non-Net term partners and most have already converted to Terms. I get that N30 may be big initial move, although not far from how we've delivered for National Tree in previous seasons. How about we compromise and go N15 and revisit N30 after this season?

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

**App. 389**

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Thursday, October 22, 2020 1:39 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: Balance Limit -National Tree

Mark,
I don't believe I ever received a response on this.

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Steve Downs
**Sent:** Thursday, October 1, 2020 7:43 PM
**To:** 'Mark Gardner' <mgardner@ojcommerce.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: Balance Limit -National Tree

Hi Mark,
After our finance department reviewed everything with our investment partners, here is where we stand on the terms.
We will remove the cap if we can go to Net 7 days terms. If the payments fall behind, the cap will be put back into place. This would be in effect for the peak season. As you know the balance grows very quickly and we just cannot carry that large sum for a long period of time.

Please let us know if you can agree to this.

Thanks

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145

**App. 390**

Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Wednesday, September 30, 2020 5:23 PM
**To:** Steve Downs <SDowns@nationaltree.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: Balance Limit -National Tree

Hi Steve,

Hope things are going well for you 4Q2020 preparations. I wanted to follow up on whether we can confirm terms update?

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Mark Gardner
**Sent:** Tuesday, September 15, 2020 6:31 PM
**To:** 'Steve Downs' <steve@nationaltree.com>
**Cc:** Lindsay Reeseg <LReeseg@nationaltree.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** RE: Balance Limit -National Tree

Hi Steve,

NTC_023167

It was great speaking with you yesterday. We're excited to coordinate our efforts to ensure a stronger than ever 4Q20 performance!

Our terms last season, however, needs to be revisited. As I'm sure you recall, there were quite few instances where the hard $400k credit cap caused delayed/non-ship orders and ultimately lost sales. Even with our hard promotion push of National Tree's holiday/closeout offerings, this was a significant handicap that we hope to have alleviated this season. We understand that your previous principals had set limits and hope your new organizational structure will be a bit more accommodating. Afterall, we could have done so much better without this hard $400k terms cap.

Even with this terms constraint, we still ended 2019 with 3x sales vs. 2018 and have every expectation to surpass those numbers should we adjust terms. Please review and confirm back these hard caps will be removed for 4Q20.

As always, I will be heavily involved to ensure any issues that arise are resolved timely!


Sincerely,




**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com


_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.


**From:** Steve Downs <steve@nationaltree.com>
**Sent:** Monday, August 5, 2019 4:49 PM
**To:** Vendors Support <vendors@ojcommerce.com>
**Cc:** Richard McCaffrey <RMcCaffrey@nationaltree.com>; Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: Balance Limit

Hi Doreal,

NTC_023168

We reviewed the situation and we fell that we would like to continue the process as we have in the past without reserving the product for you. We have ordered for a 45% increase in inventory this year so there should not be a problem with out of stocks.

With this in mind, we still need to keep the balance cap at $400k for the year. Getting us dedicated credit to bill will be very helpful and should keep the balance under this cap.

Thanks

**Steve Downs**
Senior Vice President of Sales
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Doreal Wilkinson <vendors@ojcommerce.com>
**Sent:** Thursday, August 1, 2019 4:58 PM
**To:** Steve Downs <steve@nationaltree.com>
**Cc:** Richard McCaffrey <RMcCaffrey@nationaltree.com>; mgardner@ojcommerce.com
**Subject:** Re: Balance Limit

Hi Steve,

Thank you for time earlier today.

Part of our efforts to increase sales performance for National Tree is by leveraging our established presence and scale; and relying on the availability of top selling SKUs. As mentioned, attached please find listed items for stock allotment. Please detail your specific plan of action to ensure consistent product availability per day for our sales.

Feel free to reach out with any questions or concerns.

Kindest Regards,

Doreal Wilkinson
Buyer
OJ Commerce
954-519-2555

Ticket:
https://ojcommerce.freshdesk.com/public/tickets/5f62ec36ffefa20151b7ff481ddce5d82bc63c31fa35ed952
6b9285deab60555

> On Tue, Jul 30 at 4:43 PM , Doreal Wilkinson <vendors@ojcommerce.com> wrote:
> Hi Steve,
>
> Let's go with 11AM EST. I'll send out a calendar invite.
>
> Thanks,
>
> Doreal Wilkinson
> Buyer

NTC_023169

OJ Commerce
954-519-2555
Ticket:
https://ojcommerce.freshdesk.com/public/tickets/5f62ec36ffefa20151b7ff481ddce5d82bc63c31fa35ed9526b9285deab60555

On Tue, Jul 30 at 4:11 PM , Steve Downs <steve@nationaltree.com> wrote:
Doreal,
What times on Thursday work for you?

**Steve Downs**
Senior Vice President of Sales
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Doreal Wilkinson <vendors@ojcommerce.com>
**Sent:** Tuesday, July 30, 2019 3:03 PM
**To:** Steve Downs <steve@nationaltree.com>
**Cc:** Richard McCaffrey <RMcCaffrey@nationaltree.com>; mgardner@ojcommerce.com
**Subject:** Re: Balance Limit

Hi Steve,

Are you available for a call concerning this matter? Please let me know your availability this week and I will accommodate.

Thanks,

Doreal Wilkinson
Buyer
OJ Commerce
954-519-2555

Ticket:
https://ojcommerce.freshdesk.com/public/tickets/5f62ec36ffefa20151b7ff481ddce5d82bc63c31fa35ed9526b9285deab60555

On Tue, Jul 30 at 9:52 AM , Steve Downs <steve@nationaltree.com> wrote:
Hi Doreal,
Unfortunately, we cannot move to $500k. This is already a large credit line. Can't we work out the payments in such a way that we are paid more often keeping the balance at or below the $400k

Thanks

**Steve Downs**
Senior Vice President of Sales
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

NOT AN OFFICIAL COPY – CCIS ATTORNEY OF RECORD

# App. 394

This email was scanned for National Tree Company by Bitdefender

This email was scanned for National Tree Company by Bitdefender

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

App. 395

# EXHIBIT 5

| From: | Simon Hecht |
|-------|-------------|
| Sent: | Friday, January 15, 2021 9:38 AM EST |
| To: | 'SDowns@nationaltree.com' |
| CC: | Mark Gardner; Doreal Wilkinson |
| Subject: | RE: OJ Commerce Remittance - National Tree Company |

Please charge the 544,623.57 to cc 7734. Dial 954-519-2555 Extension 52619 PIN 5951

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, January 13, 2021 8:36 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>; Doreal Wilkinson <dwilkinson@ojcommerce.com>
**Subject:** FW: OJ Commerce Remittance - National Tree Company

Mark,
What is going on here? Why do we keep having this problem?

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Donna Cyril <DCyril@nationaltree.com>
**Sent:** Wednesday, January 13, 2021 8:33 AM
**To:** accounting@ojcommerce.com
**Cc:** Steve Downs <SDowns@nationaltree.com>; Dennis Cooke <DCooke@nationaltree.com>
**Subject:** FW: OJ Commerce Remittance - National Tree Company

Please be advised the credit card provide below has declined again.

Please provide a valid credit card to process payment.

Thank you,

Donna Cyril
National Christmas Products, LLC

**From:** donotreply@ojcommerce.com <donotreply@ojcommerce.com>
**Sent:** Tuesday, January 12, 2021 11:46 PM
**To:** Donna Cyril <DCyril@nationaltree.com>; Mary Ellen Montalvo <MMontalvo@nationaltree.com>
**Subject:** OJ Commerce Remittance - National Tree Company

Dear National Tree Company,

Please find a remittance attached;

Remittance amount: $544623.57

# App. 397

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

Method:

■■■5185

■

Jacob Weiss
PO Box 545834
Surfside, FL 33154

The file attached contains a summary tab along with several detail tabs for clarity.

Thank you,

OJ Commerce
accounting@ojcommerce.com

---

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

**App. 398**

# EXHIBIT 6

| From: | Simon Hecht |
| --- | --- |
| Sent: | Tuesday, February 2, 2021 10:53 AM EST |
| To: | Donna Cyril; 'MaryEllen@nationaltree.com'; 'Donna@nationaltree.com' |
| CC: | Steve Downs; Mark Gardner |
| Subject: | Holiday recovery costs |

Hello Steve,

As a normal course of business, OJCommerce champions, promotes/markets, and presents the products of our brand partners to ensure strong performance. We do this in concert with our partners and, as stipulated in our Vendor agreement, with the expectation that each partner fully support their obligation to complete order fulfillment, service support, and resolution on presented orders issues.

This past season, OJCommerce presented National Tree's products for an aggressive campaign, based on your commitment that:

- National Tree's inventories were being increased 30+% in anticipation of a strong sales
- There would be dedicated inventories available to OJCommerce
- National Tree would provide necessary customer support to complete order fulfillment and, therefore, ensure OJCommerce's brand and Reputation would not be adversely impacted by failures to satisfy customer expectations for fulfillment, updates, and timely deliveries.

Not only has National Tree failed to deliver on these cornerstone elements, but OJCommerce has sustained the resulting performance fallout, negative customer feedback, and sizable sales losses. Because of these National Tree deficits and our incurred losses, we seek to recover costs of $126,890 against your account. While this amount does not come close to full compensation for the actual damages sustained, we will accept this as a token towards our efforts to rectify this still ongoing fallout and additional resources we placed to managing your orders while there was no support from National Tree for most of the previous 3-months ...since November '20.

Best Regards,

Simon



**OJCommerce, LLC**
3076 N Commerce Parkway
Miramar FL 33025
954-519-2555 x210
simon@ojcommerce.com

NOT AN OFFICIAL DOCUMENT — ATTORNEY OF RECORD

**App. 400**

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

**App. 401**

# EXHIBIT 7

| From: | Mark Gardner |
|---|---|
| Sent: | Friday, June 4, 2021 6:19 PM EDT |
| To: | 'Steve Downs' |
| CC: | Simon Hecht |
| Subject: | RE: Update |
| Attachments: | OJ COMMERCE AGING 5-17-21.xlsx |

Hi Steve,

Thanks for your patience here. We have manually processed your 213 page copy Statement. Our open balances differ slightly because there are standing deductions and credits that were not included in your statement printouts. Below is a step summary, but I have also detailed these in the attached excel workbook.

1. **$780,714.10 – National Tree Statement** -216pg document (*did not include standing 3% allowance*)
   - Less $42,669.23 –OJ confirmed deductions (*i.e. Cancelled, Mi-shipped, No Shipped, Returns*)
   - Less $24,127.03 –OJ confirmed 3% Allowance
   - Less $1,450.61 -Missing PO#'s (*on NT Statement, but w/o PO#'s*)
     **$713,172.75 -NT Balance** (updated Balance)

2. **Less $66,851.42 Credits Due**, but not included in NT Statement ...See 2nd Tab for PO details (*i.e. Cancelled, Mi-shipped, No Shipped, Returns*)

3. **$646,341.14** -OJ's reconciled Open Balance!!

Please review so we can reconcile to move on.

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If

**App. 403**

you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Tuesday, June 1, 2021 12:11 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: Update

Mark,
We need to see some movement here.

Thanks

Steve Downs
Senior V.P. of Revenue
National Tree Company
P: 908-709-4141
SDowns@nationaltree.com

**From:** Steve Downs
**Sent:** Friday, May 21, 2021 2:20 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: Update

Hi Mark,
Can we get an update on this? We really need to get moving forward so we can settle the payment next week.

Thanks

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Steve Downs
**Sent:** Monday, May 17, 2021 9:25 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: Update

Mark,
Unfortunately our system cannot export into a readable format.

**App. 404**

NOT AN OFFICIAL COPY - CCIS - ATTORNEY OF RECORD

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Monday, May 17, 2021 9:20 AM
**To:** Steve Downs <SDowns@nationaltree.com>
**Subject:** RE: Update

Hi Steve,
This is a 216pg pdf, generally not importable.
Can you send us a readable document, preferably a CSV file?


Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential information intended for a specific individual purpose. This information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited. If you have received this transmission in error, please delete it. Thank you.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Monday, May 17, 2021 8:44 AM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Subject:** RE: Update

Mark,
Attached is current aging report.

NTC_026834

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

**From:** Mark Gardner <mgardner@ojcommerce.com>
**Sent:** Friday, May 14, 2021 4:38 PM
**To:** Steve Downs <SDowns@nationaltree.com>
**Subject:** RE: Update

Hi Steve,
Thank you and your team for the effort put forth. This is great news!
I am having my team draft up the agreement and expect to have this back to you by Monday -
5/17/2021.

Can you forward me the most current statement, so we can reconcile and get the thing moving
forward?

Sincerely,



**Mark Gardner**
*Head of Merchandising & Vendor Management*
3076 N. Commerce Parkway
Miramar, FL 33025
954-519-2555, ext 259
mgardner@ojcommerce.com

_____

CONFIDENTIALITY NOTICE: This e-mail and any accompanying documents contain confidential
information intended for a specific individual purpose. This information is private and protected by law. If
you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or
the taking of any action based on the contents of this information, is strictly prohibited. If you have
received this transmission in error, please delete it. Thank you.

**From:** Steve Downs <SDowns@nationaltree.com>
**Sent:** Wednesday, May 12, 2021 8:06 PM
**To:** Mark Gardner <mgardner@ojcommerce.com>
**Subject:** Update

**App. 406**

Mark,

We had an internal discussion and we will move forward with the partnership of the business. What we would like to do is quickly spin up our outdoor and other seasonal categories with you. We have a substantial list of items in each that are ready to go online. I will make sure those listings get over to you by the end of the week as we are in the midst of those selling periods now.

As these programs move forward, we will progress in getting aligned into Q4. We will get you that product assortment as soon as it is available. With this continuation of the partnership, please work on getting the payment resolved with us ASAP.

Let me know if you have any concerns and our Account Manager will send those files over.

Thanks

**Steve Downs**
Senior Vice President of Revenue
P: 908-709-4141 x. 226
F: 908-709-4145
Steve@NationalTree.com
www.NationalTree.com

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

**App. 407**

CONFIDENTIALITY NOTICE: *This e-mail message and/or its attachments may contain confidential and/or legally privileged information and are intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, publication, reproduction, storage and/or copying of this e-mail message and/or its attachments is prohibited. All information contained in this e-mail message and/or its attachments is provided as-is and without any warranty, express, implied or otherwise, regarding its accuracy. E-mails and/or its attachments are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, and/or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks and the terms herein. National Tree Company is not responsible for errors or omissions in this message and disclaims all liability for any claims of damage and/or for damage arising from the use of this e-mail and/or its attachments. Any opinion and other statement contained in this e-mail message and/or attachment are solely those of the author and do not necessarily represent those of the company. If you have received this e-mail message and/or its attachments in error, please contact the sender immediately.*

App. 408

# EXHIBIT 8

Ellenoff Grossman & Schole LLP

1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 370-1300
Facsimile: (212) 370-7889
www.egsllp.com

ANTHONY GALANO, III
e-mail: agalano@egsllp.com
Direct Facsimile: (212) 370-0804

March 14, 2022

**<u>Via E-Mail</u>**
Mark Gardner
Head of Merchandising & Vendor Management
OJ Commerce LLC
3076 N. Commerce Parkway
Miramar, FL 33025
mgardner@ojcommerce.com

Re:     **<u>National Christmas Products, LLC v. OJ Commerce LLC</u>**

Dear Mr. Gardner:

We have been retained by National Christmas Products, LLC d/b/a National Tree Company ("National Tree") and write with respect to the failure of OJ Commerce LLC ("OJ Commerce") to pay National Tree $781,474.14 in connection with OJ Commerce's purchase of various Christmas tree lights, wreaths and related products (collectively "Christmas Products") from National Tree. There is no dispute that National Tree manufactured the aforementioned products at the direct instance and request of OJ Commerce pursuant to various purchase orders in 2020-2021. As a result, the total due to National Tree from OJ for the Christmas Products is $781,474.14 as of October 13, 2021. *See* Exhibit 1.

National Tree sent OJ Commerce approximately twelve thousand four hundred fifty-seven (12,457) invoices between December 2020 and October 2021 that reflect a total open balance of $781,474.14 (the "Invoices"). National Tree never received any rejection from OJ to the Invoices. By reason of the foregoing, National Tree has a clear and undisputed account stated claim against OJ Commerce for the Invoices.

Please be advised that if payment is not made in full in the amount of $781,474.14 within one week of the date of this letter, National Tree has instructed my firm to take whatever legal action is necessary to recover the outstanding amount, together with statutory interest and other applicable fees and costs, as well as applicable attorneys' fees.

This communication is submitted to you for settlement purposes only and without prejudice to, and National Tree reserves all of, its rights and remedies, both legal and equitable.

Please be guided accordingly.

Please contact me directly if you have any questions concerning this matter.

Very truly yours,

_/s/ Anthony Galano, III_
Anthony Galano, III, Esq.

cc:    OJ Commerce LLC
1700 NW 64th Street
Suite 460
Fort Lauderdale, FL 33309

Mr. Hari Krishnamurthy, Chief Financial Officer
National Tree Company
2 Commerce Drive
Cranford, NJ 07016

NOT AN OFFICIAL COPY – CCIS – ATTORNEY OF RECORD

# Exhibit 1

A C C O U N T S   R E C E I V A B L E   A G I N G   R E P O R T

Aged As Of 03/14/2022          Customer Aging Range: 000000013490 Through 000000013490
Printed In Customer Number, Apply-To Number Order, Summary, Open Items Only
Minimum Balance Due: All
In Aging Period Or Older: All
Balance Forward Totals to Current Period Only
Document Types   I = Invoice   P = Payment   C = Cr Memo   D = Dr Memo   B = Balance Forward   F = Finance Charge
Notes:  Types I, B And F Are Aged By Their Due Date.  Types P, C And D Are Aged By Due Date Of The Document To Which They Apply.
        On Types I, B, C And D Amount-1 Is Sale Amt.  On Type P Amount-1 Is Cash Receipt Amt.  On Type F Amount-1 Is Fin Charge Amt.
        On Types I, C,and D Amount-2 Is Other Charges.  On Type P Amount-2 Is Discount And Allowance. (No Amount-2 For Types F & B).

| Cust-No Bal-Mthd Phone-No | Name Contact Terms | Slsman | Cllectr | Terr | Loc | Balance Crdt-Lmt | 30 Days | 60 Days | 90 days | Over 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|
| 13490 | OJ Commerce, LLC | | | | | | | | | |
| Opn-Itm | Danielle Drysdale | | | | | | | | | |
| 954-519-2555 | Net 30 | HS | | | | 781,474.14 | .00 | | .00 | |
| | | | | | | | | .00 | | 781,474.14 |
| 1  Cust Printed | Grand Totals: | | | | | 781,474.14 | .00 | | .00 | |
| | | | | | | | | .00 | | 781,474.14 |
| | % Of Balance: | | | | | | .00 | | .00 | |
| | | | | | | | | .00 | | 100.00 |
| | Outstand B,D,I | | | | | 781,474.14 | .00 | | .00 | |
| | | | | | | | | .00 | | 781,474.14 |
| | Unapplied C,P | | | | | .00 | .00 | | .00 | |
| | | | | | | | | .00 | | .00 |
| | Finance Charges | | | | | .00 | .00 | | .00 | |
| | | | | | | | | .00 | | .00 |

NOT AN OFFICIAL COPY - CCIS - ATTORNEY OF RECORD

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE24017004

OJ COMMERCE LLC

      Plaintiff,

vs.

NATIONAL CHRISTMAS PRODUCTS,
LLC d/b/a NATIONAL TREE COMPANY

      Defendant.

_____/

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S AMENDED MOTION TO STAY
PROCEEDINGS OR, ALTERNATIVELY, FOR AN EXTENSION OF TIME[1]
TO RESPOND TO PLAINTIFF'S COMPLAINT**

      Defendant National Christmas Products, LLC d/b/a National Tree Company ("Defendant"

or "NTC"), by and through undersigned counsel, hereby submits this reply in further support of

Defendant's *Amended Motion to Stay Proceedings or, Alternatively, for an Extension of Time* (DE

#8) (the "Motion"), respectfully requesting to stay the instant matter pending the Southern District

of Florida's resolution of a related action, and states as follows:

    1.   On March 24, 2025, OJ Commerce LLC ("Plaintiff" or "OJC") filed its opposition to the

Motion (the "Opposition" or the "Oppo").

    2.   Plaintiff's assertion that resolution of the Antitrust Action[2] would not resolve *many* of the

issues involved in the instant case (Oppo ¶ 2) effectively concedes that there is significant overlap

between the two cases. Indeed, as set forth below, Plaintiff's antitrust claims seek lost profits from

Defendant during the *exact same time period* that Plaintiff seeks lost profits from Defendant in the

---

[1] Defendant's Motion with respect to the requested extension of time was effectively mooted when Defendant filed
its Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint on March 25, 2025.
[2] Capitalized terms not otherwise defined shall have the same definition as set forth in the Motion.

**App. 414**

instant action. Plaintiff clearly seeks to gain a windfall of purported lost profits for the same time period in two separate actions. To the extent that Plaintiff could prove lost profits in either action (and it cannot), experts would have to know what actually caused those lost profits – the alleged antitrust violations or the allegations in the instant Action.

3.  As set forth in the Motion, the Complaint in the instant action is *identical* to Plaintiff's Amended Counterclaims in the First Action.[3] So identical that the Complaint inadvertently mentions the Amended Counterclaims (and fails to remove allegations which Plaintiff knows it is unable to prove).

4.  Upon dismissal of the First Action (without prejudice), Plaintiff subsequently filed the Antitrust Action in which it fully admitted that the Antitrust Action arose out of the same transactions and occurrences as set forth in the claims and counterclaims asserted in the First Action. *See* Antitrust Action, D.E. 43 ¶ 56.

5.  To be sure, upon the United States District Court's *sua sponte* review of the dockets in the Antitrust Action and the First Action, the initial judge in the Antitrust Action transferred the case to be heard before the judge in the First Action because the two actions were related. *See* Antitrust Action, D.E. 24. Accordingly, the instant action and the Antitrust Action involve a single set of facts and circumstances, warranting a stay.

6.  Under Florida law, it is not necessary for the first-filed case to fully resolve the factual disputes or legal issues raised in the subsequent action. *See, e.g.*, *REWJB Gas Invs. v. Land O' Sun Realty*, 643 So. 2d 1107, 1108 (Fla. 4th DCA 1994) (granting stay and noting that the "granting of a stay of proceedings by a trial court, pending the outcome of an action in another court, is in the broad discretion of the trial court."). Rather, a stay is warranted where the verdict or judgment in

---

[3] Plaintiff even concedes that fact, noting that the parties "litigated the very claims in this case in federal court for nearly two years." Oppo ¶ 4.

the prior lawsuit is likely to "materially affect the viability of *some* of the [litigants'] claims in the Florida lawsuit." *Benihana of Tokyo, Inc. v. Benihana, Inc.,* 129 So. 3d 1153, 1155 (Fla. 3d DCA 2014) (emphasis added); *see also Pilevsky v. Morgans Hotel Grp. Mgmt., LLC*, 961 So. 2d 1032, 1036 (Fla. 3d DCA 2007) ("Because *many* of the issues in the Florida action will be resolved by the New York action, it is necessary to stay the Florida action until such time as the New York action is concluded.") (emphasis added); *Fla. Crushed Stone Co. v. Travelers Indem. Co.*, 632 So. 2d 217, 220 (Fla. 5th DCA 1994) ("The causes of action do not have to be identical; it is sufficient that the two actions involve a single set of facts and that the resolution of the one case will resolve *many* of the issues involved in the subsequently filed case.") (emphasis added).

7.   The scope of discovery and related motion practice in the Antitrust Action and in the instant action will substantially overlap, especially with respect to damages alleged by Plaintiff.

8.   Specifically, the Complaint in the instant action and the Antitrust Complaint both seek damages for lost profits during the exact same period of time, and any determination as to whether or not Plaintiff actually lost profits during the relevant time period (and what caused those alleged lost profits) will necessarily determine whether or not Plaintiff has a claim based on alleged lost profits.

9.   Conveniently, Plaintiff states that it intends to pick up the claims from where the First Action left off, "near its end," and that the instant action is "ready to be scheduled for trial." Oppo ¶¶ 4-5. Plaintiff is *wrong* – discovery is nowhere near complete.

10. First, NTC has asserted counterclaims against OJC as well as a third-party complaint against OJC's CEO, Jacob Weiss ("Mr. Weiss") in the instant action. Accordingly, NTC intends to conduct discovery, including, but not limited to: (i) deposing Mr. Weiss in light of the claims asserted against him, and (ii) serving discovery requests in this action as *none* of Mr. Weiss' emails

were produced in discovery in the First Action despite deposition testimony revealing that Mr. Weiss directed the moves (and drafted the emails) for each of OJC's employees.

11. Likewise, Plaintiff never previously produced documents sufficient to prove *multiple* significant allegations in their latest Complaint. For example, Plaintiff failed to provide a single document or communication evidencing any alleged "negative flagging" by Amazon (Mr. Weiss also testified that he was unaware of the meaning of "negative flagging), yet Plaintiff kept that allegation in the instant Complaint. Either Plaintiff lacks any evidence of this claim and continues to press an allegation it knows to be false (sanctionable conduct), or Plaintiff withheld such evidence in the prior action. Similarly, Plaintiff continues to assert that Defendant tortiously interfered with its customer relationships, yet Plaintiff produced no evidence whatsoever to establish that Plaintiff had sufficient relationships with these customers such that Defendant could tortiously interfere. Again, either Plaintiff continues to assert a frivolous claim which it knows to be false, or Plaintiff withheld responsive documents in discovery in the prior action.

12. Additionally, expert discovery in the First Action was still ongoing. One week before the discovery cutoff deadline and the night before the deposition of OJC's expert witness (Richard Bolko), OJC produced an amended damages calculations spreadsheet that included approximately 43,000 rows of new data that had not been produced in discovery. This data was critical information that NTC's expert needed time to review and to amend his rebuttal report. As of the night before Mr. Bolko's scheduled deposition, Defendant had not received Mr. Bolko's revised report. As a result, Defendant sought to postpone Mr. Bolko's deposition.

13. Approximately three hours after Mr. Bolko's deposition was scheduled to start, OJC served Mr. Bolko's amended expert report which was based on the amended damages calculations spreadsheet produced just the night before. As a result of the newly produced data, Plaintiff's

damage calculation was cut in half, which evidences the significance of the newly produced data.

14. OJC claimed that, because its expert's methodology did not change in the amended expert report and its claimed damages was actually reduced, there was no need for it to depose NTC's expert and refused to postpone the deposition of Defendant's expert.

15. NTC declined to produce its expert, Anand Khemlani, on the scheduled deposition day, as Mr. Khemlani would have had less than two days to review Mr. Bolko's amended expert report and only three days to review the *substantial* new data concerning the relevant orders, sales, and delivery information, which formed the basis for OJC's claimed lost profits and were thus highly significant to Mr. Khemlani's analysis.

16. As of the close of discovery in the First Action, the parties had not resolved their expert disputes. Neither party's expert had been deposed and OJC was steadfastly refusing to re-schedule those depositions. Prior to dismissal of the First Action for lack of subject matter jurisdiction, NTC fully intended to raise these expert discovery issues with the Court in the First Action.

17. Due to the foregoing, NTC is wary of *any* of OJC's claims for lost profits, especially when such damages are claimed in two separate cases based on the exact same time period.

18. Accordingly, principles of comity and priority dictate that this action should be stayed until the Antitrust Action is concluded. *See Stok & Assocs., P.A. v. Citibank, N.A.*, 58 So. 3d 366, 368 (Fla. 3d DCA 2011) (upholding a stay and noting that the trial court did not depart from the essential requirements of law in staying an earlier filed state court action pending resolution of a federal case that would "dramatically impact the state court action.").

WHEREFORE, Defendant National Christmas Products, LLC respectfully requests that this Honorable Court enter an order: (1) granting the Motion in its entirety; (2) staying the instant action until the Antitrust Action is completed; and (3) awarding any other relief the Court may

deem just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on March 26, 2025, a copy of the foregoing has been sent via the eservice portal to Shlomo Y. Hecht, Esq., attorney for Plaintiff, OJ Commerce, LLC, at sam@hechtlawpa.com.

**BLACK SREBNICK**
One Town Center, Suite 201
Boca Raton, FL 33486
Tel: 561-361-6800

*/s/ Jordan D. Utanski*
Lance W. Shinder
Florida Bar No. 851711
LShinder@RoyBlack.com
Kyle A. Johnson, Esq.
Florida Bar No. 113324
KJohnson@RoyBlack.com
Jordan D. Utanski
Florida Bar No. 119432
JUtanski@royblack.com

**ELLENOFF GROSSMAN & SCHOLE LLP**
John Horgan, Esq. (*admitted pro hac vice*)
jhorgan@egsllp.com
1345 Avenue of the Americas, 11th Floor
New York, NY 10105

*Counsel for National Christmas Products, LLC*
*d/b/a National Tree Company*

NOT AN OFFICIAL COPY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 3, 2025, I electronically filed the foregoing document with the Eleventh Circuit Court of Appeals using CM/ECF and thereby served counsel of record.

*/s/ Shlomo Y Hecht*
SHLOMO Y HECHT
